___ FILED    ___ ENTERED
___ LODGED   ___ RECEIVED

NOV 2 7 2009   LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY



09-CV-01686-CMP

SEA 30736

Zum FSS.

1    UNITED STATES DISTRICT COURT FOR THE
2          WESTERN DISTRICT OF WASHINGTON

3  ROBERT C. WARDEN,              )
4          Plaintiff,            )
5                                )          COMPLAINT
6          vs.                   )
7                                )
8  GREGORY J. NICKELS and        )      C09-1686 MJP
9  CITY OF SEATTLE,              )
10          Defendants.          )
11  _____ )

12              <u>COMPLAINT</u>

13        COMES NOW the Plaintiff, Robert C. Warden, and complains

14  of Defendants as follows:

15              <u>THE PARTIES</u>

16        1.  Plaintiff Robert C. Warden (Warden) is an individual

17  residing in King County, Washington.

18        2.  Defendant Gregory J. Nickels (Nickels) is the mayor

19  of the City of Seattle (Seattle).  Nickels is the head of the

20  Executive Department, and in that capacity directs and controls

21  all Seattle offices and departments except where that authority

Complaint, Page 1 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                        Kent, WA 98031-2183
                                            (206) 601-9541

1  is granted to another office by the Seattle City Charter.

2  Nickels is presently enforcing the challenged laws, customs,

3  practices and/or policies complained of in this action.  Nickels

4  is sued in both his individual and official capacities.  Nickels

5  resides in Seattle, King County, Washington.

6          3.  Defendant City of Seattle (Seattle) is a municipal

7  corporation and first-class city organized under the laws of the

8  State of Washington.

9                      JURISDICTION AND VENUE

10         4.  The Court has subject matter jurisdiction over this

11  action pursuant to 28 U.S.C. § 1331, 1343, 1367, 2201, 2202, and

12  42 U.S.C. § 1983.

13         5.  Venue lies in this Court pursuant to 28 U.S.C. §

14  1391.

15                      STATEMENT OF FACTS

16         6.  The right of law-abiding individuals in the State of

17  Washington to bear arms is guaranteed by the Second Amendment to

18  the United States Constitution, and by Article I, Section 24 of

19  the Washington State Constitution.

20         7.  The Second Amendment guarantees the right of law-

21  abiding individuals to publicly carry operational handguns for

22  self-defense.

Complaint, Page 2 of 11                    Robert C. Warden
                                          10224 SE 225th PL
                                        Kent, WA 98031-2183
                                           (206) 601-9541

1          8.   States retain the ability to regulate the manner of

2    carrying handguns, prohibit the carrying of handguns in

3    specific, narrowly-defined sensitive places, prohibit the

4    carrying of arms that are not within the scope of Second

5    Amendment protection, and disqualify specific, particularly

6    dangerous individuals from carrying handguns.

7          9.   States may not completely ban the carrying of

8    handguns for self-defense, deny individuals the right to carry

9    handguns in non-sensitive places, deprive individuals of the

10   right to carry handguns in an arbitrary or capricious manner, or

11   impose regulations on the right to carry handguns that are

12   inconsistent with the Second Amendment.

13         10.  RCW 9.41.290 provides that the State of Washington

14   "fully occupies and preempts the entire field of firearms

15   regulation within the boundaries of the state."  RCW 9.41.070

16   grants adults meeting certain criteria the right to obtain a

17   Concealed Pistol License (CPL).  RCW 9.41.300 enumerates the

18   specific limited exceptions to CPL-holders' general right to

19   carry concealed pistols in locations open to the public.

20   Municipal parks and community centers are not among those

21   enumerated exceptions.

22         11.  On June 6, 2008, defendant Nickels issued Executive

Complaint, Page 3 of 11                    Robert C. Warden
                                          10224 SE 225th PL
                                         Kent, WA 98031-2183
                                            (206) 601-9541

1   Order 07-08 entitled "Gun Safety at City Facilities."  The order

2   directed all City departments to conduct an inventory of present

3   policies, rules, and leases to determine the extent to which

4   departments could prohibit firearms on City property and to

5   implement plans to make such changes.  A true copy of Executive

6   Order 07-08 is attached as Exhibit A, and incorporated into this

7   complaint.

8           12.  In October 2008, Washington Attorney General Rob

9   McKenna issued a formal written Opinion that cities in

10  Washington do not have authority to regulate possession of

11  firearms on or in city property generally open to the public.  A

12  true copy of AGO 2008 No. 8 is attached as Exhibit B, and

13  incorporated into this complaint.

14          13.  On October 14, 2009, acting at the behest of

15  Nickels, the superintendent of Seattle's Parks and Recreation

16  Department issued Rule/Policy Number P 060-8.14.  A true copy is

17  attached as Exhibit C, and incorporated into this complaint.

18          14.  Rule/Policy Number P 060-8.14 immediately resulted

19  in substantial and comprehensive infringement of Second

20  Amendment rights.  Pursuant to this rule/policy, signs

21  purporting to prohibit firearms were promptly posted in Parks

22  locations throughout the city.  According to the rule/policy,

Complaint, Page 4 of 11                     Robert C. Warden
                                            10224 SE 225th PL
                                            Kent, WA 98031-2183
                                               (206) 601-9541

1  violators of the firearm prohibition who refused a Parks

2  official's direction to leave the premises would be arrested on

3  grounds of criminal trespassing.  At all times relevant to this

4  action, such signage was prominently posted at the entrance to

5  Seattle's Southwest Community Center (SCC).

6       15.  Defendants performed the above acts after reviewing

7  Attorney General McKenna's Opinion (Exhibit B), and thus with

8  full and clear knowledge that the authority to regulate firearms

9  rests exclusively with the State of Washington.  Further,

10  defendants substantially and comprehensively infringed Second

11  Amendment rights after the United States Supreme Court held that

12  the Second Amendment guaranteed an individual right to bear arms

13  (DC v. Heller, Docket No. 07-290, Decided June 26, 2008), and

14  after the Ninth Circuit Court of Appeals held that the Second

15  Amendment applied to the states (Nordyke v. King, Docket No. 07-

16  15763, Decided April 20, 2009).

17       16.  At all times relevant to this action, plaintiff

18  Warden possessed a current and valid CPL issued pursuant to RCW

19  9.41.070.  At all times relevant to this action, Warden was the

20  lawful owner and possessor of a Glock 27 pistol, which is a

21  firearm.

22       17.  Warden is formally trained in the safe handling of

Complaint, Page 5 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                         Kent, WA 98031-2183
                                             (206) 601-9541

1   handguns, and is a certified pistol instructor and range safety

2   officer.

3          18.  During regular public hours on Saturday, November

4   14, 2009, Warden entered the SCC through the main public

5   entrance.  As clearly communicated to defendants the day prior,

6   securely holstered and completely concealed under his closed

7   jacket was Warden's Glock 27 pistol.

8          19.  Once inside the facility, Warden was immediately

9   met by Seattle Parks Department security official Lisa Harrison.

10  Harrison asked Warden if he was the person who had notified

11  authorities the day before of his intent to carry his pistol

12  into SCC.  Warden answered in the affirmative.  Harrison then

13  asked Warden if he in fact was carrying his pistol at that

14  moment.  When Warden again answered in the affirmative, Harrison

15  stated that firearms were not allowed in SCC, and instructed

16  Warden to immediately leave the premises.  Warden complied.

17         20.  At the time Warden was expelled from SCC, the

18  facility was bustling with weekend activity.  A large number of

19  individuals of all ages were enjoying unrestricted access to the

20  various events and services provided to the general public by

21  defendants at the SCC.

22         21.  Warden was singled out, and was alone in not being

Complaint, Page 6 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                        Kent, WA 98031-2183
                                           (206) 601-9541

1  allowed to enjoy the various events and services provided to the

2  general public only because Warden was exercising his

3  constitutional and legal right to carry a pistol.

4  <u>FIRST CLAIM FOR RELIEF</u>
5  <u>U.S. CONST., AMEND. II, 42 U.S.C § 1983</u>
6  <u>AGAINST ALL DEFENDANTS</u>

7  22.  Paragraphs 1 through 21 are incorporated as though

8  fully stated herein.

9  23.  By maintaining and enforcing Rule/Policy Number P

10 060-8.14, Defendants are propagating laws, customs, policies,

11 and/or practices that violate the Second and Fourteenth

12 Amendments to the United States Constitution, damaging Plaintiff

13 in violation of 42 U.S.C. § 1983.  Plaintiff is therefore

14 entitled to permanent injunctive relief against such laws,

15 customs, policies, and/or practices.  Plaintiff further seeks

16 declaratory judgment that such laws, customs, policies, and/or

17 practices violate the Second and Fourteenth Amendments to the

18 United States Constitution, and are therefore null and void.

19 <u>SECOND CLAIM FOR RELIEF</u>
20 <u>U.S. CONST., AMEND. XIV — EQUAL PROTECTION, 42 U.S.C § 1983</u>
21 <u>AGAINST ALL DEFENDANTS</u>

22 24.  Paragraphs 1 through 23 are incorporated as though

23 fully stated herein.

24 25.  By maintaining and enforcing Rule/Policy Number P

Complaint, Page 7 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                        Kent, WA 98031-2183
                                           (206) 601-9541

1  060-8.14, Defendants are propagating laws, customs, policies,

2  and/or practices arbitrarily infringing Plaintiff's rights on

3  the incoherent theory that the mere presence of concealed

4  firearms is inherently unsafe in places, but only in places,

5  where "children and youth are likely to be present."  In doing

6  so, Defendants have violated and are continuing to violate

7  Plaintiff's right to equal protection of the laws under the

8  Fourteenth Amendment to the United States Constitution, damaging

9  Plaintiff in violation of 42 U.S.C. § 1983.  Plaintiff is

10 therefore entitled to permanent injunctive relief against such

11 laws, customs, policies, and/or practices.  Plaintiff further

12 seeks declaratory judgment that such laws, customs, policies,

13 and/or practices violate the equal protection clause of the

14 Fourteenth Amendment to the United States Constitution, and are

15 therefore null and void.

16                    THIRD CLAIM FOR RELIEF
17            WA STATE CONST. ARTICLE I, SECTION 24
18                    AGAINST ALL DEFENDANTS

19       26.  Paragraphs 1 through 25 are incorporated as though

20 fully stated herein.

21       27.  By maintaining and enforcing Rule/Policy Number P

22 060-8.14, Defendants are propagating laws, customs, policies,

23 and/or practices that violate Article I, Section 24 of the

Complaint, Page 8 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                           Kent, WA 98031-2183
                                              (206) 601-9541

1 Washington State Constitution, damaging Plaintiff.  Plaintiff is

2 therefore entitled to permanent injunctive relief against such

3 laws, customs, policies, and/or practices.  Plaintiff further

4 seeks declaratory judgment that such laws, customs, policies,

5 and/or practices violate Article I, Section 24 of the Washington

6 State Constitution, and are therefore null and void.

7                    **FOURTH CLAIM FOR RELIEF**
8              **REVISED CODE OF WASHINGTON 9.41**
9                     **AGAINST ALL DEFENDANTS**

10       28.  Paragraphs 1 through 27 are incorporated as though

11 fully stated herein.

12       29.  By maintaining and enforcing Rule/Policy Number P

13 060-8.14, Defendants are propagating laws, customs, policies,

14 and/or practices that violate RCW 9.41, damaging Plaintiff.

15 Plaintiff is therefore entitled to permanent injunctive relief

16 against such laws, customs, policies, and/or practices.

17 Plaintiff further seeks declaratory judgment that such laws,

18 customs, policies, and/or practices violate RCW 9.41, and are

19 therefore null and void.

20                      **PRAYER FOR RELIEF**

21       WHEREFORE, Plaintiff requests that judgment be entered

22 in his favor and against Defendants as follows:

23       30.  An order permanently enjoining Defendants, their

Complaint, Page 9 of 11                    Robert C. Warden
                                           10224 SE 225th PL
                                         Kent, WA 98031-2183
                                            (206) 601-9541

1  officers, agents, servants, employees, and all persons in active

2  concert or participation with them who receive actual notice of

3  the injunction, from enforcing Rule/Policy Number P 060-8.14;

4  and, further, from enforcing any other law, ordinance, custom,

5  policy, rule or practice that in any way regulates any aspect of

6  firearms unless specifically authorized by Washington State

7  statutory law.

8        31.  A declaration that Rule/Policy Number P 060-8.14

9  violates the U.S. And Washington constitutions, and Washington

10 statutory law, and is thus null and void.

11       32.  Nominal damages in the amount of one dollar.

12       33.  Costs of suit, including attorney fees and costs

13 pursuant to 42. U.S.C. § 1988, and/or Washington law.

14       34.  Punitive damages against Defendant Nickels in his

15 individual capacity in an amount determined by the Court to be

16 sufficient to effectively deter future Washington municipal

17 officials from behaving with reckless or callous disregard for

18 federally protected rights.

Robert C. Warden
10224 SE 225th PL
Kent, WA 98031-2183
(206) 601-9541

1        35.  Any other further relief as the Court deems just

2 and appropriate.


3 Dated: November 27, 2009

4 Robert C. Warden, WSBA No. 21189
5 10224 SE 225th PL
6 Kent WA 98031
7 (206) 601-9541


Complaint, Page 11 of 11

# EXHIBIT A



**Office of the Mayor**
**City of Seattle**
Gregory J. Nickels, Mayor

**Executive Order:  07-08**
**Gun Safety at City Facilities**

*The Executive Order directs City departments to conduct an inventory of all rules,*
*policies, and leases for all City of Seattle properties and amend such rules, policies and*
*leases in an effort to develop a "gun-free" policy for City of Seattle properties;*

WHEREAS, the City of Seattle has a population of 586,200 with millions of tourists
visiting the city annually, a vibrant nightlife, and an expansive cultural and arts scene;
and

WHEREAS, the City of Seattle government has vast property holdings throughout the
city, including parks, libraries, government buildings, and community and recreational
centers; and

WHEREAS, the City of Seattle has policies, contractual agreements, and rules of
conduct governing behavior on City property; and

WHEREAS, Seattle's local laws and ordinances relating to firearms are specifically
authorized by state law and are consistent with state law; and

WHEREAS, the Washington State Supreme Court has held that a municipal property
owner, like a private property owner, may impose conditions related to firearms for the
use of its property in order to protect its property interests; and

WHEREAS, the recent shooting involving a permitted handgun highlights the importance
of having gun-free policies on City of Seattle property; and

WHEREAS, it is the policy of the City of Seattle, acting in its proprietary capacity, to
adopt and enforce policies, rules, and contractual agreements that, consistent with state
law, prohibit the possession of dangerous weapons, including firearms, on City property;

NOW, THEREFORE, I, GREGORY J. NICKELS, Seattle Mayor,

declare that it is the policy of the City of Seattle, acting in its proprietary capacity, to

adopt and enforce policies, rules, and contractual agreements that prohibit the

Executive Order 07-08                                                                                    1
Gun Safety at City Facilities

possession of dangerous weapons, including firearms, and with the exception of guns issued to law enforcement personnel, on City property;

FURTHERMORE, I direct all City departments to conduct an inventory of all present rules, policies, and contractual agreements, such as leases, within their authority to determine the extent to which they, acting in the City's capacity as owner of the property, prohibit the possession of dangerous firearms on City property; and,

FURTHERMORE, I direct all City departments to report back to the Mayor's Office within 30 days with a plan for implementing the City's policy to, acting in its proprietary capacity, adopt and enforce policies, rules, and contractual agreements that prohibit the possession of dangerous weapons, including firearms, on City property.

FURTHERMORE, any new or amended departmental rules will be developed in accordance with proper administrative procedures.

For inquiries regarding this Executive Order, please contact Regina LaBelle at 206-684-4000.

Dated this 6th day of June , 2008

Gregory J. Nickels
Mayor, City of Seattle

# EXHIBIT B



Rob McKenna

Attorney General of Washington

**CITIES AND TOWNS – FIREARMS – PREEMPTION - Authority of city to enact a local law prohibiting possession of firearms on city property or in city-owned facilities.**

**RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.**

************************************

### October 13, 2008

Honorable Bob Morton
State Senator, 7th District
P. O. Box 40407
Olympia, WA 98504-0407

Honorable Kevin Van De Wege
State Representative, 24th District
P. O. Box 40600
Olympia, WA 98504-0600

**Cite As:**
**AGO 2008 No. 8**

Dear Senator Morton and Representative Van De Wege:

By letter previously acknowledged, you have asked the following paraphrased question:

> **Does a city in Washington have the authority to enact a local law that prohibits possession of firearms on city property or in city-owned facilities?**

### BRIEF ANSWER

The answer to your question is no. RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation" and preempts a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

### BACKGROUND

Your question deals with the authority of cities to enact laws relating to firearms. Article XI, section 11 of the Washington Constitution provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. XI, § 11. "This is a direct delegation of the police power as ample within its limits as that possessed by the Legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws." *City of Spokane v. Portch*, 92 Wn.2d 342, 346, 596 P.2d 1044 (1979). However, the "plenary police power in regulatory

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 2 -          AGO 2008 No. 8

matters accorded municipalities by Const. Art. 11, § 11, ceases when the State enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction." *Id.* "Preemption occurs when the Legislature states its intention either expressly or by necessary implication to preempt the field." *Brown v. City of Yakima*, 116 Wn.2d 556, 560, 807 P.2d 353 (1991). Thus, a city's authority to enact laws relating to firearms depends upon the general firearms laws enacted by the State.

RCW 9.41 sets forth a comprehensive scheme of state firearms regulations. This statutory scheme includes preemption. RCW 9.41.290 provides:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

RCW 9.41.290 preempts the authority of cities to adopt laws regulating firearms. The question is whether the scope of this preemption extends to prohibiting cities from enacting local law that prohibits possession of firearms on city property or in city-owned facilities.

## ANALYSIS

In determining the scope of the preemption in RCW 9.41.290, the "objective is to determine the legislature's intent. If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *See State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). "The 'plain meaning' of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* A statute is ambiguous if it is "subject to more than one reasonable interpretation." *In re the Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

In this case, the plain meaning of RCW 9.41.290 establishes that the preemptive effect of the statute is substantial. "Preemption occurs when the Legislature states its intention . . . expressly . . . to preempt the field." *Brown*, 116 Wn.2d at 560. RCW 9.41.290 expressly preempts the field. RCW 9.41.290 provides in part that the "state of Washington *hereby fully occupies and preempts* the entire field of firearms regulation within the boundaries of the state". (Emphasis added.) Not only does RCW 9.41.290 use the words of preemption—"fully occupies and preempts"—it broadly defines the field of firearms regulation to include "the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege        - 3 -                    AGO 2008 No. 8

firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components." RCW 9.41.290.

Standing alone, the language of RCW 9.41.290 quoted above would establish substantial field preemption. However, RCW 9.41.290 goes on to specifically address the authority of cities to regulate firearms and provides, in part, that "[c]ities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter."

Under RCW 9.41.290, cities may only enact laws and ordinances relating to firearms if two conditions are met. First, cities may only enact laws "that are specifically authorized by state law, as in RCW 9.41.300". RCW 9.41.290. Second, the cities' laws must be "consistent with this chapter." *Id.* Subject to conditions in the statute, RCW 9.41.300 authorizes cities to enact laws restricting the discharge of firearms in any portion of their respective jurisdictions, restricting the possession of firearms in any stadium or convention center, operated by a city, restricting the areas in their respective jurisdictions in which firearms may be sold, and restricting the location of a business selling firearms to not less than five hundred feet from primary or secondary school grounds. RCW 9.41.300(2)(a)-(b), (3)(a)-(b).[1]

The requirement in RCW 9.41.290 that firearms laws adopted by cities be "consistent with this chapter" necessarily implies that inconsistent laws are invalid. RCW 9.41.290 contains additional language, however, that renders this implication explicit. RCW 9.41.290 provides, in part:

> *Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law* shall not be enacted and *are preempted and repealed*, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

(Emphasis added.) In our judgment, the plain language of RCW 9.41.290 demonstrates that the Legislature intended to broadly preempt local laws relating to firearms.

Although the language of RCW 9.41.290 is broad, it does not preempt all city authority with respect to firearms. The Supreme Court has considered RCW 9.41.290 on two occasions. In *Cherry v. Municipality of Metropolitan Seattle*, 116 Wn.2d 794, 808 P.2d 746 (1991), the Court considered whether the Municipality of Metropolitan Seattle (Metro) could discharge an employee who violated Metro's policy prohibiting employees from carrying concealed weapons. The Court held that "RCW 9.41.290 is intended to preempt regulatory city, town or county firearms laws and ordinances, but *does not address internal employment rules limiting on-duty possession of firearms by public employees in the workplace*." *Id.* at 798 (emphasis added). The Court concluded that "RCW 9.41.290 was enacted to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes regulating the general public's possession of firearms." *Id.* at 801. Thus, the purpose of RCW 9.41.290 was "to eliminate a

---

[1] The complete text of RCW 9.41.300 is attached.

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 4 -                    AGO 2008 No. 8

multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation." *Id.*

The Supreme Court next considered RCW 9.41.290 in *Pacific Northwest Shooting Park Association v. City of Sequim*, 158 Wn.2d 342, 144 P.3d 276 (2006). In *Pacific Northwest Shooting Park*, the Association wanted to hold a gun show in the city convention center. The conditional use permit issued by the City of Sequim imposed three conditions on the ability of licensed and unlicensed gun dealers to sell or exchange firearms. The Association argued that these conditions were preempted by RCW 9.41.290. The Court disagreed. According to the Court, "*Cherry* supports the general proposition that when a municipality acts in a capacity that is comparable to that of a private party, the preemption clause does not apply." *Pacific Northwest Shooting Park*, 158 Wn.2d at 357. The Court concluded that a "municipality acts in a proprietary capacity when it acts as the proprietor of a business enterprise for the private advantage of the municipality and it may exercise its business powers in much the same way as a private individual or corporation." *Id.* (citations and internal quotation marks omitted). Therefore, "[b]y issuing a temporary use permit, the city was leasing its property to PNSPA and acting in its private capacity as a property owner." *Id.* The Court held that RCW 9.41.290

> does not prohibit a private property owner from imposing conditions on the sale of firearms on his or her property. RCW 9.41.290. Applying our reasoning in *Cherry*, it follows that a municipal property owner like a private property owner may impose conditions related to firearms for the use of its property in order to protect its property interests. For the same reason that a municipal employer may enact policies regarding possession of firearms in the workplace because a private employer may do so, a municipal property owner should be allowed to impose conditions related to sales of firearms on its property if a private property owner may impose them.

*Pacific Northwest Shooting Park*, 158 Wn.2d at 357. The Court explained that the "critical point is that the conditions the city imposed related to a permit for private use of its property. They were not laws or regulations of application to the general public." *Id.*

Under *Cherry* and *Pacific Northwest Shooting Park*, RCW 9.41.290 does not preempt a city's ability to impose conditions when it is acting in a private capacity. The question is whether this reasoning would apply if a city prohibited the general public from possessing firearms on city property. It is certainly true that RCW 9.41.290 would not preempt a private citizen from prohibiting possession of firearms on his or her property. This prohibition might be enforced by simply refusing to permit someone entry on to the private property with a firearm. However, in this respect, a city is not in the same position as a private citizen. Large parts of city property are generally open to the public. Indeed, citizens may be required to enter city property, for example, to apply for a building permit. For these reasons, neither *Cherry* nor *Pacific Northwest Shooting Park* support the view that cities may prohibit the general public from possessing firearms on city property.

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege        - 5 -                    AGO 2008 No. 8

It has been suggested that such a prohibition on the possession of firearms on city property might be enforced through the state's criminal trespass laws. RCW 9A.52.070 governs first degree criminal trespass and provides:

> (1)    A person is guilty of criminal trespass in the first degree if he knowingly enters or remains unlawfully in a building.
>
> (2)    Criminal trespass in the first degree is a gross misdemeanor.

RCW 9A.52.080 governs second degree criminal trespass and provides:

> (1)    A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.
>
> (2)    Criminal trespass in the second degree is a misdemeanor.

A person "enters or remains unlawfully" when a person is "in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(3). It is a defense to criminal trespass if the "premises were at the time *open to members of the public* and the actor complied with all *lawful conditions* imposed on access to or remaining in the premises". RCW 9.52.090(2) (emphasis added).

Under the criminal trespass approach, a city would post signs or otherwise notify the public that possession of firearms was prohibited on city property.[2] If an individual did not comply with this requirement, he or she would be charged with criminal trespass.

In our judgment, a city does not have the authority to generally prohibit the possession of firearms on city property except to the extent authorized by RCW 9.41.290. Even in the case of criminal trespass, a member of the public is only required to comply with "lawful conditions". RCW 9A.52.090(2). Prohibiting possession of firearms on city property would not be a lawful condition, because RCW 9.41.290 preempts the power of a city to impose such a prohibition. We reach this conclusion for three reasons.

First, breadth of the language in RCW 9.41.290 persuades us that the Legislature intended to prohibit cities from generally prohibiting firearms. Even though *Cherry* and *Pacific Northwest Shooting Park* recognized that RCW 9.41.290 does not preempt all city authority to regulate firearms, both cases hold that the purpose of RCW 9.41.290 was "to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes *regulating the general public's possession of firearms.*" *Cherry*, 116 Wn.2d at 801 (emphasis added); *Pacific Northwest Shooting Park*, 158 Wn.2d at 356. Thus, the regulation in those cases

---

[2]    There are different ways in which a city might take action to prohibit firearms on city property. One would be for the city legislative authority to enact an ordinance imposing the prohibition. Another would be for a city official to impose the prohibition, if he or she were authorized by city law to impose conditions on access to city property. In our view, the answer to this question does not turn on the manner in which the prohibition might be imposed.

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 6 -          AGO 2008 No. 8

was not directed at the general public's possession of firearms.  As the Court explained, the *"critical point is that the conditions* the city imposed related to a permit for private use of its property.  They *were not laws or regulations of application to the general public." Pacific Northwest Shooting Park*, 158 Wn.2d at 357 (emphasis added).  Under the facts of your question, the city would prohibit the general public from possessing firearms on city property.

Prior to the enactment of RCW 9.41.290, it might have been legal to possess a firearm at a particular place in one city and a crime to possess a firearm in the same place in another city.  RCW 9.41.290 was enacted to prevent these conflicting criminal codes.  Allowing a city to use criminal trespass to enforce a ban on firearms allows conflicting criminal codes regulating the general public's possession of firearms.  In this respect, it makes little difference to a citizen who is subjected to conflicting criminal codes whether he or she is being prosecuted for the gross misdemeanor of first degree trespass, or for the crime of possession of a firearm.

Second, in interpreting a statute "each provision of a statute should be read together (*in pari materia*) with other provisions in order to determine the legislative intent underlying the entire statutory scheme." *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). "The purpose of interpreting statutory provisions together with related provisions is to achieve a harmonious and unified statutory scheme that maintains the integrity of the respective statutes." *Id.*  Reading RCW 9.41.290 together with other firearms statutes persuades us that the Legislature did not intend to permit cities to prohibit the general public from possessing firearms. The Legislature has expressly prohibited the possession of firearms in specific places.  These include (a) restricted access areas of a jail, or of a law enforcement facility, or any place used for the confinement of a certain person, (b) the areas in any building which are used in connection with court proceedings, including courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings, (c) the restricted access areas of certain public mental health facilities, (d) that portion of an establishment classified by the state liquor control board as off-limits to persons under twenty-one years of age, and (e) the restricted access areas of a commercial service airport designated in the airport security plan approved by the federal transportation security administration.  RCW 9.41.300(1)(a)-(e).  The Legislature also prohibited possession of firearms "while on the site of an outdoor music festival." RCW 70.108.150. The Legislature has also expressly authorized cities to prohibit firearms in certain places.  This includes restricting the discharge of firearms in any portion of their respective jurisdictions, restricting the possession of firearms in any stadium or convention center, operated by a city, restricting the areas in their respective jurisdictions in which firearms may be sold, and restricting the location of a business selling firearms to not less than five hundred feet from primary or secondary school grounds.  RCW 9.41.300(2)(a)-(b), (3)(a)-(b).

The Legislature has carefully set out the places where the general public is prohibited from possessing firearms.  "Where a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions." *In re Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999).  We conclude that the Legislature did not intend that the possession of firearms would be prohibited in the places that were not listed.  This conclusion is buttressed by the fact that the Legislature's prohibition of firearms is very narrow.  The Legislature prohibited the possession of firearms in the "restricted access areas of a jail, or of a

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 7 -          AGO 2008 No. 8

law enforcement facility, or any place used for the confinement of [certain] person[s]" but "[r]estricted access areas *do not include common areas of egress or ingress open to the general public*". RCW 9.41.300(1)(a). The Legislature prohibited possession of firearms in certain "restricted areas" of courthouses. However, the Legislature provided that the "restricted areas do not include common areas of ingress and egress to the building that is used in connection with court proceedings, when it is possible to protect court areas without restricting ingress and egress to the building. The restricted areas shall be the minimum necessary to fulfill the objective of this subsection". RCW 9.41.300(1)(b). The Legislature prohibited possession of firearms in the restricted areas of certain mental health facilities but, again, the Legislature provided that "[r]estricted access areas do not include common areas of egress and ingress open to the general public". RCW 9.41.300(1)(c). Even the restricted areas of airports where firearms are prohibited do not include "airport drives, general parking areas and walkways, and shops and areas of the terminal that are outside the screening checkpoints and that are normally open to unscreened passengers or visitors to the airport." RCW 9.41.300(1)(e). Thus, even when the Legislature prohibited the possession of firearms, it did so only in restricted areas. The Legislature did not intend to impose a general prohibition on a citizen's ability to possess a firearm.

Third, the evolution of the preemption of local firearms laws establishes that the Legislature intended RCW 9.41.290 to broadly preempt local authority and to prohibit local government from prohibiting citizens from possessing firearms. In 1935, Washington adopted firearms laws "modeled after the uniform firearms act which was approved by the National Conference of Commissioners on Uniform State Laws, in 1930. See 1930 Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, 562-567." *Olsen v. Delmore*, 48 Wn.2d 545, 548, 295 P.2d 324 (1956). Laws of 1935, ch. 172. The 1935 law did not contain a provision similar to RCW 9.41.290 that addressed the preemption of local authority to adopt firearms laws. In 1961, the Legislature reenacted the state's firearms laws. Laws of 1961, ch. 124. The 1961 law provided that "[a]ll laws or parts of laws of the state of Washington, its subdivisions and municipalities inconsistent herewith are hereby preempted and repealed." Laws of 1961, ch. 124, § 14.

Although the 1961 law preempted and repealed inconsistent local law, it did not generally preempt local authority to adopt firearms laws that were not inconsistent with state firearms law. This was the holding in *Second Amendment Foundation v. City of Renton*, 35 Wn. App. 583, 668 P.2d 596 (1983). In *Second Amendment Foundation*, Renton adopted an ordinance prohibiting the possession of firearms where alcoholic beverages are dispensed by the drink. The plaintiff argued that this ordinance was preempted by section 12 of the 1961 law. The Court of Appeals rejected this argument, because the "provision served only to repeal inconsistent municipal legislation in effect in 1961, and has no bearing on the present case." *Second Amendment Foundation*, 35 Wn. App. at 588. The court held that there was no express preemption of local authority to regulate firearms. The court explained that a "careful examination of the Uniform Firearms Act, RCW Ch. 9.41, demonstrates no express preemption concerning the possession of firearms on premises where liquor is sold by the drink. The legislature has not indicated an intention to preempt municipal regulation in all areas of gun control. The power of municipalities to so legislate survives." *Second Amendment Foundation*, 35 Wn. App. at 588.

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 8 -                          AGO 2008 No. 8

The Court next considered whether there was a conflict between state law and the Renton ordinance. The Court concluded that there was no conflict, because Washington laws "do not expressly state an unqualified right to be in possession of a firearm at any time or place. The Renton ordinance does not purport to contradict or restrict any provision of the statute. Therefore, the statute and ordinance are not inconsistent." *Id.* at 588-89. Thus, "[w]hile an absolute and unqualified local prohibition against possession of a pistol by the holder of a state permit would conflict with state law, an ordinance which is a limited prohibition reasonably related to particular places and necessary to protect the public safety, health, morals and general welfare is not preempted by state statute." *Id.* at 589.

In 1983, the Legislature adopted RCW 9.41.290. Laws of 1983, ch. 232, § 12. The 1983 version of RCW 9.41.290 provided that "[c]ities, towns, and counties may enact only those laws and ordinances relating to firearms that are consistent with this chapter. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted." Laws of 1983, ch. 232, § 12. Although RCW 9.41.290 was enacted after *Second Amendment Foundation* was argued, the Court explained that section 12 "prohibits the enactment of local ordinances inconsistent with the requirements of RCW Ch. 9.41. It does not militate against the result reached here." *Second Amendment Foundation*, 35 Wn. App. at 588 n.3. Thus, the 1983 version of RCW 9.41.290 only preempted inconsistent local firearms laws.

In an addendum to AGO 1983 No. 14 (Addendum dated September 22, 1983), we discussed the limited scope of the preemptive language of section 12. We noted that the

> critical issue involves *the very limited preemptive effect of the language employed in § 12* of SSB 3782 (now chapter 232, Laws of 1983). It has, unfortunately, become apparent to us since AGO 1983 No. 14 was issued that some proponents and many supporters of that bill were misled into thinking that the language of § 12 was sufficient to prevent the continuing enactment or enforcement of local ordinances addressing the kinds of places where weapons might be possessed-with or without a permit. Such ordinances, in the minds of many, have led to a confusing patchwork of prohibitions from one locality to the next, across the state.

AGO 1983 No. 14 (Addendum dated September 22, 1983) at 1 (emphasis added). We explained that it "is most certainly within the power of the legislature to effect a policy that such a patchwork situation will not exist." *Id.* Also, we suggested that language such as "preemption" or "occupies the field" would accomplish this goal:

> If the legislature intends to accomplish this policy through the technique of "preemption" there are numerous judicial decisions, both within our own state and elsewhere, that contain examples of appropriate terminology that should be used. For, quite simply, *preemption indicates a complete take over of a field of activity to the exclusion of all local actions, regulations or interference*-and thus, if that is the intention of the legislature, *the best and most effective way to manifest that intent would be to use the term "preemption" or "occupies the field"* or similar terms.

ATTORNEY GENERAL OF WASHINGTON

AGO 1983 No. 14 (Addendum dated September 22, 1983) at 1-2 (emphasis added).

In 1985, the Legislature amended RCW 9.41.290. Laws of 1985, ch. 428, § 1. The amendment included the use of both of the terms "preemption" and "occupies the field" suggested in AGO 1983 No. 14. The amendment, in bill draft form, provided:

> The state of Washington hereby *fully occupies and preempts the entire field* of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter. Such local ordinances shall have the same or lesser penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

Laws of 1985, ch. 428, § 1 (italicized emphasis added). The 1985 legislation also added RCW 9.41.300 to RCW 9.41. Laws of 1985, ch. 428, § 2. RCW 9.31.300 prohibited possession of firearms in certain places. Laws of 1985, ch. 428, § 2(1). The statute also provided: "*Notwithstanding RCW 9.41.290*, cities, towns, counties, and other municipalities may enact laws and ordinances" restricting the discharge and possession of firearms in certain places. Laws of 1985, ch. 428, § 2(2). The sequence of events leading to the 1985 amendment of RCW 9.41.290 persuades us that the Legislature intended to preempt all local authority to impose a prohibition on the public's ability to possess firearms. The use of the terms "preempt" and "occupies the field" confirm that RCW 9.41.290 was intended to broadly preempt local authority to adopt a ban on the possession of firearms.

The 1994 amendment to RCW 9.41.290 and .300 also confirms this view. In 1993, the Court of Appeals decided *City of Seattle v. Ballsmider*, 71 Wn. App. 159, 856 P.2d 1113 (1993). In *Ballsmider*, the defendant violated a Seattle ordinance by standing on the back porch of his Seattle residence and firing a gun into the air. The Seattle Municipal Court imposed a sentence of 365 days' confinement with 360 days suspended and a $5,000 fine with $4,500 suspended. The defendant argued that "the penalty imposed by local firearms ordinances cannot exceed that imposed by the State firearms statutes, and that his sentence was therefore contrary to law because his sentence and the maximum penalty under SMC 12A.28.050 (365 days and $5,000) exceed the maximum penalty allowed under RCW 9.41.230 (90 days and $1,000)." *Ballsmider*, 71 Wn. App. at 161. The Court rejected this argument, pointing to the language in RCW 9.41.300(2): "Notwithstanding RCW 9.41.290." According to the Court:

> The definition of "notwithstanding" is "in spite of", which in turn is defined as "in defiance of, *regardless of* . . ." Under these definitions, "notwithstanding RCW 9.41.290" means "regardless of anything in RCW 9.41.290." Had the Legislature

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 10 -                          AGO 2008 No. 8

intended that local governments disregard only contrary provisions or restrictions in the preemption statute, it could have easily said "notwithstanding any contrary provisions or restrictions in RCW 9.41.290" instead of "notwithstanding RCW 9.41.290." *Thus, the effect of "notwithstanding RCW 9.41.290" is that the preemption statute and its restrictions, including its penalty restrictions, are to be disregarded and have absolutely no bearing on laws enacted pursuant to RCW 9.41.300(2)(a).*

*Ballsmider*, 71 Wn. App. at 162–163 (emphasis added) (citations omitted). The Court concluded that this reading of RCW 9.41.300(2) was consistent with RCW 9.41.290. According to the Court, the preemption language in RCW 9.41.290

applies to the entire range of firearms regulation, including "registration, licensing, possession, purchase, sale, acquisition, transfer, *discharge,* and transportation of firearms . . ." (Emphasis added). RCW 9.41.300(2) and its "[n]otwithstanding RCW 9.41.290" language merely give local governments authority, without penalty or other restrictions, to enact laws regarding the *discharge* of firearms in areas where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized. This limited exception does not swallow or render meaningless the general preemption statute which, as noted above, applies to much more than the regulation of the discharge of firearms.

*Ballsmider*, 71 Wn. App. at 163-64.

In 1994, the Legislature amended RCW 9.41.290 and RCW 9.41.300. Laws of 1994, 1st Sp. Sess., ch. 7, §§ 428, 429. In bill draft form, the amendments to RCW 9.41.290 provided:

The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same ((or lesser)) penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

Laws of 1994, 1st Sp. Sess., ch. 7, § 428. In bill draft form, RCW 9.41.300, which provides limited authority to municipalities to enact ordinances relating to firearms was amended in part to provide:

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege        - 11 -        AGO 2008 No. 8

    (2)    ((Notwithstanding RCW 9.41.290,)) Cities, towns, counties, and other municipalities may enact laws and ordinances:

    . . . .

    (4)    Violations of local ordinances adopted under subsection (2) of this section must have the same penalty as provided for by state law.

Laws of 1994, 1st Sp. Sess., ch. 7, § 429(2), (4).

The 1994 amendments had the effect of changing the law as it was interpreted by the court in *Ballsmider*, which read the phrase "notwithstanding RCW 9.41.290" in RCW 9.41.300 as "allow[ing] local governments relatively unlimited authority" in the specific areas covered by RCW 9.41.300(2). *Ballsmider*, 71 Wn. App. at 163. The repeal of the "notwithstanding" language supports the interpretation that the Legislature intended that local governments have limited ability to regulate firearms. The 1994 amendments require that the penalties be the same as provided for by state law. The amendments even eliminate the authority of local governments to impose lesser penalties. The addition of the phrase "as in RCW 9.41.300" to RCW 9.41.290 further limits local authority to regulate firearms. Local governments may only regulate if "specifically authorized by state law, as in RCW 9.41.300". Laws of 1994, 1st Sp. Sess., ch. 7, § 428.

To summarize, RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation within the boundaries of the state". While RCW 9.41.290 does not preempt all city authority with regard to firearms, it does preempt a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

We trust that this opinion will be of assistance to you.

    Sincerely,

    ROB MCKENNA
    Attorney General

    WILLIAM B. COLLINS
    Deputy Solicitor General
    360-753-6245

:pmd

**EXHIBIT C**

Your City Seattle



# Department Of Parks and Recreation Rule/Policy

| **Subject:** Firearms May Be Prohibited as a Condition of Entry Into or Use of Designated Parks Department Facilities at Which Children and Youth are Likely to be Present | **Number:** P 060 - 8.14 |
| --- | --- |
| | **Effective: October 14, 2009** |
| **Approved:** [signature] | **Department: Parks & Recreation** | |

## 1.0 INTRODUCTION AND FINDINGS

**1.1** The City owns and operates various City real property and facilities, including property and facilities under the jurisdiction of the Seattle Parks and Recreation Department ("Parks" or "Department").

**1.2** In 2008 over 1.8 million people visited and attended programs in Parks Department owned community centers, pools, teen centers and environmental learning centers; over 108,000 children and youth visited wading pools; over 59,000 youth events were scheduled at sports fields; and, countless numbers of children and youth visited playgrounds, play areas, and sports courts.

**1.3** As the owner and operator of Department facilities at which children and youth are likely to be present, the City has a strong interest in promoting facility users' and visitors' confidence, particularly families with children, that such facilities are safe and secure places to visit.

**1.4** Carrying concealed firearms and displaying firearms at Department facilities at which children and youth are likely to be present threatens the City's interests in promoting the use of those facilities by children, youth and their families.

**1.5.** Based on the relatively small percentage of Seattle residents who have concealed weapons permits, we conclude that the vast majority of users of Department facilities where children and youth are present are families who do not carry firearms.

**1.6** Such families' safe and secure use of Department facilities is disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of children, which can result from various unforeseen circumstances, (such as the escalation of disputes among individuals carrying firearms; the accidental discharge of firearms in the vicinity of children; the mishandling of firearms; the unsafe temporary storage or placement of

Page 1 of 5

firearms that may be found and accidentally discharged by children and youths; and the intimidation that occurs when someone openly displays firearms in the presence of youth and children.

**1.7** Children are frightened and threatened by the presence of firearms in facilities designed for their safe use and enjoyment;

**1.8** Many injuries to children by firearms occur when children are playing and gain access to firearms they find that are otherwise legally possessed, and there is an increased potential for accidental injuries and deaths from such instances if adults leave their firearms unattended or improperly stored in purses, bags, or other concealed places while they play with their children on park equipment and facilities.

**1.9** Parks are gathering places for groups of youth and young adults ages 18 to 25 for a range of activities where fights sometimes occur, and the presence of even otherwise lawfully-possessed firearms increases the likelihood of gun violence to resolve disputes that would not otherwise involve a threat to life or grievous bodily harm.

**1.10.** Studies demonstrate that individuals possessing firearms are more likely to be shot in an assault than those who do not have a firearm. For example, a recent study conducted by University of Pennsylvania researchers conclude that armed individuals were four and one-half (4.5) times more likely to be shot. It is reasonable for the Department to conclude that more firearms in Parks facilities increases the likelihood that someone will be seriously injured.

**1.11.** Many parents will not permit their children to play in public spaces where firearms are permitted, depriving some children of the ability to peacefully use city facilities intended for their benefit.

**1.12.** The City's and Department's interests will be promoted by establishing a policy that the Superintendent may, by erecting appropriate signage at a facility at which children and youth are likely to be present, communicate to the public that firearms are not permitted at that facility as a condition of entry to or use of the facility.

## 2.0 REFERENCES AND AUTHORITY

**2.1** This policy/rule is authorized by and promulgated as provided in the City's Administrative Code (SMC Chapter 3.02), in SMC 3.26.040.L (Parks Superintendent's Rule-Making Authority); and in SMC 18.12.040 (Superintendent's authority -- Rulemaking –Enforcement).

**2.2** The City earlier proposed a rule regarding firearms on City property. The City and Department conducted a written comment period and held a hearing for the receipt of oral comments. The City decided to narrow the proposal so that it applied only to Parks Department facilities at which children and youth are likely to be present. The Parks Department conducted another comment period and received approximately 1,000

additional written comments. The Superintendent therefore finds that conducting another public hearing to receive additional oral comments on the modified proposal is not necessary.

## 3.0 DEFINITIONS

**3.1 "City"** means the City of Seattle.

**3.2 "Parks Department facilities"** means City owned or operated buildings and improvements operated under the jurisdiction of the Department of Parks and Recreation.

**3.3 "Department"** means the Seattle Department of Parks and Recreation ("Parks').

**3.4 "Designated Parks Facility"** means the facilities listed in Section 5 as Department facilities where children and youth are likely to be present.

**3.5 "Displaying a firearm"** means to carry a firearm in such a manner that the firearm is visible to others,.

**3.6 "Firearm"** means a weapon or device from which a projectile may be fired by an explosive such as gunpowder.

**3.7 "Firearms are not permitted"** means that the carrying of a concealed firearm and the display of a firearm are not permitted as a condition of entry or use of the particular facility.

**3.8 "Law enforcement officer"** means: 1) a sworn Seattle Police officer, or 2) qualified law enforcement officer as defined in 18 U.S.C.A § 926B(c), or a qualified retired law enforcement officer as defined in 18 U.S.C.A. § 926C(c), who is carrying a firearm permitted under 18 U.S.C.A § 926 and is carrying identification as required by that section.

**3.9 "On Duty Security Officer"** means an individual other than a law enforcement officer who: is employed for the purpose of providing security; is required to carry a firearm as a condition of that employment; is providing security services at the time on City property; and has legal authority to carry the firearm at the time.

**3. 10 Carrying a concealed firearm "** means to carry a firearm in such a manner that it is not visible to others.  Carrying a concealed firearm does not include storing a firearm lawfully in a vehicle that is located on City property.  Carrying a concealed firearm also does not include carrying a lawful firearm onto City property for the purpose of promptly determining: 1) if the facility is designated as one at which firearms are not permitted ; or 2) if the facility has an area designated for the safe storage of firearms.

**3.11 "RCW"** means the Revised Code of Washington.

Page 3 of 5

**3.12 "SMC"** means Seattle Municipal Code.

**3.13 "Appropriate signage"** means signs that indicate to the public that firearms are not permitted as a condition of entry to or use of a particular facility at which children and youth are likely to be present.

**3.14 "Superintendent"** means the Superintendent of Parks and Recreation, or his or her authorized designee.

## 4.0 GENERAL POLICY: CARRYING CONCEALED FIREARMS AND DISPLAYING FIREARMS ARE NOT PERMITTED AT PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT

The Department, in its proprietary capacity as owner or manager of Department facilities, does not permit the carrying of concealed firearms or the display of firearms, except by law enforcement officers and on-duty security officers, at Parks Department facilities at which: 1) children and youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility. .

## 5.0 DESIGNATED PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT

**5.1 Facilities at which children and youth are likely to be present.** The following Department facilities are designated as facilities where children and youth are likely to be present:

> **5.1.1** Playgrounds and Children's play areas;
> **5.1.2** Sports Fields, Sports Courts and other sports facilities;
> **5.1.3** Swimming and Wading Pools;
> **5.1.4** Spray Parks (Water Play Areas);
> **5.1.5** Teen Centers;
> **5.1.6** Community Centers;
> **5.1.7** Environmental Learning Centers;
> **5.1.8** Small craft centers;
> **5.1.9** Performing Arts Centers;
> **5.1.10** Tennis Centers;
> **5.1.11** Skateboard Parks;
> **5.1.12** Golf Courses; and,
> **5.1.13** Swim beaches.

**5.2 Posting.** The Superintendent may post at a Parks facility at which children and youth are likely to be present appropriate signage indicating to the public that firearms are not permitted at that facility.

## 6.0  WITHDRAWAL OF PERMISSION TO REMAIN AT A PARTICULAR DESINGATED FACLILTY

**6.1.  No Criminal or Civil Penalties.**  This policy/rule does not include any criminal or civil penalties.  Rather, it constitutes conditions placed upon a person's permission to enter or remain at a designated Parks Department facility at which appropriate signage has been posted.  Such conditions shall be enforced in the same manner and pursuant to the same ordinances and statutes as similar conditions could be enforced by other public or private property owners.

**6.2 Withdrawal of Permission to Enter or Remain at the Designated Facility.** The following individuals have authority to withdraw in writing or orally a person's permission to enter or remain at a designated Parks Department facility:

**6.2.1**  Sworn Seattle police officers; and,

**6.2.2**  Other City employees or agents delegated such authority by the Superintendent.

## 7.0  GUIDELINES

The Superintendent may issue operating guidelines, procedures, or protocols that, among other things, inform City employees and other authorized persons how to properly implement this policy.  Such protocols should include procedures regarding enforcement and, where practicable, the possible safe storage of firearms at designated City facilities.

Page 5 of 5