The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT C. WARDEN,

        Plaintiff,

    v.

GREGORY J. NICKELS and CITY OF SEATTLE,

        Defendants.

Case No. 2:09-CV-01686-MJP

DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

NOTE ON MOTION CALENDAR: Jan. 22, 2010

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND ...................................................................................... 3

II.  DISCUSSION ....................................................................................... 5

    A.   Standards Governing Motions To Dismiss Pursuant To Rule 12(B)(6) ............... 5

    B.   The Second Amendment Does Not Apply To The City Of Seattle ...................... 6

    C.   Prohibiting The Carrying Or Displaying Of Firearms In Sensitive Places, Such As Parks And Other Municipal Facilities Frequented By Children Would Not Violate Any Second Amendment Right ................................................ 7

    D.   The Policy Does Not Violate Equal Protection Under The Fourteenth Amendment ............................................................................... 11

        1.   Plaintiff Is Not Entitled To Strict Scrutiny Because He Is Not A Member Of A Suspect Class .................................................... 11

        2.   Plaintiff Is Not Entitled To Strict Scrutiny Because He Does Not Have A Fundamental Right To Bring A Firearm Into A Park Or Recreation Center ................................................................... 12

        3.   Plaintiff Is Not Entitled To Rational-Basis Scrutiny Because The Policy Makes No Classification ......................................... 12

        4.   Plaintiff's Claim Would Still Fail Rational-Basis Review ............. 13

    E.   Washington Courts Have Long Recognized That The State Constitution Imposes No Barrier To Reasonable Regulation Of Firearms ...................... 15

    F.   Mayor Nickels Is Entitled To Qualified Immunity Because There Has Been No Constitutional Violation Of A Clearly Established Right .................... 17

        1.   There Was No Constitutional Violation ................................... 18

        2.   There Was No Clearly Established Right ................................. 18

III. CONCLUSION ..................................................................................... 19

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP

i

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington 98104-7097
(206)839-4300

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Ashcroft* v. *Iqbal,*
   --- U.S. -- 129 S. Ct. 1937 (2009) ................................................................ 5

*Bell Atlantic Corp.* v. *Twombly,*
   550 U.S. 544 (2007) ................................................................................... 5

*Bletz* v. *Gribble,*
   640 F. Supp. 2d 907 (W.D. Mich. 2009) .................................................. 19

*Burns* v. *Mukasey, No. CIV S-09-0497,*
   2009 WL. 3756489 (E.D. Cal. Nov. 6, 2009) ....................................... 6, 7

*Ctr. For Bio-Ethical Reform, Inc.* v. *City and County of Honolulu,*
   455 F.3d 910 (9th Cir. 2006) ................................................................... 14

*DHX, Inc.* v. *Allianz AGF MAT, LTD.,*
   425 F.3d 1169 (9th Cir. 2005) .................................................................... 9

*Freeman* v. *City of Santa Ana,*
   68 F.3d 1180 (9th Cir. 1995) ................................................................... 12

*Fresno Rifle and Pistol Club, Inc.* v. *Van De Kamp,*
   965 F.2d 723 (9th Cir. 1992) ........................................................... 2, 6, 18

*Heller* v. *District of Columbia,*
   --- U.S. -- 128 S. Ct. 2783 (2008) ..................................................... passim

*Mada-Luna* v. *M. Fitzpatrick,*
   813 F.2d 1006 (9th Cir. 1987) .................................................................... 9

*McDonald* v. *Chicago,* 128 S.Ct. 48 (2009) ............................................... 6, 19

*Moss* v. *U.S. Secret Svc.,*
   572 F.3d 962 (9th Cir. 2009) ..................................................................... 5

*Nat'l Rifle Ass'n of Am., Inc.* v. *Chicago,*
   567 F.3d 856 (7th Cir. 2009), *cert granted, McDonald v. Chicago,*
   130 S.Ct. 48 (2009) ............................................................................. 6, 19

*Navarro* v. *Block,*
   250 F.3d 729 (9th Cir. 2001) ..................................................................... 5

*Nordlinger* v. *Hahn,*
   505 U.S. 1 (1992) .................................................................................... 14

MOTION TO DISMISS        ii
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington 98104-7097
(206)839-4300

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Nordyke* v. *King*,
563 F.3d 439 (9th Cir. 2009)................................................................6, 7, 9, 10, 12

*Nunez* v. *City of San Diego*,
114 F.3d 935 (9th Cir. 1997).................................................................................14

*Ove* v. *Gwinn*,
264 F.3d 817 (9th Cir. 2001).................................................................................5

*Pearson* v. *Callahan*,
129 S. Ct. 808 (2009) ......................................................................................17, 18

*Ross* v. *Moffitt*,
417 U.S. 600 (1974) .................................................................................................12

*Saucier v. Katz, 533 U.S. 194 (2001)* ..................................................................18

*Silveira* v. *Lockyer*,
312 F.3d 1052 (9th Cir. 2003).........................................................................11, 13

*Sprewell* v. *Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)...................................................................................5

*United States* v. *Joelson*,
7 F.3d 174 (9th Cir. 1993)........................................................................................9

*United States* v. *Walgren*,
885 F.2d 1417 (9th Cir. 1989)..................................................................................9

*Young* v. *Hawaii*,
No. 08-00540, 2009 WL. 1955749 (D. Haw. July 2, 2009).................................12

### STATE CASES

*City of Seattle* v. *Montana*,
129 Wn. 2d 583 (1996) ...........................................................................................15

*Second Amendment Foundation* v. *City of Renton*,
35 Wn. App. 583 (1983)...............................................................................15, 16, 17

*State* v. *Spencer*,
75 Wn. App. 118 (1994)..........................................................................................15

### FEDERAL RULES, STATUTES & CONSTITUTION

Federal Rules of Civil Procedure, Rule 12(b)(6) ..............................................2, 5

42 U.S.C. § 1983 .......................................................................................................2, 5

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

# TABLE OF AUTHORITIES
### (continued)

**Page**

18 U.S.C. § 926B ........................................................................................................... 12

U.S. Const., amend. II ............................................................................................... passim

U. S. Const., amend. XIV .......................................................................................... 4, 6, 10

## STATE RULES, STATUTES & CONSTITUTION

R.C.W. § 9.41.280 ...................................................................................................... 16

R.C.W § 9.41. 290 ........................................................................................................ 4

R.C.W. § 9.41.300 ...................................................................................................... 16

R.C.W. § 35.22.280(35) ............................................................................................. 15

Wash. Const. art. XI, § 11 .......................................................................................... 15

## MISCELLANEOUS

Susan Gilmore, *Seattle Man to Pack a Pistol Into Community Center to Protest Mayor's Ban*, Seattle Times, Nov. 13, 2009, *available at* 2009 WLNR 22841827 ......................................... 4

iv

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

*"[T]he Second Amendment binds only the national government."*

*Fresno Rifle and Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir. 1992).

> *"Like most rights, the right secured by the Second Amendment is not unlimited . . . . [T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . . [N]othing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."*

*Heller v. District of Columbia*, --- U.S. ----, 128 S. Ct. 2783, 2816-17 (2008). These two holdings, one controlling in this Circuit, the other controlling throughout the United States, refute at every level the absolute right claimed by Plaintiff to bring a firearm into a local community center owned by the City of Seattle and crowded with children.

Although the United States Supreme Court may provide further guidance in a case that it recently accepted for review, currently binding Ninth Circuit precedent clearly holds that the Second Amendment does not apply *at all* to state and local governments such as the City of Seattle. For this reason alone, Plaintiff's Second Amendment claim and his related Equal Protection claim should be dismissed.

Moreover, even if binding precedent were superseded so that the Second Amendment applied to the City of Seattle, the Supreme Court has recognized only an individual right to possess firearms *in one's own home* for purposes of self-defense. In so holding, the Supreme Court clearly recognized that government retains significant discretion to restrict or prohibit firearms in areas outside the home. The City's prohibition on carrying or displaying firearms in certain government-owned parks and other facilities frequented by children fits well within this controlling law. Thus, Plaintiff's Second Amendment and Equal Protection claims fail.

In addition to his suit against the City for declaratory and injunctive relief, Plaintiff sues Mayor Nickels in his individual and official capacities for compensatory and "punitive" damages. Mayor Nickels enjoys qualified immunity from all such claims because, as the cases cited above make clear, Plaintiff's individual right to carry weapons in government-owned buildings and facilities is not "clearly established." Consequently, Mayor Nickels is entitled to dismissal of Plaintiff's claims made under 42 U.S.C. § 1983.

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

Finally, like the U.S. Supreme Court, Washington courts have recognized that the right to firearms provided by the State Constitution is not unlimited, and thus will accommodate reasonable firearms regulations. The City's narrow Policy in service to children and youth in certain parks and facilities fits well within this case law. Plaintiff's claim under the Washington Constitution, therefore, must also be dismissed. Accordingly, Defendants move for dismissal of the Complaint, in its entirety, pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## I.    BACKGROUND

Plaintiff challenges a limited, reasonable policy that the City of Seattle passed to protect the children and families who use its municipal facilities. On October 14, 2009, the City of Seattle enacted Rule/Policy Number P 060-8.14 (the "Policy"), intended to make certain Parks Department facilities free from dangerous firearms:

> The Department, in its proprietary capacity as owner or manager of Department facilities, does not permit the carrying of concealed firearms or the display of firearms . . . at Parks Department facilities at which: 1) children and youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility.

Ex. C to Amended Complaint, dkt. no. 4. Simply put, acting in its capacity as an owner of municipal property, the City has decided that as a condition to entering and using certain designated facilities that the City owns and that are frequented by children, users may not carry or display firearms.

The City's Policy was the culmination of a process begun by Mayor Nickels in 2008. Amended Complaint at ¶11, dkt. no. 4. The City found that in 2008, over 1.8 million people had visited and attended programs in Seattle Parks Department-owned community centers, pools, teen centers and environmental learning centers. Ex. C to Amended Complaint at ¶1.2, dkt. no 4. At least tens of thousands of youths visit these same facilities every year. *Id.* As the owner of these facilities, the City recognized that it has an abiding interest in ensuring that the facilities are safe and secure places for children to visit. *Id.* at ¶¶ 1.3-1.4. The City also found that families' safe and secure use of City-owned facilities is "disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of children . . ." *Id.* at ¶1.6. To

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP

3

promote its interests in providing safe and secure facilities for children and families, the City

Parks Department enacted the Policy, quoted above. *Id.* at ¶¶1.1-1.12. After enacting the

Policy, the City then proceeded to post conspicuous signs advising people of its policy

prohibiting firearms in those City-owned parks facilities where children were likely to be

present. Amended Complaint at ¶14, dkt. no. 4. One such facility was the Southwest

Community Center.[1] *Id.*

Plaintiff Robert Warden alleges that he is a resident of King County. Amended

Complaint at ¶1, dkt. no. 4. He is not, however, alleged to be a resident of Seattle. Plaintiff

also alleges that he is the "lawful owner and possessor of a Glock 27 pistol." *Id.* at ¶16. Upset

by the City of Seattle's perceived infringement of his constitutional right to bear arms, in

November 2009, Plaintiff engaged in a very intentional search for an opportunity to challenge

the Policy. On November 13, 2009, Plaintiff informed the City that he intended to enter a

Parks facility the next day, armed with a firearm. *Id.* at ¶¶18-19. On November 14, 2009,

Plaintiff strapped on his Glock 27 and concealed it under his jacket, pursuant to a purportedly

valid Concealed Pistol License. *Id.* As he previously advertised,[2] Plaintiff then proceeded to

the Southwest Community Center. At the Center, Plaintiff was met by a Parks Department

security official who determined that Plaintiff was carrying a firearm, she asked him to leave,

and he complied. *Id.* at ¶19.

Plaintiff promptly filed this civil action alleging that the City had violated "his

constitutional and legal right to carry a pistol." Amended Complaint at ¶21, dkt. no. 4. In his

original complaint, Plaintiff asserted claims under the Second Amendment (right to bear arms)

and Fourteenth Amendment (equal protection), the Washington State Constitution (right to

bear arms), and Washington statute (R.C.W § 9.41.290). Complaint at 7-9, dkt. no. 1. Plaintiff

amended his complaint as a matter of right on December 9, 2009 to eliminate his claim under

R.C.W. § 9.41.290, and now asserts only federal and state constitutional challenges.

---

[1] To be clear, the City has not prohibited the carrying or displaying of firearms at all City parks. Assuming Plaintiff has a license to carry a concealed weapon, he is free to carry it when visiting thousands of acres of City parks not subject to the Policy.

[2] Susan Gilmore, *Seattle Man to Pack a Pistol Into Community Center to Protest Mayor's Ban*, Seattle Times, Nov. 13, 2009, *available at* 2009 WLNR 22841827.

MOTION TO DISMISS                                    4
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

1   Defendants move to dismiss all of his claims based on federal and state constitutional

2   provisions.

3   **II.     DISCUSSION**

4          While the application of Second Amendment rights to states and municipalities is under

5   review in the United States Supreme Court this term, there is no doubt that even if the Second

6   Amendment applies here, the City's Policy is well within the range of firearms regulation that

7   the Supreme Court considers to be permissible under the Second Amendment. The threshold

8   question is whether the Second Amendment applies at all to a policy enacted by a local

9   government. The parties are bound by Ninth Circuit authority holding that it does not, and

10  therefore Plaintiff's claim under the Second Amendment and his related Equal Protection

11  claim must be dismissed. However, even if the Second Amendment were held to apply to state

12  and local governments under the incorporation provisions of the Fourteenth Amendment, the

13  limited rights of individuals under the Second Amendment are not infringed by the City's

14  Policy, and for this reason too, Plaintiff's claims must be dismissed. Plaintiff's claim under the

15  Washington State Constitution fares no better because Washington courts have repeatedly held

16  that the State Constitution allows reasonable regulation of firearms.

17         Furthermore, assuming *arguendo* that Plaintiff can invoke the Second Amendment and

18  somehow identify a possible right to carry a firearm into a local community center that could

19  survive dismissal under Rule 12(b)(6), that right would be far from clearly established.

20  Consequently, Mayor Nickels would be immune from Plaintiff's § 1983 claim.

21         **A.     Standards Governing Motions To Dismiss Pursuant To Rule 12(B)(6).**

22         On a Rule 12(b)(6) motion to dismiss, the Court must assess the legal feasibility of the

23  Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Accordingly, for purposes of

24  this motion, the Court should accept Plaintiff's factual allegations as true and draw all

25  reasonable inferences in his favor. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

26  Cir. 2001). Dismissal is appropriate where a complaint fails to allege "enough facts to state a

27  claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

28  (2007); *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937 (2009).

MOTION TO DISMISS                                    5
CASE NO. 2:09-CV-01686-MJP

1    In order to survive dismissal, Plaintiff's complaint must plead facts that allow the Court

2    to draw the reasonable inference that the defendants are liable for the misconduct alleged.

3    *Moss v. U.S. Secret Svc.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

4    This standard asks for more than the possibility that defendants acted unlawfully, and where a

5    complaint pleads facts that are merely consistent with possible liability, the complaint stops

6    short of the line between possibility and plausibility of entitlement to relief. *Id.* (citing *Iqbal*,

7    129 S. Ct. at 1949). A defendant does not violate 42 U.S.C. § 1983 where there has been no

8    deprivation of a right, privilege, or immunity secured by the Constitution. 42 U.S.C. § 1983.

9    Consequently, where, as here, a plaintiff in a § 1983 case fails to allege violation of an actual

10   constitutional right, the claim is properly dismissed. *Ove v. Gwinn*, 264 F.3d 817, 823-24 (9th

11   Cir. 2001).

12   **B.    The Second Amendment Does Not Apply To The City Of Seattle.**

13   While Plaintiff has identified two recent Second Amendment cases that he alleges

14   support his constitutional claims, Amended Complaint at ¶ 15, dkt. no. 4, neither case gives

15   him the rights he claims. First, there is no current precedent that holds that the Fourteenth

16   Amendment has incorporated the Second Amendment to be applicable against state and local

17   governments. In 2009, a panel of the Ninth Circuit did hold that "the Due Process Clause of

18   the Fourteenth Amendment incorporates the Second Amendment and applies it against the

19   states and local governments." *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009), *reh'g en*

20   *banc granted*, 575 F.3d 890 (9th Cir. 2009). However, once a rehearing *en banc* was granted,

21   the panel decision in *Nordyke* could not be cited as precedent in the Ninth Circuit. Further,

22   submission of the case to the *en banc* panel was itself vacated by the Ninth Circuit pending the

23   outcome of a case pending before the Supreme Court. Order, No. 07-15763, dkt. no. 121 (9th

24   Cir. Sep. 24, 2009).

25   In the case pending before the Supreme Court, the Court will review the holding of the

26   Seventh Circuit Court of Appeals that, because *Heller* dealt with a District of Columbia law

27   enacted under the authority of the national government, its holding does not extend to

28   municipalities. *Nat'l Rifle Ass'n of Am., Inc. v. Chicago*, 567 F.3d 856, 857 (7th Cir. 2009),

*cert. granted*, *McDonald v. Chicago*, --- U.S. ----, 130 S. Ct. 48 (2009). Thus, in the absence of any superseding precedent to the contrary, the law in the Ninth Circuit remains that "the Second Amendment binds only the national government." *Fresno Rifle*, 965 F.2d at 730. There currently exists no Second Amendment right that restricts the authority of the states or local governments to regulate the possession of firearms in public places.

At least one district court in this Circuit has very recently addressed the precedential value of *Nordyke* in light of its current procedural posture. *Burns v. Mukasey*, No. CIV S-09-0497, 2009 WL 3756489 (E.D. Cal. Nov. 6, 2009). In *Burns*, the court was presented with the question: "[D]oes the Second Amendment apply to the states?" *Id.* at *2. Noting that the panel decision in *Nordyke* was no longer binding because it had been accepted for rehearing *en banc*, the court in *Burns* considered supplemental briefing on the applicability of the Second Amendment to the states. *Id.* Ultimately, the court deferred to the most recent precedent on the question <u>prior</u> to *Nordyke*:

> The fact remains, however, that this court is bound by currently valid Ninth Circuit precedent which is clear on this question. Under *Fresno Rifle*, *the Second Amendment does not apply to the states. For this reason, plaintiff cannot state a claim upon which relief can be granted.*

*Burns*, 2009 WL 3756489 at *4 (emphasis added). Moreover, the court went on to find that there was no reason to stay the proceedings pending the outcome of *Nordyke* and *McDonald v. Chicago*, explaining: "This case does not present a question of first impression which is pending before a higher court . . . . [T]he current precedent which this court must follow answers the question—the Second Amendment does not apply to the states." *Id.* Therefore, as a threshold matter, Plaintiff cannot state any Second Amendment claim against the City and Mayor. For this reason alone, Plaintiff's Second Amendment claim and the Equal Protection claim that relies upon his alleged Second Amendment right can and should be dismissed with prejudice.

## C. <u>Prohibiting The Carrying Or Displaying Of Firearms In Sensitive Places, Such As Parks And Other Municipal Facilities Frequented By Children Would Not Violate Any Second Amendment Right.</u>

Even if the Second Amendment applied to a municipality, *Heller* and persuasive

MOTION TO DISMISS                                                          7
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

authority in this Circuit strongly favor the City's Policy.  In *Heller*, the plaintiff challenged a "licensing requirement [that] prohibits the carrying of a firearm in the home without a license, and the trigger-lock requirement insofar as it prohibits the use of functional firearms within the home."  *Id.* at 2788 (internal quotation marks omitted).  In resolving the case, the Court recognized for the first time "an individual right to keep and bear arms."  *Id.* At 2799.  But in doing so, the Court carefully limited its ruling to the right to possess operable firearms *in one's own home* for the purpose of self-defense.  *Id.* at 2822.  Moreover, the Court unequivocally recognized that the individual right to keep and bear arms was not unlimited:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.  Of course *the right was not unlimited*, just as the First Amendment's right of free speech was not . . .  Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.

*Id.* at 2799 (emphasis added).  As the Court went on to explain:

> Like most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . .  For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues . . . .  Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on . . . *laws forbidding the carrying of firearms in sensitive places such as schools and government buildings*.

*Id.* at 2816-17. (emphasis added) (citations omitted); *see also id.* at 2817 n.26 (noting that sensitive places such as schools and government buildings were only "examples," and "our list does not purport to be exhaustive").  Thus, in recognizing that the Second Amendment confers an individual right to possess firearms  in one's own home, the Court was equally clear that the nation's long history of reasonably regulating guns was well established and consistent with constitutional principles.  On its own terms then, *Heller* held nothing more than that "the absolute prohibition of handguns held and used for *self-defense in the home*" violates the

Second Amendment. *Id.* at 2822 (emphasis added). Beyond the home, the Court emphasized that "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" were well within the permissible bounds of constitutional authority. *Id.* at 2786. The Policy at issue here, of course, makes no intrusion into the home, but affects the conditions for entry upon and use of certain parts of designated facilities owned by the City in limited circumstances.

At least two fundamental principles defining the permissible scope of gun regulations were recognized by the Supreme Court in *Heller*. *First,* the core of the individual right to bear arms is that of "*self-defense in the home.*" *Id.* at 2822 (emphasis added). *Second,* the Second Amendment imposes no obstacle to governments prohibiting firearms in "sensitive places," which include, for example, schools and government buildings. *Id.* at 2817. These principles converge to directly support Defendants' Policy in this case. Controlling law, consistent with common sense and reason, permits the City of Seattle to condition the public's use of municipally-owned parks facilities where children are present on not carrying or displaying dangerous firearms. Thus, even if Plaintiff could overcome the hurdle of applying the Second Amendment to the City's Policy, that Policy would not run afoul of the limited right recognized in *Heller*, and Plaintiff's claim must be dismissed.

Additionally, on the heels of *Heller* came *Nordyke*, where the Court of Appeals was called upon to examine issues that track closely with those presented here. Though the panel decision in *Nordyke* is no longer precedent on the issue of application of the Second Amendment to state and local governments, its extended discussion of *Heller's* application to a county ordinance restricting, *inter alia*, possession of firearms in parks, offers persuasive reasoning that supports the City's position here.[3]

---

[3]  This Court may consider the panel opinion for its persuasive reasoning and value, but not as binding precedent. *See, e.g., DHX, Inc. v. Allianz AGF MAT, LTD.,* 425 F.3d 1169, 1176 (9th Cir. 2005) (Beezer, J., concurring) ("But at minimum, a vacated opinion still carries informational and perhaps even persuasive or precedential value."); *United States v. Joelson,* 7 F.3d 174, 178 n.1 (9th Cir. 1993) ("Because the *Martinez* court vacated its opinion entirely, the opinion has no precedential effect . . . .The *Martinez* court's discussion of the rationale behind the rule is persuasive, however."); *United States v. Walgren*, 885 F.2d 1417, 1423 (9th Cir. 1989) (noting that "the panel decision . . . has been vacated by the *en banc* court; therefore, the decision is no longer of precedential value," but going on to consider the panel decision as persuasive authority); *Mada-Luna v. M. Fitzpatrick*, 813 F.2d 1006, 1013 n.8 (9th Cir. 1987) (noting that although an issue became moot before review and was no longer controlling in a case from another

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP

9

In *Nordyke*, two gun show promoters sued the County of Alameda over an ordinance that made it a misdemeanor to bring onto or possess a firearm on County property. *Nordyke*, 563 F.3d at 443.  Plaintiffs sued and asserted that "limiting the availability of firearms burdens their right to keep and bear arms for the purpose of self-defense." *Id.* at 458.

The Ninth Circuit did not hesitate to reject the gun promoters' contention, holding that "the Second Amendment . . . protects a right to keep and bear arms for individual self-defense, [but] it does not contain an entitlement to bring guns *onto government property*." *Id.*  at 459 (emphasis added).  In support of that holding, the court quoted and relied upon "the famous passage in *Heller* in which the Court assured that . . . 'nothing in our opinion should be taken to cast doubt on . . . *laws forbidding the carrying of firearms in sensitive places* such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" *Id.* (quoting *Heller*, 128 S.Ct. at 2816-17 (emphasis added)).  The court acknowledged and accepted the County's argument that "its Ordinance merely forbids the carrying of firearms in sensitive places, which includes the Alameda County fairgrounds and other County property." *Id.*  In particular, the Ninth Circuit noted that the "[*Heller*] Court listed schools and government buildings as examples, *presumably because possessing firearms in such places risks harm to great numbers of defenseless people (e.g., children)*." *Id.* (emphasis added).

The *Nordyke* court also rejected the argument that the ordinance at issue was "overbroad because it covered 'open space venues, such as County-owned *parks*, *recreational areas*, historic sites . . . and the County fairgrounds.'" *Id.* at 459-60 (emphasis added).  Thus, the court observed that these were "gathering places where high numbers of people might congregate . . . . Although *Heller* does not provide much guidance, *the open, public spaces the County's Ordinance covers fit comfortably within the same category as schools and government buildings*." *Id.* at 460 (emphasis added).  The court readily affirmed summary judgment for the government defendants, holding that:

---

circuit, "we find its analysis persuasive and useful in our consideration of the present case.").

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP

10

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

[T]he Ordinance does not meaningfully impede the ability of individuals to defend themselves *in their homes* with usable firearms, *the core of the right* as Heller analyzed it. The Ordinance falls on the lawful side of the division, familiar from other areas of substantive due process doctrine, between unconstitutional interference with individual rights and permissible government non-facilitation of their exercise. Finally, *prohibiting firearm possession on municipal property fits within the exception from the Second Amendment for 'sensitive places'* that Heller recognized.

*Id.* (emphasis added).  Thus, while the *Nordyke* panel opinion is not precedent, its analysis and affirmance of an ordinance that, like the City's Policy here, places reasonable restrictions on firearms in local parks, is persuasive in understanding the limits of the individual right delineated in *Heller*, and further favors dismissing Plaintiff's claims.

**D.    The Policy Does Not Violate Equal Protection Under The Fourteenth Amendment.**

In addition to his claim for violation of the Second Amendment, Plaintiff claims that Defendants violated his right to equal protection of the laws under the Fourteenth Amendment. Amended Complaint at ¶ 21, dkt. no. 4.  Plaintiff alleges that he was "singled out . . . only because [he] was exercising his constitutional and legal right to carry a pistol." *Id.*  In this sparse claim, Plaintiff appears to argue that he is a member of an affected class of individuals with concealed pistol permits who carry firearms into City parks and community centers, or that he was singled out for exercising a fundamental right to carry a concealed pistol into a recreation center, or both.  But as a matter of law and logic, Plaintiff cannot bootstrap a flawed Second Amendment argument into a successful Equal Protection claim.  Plaintiff does not allege that he is a member of a suspect class, and as demonstrated above, he was not exercising a fundamental right, so the City's Policy is not subject to strict scrutiny.  At best, Plaintiff's equal protection claim is entitled to rational basis scrutiny which the City's narrowly drawn Policy of protecting children and youth easily satisfies, as explained below.

**1.    Plaintiff Is Not Entitled To Strict Scrutiny Because He Is Not A Member Of A Suspect Class.**

Only equal protection claims implicating a suspect class or a fundamental right are subject to strict scrutiny.  *Silveira v. Lockyer*, 312 F.3d 1052, 1087-88 (9th Cir. 2003).  If a government policy neither classifies persons based on protected characteristics nor affects the

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP

11

1  exercise of a fundamental right, the policy will be upheld if it is rationally related to a

2  legitimate government interest. *Id.* at 1088.  Plaintiff has not alleged that the City's Policy

3  classifies him based on a suspect class such as race, alienage, or national origin.  Thus, if

4  Plaintiff is to obtain strict scrutiny, he must allege a fundamental right.  He fails to do so.

5          **2.**      **Plaintiff Is Not Entitled To Strict Scrutiny Because He Does Not**
   **Have A Fundamental Right To Bring A Firearm Into A Park Or**
6                  **Recreation Center.**

7        As discussed above, Plaintiff has no Second Amendment right at all against a

8  municipality, which effectively precludes discussion of whether such a right would be

9  fundamental and warrant strict scrutiny.  However, even assuming the Second Amendment

10  applied here, the Policy does not affect a fundament right because the Second Amendment

11  does not prohibit restricting firearms possession in sensitive places.  *Heller*, 128 S. Ct. at 2817

12  (2008).  The court in *Heller* was careful to distinguish between the fundamental right

13  embodied in the Second Amendment—that of self-defense *in the home, id.* at 2822—and the

14  carrying of firearms in sensitive places.  *Id.* at 2817.  The City's narrowly-drawn Policy falls

15  comfortably within the latter category of permissible restrictions on the possession of firearms.

16  Therefore, if the Second Amendment were to apply here, no fundamental right would be in

17  jeopardy, and Plaintiff would not be entitled to strict scrutiny.  *See also Young v. Hawaii*, No.

18  08-00540, 2009 WL 1955749, at *9 (D. Haw. July 2, 2009) (noting, in the wake of *Heller* and

19  *Nordyke*, that "[i]f Plaintiff does have right to possess a firearm in public, it is at most a *non-*

20  *fundamental right*") (emphasis added).

21          **3.**      **Plaintiff Is Not Entitled To Rational-Basis Scrutiny Because The**
22                  **Policy Makes No Classification.**

23        In addition to failing to demonstrate suspect classification or a fundamental right,

   Plaintiff has failed to allege that the Policy actually *classifies individuals* so that he may obtain
24
   even rational basis review.  The Equal Protection Clause prohibits disparate treatment by a
25
   state "between classes of individuals whose situations are arguably indistinguishable." *Ross v.*
26
   *Moffitt*, 417 U.S. 600, 609 (1974).  Thus, in the absence of membership in a suspect class or
27
   the exercise of a fundamental right, the first part of equal protection analysis still requires a
28

CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

determination that the government classified a group of people at all. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citation omitted).[4]

Plaintiff self-identifies as a member of a class of individuals who carry firearms into community centers. However, the Policy does not distinguish between those who may bring a firearm into a park or community center and an otherwise indistinguishable group of those who may not bring a firearm into a park or community center.[5] Nor does the Policy identify any personal characteristic, such as age, mental health status or other inherent personal traits. Rather, it prohibits certain potentially dangerous conduct—carrying and displaying a firearm— and makes all persons subject to this same prohibition. Other examples of prohibited conduct might include things like consuming alcohol, wearing improper shoes that damage gym floors, or running on the decks of city pools. Plaintiff may enter any park facility if he obeys all of the rules of conduct, and in this sense he is like the public generally. Just as there is no "class" of people who might challenge speeding laws because they wish to drive in excess of 80 miles per hour, there is no "classification" involved in prohibiting the *conduct* of carrying or displaying a firearm. Rather, the Rule simply adds to a list of reasonable conditions on the use of certain parks and recreational facilities, none of which implicate equal protection analysis.

### 4.    Plaintiff's Claim Would Still Fail Rational-Basis Review.

If Plaintiff were able to establish that the Policy engages in a classification rather than a prohibition of conduct, Plaintiff's equal protection claims would still face the heavy burden of striking down the Policy under rational basis review. Under this standard, legislation is presumed to be valid and will be upheld if it is rationally related to a legitimate state interest. *Silveira*, 312 F.3d at 1088 (citation omitted). When a policy is reviewed under the rational basis standard, the burden is on the one attacking the policy to "negative *every conceivable basis* which might support it." *Id.* at 1089 (emphasis added) (citation omitted). Moreover,

---

[4] Even if a plaintiff can identify a classification, that plaintiff must still identify a similarly-situated class for comparison. *Freeman*, 68 F.3d at 1187. (citation omitted). The goal of comparing the two classes "is to isolate the factor allegedly underpinning the impermissible discrimination." *Id.* (citation omitted). Therefore, if Plaintiff cannot identify his group and another similarly-situated control group subject to disparate treatment, his equal protection claim must fail.

[5] The only exceptions in the Policy relate to public law enforcement officers, as required by federal law, *see, e.g.*, 18 U.S.C. § 926B, and on-duty Parks Department security officers. Ex. C to Amended Complaint at ¶ 4.0, dkt. no. 4.

MOTION TO DISMISS                                          13
CASE NO. 2:09-CV-01686-MJP

1   "[t]he legislative record need not contain empirical evidence to support the classification so

2   long as the legislative choice is a reasonable one." *Id.* (citation omitted).  In fact, "the Equal

3   Protection Clause does not demand for purposes of rational-basis review that a legislature or

4   governing decisionmaker actually articulate *at any time* the purpose or rationale supporting its

5   classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) (emphasis added).  Furthermore,

6   preserving public safety is at the very core of a wide class of legitimate state interests. *See*

7   *Silveira*, 312 F.3d at 1089; *see also Ctr. For Bio-Ethical Reform, Inc. v. City and County of*

8   *Honolulu*, 455 F.3d 910, 922 (9th Cir. 2006) (holding that, promoting public "safety falls

9   within the legitimate and substantial interests of local governments");  *Nunez v. City of San*

10  *Diego*, 114 F.3d 935, 946 (9th Cir. 1997) (holding that, for purposes of *strict* scrutiny, "[t]he

11  City's interest in protecting the safety and welfare of its minors is also a compelling interest").

12  Thus, any plaintiff attacking a local policy promoting public safety in the rational basis context

13  faces the very difficult task of negating any rational support for the policy, which the

14  municipality itself need only minimally justify.

15       The City's Policy is rationally related to its legitimate interest in protecting children

16  and youth visiting City parks and recreational facilities.  The Policy at issue begins with

17  several paragraphs of carefully-considered findings that guided the City throughout the

18  process, including for example:

19       •    "In 2008 . . . over 108,000 children and youth visited wading pools; over

20  59,000 youth events were scheduled at sports fields; and, countless numbers of
    children and youth visited playgrounds, play areas, and sports courts."  Ex. C to
    Amended Complaint at ¶ 1.2, dkt. no. 4.

21

22       •    "As the owner and operator of Department facilities at which children and
    youth are likely to be present, the City has a strong interest in promoting facility
    users' and visitors' confidence, particularly families with children, that such facilities

23      are safe and secure places to visit."  *Id.* at ¶ 1.3.

24       •    "Carrying concealed firearms and displaying firearms at Department facilities
    at which children and youth are likely to be present threatens the City's interests in

25      promoting the use of those facilities by children, youth and their families."  *Id.* at
    ¶ 1.4.

26

27       •    The "safe and secure use of Department facilities is disturbed by the threat of
    intentional or accidental discharges of firearms in the vicinity of children, which can
    result from various unforeseen circumstances, (such as the escalation of disputes

28      among individuals carrying firearms)."  *Id.* at ¶ 1.6.

MOTION TO DISMISS          14
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

- "Studies demonstrate that individuals possessing firearms are more likely to be shot in an assault than those who do not have a firearm . . . . It is reasonable for the Department to conclude that more firearms in Parks facilities increases the likelihood that someone will be seriously injured." *Id.* at ¶ 1.10.

- "The City's and Department's interests will be promoted by . . . [this] policy." *Id.* at ¶ 1.12.

The City has articulated the purpose and rationale for its Policy, as well as empirical evidence supporting the basis for its decision. The City sought to promote its legitimate interest in ensuring the safety of children and youth visiting City parks and recreational facilities. Although the City and Mayor Nickels submit that this interest would satisfy even strict scrutiny, it clearly satisfies rational basis scrutiny. With neither a suspect class (or any classification) or a fundamental right alleged, and facing a Policy that is rationally related to the City's legitimate interests, Plaintiff's Equal Protection fails on all counts and should be dismissed.

**E.    Washington Courts Have Long Recognized That The State Constitution Imposes No Barrier To Reasonable Regulation Of Firearms.**

Washington courts have long held that the "public interest in security, and in having a sense of security, outweighs the individual's interest in carrying weapons under circumstances that warrant alarm in others." *State v. Spencer*, 75 Wn. App. 118, 124 (1994). Moreover, a city "is authorized to enact needed police regulations to punish practices dangerous to public safety or health, and preserve the public peace and good order." *City of Seattle v. Montana*, 129 Wn.2d 583, 592 (1996) (citing Wash. Const. art. XI, § 11 and R.C.W. § 35.22.280(35)). Consequently, the Washington Supreme Court has "consistently held that the right to bear arms in art. I, § 24 is not absolute, but instead is subject to 'reasonable regulation' by the State under its police power." *City of Seattle*, 129 Wn.2d at 593 (citation omitted). Thus, in order to pass State constitutional muster, a regulation touching upon firearms need only be reasonably necessary to protect public safety or welfare, and "substantially related to legitimate ends sought." *Id.* at 594 (citation omitted).

The test of reasonableness for state firearms regulations requires "balancing the public benefit derived from the regulation against the degree to which it frustrates the purpose of the

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

constitutional provision." *Id.* Thus, for example in *Second Amendment Foundation v. City of Renton*, 35 Wn. App. 583 (1983), the court upheld a municipal ordinance prohibiting firearms in bars, holding that "[t]he right to own and bear arms [was] only minimally reduced" by the ordinance, which was "narrowly drawn and demonstrates legislative concern for reasonable exercise of the police power." *Id.* at 586. In addition, Washington statutes are replete with examples of the reasonable regulation of firearms, including for example prohibitions on firearms in schools, R.C.W. § 9.41.280, as well as restrictions on firearms in a number of other sensitive areas, from jails to stadiums and convention centers, R.C.W. § 9.41.300. As these cases and State statute demonstrate, the right to bear arms in the Washington Constitution is far from absolute, and will bow to reasonable measures put into place by municipalities in service to the safety of their citizens.

Consistent with case law and statute, the Policy is a reasonable exercise of the City's police power when balanced against the State Constitution. In *Second Amendment Foundation*, the court held that "[t]he benefit to public safety by reducing the possibility of armed conflict while under the influence of alcohol outweighs the general right to bear arms in defense of self and state." *Second Amendment Foundation*, 35 Wn. App. at 586. The considerations underpinning the City of Seattle's Policy are no different, where it cites, *inter alia*, concerns relating to "escalation of disputes among individuals carrying firearms," and the increased "likelihood of gun violence to resolve disputes that would not otherwise involve a threat to life or grievous bodily harm." Ex. C to Amended Complaint at ¶¶ 1.1-1.12, dkt. no. 4. Thus, where Washington courts have already held that the benefit of reducing the risk of armed conflict *in a bar* where *only adults* are present outweighs State constitutional firearms rights, the City's Policy is that much more reasonable, in that it seeks to reduce those same risks in service to the safety of the most vulnerable and defenseless citizens of our community— children—in parks and recreational centers where they must feel safe and secure.

As reasonable as the City's Policy is, it is also limited in scope to ensure the safety of Seattle's children while allowing individuals to exercise whatever constitutional rights they may have. In *Second Amendment Foundation*, the court upheld the ordinance at issue in part

MOTION TO DISMISS    16
CASE NO. 2:09-CV-01686-MJP

because it was "narrowly drawn." 35 Wn. App. at 586. The court there noted that, "[b]y specific exception," the restrictions on firearms did not apply to, for example, the restaurant portion of any establishment, "whether alcohol was served in that portion of the establishment or not." *Id.* at 587. In other words, the ordinance there prohibited firearms in the bar portion of an establishment, where liquor and guns escalated the risk of armed conflict, but not in the restaurant portion. Similarly, the City of Seattle's Policy was carefully crafted to serve its goal of protecting children, and only restricts firearms at certain parks and facilities or portions thereof, where the City has determined children and youth are likely to be present, and which have been posted with appropriate signage. Ex. C to Amended Complaint at ¶ 4.0, dkt. no. 4. General park areas not specifically designated with signage, and other city-owned facilities, remain accessible to Plaintiff and other concealed-weapons carriers.

Here, as in *Second Amendment Foundation*, the City has not entirely prohibited firearms, but rather carved out specific areas where the possession of a firearm presents a heightened danger to children. The City does not contend that there is no State constitutional right concerning firearms, but rather that any right is outweighed by the heightened risk to children gathered at City parks and recreational facilities. Moreover, in contrast to the criminal ordinance upheld in *Second Amendment Foundation*, the Policy challenged in this lawsuit merely conditions a privilege to use City-owned facilities on a person's agreement not to carry firearms while on the designated portions of premises, and involves no criminal penalty. As in *Second Amendment Foundation*, the Policy here represents a reasonable, narrowly drawn regulation that is well within Washington State constitutional jurisprudence, and Plaintiff's State constitutional claim should therefore be dismissed.

### F. Mayor Nickels Is Entitled To Qualified Immunity Because There Has Been No Constitutional Violation Of A Clearly Established Right.

Though Plaintiff's claims fail on their face, Mayor Nickels is entitled to qualified immunity from claims for damages under 42 U.S.C. § 1983 in any event. The doctrine of qualified immunity balances the need to shield officials from harassment, distraction, and liability in the reasonable performance of their duties, with the need to hold them accountable

MOTION TO DISMISS
CASE NO. 2:09-CV-01686-MJP
17
Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington 98104-7097
(206)839-4300

1   when they exercise their authority irresponsibly. *Pearson v. Callahan*, 129 S. Ct. 808, 815

2   (2009). The protection afforded by this doctrine applies whether the defendant's error was "a

3   mistake of law, a mistake of fact, or a mixed question of law and fact." *Id.* (citation omitted).

4   Moreover, because qualified immunity is an immunity from suit as opposed to a mere defense

5   to liability, "it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (citation

6   omitted). Accordingly, the Supreme Court has emphasized the importance of resolving the

7   immunity question prior to discovery, "at the earliest possible stage in the litigation." *Id.*

8   (citation omitted).

9           When a defendant asserts qualified immunity from suit, the court has discretion in

10  applying one or both steps of a two-step inquiry. *Id.* at 818. First, the court may ask whether

11  the defendant's actions violated the Constitution. *Id.* at 815-16 (citing *Saucier v. Katz*, 533

12  U.S. 194, 201 (2001)). Then, if the plaintiff has alleged an actionable violation, the court must

13  still decide "whether the right 'at issue' was clearly established at the time of defendant's

14  alleged misconduct." *Id.* at 816 (citing *Saucier*, 533 U.S. at 201). The court may eschew the

15  first step of the two-part inquiry in "cases in which it is plain that a constitutional right is not

16  clearly established but far from obvious whether in fact there is such a right." *Id.* at 818.

17  Furthermore, a decision on the underlying constitutional question in a § 1983 case may have

18  little value when the question is one on which the Supreme Court has "just granted certiorari,"

19  or "that is pending before the court [of appeals] en banc." *Id.* at 818.

20          **1.    There Was No Constitutional Violation.**

21          As a threshold matter, Plaintiff has no Second Amendment right as against the City's

22  Policy. *Fresno Rifle*, 965 F.2d at 730. In addition, assuming the Second Amendment could

23  apply, it does not prohibit restricting firearms possession in sensitive places. *Heller*, 128 S. Ct.

24  at 2817 (2008). In fact, no court has recognized a federal constitutional right to carry a firearm

25  into city parks or public recreation facilities, and thus, no constitutional violation exists.

26  Consequently, even if the Second Amendment applied to the City, it would not encompass the

27  broad right Plaintiff asserts, and the inquiry should end.

28

MOTION TO DISMISS                              18
CASE NO. 2:09-CV-01686-MJP                                    Orrick Herrington & Sutcliffe LLP
                                                              701 Fifth Avenue Suite 5700
                                                              Seattle, Washington  98104-7097
                                                              (206)839-4300

1    **2.    There Was No Clearly Established Right.**

2    However, even if Plaintiff has an arguable Second Amendment right to be free from

3    municipal firearms regulations, which Defendants deny, that right is far from clearly

4    established. *Heller* itself was only decided in 2008, and the question of whether its holding

5    extends beyond the federal government remains unsettled. *Nat'l Rifle Ass'n of Am., Inc. v.*

6    *Chicago*, 567 F.3d 856, 857 (7th Cir. 2009) (holding that because *Heller* dealt with law

7    enacted under the authority of the national government, it did not extend to municipalities),

8    *cert. granted, McDonald v. Chicago*, --- U.S. ---,130 S. Ct. 48 (2009); *see also Bletz v.*

9    *Gribble*, 640 F. Supp. 2d 907, 923 (W.D. Mich. 2009) (finding that, even assuming plaintiff

10    "could state a viable, independent Second Amendment claim, the Court would also

11    conclude . . . that Defendants are entitled to qualified immunity . . . because it was not clearly

12    established at the time of the shooting—indeed, even today—that citizens have an individual

13    Second Amendment right against state, as opposed to federal, action"). In sum, there is no

14    clearly established law that (1) recognizes a federal constitutional right to possess a firearm

15    outside of the home, or (2) holds that municipalities are constrained by the Second

16    Amendment. As a result, regardless of the court's decision on other claims, Mayor Nickels is

17    entitled to qualified immunity from this suit. Accordingly, all claims against him must be

18    dismissed.

19    **III.    CONCLUSION**

20    For the foregoing reasons, Defendants respectfully request that the Court dismiss the

21    Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

22

23

24

25

26

27

28

MOTION TO DISMISS                                                19
CASE NO. 2:09-CV-01686-MJP

Dated: December 30, 2009.                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  s/ Daniel J. Dunne
      Daniel J. Dunne (WSBA No. 16999)
      ddunne@orrick.com
      George E. Greer (WSBA No.11050)
      ggreeer@orrick.com
      David Keenan (WSBA No.41359)
      dkeenan@orrick.com

      701 Fifth Avenue, Suite 5700
      Seattle, WA  98104-7097
      Telephone:  (206)839-4300
      Facsimile:  (206)839-4301

SEATTLE CITY ATTORNEY

      Gary Keese (WSBA No. 19265)
      gary.keese@seattle.gov

      600 Fourth Avenue, 4th Floor
      P.O. Box 94769
      Seattle, WA  98124-4769
      Telephone:  (206)684-8200
      Facsimile:  (206)684-8284

*Attorneys for Defendants*

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on December 30, 2009, I electronically filed the following

4   document with the Clerk of the Court using the CM/ECF system which will send

5   notification of the filing to all counsel of record:

6       DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

7   and PROPOSED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

8   PURSUANT TO FED. R. CIV. P. 12(b)(6).

9       DATED this 30th day of December, 2009.

10

11                          **ORRICK, HERRINGTON & SUTCLIFFE LLP**

12

13                          By  s/ Daniel J. Dunne
                                Daniel J. Dunne (WSBA #16999)

14

15                              701 Fifth Avenue, Suite 5700
                                Seattle, WA  98104
16                              Phone: (206) 839-4300
                                Fax:    (206) 839-4301
17                              Email: ddunne@orrick.com

18

19

20

21

22

23

24

25

26

27

28

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300