The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ROBERT C. WARDEN,<br><br>               Plaintiff,<br><br>    v.<br><br>GREGORY J. NICKELS, in his individual capacity and official capacity as Mayor, and CITY OF SEATTLE,<br><br>          Defendants. | Case No. 2:09-CV-01686-MJP<br><br><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue Suite 5700
Seattle, Washington  98104-7097
(206)839-4300

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 1

III.    DISCUSSION ............................................................................................. 6

     A.   Legal Standard ................................................................................. 6

     B.   There Is No Likelihood of Success on the Merits of Plaintiff's Claims ................ 7

     C.   Mr. Warden Has Not Established That He Is Likely to Suffer Irreparable Harm, or That Any Such Harm Outweighs the City's or Public Interest in Maintaining the Policy ...................................................... 11

          1.   Mr. Warden Has Failed to Submit Any Evidence Establishing That He Has Personally Suffered Irreparable Injury Resulting from the City's Policy ..................................... 11

          2.   Even if Mr. Warden's Claim Raises the "Specter of Irreparable Injury," He Is Not Entitled to a Preliminary Injunction Because the City's Interest and the Public Interest Favor the Policy, and Outweigh Any Hardship Mr. Warden Will Suffer ..................................... 12

     D.   The Court Should Require Plaintiff to Post Security if an Injunction Is Issued ................................................................................. 14

IV.     CONCLUSION ........................................................................................... 15

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

i

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

# TABLE OF AUTHORITIES

## CASES

**Page**

Am. Trucking Ass'ns, Inc. v. City of Los Angeles,
   559 F.3d 1046, 1052 (9th Cir. 2009) ........................................................................ 7

Bletz v. Gribble,
   640 F. Supp. 2d 907 (W.D. Mich. 2009) ................................................................. 10

Burns v. Mukasey,
   No. CIV S-09-0497, 2009 WL 3756489 (E.D. Cal. Nov. 6, 2009) ........................... 8

City of Seattle v. Montana,
   919 P.2d 1218, 129 Wash. 2d 583 (1996) .............................................................. 10

Clear Channel Outdoor Inc. v. City of Los Angeles,
   340 F.3d 810 (9th Cir. 2003) .................................................................................... 6

Freeman v. City of Santa Ana,
   68 F.3d 1180 (9th Cir. 1995) .................................................................................. 10

Fresno Rifle & Pistol Club, Inc. v. Van De Kamp,
   965 F.2d 723 (9th Cir. 1992) ................................................................................ 7, 8

Hale v. Dep't of Energy,
   806 F.2d 910 (9th Cir. 1986) .................................................................................. 12

Heller v. District of Columbia,
   128 S. Ct. 2783 (2008) .................................................................................... 1, 8, 9

K-2 Ski Co. v. Head Ski Co.,
   467 F.2d 1087 (9th Cir. 1982) ............................................................................... 11

Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago,
   567 F.3d 856 (7th Cir. 2009),
   cert. granted, McDonald v. City of Chicago, 130 S. Ct. 48 (2009) ......................... 7

Nordyke v. King,
   563 F.3d 439 (9th Cir. 2009),
   reh'g en banc granted, 575 F.3d 890 (9th Cir. 2009) ............................................. 9

Pearson v. Callahan,
   129 S. Ct. 808 (2009) ............................................................................................. 10

Ross v. Moffitt,
   417 U.S. 600 (1974) ............................................................................................... 10

Russell v. Gregoire,
   124 F.3d 1079 (9th Cir. 1997) ............................................................................... 12

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

ii

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

*Second Amendment Found. v. City of Renton*,
   668 P.2d 596, 35 Wash. App. 583 (1983) ............................................................. 10

*Silveira v. Lockyer*,
   312 F.3d 1052 (9th Cir. 2002) .............................................................................. 10

*State v. Spencer*,
   876 P.2d 939, 75 Wash. App. 118 (1994) ........................................................... 10

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .............................................................. 6, 7, 11, 13

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................................ 13

*Winter v. Natural Res. Def. Council, Inc.*,
   129 S. Ct. 365 (2008) .......................................................................................... 6, 7

*Young v. Hawaii*,
   No. 08-00540, 2009 WL 1955749 (D. Haw. July 2, 2009) ...................................... 9

## CONSTITUTION

Wash. Const. art. XI, § 11 ............................................................................................ 10

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 7

Fed. R. Civ. P. 65 ................................................................................................ 12, 14

## STATUTES

42 U.S.C. § 1983 ................................................................................................. 10, 11

Wash. Rev. Code § 35.22.280(35) ................................................................................ 10

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

iii

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

I.   **INTRODUCTION**

Plaintiff Robert Warden seeks through his Motion for Preliminary Injunction ("Motion"), dkt. no. 8, to enjoin a reasonable public safety policy adopted by the City Department of Parks and Recreation ("Parks Department").  Plaintiff fails to prove a single element of the stringent test the Ninth Circuit has recently adopted for decisions on motions for preliminary injunction.

Plaintiff's motion does not get off the ground because he is not likely to prevail on the merits.  To the contrary, controlling Ninth Circuit authority holds that the Second Amendment has not been incorporated into the Fourteenth Amendment so that it applies to local governments.  If Plaintiff could clear the Fourteenth Amendment's incorporation hurdle, however, his claim would still fall short because neither the Supreme Court nor the Ninth Circuit have recognized a constitutional right to carry firearms on municipal property.  Indeed, in his deposition Plaintiff acknowledged that the Supreme Court's 2009 decision in *Heller* does not extend an individual right to bear firearms beyond the confines of an individual's home, and he admitted that he is not aware of any federal authority that recognizes under the Second Amendment a right to bear arms for self-defense outside of the home.  The same is true for Plaintiff's alleged rights under the Washington Constitution.

Plaintiff cannot bootstrap a non-existent claim under the Second Amendment into a valid claim for violation of his rights to equal protection under the Fourteenth Amendment. Plaintiff has not asserted that he is a member of a protected or suspect class, or even that he has been classified on the basis of an inherent trait or characteristic.  A voluntary decision to carry a gun (or not) is a matter of conduct, not an immutable personal characteristic that may support a claim for discrimination, and so Plaintiff has not mounted a valid Equal Protection challenge.  Even if he had, the City's Policy easily clears applicable rational basis scrutiny.

As to the allegations of "irreparable harm," Plaintiff admitted under oath that it was his practice to visit City parks *without a gun*; something he did 15 to 20 times before the City Policy became effective.  He admitted that carrying guns in City parks could be considered "provocative."  Amazingly, the first time that Plaintiff chose to carry a firearm into a Parks

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

1

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

1  Department facility was *after* the Policy had become effective, and his only purpose in doing

2  so was to make a public display of his opposition to the Policy, complete with local and

3  national media coverage.  Mr. Warden has suffered no injury at all because he is free to visit

4  City parks in the same way he has always—without a gun, in compliance with a Policy all

5  visitors must observe for their mutual safety.  If the Policy imposes on him at all, the

6  impediment cannot measure up against the great weight of public interest in making sure that

7  Department facilities are safe and secure.

8      The City's Policy is about protecting children.  By state law, children and youths

9  under the age of 21 are not permitted to carry concealed weapons.  The City has taken a

10  reasonable and limited step to enhance their safety, and to encourage them to use City-owned

11  facilities in a safe and secure manner.  With 1.8 million visitors a year, only a tiny fraction of

12  whom are licensed to carry concealed weapons, the strong public interest in promoting

13  widespread use of City-owned recreational and athletic facilities vastly outweighs

14  Mr. Warden's recently-discovered interest in carrying a firearm under circumstances when he

15  had never carried one before.  His request for an injunction must be denied.

16  **II.    FACTUAL BACKGROUND**

17      On October 14, 2009, the City of Seattle enacted Rule/Policy Number P 060-8.14 (the

18  "Policy"), intended to make certain Parks Department facilities or portions thereof free from

19  dangerous firearms:

20          The Department, in its proprietary capacity as owner or manager
            of Department facilities, does not permit the carrying of
21          concealed firearms or the display of firearms . . . at Parks
            Department facilities at which: 1) children and youth are likely
22          to be present and, 2) appropriate signage has been posted to
            communicate to the public that firearms are not permitted at the
23          facility.

24  Ex. C to Amended Complaint, dkt. no. 4.  The City's Policy was the culmination of a process

25  begun by Mayor Nickels in 2008.  Amended Complaint ¶ 11, dkt. no. 4.  The City found that

26  in 2008, over 1.8 million people had visited and attended programs in Parks Department-

27  owned community centers, pools, teen centers and environmental learning centers.  Ex. C to

28  Amended Complaint ¶ 1.2, dkt. no 4.  At least tens of thousands of youths visit these same

OPPOSITION TO MOTION FOR                    2         Orrick Herrington & Sutcliffe LLP
PRELIMINARY INJUNCTION                                The Orrick Building, 405 Howard Street
CASE NO. 2:09-CV-01686-MJP                           San Francisco, California 94105-2669
                                                     tel+1-415-773-5700

1  facilities every year. *Id.* As the owner of these facilities, the City recognized that it has an

2  abiding interest in ensuring that the facilities are safe and secure places for children to visit.

3  *Id.* ¶¶ 1.3-1.4. The City also found that families' safe and secure use of City-owned facilities

4  is "disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of

5  children . . . ." *Id.* ¶ 1.6.

6         To promote its interests in providing safe and secure facilities for children and

7  families, the City Parks Department enacted the Policy, quoted above. *Id.* ¶¶ 1.1-1.12. The

8  City based its Policy on sound public safety considerations, including:

9         • "In 2008 . . . over 108,000 children and youth visited wading pools;
          over 59,000 youth events were scheduled at sports fields; and, countless
10        numbers of children and youth visited playgrounds, play areas, and sports
          courts." Ex. C to Amended Complaint ¶ 1.2, dkt. no. 4.
11

12        • "As the owner and operator of Department facilities at which children
          and youth are likely to be present, the City has a strong interest in promoting
          facility users' and visitors' confidence, particularly families with children, that
13        such facilities are safe and secure places to visit." *Id.* ¶ 1.3.

14        • "Carrying concealed firearms and displaying firearms at Department
          facilities at which children and youth are likely to be present threatens the
15        City's interests in promoting the use of those facilities by children, youth and
          their families." *Id.* ¶ 1.4.
16

17        • The "safe and secure use of Department facilities is disturbed by the
          threat of intentional or accidental discharges of firearms in the vicinity of
          children, which can result from various unforeseen circumstances, (such as the
18        escalation of disputes among individuals carrying firearms)." *Id.* ¶ 1.6.

19        • "Studies demonstrate that individuals possessing firearms are more
          likely to be shot in an assault than those who do not have a firearm . . . . It is
20        reasonable for the Department to conclude that more firearms in Parks facilities
          increases the likelihood that someone will be seriously injured." *Id.* ¶ 1.10.
21

22        • "The City's and Department's interests will be promoted by . . . [this]
          policy." *Id.* ¶ 1.12.

23  After enacting the Policy, the City then proceeded to post conspicuous signs advising people

24  of its policy prohibiting firearms in those City-owned parks facilities where children were

25  likely to be present. Amended Complaint ¶ 14, dkt. no. 4.

26         One such facility was the Southwest Community Center ("SCC"), which Plaintiff

27  visited on November 14, 2009. *Id.* ¶ 18. Plaintiff's arrival at the SCC was the result of a very

28  intentional and highly publicized effort to overturn the Policy. Plaintiff admits that the *only*

times he has ever exercised this claimed right were on a few days this past November in search

of the basis for this suit:

> Q.    Now, when you visited those parks in the past, have you carried a concealed weapon?
>
> A.    I believe only at Lincoln Park, once.
>
> Q.    So when did you visit Lincoln Park?
>
> A.    November 11th of this year, the time that I carried the pistol.
>
> Q.    And if you've visited parks an estimate of 15 to 20 times in the last 15 months, why did you carry a pistol just for that occasion in Lincoln Park?
>
> A.    Because I was looking for the sign telling me I couldn't. That was . . . before I went into the [SCC], and I was trying to find a good locale.  I couldn't find the sign, by the way.
>
> Q.    Okay.  And you did not find signs prohibiting you from carrying a gun in the park at that time?
>
> A.    That's correct. Actually, there had been a photo in the West Seattle blog of the sign by the children's play area, and when I went there on the 11th, it was not in the same area, so I did not find the sign.
>
> Q.    Where in Lincoln Park did you actually go?
>
> A.    The children's area.
>
> Q.    [I]n the time you were in Lincoln Park, the entire park that you traveled through was accessible and open to you as a concealed weapons carrier, correct?
>
> A.    Well, I think so.

Deposition of Robert C. Warden ("Dep.") at 20-22, Ex. A to Declaration of David Keenan

("Keenan Decl.").[1]  In other words, in the days leading up to his suit, Plaintiff exercised his

claimed fundamental right for the first time by traveling alone from his home in Kent to search

the 130 acres of Seattle's Lincoln Park in vain for a sign prohibiting him from carrying a

firearm into a children's play area.  As he testified, he was not successful in this quest.

     Unable to find a "no guns allowed" sign in Lincoln Park, Plaintiff traveled on to find

the basis for his suit at the Southwest Community Center:

> Q.    What did you do with respect to the city policy after going to Lincoln Park and not being able to find a sign?

---

[1]  All excerpts from the Deposition of Robert C. Warden are attached at Exhibit A to the Keenan Declaration.

4

A.     Let's see, I drove past the [SCC] and noticed they did have a sign.

Q.     Had you visited the [SCC] at a time prior to November 2009?

A.     Not since 1997.

Q.     And so the purpose of driving past the [SCC] . . . was you were looking for a place where there was a sign prohibiting gun carrying and possession, correct?

A.     Yes.

Q.     Again, for the purpose of challenging – that policy?

A.     Yes.

Q.     And you had no other recreational purpose to do so at that time, correct?

A.     No.

Dep. at 23-24.  Having finally found a sign restricting firearms in Seattle Parks facilities frequented by children, Plaintiff then notified the City that he intended to return and enter the SCC with his pistol.  *Id.* at 27:8.  In explaining why he provided advance notice, Plaintiff explained that "it is considered by some to be provocative . . . you know . . . a pistol can be used . . . for deadly purposes, and it's not something . . . that you just irresponsibly mess around with."  *Id.* at 28:9-15.

Plaintiff also contacted the media.  In fact, upon Plaintiff's arrival at the SCC on November 14, 2009 to exercise his claimed fundamental right, Plaintiff spent some thirty minutes talking with the various television reporters and members of the press *before* even entering the SCC.  *Id.* at 30:11-16.  Plaintiff's pre-announced visit to the SCC received wide-spread attention in local and national print and television media.  In his comments to the media, Mr. Warden explained his motivation in part as follows:

> [Mayor] Nickels never presented evidence how a legally carrying citizen is a threat to anyone . . . . The mayor has not presented any argument how a gun ban like this would prevent bad guys from sneaking into [a city facility] with a weapon.

Press Accounts at 26, Ex. B. to Keenan Decl.

As Plaintiff anticipated, after entering the SCC and indicating that he was carrying a pistol, he was asked to leave by a City official and did so.  Dep. at 35:5-12.  Plaintiff admitted

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

5

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

1   that his "principle purpose" in traveling to the SCC "was to create the circumstances by which

2   [he] could sue the City." Dep. at 32:12-14.

3         After the media event concluded, Plaintiff subsequently filed his Complaint and the

4   instant Motion, seeking to enjoin not only the Policy, but "all other restrictions *of any kind*

5   regarding firearm possession and/or *any other* aspect of firearms," Motion at 1, dkt. no. 8

6   (emphasis added), on the basis that Plaintiff will otherwise face irreparable injury and

7   hardship.

8   **III.**    **DISCUSSION**

9      **A.**    **Legal Standard**

10        Plaintiff's Motion at 2-3, dkt. no. 8, misstates the applicable legal standard for

11   preliminary injunction. The Supreme Court's recent decision in *Winter v. Natural Res. Def.*

12   *Council, Inc.*, 129 S. Ct. 365, 374 (2008), changed the applicable standard for preliminary

13   injunction in the Ninth Circuit. Before *Winter* was decided, the Ninth Circuit held that to

14   prevail on a motion for preliminary injunction, the plaintiff must demonstrate either (1) a

15   likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious

16   questions going to the merits were raised and the balance of hardships tips sharply in its favor.

17   These two alternatives represented extremes of a single continuum, rather than two separate

18   tests. Thus, the greater the relative hardship to the party seeking the preliminary injunction,

19   the lesser the probability of success that must be shown. *See Stormans, Inc. v. Selecky*, 586

20   F.3d 1109, 1127 (9th Cir. 2009) (citing *Clear Channel Outdoor Inc. v. City of Los Angeles*,

21   340 F.3d 810, 813 (9th Cir. 2003)). In *Winter*, the Supreme Court definitively refuted the

22   Ninth Circuit's "possibility of irreparable injury" standard, deeming it "too lenient." *Winter*,

23   129 S. Ct. at 375. The Supreme Court reiterated that the proper standard "requires plaintiffs

24   seeking preliminary relief to demonstrate that irreparable injury is **likely** in the absence of an

25   injunction." 129 S. Ct. at 375 (emphasis added). The Supreme Court instructed that "[i]ssuing

26   a preliminary injunction based on only a possibility of irreparable harm is inconsistent with

27   our characterization of injunctive relief as an extraordinary remedy that may only be awarded

28   upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

OPPOSITION TO MOTION FOR       6
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California 94105-2669
tel+1-415-773-5700

1    Applying *Winter*, the Ninth Circuit has since held that, "[t]o the extent that our cases

2   have suggested a lesser standard, they are no longer controlling, or even viable." *Stormans*,

3   586 F.3d at 1127 (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046,

4   1052 (9th Cir. 2009)). The proper legal standard for preliminary injunctive relief in the Ninth

5   Circuit now requires a party to demonstrate that: (1) he is likely to succeed on the merits, (2)

6   he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of

7   equities tips in his favor, and (4) an injunction is in the public interest. *Stormans*, 586 F.3d at

8   1127.

9        **B.      There Is No Likelihood of Success on the Merits of Plaintiff's Claims**

10    On December 30, 2009, Defendants moved for dismissal of the Complaint, in its

11   entirety, pursuant to Fed. R. Civ. P. 12(b)(6). For the convenience of the Court and Plaintiff,

12   Defendants summarize their arguments on the merits of the constitutional claims briefly now.

13   Defendants incorporate by reference the arguments in their Motion to Dismiss, dkt. no. 10.

14    Denial of Plaintiff's motion for preliminary injunction is required here because

15   Plaintiff has not shown and cannot show that his claims are likely to succeed on the merits.

16   Current controlling law in this Circuit (1) holds that local governments such as the City of

17   Seattle are not constrained by the Second Amendment, and (2) has not recognized a federal

18   constitutional right to possess a firearm outside of the home.

19    While the question whether Second Amendment rights constrain states and

20   municipalities is under review in the United States Supreme Court this term,[2] there is no

21   current precedent that holds that the Fourteenth Amendment has incorporated the Second

22   Amendment to be applicable against state and local governments. Moreover, currently binding

23   Ninth Circuit precedent holds that the Second Amendment does <u>not</u> apply to state and local

24   governments, such as the City of Seattle. *See Fresno Rifle & Pistol Club, Inc. v. Van De*

25   *Kamp*, 965 F.2d 723, 731 (9th Cir. 1992) ("[T]he Second Amendment binds only the national

26   government."); *Burns v. Mukasey*, No. CIV S-09-0497, 2009 WL 3756489, at *4 (E.D. Cal.

27   ─────────────────

28   [2] *Nat'l Rifle Ass'n of Am., Inc. v. Chicago*, 567 F.3d 856, 857 (7th Cir. 2009), *cert. granted*,
     *McDonald v. Chicago*, 130 S. Ct. 48 (2009).

OPPOSITION TO MOTION FOR                           7
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

1  Nov. 6, 2009) ("[T]his court is bound by currently valid Ninth Circuit precedent which is clear

2  . . . . Under *Fresno Rifle, the Second Amendment does not apply to the states.*") (emphasis

3  added).  Consequently, for this reason alone, Plaintiff's Second Amendment claim and related

4  Equal Protection claim have no likelihood of success on the merits.

5          Furthermore, even if the Second Amendment is held to apply to state and local

6  governments, the limited rights of individuals under the Second Amendment are not infringed

7  by the City's policy of conditioning the public's use of municipally-owned parks and facilities

8  where children are present.  The Supreme Court presently recognizes only an individual right

9  to possess firearms in one's own home for the purpose of self-defense.  *See Heller v. District*

10 *of Columbia*, 128 S. Ct. 2783, 2816-17 (2008).  In *Heller*, the Court unequivocally recognized

11 that the individual right to keep and bear arms is not unlimited:

12          [W]e do not read the Second Amendment to protect the right of
            citizens to carry arms for *any sort* of confrontation . . . .

13                              * * *

14          Like most rights, the right secured by the Second Amendment is
            not unlimited . . . .  [T]he right was not a right to keep and carry
15          any weapon whatsoever in any manner whatsoever and for
            whatever purpose . . . .  *[N]othing in our opinion should be taken*
16          *to cast doubt on . . . laws forbidding the carrying of firearms in*
            *sensitive places such as schools and government buildings.*
17

18 *Id.* at 2799, 2816-17 (emphasis added); *see also id.* at 2817 n.26 (noting that sensitive places

19 such as schools and government buildings were only "examples," and Court's "list does not

20 purport to be exhaustive").  In so holding, the Supreme Court recognized the government's

21 significant discretion to restrict or prohibit firearms in areas outside the home.  The prohibition

22 of firearms in sensitive places, such as parks and other municipal facilities frequented by

23 children, does not violate any Second Amendment right.  Accordingly, the City's prohibition

24 on carrying or displaying firearms in certain government-oiwed parks and facilities frequented

25 by children is well within the permissible bounds of constitutional authority.  On this basis,

26 Plaintiff's Second Amendment claim and related Equal Protection claim lack merit and are not

27 likely to succeed. [3]

28 [3] The Ninth Circuit in *Nordyke v. King,* 563 F.3d 439 (9th Cir. 2009), *reh'g en banc granted,*

OPPOSITION TO MOTION FOR                                8        Orrick Herrington & Sutcliffe LLP
PRELIMINARY INJUNCTION                                           The Orrick Building, 405 Howard Street
CASE NO. 2:09-CV-01686-MJP                                      San Francisco, California  94105-2669
                                                                tel+1-415-773-5700

1       In his deposition, Mr. Warden has himself recognized and acknowledged the current

2  state of federal law.  Mr. Warden acknowledged that the Supreme Court's decision in *Heller*

3  does not extend an individual right to firearms beyond the confines of an individual's home.

4  Dep. at 50.  Mr. Warden also testified that he is not aware of any federal authority that

5  recognizes under the Second Amendment a right to bear arms for self-defense outside of the

6  home.  *Id.* at 54.  Moreover, he has also testified that he does not know of any federal authority

7  that contradicts or supersedes the decision in *Nordyke* upholding prohibitions on firearms on

8  municipal property under the Second Amendment, even if the Second Amendment were

9  applied to local governments.  *Id.*  at 54-55.

10       Plaintiff's Fourteenth Amendment claim also has no likelihood of success.  Plaintiff is

11  not entitled to strict scrutiny on his claim because the City's Policy does not violate Equal

12  Protection under the Fourteenth Amendment and Plaintiff is not a member of a suspect class.

13  As discussed above, Plaintiff has no Second Amendment right at all against a municipality,

14  which effectively precludes discussion of whether such a right would be fundamental and

15  warrant strict scrutiny.  *See Young v. Hawaii*, No. 08-00540, 2009 WL 1955749, at *9

16  (D. Haw. July 2, 2009) (noting, in the wake of *Heller* and *Nordyke*, that "[i]f Plaintiff does

17  have right to possess a firearm in public, it is at most a *non-fundamental right*") (emphasis

18  added).  Nor could Plaintiff pass rational-basis scrutiny.  Plaintiff cannot identify his group or

19  a similarly-situated class for comparison subject to disparate treatment.  At his deposition,

20  Plaintiff admitted that the purported classification, citizens with firearms, is not based on an

21  inherent trait or human condition, but on personal conduct – that is, the act of carrying or

22  displaying firearms.  Dep. at 56.  Mr. Warden also cannot satisfy the heavy burden of rebutting

---

23  575 F.3d 890 (9th Cir. 2009), held that "open space venues, such as County-owned *parks*,
*recreational areas*, historic sites . . . and the County fairgrounds" are "gathering places where

24  high numbers of people might congregate. . . .  [And] [a]lthough *Heller* does not provide
much guidance, *the open, public spaces the County's Ordinance covers fit comfortably*

25  *within the same category as schools and government buildings*."  *Id.* at 459-60 (emphasis
added).  The *Nordyke* panel's opinion has been vacated and cannot be relied upon as

26  precedent, but in the absence of prior Ninth Circuit authority on this issue, *Nordyke's*
analysis of an ordinance that, like Seattle's Policy here, places reasonable restrictions on

27  firearms in local parks, provides additional guidance about the limits of the individual right
to self-defense in the home delineated in *Heller*.

28

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California 94105-2669
tel+1-415-773-5700

1    the presumptive validity of the Policy because he cannot negate *every conceivable basis* which

2    might support the City's Policy.  Those bases, reflected in the Policy itself, are indisputably

3    rationally related to the City's legitimate interest in ensuring the safety of children and youth

4    visiting City parks and recreational facilities.  *See Ross v. Moffitt*, 417 U.S. 600, 609 (1974);

5    *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002); *Freeman v. City of Santa Ana*, 68

6    F.3d 1180, 1187 (9th Cir. 1995) (citation omitted).  Plaintiff's contention that arming more

7    "good guys" will promote safety by having more people to shoot the "bad guys", argued

8    without any evidential support, Motion at 7, 12, obviously does not address the concerns about

9    gun thefts, accidental discharges, and escalating confrontations to which the Policy is

10   addressed.  See Declaration of Eric Friedli at ¶¶ 6 – 12.  Indeed, Mr. Warden has

11   acknowledged in his deposition that intentional and accidental discharges of firearms in the

12   vicinity of children are subjects of legitimate public concern.  Dep. at 57-59.  In consequence,

13   Plaintiff's Fourteenth Amendment claim has no likelihood of success.

14          Finally, like the U.S. Supreme Court, Washington courts have recognized that the

15   right to firearms provided by the State Constitution is not unlimited, and thus will

16   accommodate reasonable firearms regulations.  *See, e.g., City of Seattle v. Montana*, 919 P.2d

17   1218, 1223, 129 Wash. 2d 583, 592 (1996) (citing Wash. Const. art. XI, § 11 and Wash. Rev.

18   Code § 35.22.280(35)); *State v. Spencer*, 876 P.2d 939, 942, 75 Wash. App. 118, 124 (1994);

19   *Second Amendment Found. v. City of Renton*, 668 P.2d 596, 35 Wash. App. 583 (1983).  As

20   discussed at length in defendants' Motion to Dismiss at 15-16, dkt. no. 10, the City's narrow

21   Policy in service to children and youth in certain municipal parks and facilities fits well within

22   this case law.  Plaintiff's claim under the Washington Constitution, therefore, is not likely to

23   succeed.

24          For the reasons discussed above and in Defendants' Motion to Dismiss, dkt. no. 10,

25   Plaintiff's claims have no likelihood of success under 42 U.S.C. § 1983 and his request for

26   preliminary injunction should be denied.

27

28

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

**C.    Mr. Warden Has Not Established That He Is Likely to Suffer Irreparable Harm, or That Any Such Harm Outweighs the City's or Public Interest in Maintaining the Policy**

To obtain a preliminary injunction, Plaintiff must demonstrate a **likelihood** of irreparable harm in the absence of such relief, in addition to showing likelihood of success on the merits. *See Stormans*, 586 F.3d at 1127. Mr. Warden has failed to meet this burden. As the record clearly establishes, Mr. Warden had no personal reason to actually *use* the Seattle facilities other than to set up his lawsuit by carrying a deadly weapon into a building crowded with people of all ages engaged in healthy activities. *See supra* pp. 3-5; *see also* Amended Complaint ¶¶ 18-21, dkt. no. 4. On November 14, 2009, Mr. Warden could have traveled to most areas of City parks, comfortably armed with his concealed Glock 27. Declaration of Eric Friedli ¶ 4. In fact, in every other instance when he had visited a Seattle Parks Department park or facility in the past, he had voluntarily chosen to do so *without* the need to carry a concealed weapon. Dep. at 21:9-13. Because the only reason Mr. Warden carried his Glock pistol on this occasion was a pretext for this lawsuit, the facts establish that he has suffered no irreparable harm.

**1.    Mr. Warden Has Failed to Submit Any Evidence Establishing That He Has Personally Suffered Irreparable Injury Resulting from the City's Policy**

Mr. Warden's motion for preliminary injunction has been submitted without any supporting declaration or exhibits, and in apparent reliance on the allegations of his complaint. Thus, Mr. Warden has failed to submit any evidence establishing that he has suffered <u>any</u> injury as a result of the City's Policy—let alone irreparable injury. Mr. Warden's complaint cannot, without more, be relied on as evidence for purposes of his motion. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1982) (holding that preliminary injunction should be denied if facts alleged "consist largely of general assertions which are substantially controverted by counteraffidavits" and moving party fails to make further showing of likelihood of success on merits). Moreover, his deposition testimony proves that he has actually suffered <u>no</u> injury. Therefore, his motion should be denied for failure to prove an

11

1  essential element under Federal Rule of Civil Procedure 65.

2  　　　As established above, Mr. Warden has failed to establish a likelihood of success on the

3  merits as to the alleged Second Amendment violation.  In consequence, this Court is not

4  required to determine whether the deprivation alleged has caused irreparable (or any) injury.

5  *See Hale v. Dep't of Energy*, 806 F.2d 910, 918 (9th Cir. 1986) (finding that absent success on

6  merits of First Amendment claim, appellants failed to establish that irreparable harm would

7  flow from failure to preliminarily enjoin defendant's actions); *see also Russell v. Gregoire*,

8  124 F.3d 1079 (9th Cir. 1997) (ending inquiry upon finding of no success on merits).

9  　　　Second, the testimony on record in this case establishes that the City's Policy has not

10  caused Mr. Warden any personal injury.  The record shows that Mr. Warden, who is not a

11  citizen of Seattle, has, as a matter of personal practice and preference, visited Seattle parks and

12  facilities fifteen to twenty times without carrying a weapon.  Dep. at 19-20.  Nothing has

13  changed.  Indeed, the only reason he carried a gun on November 14 was to manufacture a

14  factual basis to bring this lawsuit – an event in which he sought extensive personal media

15  attention, and that occurred at precisely the same time he launched his own personal blog.

16  Dep. at 64:10-15.  Thus, Mr. Warden's motivations for this lawsuit appear to stem not from

17  any injury that he suffered, but from a desire to create a factual basis for a lawsuit where none

18  had previously existed.  This is not injury – unless it is self-inflicted.  Regardless of whether

19  Mr. Warden is a purely civic minded man or a man who has thrust himself into the spotlight

20  out of vanity, he has personally suffered no substantial injury, particularly because he still has

21  the option of attending the designated parks without his weapon, as he has always done,

22  without exception, in every previous visit.

23  　　　　　**2.**　　**Even if Mr. Warden's Claim Raises the "Specter of Irreparable Injury," He Is Not Entitled to a Preliminary Injunction Because the**

24  　　　　　　　　**City's Interest and the Public Interest Favor the Policy and Outweigh Any Hardship Mr. Warden Will Suffer**

25

26  　　　Even if the Court holds that Mr. Warden will likely succeed on the merits and his

27  claim raises the specter of irreparable injury,[4] "simply raising [such a claim] is not enough to

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
　　[4] No case in this Circuit or elsewhere has specifically addressed whether Second Amendment

12

1  tip the hardship scales." *Stormans*, 586 F.3d at 1138 (quoting *Paramount Land Co. v. Cal.*

2  *Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007)). On balance, the interests of the City

3  in maintaining this Policy outweigh Mr. Warden's interest, and the harm that may be caused in

4  the absence of this Policy outweigh any harm or injury suffered by Mr. Warden.

5        Tipping the scales in favor of the City's Policy is the public interest. Because the

6  impact of an injunction of the Policy reaches beyond the parties, there exists a potential for

7  public consequences. As a result, "the public interest will be relevant to whether the [court

8  should] grant[] the preliminary injunction." *Stormans*, 586 F.3d at 1139; *see also Weinberger*

9  *v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("[When] an injunction is asked which will

10 adversely affect a public interest . . . the court may in the public interest withhold relief until a

11 final determination of the rights of the parties, though the postponement may be burdensome

12 to the plaintiff."). In fact, courts should "pay particular regard for the public consequences in

13 employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312.

14        Here, it is worth pausing for a moment on the scene Mr. Warden's Complaint depicts

15 as he stands at the entrance to the SCC, because it reflects precisely the kind of environment

16 that the City's Policy was enacted to promote, and illustrates why the public interest favors the

17 City. Mr. Warden alleges:

18        At the time Warden was expelled from SCC, the facility was *bustling* with
         weekend activity. A large number of individuals *of all ages* were *enjoying*
19       unrestricted access to the various events and services provided to the
         general public by defendants at the SCC.
20

21 Amended Complaint ¶ 20, dkt. no. 4 (emphasis added). Mr. Warden fails to see the irony in

22 his own allegations – the contrast between the bustling leisure activities he observes at the

23 SCC on the one hand, and the tableau he presents of a lone man, armed with a deadly weapon

24 and a belief in his inviolable *individual* rights, poised to interrupt that scene on the other. As

25 expressed in its Policy, the City's view of how to foster a bustling, safe and secure place where

26 _____

27 violations constitute irreparable injury in the same way as First Amendment violations. Even
   assuming *arguendo* that they do, the alleged injury suffered by Mr. Warden is outweighed by
   the City's interest, and the public interest, in implementing this Policy to promote public
28 safety.

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

1    1.8 million people can visit and enjoy the City's facilities annually is different from

2    Mr. Warden's, and does not include unfettered carrying of deadly firearms.[5] *See* Declaration

3    of Eric Friedli ("Friedli Decl.") ¶¶ 2 – 12.

4        The City has a strong interest in establishing conditions for the safe and secure use of

5    City-owned parks and facilities. *See id.* at 3.  The City's Policy is designed to protect children

6    and families who use the parks for recreational purposes. *Id.* The general public has an interest

7    in using the City's parks and facilities without fear that some present individuals will be

8    carrying firearms. *Id.*

9        While there is a small and extremely vocal minority of citizens who fervently believe

10    the world would be a safer place if we inspire more "good guys" to be armed and ready to

11    shoot "bad guys," this image of vigilante justice is not shared by the majority, nor is it City

12    policy. *See id.* ¶ 10.  It is the City's policy to rely on <u>trained</u> personnel – Seattle police, Parks

13    Department rangers and authorized security personnel – to competently safeguard public

14    safety.

15        In fact, a survey of Seattle voters in 2009 revealed that only 4 percent reported that

16    they or someone in their home had a concealed pistol license.  Declaration of Ian Stewart at 2.

17    In contrast to the 4 percent of Seattle voters who reported a concealed pistol license, Seattle

18    parks and facilities receive nearly two million visitors each year.  Friedli Decl. at 2.  Given that

19    the vast majority of users of these City parks and facilities do not intend to carry guns and do

20    not want others carrying deadly concealed firearms around them, the public interest further

21    weighs in favor of the City's Policy.

22        **D.**    <u>**The Court Should Require Plaintiff to Post Security if an Injunction Is**</u>

23            <u>**Issued**</u>

24        In the event a preliminary injunction is entered, the Court should require Plaintiff to

25    give "security in an amount that the court considers proper to pay the costs and damages

26    sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65.  The City

27

28    [5] That is true whether the deadly firearm is carried by a "bad guy" or a self-proclaimed "good guy." *See* Motion at 7 and 12, dkt. no. 8.

OPPOSITION TO MOTION FOR        14        Orrick Herrington & Sutcliffe LLP
PRELIMINARY INJUNCTION                           The Orrick Building, 405 Howard Street
CASE NO. 2:09-CV-01686-MJP                    San Francisco, California  94105-2669
                                                 tel+1-415-773-5700

1    requests that the amount of the bond be set at $50,000. The city has submitted evidence that it

2    will experience direct damages of approximately $11,000 for the cost of removal

3    and subsequent re-installation of signs at 116 facilities throughout the City in the event that an

4    injunction is wrongfully issued. Friedli Decl. at 6. Moreover, if there is an accidental or

5    intentional discharge of firearms at a City facility, as the owner of the property, the City may

6    be named as a defendant to tort litigation and be exposed to loss and damages in the form of

7    litigation expenses. *Id.*

8    **IV.    CONCLUSION**

9        Plaintiff has not proved that he is likely to prevail on the merits, that he is likely to

10

11    suffer injury of any kind, or that the public interest favors his position. To the contrary, the

12    interests of 1.8 million annual visitors—particularly the hundreds of thousands of unarmed

13    children who rely on City parks facilities for education, recreation and sports—vastly

14    outweighs Mr. Warden's recently discovered interest in packing a concealed Glock 27 into

15    Seattle community centers. For all of the foregoing reasons, Defendants respectfully request

16    that the Court deny Plaintiff's Motion for preliminary injunction.

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

15

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California 94105-2669
tel+1-415-773-5700

1

Dated:    January 19, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3

4                                            By:  s/ Daniel J. Dunne
                                                  Daniel J. Dunne (WSBA No. 16999)
                                                  ddunne@orrick.com
5                                                George E. Greer (WSBA No.11050)
                                                  ggreeer@orrick.com
6                                                David Keenan (WSBA No.41359)
                                                  dkeenan@orrick.com
7
                                                  701 Fifth Avenue, Suite 5700
8                                                Seattle, WA  98104-7097
                                                  Telephone:      (206)839-4300
9                                                Facsimile:       (206)839-4301

10                                           SEATTLE CITY ATTORNEY

11                                                Gary Keese (WSBA No. 19265)
                                                  gary.keese@seattle.gov
12
                                                  600 Fourth Avenue, 4th Floor
13                                               P.O. Box 94769
                                                  Seattle, WA  98124-4769
14                                               Telephone:      (206)684-8200
                                                  Facsimile:       (206)684-8284
15

16                                           *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR                        16
PRELIMINARY INJUNCTION
CASE NO. 2:09-CV-01686-MJP

Orrick Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, California  94105-2669
tel+1-415-773-5700

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on January 19, 2010, I electronically filed the following document

3  with the Clerk of the Court using the CM/ECF system which will send notification of the filing

4  to all counsel of record:  DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR

5  PRELIMINARY INJUNCTION.

6      DATED this 19th day of January, 2010.

7

8                                          **ORRICK, HERRINGTON & SUTCLIFFE LLP**

9

10                                       By  s/ Daniel J. Dunne
                                             Daniel J. Dunne (WSBA #16999)

11
                                             701 Fifth Avenue, Suite 5700
12                                           Seattle, WA  98104
                                             Phone: (206) 839-4300
13                                           Fax:    (206) 839-4301
                                             Email: ddunne@orrick.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28