RECEIVED

FEB 0 1 2010

CORR CRONIN LLP

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

WINNIE CHAN, an individual; ROBERT
KENNAR, an individual; RAYMOND
CARTER, an individual; GRAY
PETERSON, an individual; GARY G.
GOEDECKE, an individual; THE
SECOND AMENDMENT
FOUNDATION, INC., a Washington non-
profit corporation; CITIZENS
COMMITTEE FOR THE RIGHT TO
KEEP AND BEAR ARMS, a Washington
non-profit corporation; WASHINGTON
ARMS COLLECTORS, INC., a
Washington non-profit corporation;
NATIONAL RIFLE ASSOCIATION OF
AMERICA, INC., a New York non-profit
association,

        Plaintiffs,

    v.

CITY OF SEATTLE, a municipality;
GREGORY J. NICKELS, Mayor of the
City of Seattle, in his official capacity;
SEATTLE DEPARTMENT OF PARKS
AND RECREATION, a department of the
City of Seattle; and TIMOTHY A.
GALLAGHER, Superintendent, in his
official capacity,

        Defendants.

Case No. 09-2-39574-8 SEA

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DEFENDANTS'
CROSS-MOTION FOR SUMMARY
JUDGMENT

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

# TABLE OF CONTENTS

                                                                                    **Page**

I.      RELIEF REQUESTED ................................................................................ 1

II.     INTRODUCTION....................................................................................... 1

III.    STATEMENT OF FACTS......................................................................... 3

IV.     ARGUMENT AND AUTHORITY ............................................................ 5

        A.      Plaintiffs Do Not Have an Established Right to Bring Firearms into Parks and
                Community Centers Under the Federal or State Constitutions. ........................... 5

        B.      The Rule Does Not Fall Within the Preemption Statute. ................................. 6

                1.      City Departments Issue Rules to Manage Their Property ...................... 6

                2.      The Preemption Statute Does Not Preempt Local Rules or Policies. ....... 7

                3.      The Rule Does Not Include Criminal Penalties. ................................. 9

        C.      Injunctive Relief is Inappropriate....................................................... 11

                1.      Plaintiffs Have No Clear or Equitable Rights at Stake. ........................ 12

                2.      Plaintiffs Have Suffered No Injury. ................................................ 13

                        a.      Plaintiff Carter.................................................................... 14

                        b.      Plaintiffs Chan and Kennar .................................................. 16

                        c.      Plaintiff Peterson ............................................................... 17

                        d.      Plaintiff Goedecke ............................................................. 18

                        e.      Organizational Plaintiffs. .................................................... 18

                3.      The Public Interest Favors Denial of an Injunction. ......................... 19

V.      CONCLUSION ....................................................................................... 20

i

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*District of Columbia v. Heller,*
 __ U.S. __, 128 S. Ct. 2783, 171 L. Ed. 2d 637,
 *aff'd sub nom. Parker v. District of Columbia,* 128 S. Ct. 2994 (2008) ....................... 5, 12

*Fresno Rifle & Pistol Club, Inc. v. Van De Kamp,*
 965 F.2d 723 (9th Cir. 1992) ................................................................................. 5

## STATE CASES

*Am. Legion Post #149 v. Wash. Dep't of Health,*
 164 Wn.2d 570, 192 P.3d 306 (2008) ..................................................................... 1

*Applied Indus. Materials Corp. v. Melton,*
 74 Wn. App. 73, 872 P.2d 87 (1994) ............................................................... 7, 8, 9

*Arnold v. Melani,*
 75 Wn.2d 143, 449 P.2d 800 (1968) ............................................................... 11, 12

*ATU Legislative Council of Wash. v. State,*
 145 Wn.2d 544, 40 P.3d 656 (2002) ............................................................... 10, 11

*Cherry v. Municipality of Metro. Seattle,*
 116 Wn.2d 794, 808 P.2d 746 (1991) ............................................................ 8, 9, 10

*City of Seattle v. Montana,*
 129 Wn.2d 583, 919 P.2d 1218 (1996) ............................................................. 5, 12

*In re Detention of Williams,*
 147 Wn.2d 476, 55 P.3d 597 (2002) ....................................................................... 7

*Holmes Harbor Water Co. v. Page,*
 8 Wn. App. 600, 508 P.2d 628 (1973) ............................................................. 11, 12

*Kucera v. Dep't of Transp.,*
 140 Wn.2d 200, 995 P.2d 63 (2000) ..................................................................... 11

*Oltman v. Holland Am. Line USA, Inc.,*
 163 Wn.2d 236, 178 P.3d 981 (2008) ..................................................................... 10

*Pac. Nw. Shooting Park Ass'n v. City of Sequim,*
 158 Wn.2d 342, 144 P.3d 276 (2006) ................................................................. 9, 10

*State ex rel. Gebhardt v. Superior Court for King County,*
 15 Wn.2d 673, 131 P.2d 943 (1942) ....................................................................... 12

*State ex rel. Tubbs v. City of Spokane,*
 53 Wn.2d 35, 330 P.2d 718 (1958) ........................................................................... 6

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

ii

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

*State v. Baldwin,*
    109 Wn. App. 516, 37 P.3d 1220 (2001) ........................................................ 7, 8

*State v. Blair,*
    65 Wn. App. 64, 827 P.2d 356 (1992) ............................................................ 6

*State v. Morgan,*
    78 Wn. App. 208, 896 P.2d 731 (1995) .......................................................... 6

*Tyler Pipe Indus., Inc. v. State Dep't of Revenue,*
    96 Wn.2d 785, 638 P.2d 1213 (1982) ...................................................... 11, 19

*Wash. Fed'n of State Employees, Council 28, AFL-CIO v. State,*
    99 Wn.2d 878, 665 P.2d 1337 (1983) .......................................................... 11

*Wash. Fed'n of State Employees, Council 28, AFL-CIO v. Office of Fin. Mgmt.,*
    121 Wn.2d 152, 849 P.2d 1201 (1993) ........................................................ 10

*Weden v. San Juan County,*
    135 Wn.2d 678, 958 P.2d 273 (1998) ............................................................ 7

*Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima,*
    122 Wn.2d 371, 858 P.2d 245 (1993) ............................................................ 1

## DOCKETED CASES

*Estes v. Vashon Maury Island Fire Protection Dist. No. Thirteen,*
    No. 05-2-02732-1 KNT (King County Super. Ct. Mar. 9, 2005 ) ...................... 10

## STATE STATUTES

RCW 9.41.070 ...................................................................................................... 20

RCW 9.41.070(1)(c) ............................................................................................ 4

RCW 9.41.270(1) ................................................................................................ 17

RCW 9.41.290 ............................................................................................ *passim*

RCW 9.94A.8445(1) ............................................................................................ 8

RCW 19.190.110 ................................................................................................ 8

RCW 46.61.667(5) .............................................................................................. 8

RCW 80.50.110(1) .............................................................................................. 8

Act of Apr. 9, 1985, ch. 428, 198 Wash. Laws 1866 ...................................... 8, 9

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

iii

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

# MISCELLANEOUS

Seattle Mun. Code. § 3.26.040 ...................................................................................... 6

Seattle Mun. Code. § 18.12.040 .................................................................................... 6

DEFS.' OPP'N TO MOT. FOR SUMM. J. &amp;
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

iv

Orrick Herrington &amp; Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

# I.    RELIEF REQUESTED

Defendants request that Plaintiffs' Motion for Summary Judgment be denied. Additionally, Defendants cross-move for summary judgment in their favor on Plaintiffs' claims under RCW 9.41.290.

# II.    INTRODUCTION

Plaintiffs challenge the City of Seattle's rule to create a safe and secure environment free of guns for children who use recreation and education facilities that the City owns and operates. The City of Seattle welcomes this opportunity to obtain a ruling that its Parks Department Rule (the "Rule") prohibiting visitors from carrying firearms in designated facilities where children are likely to be present is a permissible exercise of its authority to place conditions on the use of municipal properties it operates.[1]  While only a small minority of the visitors to City parks wish to carry deadly firearms, Defendants agree for purposes of this motion that there is a present controversy that is appropriate for judicial resolution.

Plaintiffs have not argued that the Rule is unconstitutional, and for good reason— federal and state courts have recognized only a limited constitutional right to carry firearms. In addition, both the United States and Washington Supreme Courts have held that reasonable regulation of firearms is constitutionally permissible.  As a result, the sole legal issue now before the Court is whether the Rule is preempted by a state firearms statute, RCW 9.41.290 (the "Preemption Statute").

Plaintiffs argue that the Washington Legislature "occupies and preempts the entire field of firearms regulation." Pls.' Mot. for Summ. J. ("Motion") at 12 (quoting RCW 9.41.290). This is obviously true, but only as far as it goes.  The City of Seattle agrees that the State has

---

[1] The City reserves all of its affirmative defenses, including its affirmative defense that certain Plaintiffs lack standing to bring claims and seek relief in a civil action.  For example, the City believes that the Organizational Plaintiffs each lack standing to assert claims that have been asserted by individuals with standing.  *See Am. Legion Post #149 v. Wash. Dep't of Health*, 164 Wn.2d 570, 595, 192 P.3d 306 (2008) (an organization has standing when, *inter alia*, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993) (declining to liberally construe the issue of standing where "all the arguments raised by the Fire District could be adequately, if not more effectively, presented by the other plaintiffs in this case").

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

occupied the field of "firearms *regulation*," but the Rule is not a regulation of firearms because it is not generally applicable to all conduct throughout the city's jurisdiction, and it does not impose penalties for violations. Rather, the policy establishes conditions for the use of facilities that the City itself owns. Persons who do not comply may have their permission to enter and use the facilities revoked.

Moreover, RCW 9.41.290 did not preempt "rules," but only "laws and ordinances." In numerous other preemption statutes, however, the Legislature specifically included "rules" within the scope of the subject that was preempted. But not in RCW 9.41.290. This omission of "rules" in RCW 9.41.290 is perfectly consistent with the general intention of the statute. Because Plaintiffs do not address the distinction between ordinances and rules, in particular, that criminal regulations cannot be enacted through rulemaking, they misconstrue the preemption statute to have broader effect than the Legislature intended.

The Washington legislature enacted the Preemption Statute to eradicate the risk that persons traveling freely from county to county and city to city might be acting lawfully one minute, and subject to criminal penalties for the identical behavior the next. But—like policies that prohibit spitting and running at municipal swimming pools, or bringing food into certain areas of facilities—the Rule is a condition of use of designated facilities, not a criminal ordinance of general application throughout the entire city. Any visitor who wishes to make use of the City's facilities is required to know and comply with the rules on which that privilege is conditioned. Where visitors do not comply with any of these policies, their privilege of use may be withdrawn and they may be required to leave. The Rule here simply adds to a list of conditions of use, all of which are calibrated to make Seattle parks facilities safe for visitors, particularly the children and families that make up the majority of park users.

Finally, and most importantly, Plaintiffs give short shrift to the controlling Washington Supreme Court cases that have held that the Preemption Statute does not apply where a municipality acts in its proprietary capacity, such as when it acts as an employer establishing rules for employment, or as a property owner setting rules of use. Instead, Plaintiffs rely

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

heavily on an Attorney General Opinion, but opinions of elected officials construing statutes are not legal precedent. It is the judiciary, not the executive, that is constitutionally charged with the primary responsibility to construe State statutes.

Because RCW 9.41.290 does not preempt a local government from imposing conditions on the use of its own property, Plaintiffs' motion for summary judgment should be denied, and Defendants' cross-motion granted. Plaintiffs' request for issuance of an injunction must also be denied because both the legal merits and the public interest favor Defendants.

## III. STATEMENT OF FACTS

On October 14, 2009, the City of Seattle enacted Rule/Rule Number P 060-8.14, intended to make certain Parks Department facilities free from dangerous firearms:

> The Department, in its proprietary capacity as owner or manager of Department facilities, does not permit the carrying of concealed firearms or the display of firearms . . . at Parks Department facilities at which: 1) children and youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility.

Declaration of Eric Friedli ("Friedli Decl."), Ex. A ¶ 4.0. The City found that in 2008, over 1.8 million people had visited and attended programs in Seattle Parks Department-owned community centers, pools, teen centers, and environmental learning centers. *Id.* ¶ 1.2. At least tens of thousands of youths visit these same facilities every year. *Id.* As the owner of these facilities, the City recognized that it has an abiding interest in ensuring that the facilities are safe and secure places for children to visit. *Id.* ¶¶ 1.3-1.4. The City also found that families' safe and secure use of City-owned facilities is "disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of children." *Id.* ¶ 1.6.

To promote its interests in providing safe and secure facilities for children and families, the City Department of Parks and Recreation issued the Rule, quoted above. *Id.* ¶¶ 1.1-1.12. The City based its Rule on sound public safety considerations, including:

- "In 2008 . . . over 108,000 children and youth visited wading pools; over 59,000 youth events were scheduled at sports fields; and, countless numbers of children and youth visited playgrounds, play areas, and sports courts." *Id.* ¶ 1.2.

- "As the owner and operator of Department facilities at which children and

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

3

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

youth are likely to be present, the City has a strong interest in promoting facility users' and visitors' confidence, particularly families with children, that such facilities are safe and secure places to visit." *Id.* ¶ 1.3.

- "Carrying concealed firearms and displaying firearms at Department facilities at which children and youth are likely to be present threatens the City's interests in promoting the use of those facilities by children, youth and their families." *Id.* ¶ 1.4.

- The "safe and secure use of Department facilities is disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of children, which can result from various unforeseen circumstances, (such as the escalation of disputes among individuals carrying firearms . . . .)." *Id.* ¶ 1.6.

- "Studies demonstrate that individuals possessing firearms are more likely to be shot in an assault than those who do not have a firearm. . . . It is reasonable for the Department to conclude that more firearms in Parks facilities increases the likelihood that someone will be seriously injured." *Id.* ¶ 1.10.

- "The City's and Department's interests will be promoted by . . . [this] policy . . . ." *Id.* ¶ 1.12.

After enacting the Rule, the City then proceeded to post conspicuous signs advising people of its policy prohibiting firearms in those City-owned parks facilities where children were likely to be present. Friedli Decl. ¶ 4.

A recent survey of Seattle voters revealed that approximately 4% live in households where a member has obtained a concealed pistol license. Declaration of Ian Stewart ¶ 5. For purposes of this motion, the Court must draw the reasonable inference that the overwhelming majority of the visitors to Seattle Parks do not carry any firearms. By reasonable inference, then, a very small percentage of parks visitors are arguably affected by the Rule.

Moreover, by law, no one under the age of 21 may obtain a concealed pistol license, RCW 9.41.070(1)(c), so by definition, children and youth may not choose to carry firearms in self-defense. It is noteworthy that many of the Plaintiffs do not use Seattle parks facilities for the purpose of providing children a safe and secure environment for education and recreation. Declaration of David S. Keenan in Support of Defs.' Opp'n to Pls.' Mot. for Summ. J. & Defs.' Cross-Mot. for Summ. J. ("Keenan Decl.") Ex. C (Deposition of Winnie Chan ("Chan Dep.") at 11:5-19); Keenan Decl. Ex. E (Deposition of Raymond Carter ("Carter Dep.") at

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

4

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

21:6-7); Keenan Decl. Ex. F (Deposition of Gray Peterson ("Peterson Dep.") at 9:14-16; 11:9-12).

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiffs Do Not Have an Established Right to Bring Firearms into Parks and Community Centers Under the Federal or State Constitutions.

Neither the Second Amendment nor related federal case law provide a basis for the rights claimed by Plaintiff. First, Plaintiffs' claim that "possession of a firearm is a clearly protected right" under the Second Amendment (Mot. at 11), has no application here, because "the Second Amendment stays the hand of the national government only." *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir. 1992). However, even if the Second Amendment did apply to any degree here, the recent Supreme Court decision Plaintiffs cite from *District of Columbia v. Heller*, __ U.S. __, 128 S. Ct. 2783, 171 L. Ed. 2d 637, *aff'd sub nom. Parker v. District of Columbia*, 128 S. Ct. 2994 (2008), refutes the very right they claim. The core holding of *Heller* was that "the absolute prohibition of handguns held and used for *self-defense in the home*" violates the Second Amendment. *Id.* at 2822 (emphasis added). In limiting its holding, the *Heller* Court observed that rights under the Second Amendment were "not unlimited," *id.* at 2799, and held that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 2816-17; *see also id.* at 2817 n.26 (noting that sensitive places such as schools and government buildings were only "examples," and "our list does not purport to be exhaustive"). Thus, even if the Second Amendment limited state and local authority, the very case law Plaintiffs cite would readily accommodate the Rule at issue here.

Plaintiffs find no greater support for the rights they claim under the Washington Constitution (Mot. at 11), because the Washington Supreme Court has "consistently held that the right to bear arms in art. I, § 24 is not absolute, but instead is subject to reasonable regulation by the State under its police power." *City of Seattle v. Montana*, 129 Wn.2d 583, 593, 919 P.2d 1218 (1996) (internal quotation marks omitted). Consistent with this authority,

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

5

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

the City of Seattle's Rule, restricting guns only in designated government facilities, was carefully crafted to serve its goal of protecting children, and only restricts firearms at certain designated Parks facilities or portions thereof where the City has determined children and youth are likely to be present, and which have been posted with appropriate signage. Friedli Decl., Ex. A ¶ 4.0. In this motion, the Rule's constitutionality has not been challenged and must be presumed.

## B. The Rule Does Not Fall Within the Preemption Statute.

### 1. City Departments Issue Rules to Manage Their Property.

The Superintendent of the Seattle Department of Parks and Recreation has issued a reasonable Rule concerning the use of certain Parks facilities, which in no way falls within the reach of the Preemption Statute. The Superintendent's actions here start from the fundamental principle that "[a] city . . . may control the use of its property so long as the restriction is for a lawful nondiscriminatory purpose." *State v. Morgan*, 78 Wn. App. 208, 211, 896 P.2d 731 (1995); *see also State ex rel. Tubbs v. City of Spokane*, 53 Wn.2d 35, 39, 330 P.2d 718 (1958) (holding that in managing its property, a city "acts in its proprietary capacity and has the same duties, obligations, and responsibilities, and also the same rights and powers, as other like proprietors"); *State v. Blair*, 65 Wn. App. 64, 67, 827 P.2d 356 (1992) ("The State, no less than a private owner of property, has power to preserve property under its control for the use to which it is lawfully dedicated." (internal quotation marks omitted)). Without this principle, departments and offices of cities throughout the State could not make the day-to-day decisions they need in order to efficiently and safely managing their facilities for the use and benefit of the municipality and its residents.

Here, the Superintendent is charged with the management and control of the City's recreation systems. Seattle Mun. Code § 3.26.040. In order to carry out this mandate, the Superintendent may, among other things, adopt rules and policies concerning such things as the use of parks, the conduct of visitors in parks, restricted areas within parks, and recreation programs. Seattle Mun. Code § 18.12.040. Consistent with this authority to set rules and

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

6

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

policies, the Superintendent has issued the Rule at issue here relating to a condition of use for Parks facilities, which "does not include any criminal or civil penalties." Friedli Decl., Ex. A ¶ 6.1. The Rule is not an ordinance adopted by the Seattle City Council or an order by the Mayor, but instead simply "constitutes conditions placed upon a person's permission to enter or remain" in Seattle parks facilities, consistent with the City's authority as a proprietor of City property. *Id.* Therefore, Plaintiffs here face a heavy burden in overturning the City's reasonable and narrow Rule, enacted to protect its residents while they are using its property.

 2.     **The Preemption Statute Does Not Preempt Local Rules or Policies.**

 The Preemption Statute preempts "laws and ordinances," but includes no language reflecting an intention to preempt local "rules" and "policies." RCW 9.41.290. Where a statute's language is clear, "its plain meaning must be given effect without resort to rules of statutory construction." *Applied Indus. Materials Corp. v. Melton*, 74 Wn. App. 73, 78, 872 P.2d 87 (1994). Moreover, the Legislature is presumed to understand what it is doing in drafting the language of a statute. *Id.* at 79. For this reason, Washington courts require that the "Legislature must *expressly* indicate an intent to preempt a particular field." *Weden v. San Juan County*, 135 Wn.2d 678, 695, 958 P.2d 273 (1998). Therefore, as a threshold matter, the plain language of the Preemption Statute only extends to laws and ordinances that purport to regulate firearms, none of which encompass the City's Rule. That should end the inquiry.

 However, even if the Court were to determine that the Preemption Statute is ambiguous, the canons of statutory construction provide further evidence that the City's Rule is not covered. First, in interpreting a statute, "[o]missions are deemed to be exclusions." *In re Detention of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). Also, "[i]n construing a statute, it is always safer not to add to, or subtract from, the language of the statute *unless imperatively required* to make it a rational statute." *Applied Indus.*, 74 Wn. App. at 79. As a consequence, the Legislature's choice only to cover laws and ordinances in the Preemption Statute is deemed to exclude rules. In addition, "when a former statute is amended, or an uncertainty is clarified by subsequent legislation, the amendment is strong evidence of what

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

the Legislature intended in the first statute." *State v. Baldwin*, 109 Wn. App. 516, 527, 37 P.3d 1220 (2001). Importantly, in 1985, "RCW 9.41.290 was amended *to clarify* the preemptive intent of the section." *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 798 n.1, 808 P.2d 746 (1991) (emphasis added). Although the Legislature substantially modified the Preemption Statute, it left intact the limited references to "laws and ordinances" without extending the reach of the statute to "rules" or "policies." Keenan Decl., Ex. A (Act of Apr. 9, 1985, ch. 428, 1985 Wash. Laws 1866 (amending RCW 9.41.290)). When the Legislature set out specifically to ensure that its preemptive effect was clear, it continued that omission.

The significance of this omission is highlighted by the fact that the Legislature is explicit when it wishes to preempt "rules" in other similar preemption statutes. Thus, in contrast to the limited references to "laws and ordinances" in RCW 9.41.920, other preemption statutes under the Revised Code of Washington make specific reference to rules and other types of local administrative actions that they purport to preempt. *See, e.g.*, RCW 9.94A.8445(1) (intending to "preempt all *rules*, regulations, codes, statutes, or ordinances of all cities" (emphasis added)); RCW 19.190.110 ("This chapter supersedes and preempts all *rules*, regulations, codes, ordinances, and other laws adopted by a city . . . ." (emphasis added)); RCW 46.61.667(5) ("The state preempts the field . . ., and this section supersedes any local *laws*, *ordinances*, orders, *rules*, or regulations enacted by a . . . municipality . . . ." (emphasis added)); RCW 80.50.110(1) (preempting "any other law of this state, or any *rule* or regulation" (emphasis added)).

As the language in these other preemption statutes reflects, the Legislature very clearly knows how to specify the reach of its enactments. Because "[a] legislative body is presumed not to have used superfluous words," *Applied Indus.*, 74 Wn. App. at 79, one can presume that when the Legislature specified that it was preempting "laws, ordinances, . . . [and] rules" in one statute, e.g., RCW 46.61.667(5), but only "laws and ordinances" in the statute at issue here, those differences were intentional. It is telling that when it set out to clarify the

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

8

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

preemptive effect of RCW 9.41.290, more than tripling the length of the statute,[2] one of the few things the Legislature did not amend was the two specific references to "laws and ordinances." Furthermore, because Seattle's Rule is not a regulation of firearms of general application to all persons throughout the City, it can hardly be said that reading the Preemption Statute to cover rules is "*imperatively required* to make it a rational statute." *Applied Indus.*, 74 Wn. App. at 79 (emphasis added).

### 3. The Rule Does Not Include Criminal Penalties.

Seattle's Rule is also not preempted because it is not a general regulation of firearms subject to criminal penalties. "[T]he central purpose of RCW 9.41.290 was to eliminate *conflicting municipal criminal codes* and to 'advance uniformity in *criminal* firearms regulation.'" *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 356, 144 P.3d 276 (2006) (quoting *Cherry*, 116 Wn.2d at 801). Thus, the State Supreme Court explained in *Cherry*: "The reasonable conclusion is that RCW 9.41.290 was enacted to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes regulating the general public's possession of firearms." *Cherry*, 116 Wn.2d at 801; *see also id.* ("We hold that the Legislature, in amending RCW 9.41.290, sought to eliminate a multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation.").

Moreover, the fact that the Firearms Act and its Preemption Statute are codified under Washington's criminal code at Title 9 is "particularly significant," *Sequim*, 158 Wn.2d at 356, and "supports [the court's] analysis regarding the *penal* focus of the preemption clause." *Id.* at 356 n.6. (emphasis added). Therefore, in contrast to criminal enactments, "it follows that a municipal property owner may impose conditions related to firearms for the use of its property in order to protect its property interests." *Id.* at 357. Here, the Rule "does not include any criminal or civil penalties," but instead places conditions "upon a person's permission to enter or remain at a designated Parks Department facility at which appropriate signage has been posted." Friedli Decl., Ex. A ¶ 6.1. As simply a condition of entry or use with no criminal

---

[2] In amending the Preemption Statute, the Legislature increased its size from 42 to 142 words. Keenan Decl., Ex. A (Act of Apr. 9, 1985, ch. 428, 1985 Wash. Laws 1866 (amending RCW 9.41.290)).

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

penalty attached to the possession of firearms, the Rule is well outside the reach of the Preemption Statute.

Additionally, "[s]tatutes should be construed to effect their purpose and courts should avoid unlikely, strained, or absurd results in arriving at an interpretation." *Cherry*, 116 Wn.2d at 802. Thus in *Cherry*, the court characterized the argument that the Preemption Statute prevented a municipal employer from prohibiting firearms on the job as an "extreme interpretation," and held that the policy at issue there was not preempted. *Id.* at 802-03. Similar to *Cherry* and *Sequim*, the City here was acting in its capacity as a property owner to protect its interests by ensuring the safety of visitors to municipal property, something that another trial judge of the King County Superior Court has already allowed under the Preemption Statute.[3] The position advanced by Plaintiffs, that a municipality cannot condition use of its property with respect to deadly firearms, is the kind of "extreme interpretation" of the Preemption Statute that the courts have already rejected, and further supports judgment for Defendants.

Plaintiffs' repeated references to the State Attorney General Opinion ("AGO") in support of its arguments (Mot. at 4, 13; Declaration of Steven W. Fogg in Support of Pls.' Mot. for Summ. J. ("Fogg Decl.") Ex. E), are not controlling and are not entitled to deference because the court "remains the final authority on the proper construction of a statute." *Wash. Fed'n of State Employees, Council 28, AFL-CIO v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 165, 849 P.2d 1201 (1993); *ATU Legislative Council of Wash. v. State*, 145 Wn.2d 544, 554, 40 P.3d 656 (2002) ("However, this court gives little deference to attorney general opinions on

---

[3] *Estes v. Vashon Maury Island Fire Protection Dist. No. Thirteen*, No. 05-2-02732-1 KNT (King County Super. Ct. Mar. 9, 2005), Keenan Decl. Ex. B (Order). Washington courts permit parties to cite the unpublished opinions of one trial court to another trial court. *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 248, 178 P.3d 981 (2008). In *Estes*, the plaintiff sought to overturn a fire district's policy prohibiting "the possession and use of firearms and other dangerous weapons by its officers and members or by *visitors* . . . while on [D]istrict property," arguing in part that the policy was preempted under RCW 9.41.290. Keenan Decl. Ex. B (Motion) at 1 (emphasis added; alteration in original). The Fire District then moved for summary judgment, in part on the question: "Does RCW 9.41.290 prohibit a public agency and employer from banning firearms on premises owned by the agency?" *Id.* at 2. In support of its position that the policy was not preempted, the Fire District argued that the rule in *Cherry* allowed for the policy, "regardless of who it affects." *Id.* at 4. The trial court, after considering the pleadings, granted the defendant's motion for summary judgment. *Id.* (Order).

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

issues of statutory construction.").[4] In particular, the portion of the AGO that addresses municipal authority to set conditions of use of its own property is little more than a sentence, with little or no legal reasoning, and without additional supporting authority. Fogg Decl. Ex. E at 4.

### C. Injunctive Relief is Inappropriate.

"'An injunction is an extraordinary equitable remedy designed to prevent serious harm,'" and "'[i]ts purpose is not to protect a plaintiff from mere inconveniences or speculative and insubstantial injury.'" *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 221, 995 P.2d 63 (2000) (quoting *Tyler Pipe Indus., Inc. v. State Dep't of Revenue*, 96 Wn.2d 785, 796, 638 P.2d 1213 (1982)). "An injunction does not issue to a petitioner as an absolute right and is granted only on a clear showing of necessity . . . ." *Holmes Harbor Water Co. v. Page*, 8 Wn. App. 600, 603, 508 P.2d 628 (1973). A party seeking permanent injunctive relief must show: (1) that the party has a clear legal or equitable right; (2) that the party has a well-grounded fear of immediate invasion of that right; and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to the party. *Wash. Fed'n of State Employees, Council 28, AFL-CIO v. State*, 99 Wn.2d 878, 888, 665 P.2d 1337 (1983). Failure to establish any one or more of these three criteria "dictates that the requested relief be denied." *Id.* Significantly, "since injunctions are addressed to the equitable powers of the court, the listed criteria must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, *the interests of the public.*" *Tyler Pipe*, 96 Wn.2d at 792 (emphasis added). Thus, a request for injunctive relief "will be denied if the harm done to the defendant by granting the injunction will be disproportionate to the benefit secured by the plaintiff."

---

[4] Plaintiffs' citation to a letter from Mayor Nickels Representative Frank Chopp in 2006 is similarly unavailing. Mayor Nickels requested the State's assistance on "regulations" relating to "gun crime." Declaration of Gregory J. Nickels, Ex. A at 1-2. In fact, Mayor Nickels provided four very specific examples of where he thought the Legislature should act: (1) using gun tracing data to combat trafficking in guns; (2) banning assault weapons; (3) requiring background checks on firearms sales at gun shows; and (4) requiring safe storage of firearms. *Id.* at 2-3. Nowhere in this letter, which Plaintiffs hold out as an 'admission,' (Mot. at 13), did Mayor Nickels state that the City was preempted from setting reasonable conditions of use on municipal property. This is because, unlike the specific proposals Mayor Nickels outlined in his letter, the Rule at issue here does not purport to regulate firearms generally throughout the City, nor does it relate to criminal statute.

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

11

1    *Holmes*, 8 Wn. App. at 603. Ultimately, a court may refuse to enjoin or compel an action on

2    equitable principles. *Arnold v. Melani*, 75 Wn.2d 143, 146-47, 449 P.2d 800 (1968). In light

3    of these stringent standards and balancing of interests, including those of Defendants and the

4    public, Plaintiffs face a difficult task in demonstrating entitlement to injunctive relief.[5]

5                **1.     Plaintiffs Have No Clear or Equitable Rights at Stake.**

6        As a threshold matter, Plaintiffs fail to satisfy the first and most significant criterion for

7    the granting of injunctive relief, because they do not have a clear legal or equitable right to

8    carry firearms into Parks facilities. *See* Section IV.A, *supra*. First, the Second Amendment

9    bears no application at all, and if it did, the narrow right it provides readily accommodates the

10    Rule at issue here. *Heller*, 128 S. Ct. at 2816-17. Second, the Washington Supreme Court has

11    consistently held that the right to bear arms in the State Constitution is not absolute, and thus is

12    subject to reasonable regulation. *City of Seattle*, 129 Wn.2d at 593. In short, Plaintiffs have

13    not on this motion proved that they have any federal or state constitutional right that has been

14    violated by Defendants. Nor have they identified any other source of a right that is *personal* to

15    any Plaintiff.

16        Even if RCW 9.41.290 preempted the Rule, it confers no private right of action on any

17    individual. Plaintiffs have not alleged any claim for damages arising under RCW 9.41.290,

18    nor could they, because that statute, included in the *criminal* chapter of the Revised Code of

19    Washington concerning firearms, includes no language reflecting legislative intent to create

20    private rights of action in favor of citizens. Seattle concedes (for purposes of this motion) that

21    there exists a justiciable controversy within the scope of the Declaratory Judgment Act

22    ("DJA"), but Plaintiffs have cited no legal precedent holding that the existence of a claim

23    under the DJA is tantamount to, or gives rise to, a personal right such that an action for

24    injunction may lie. With no clear legal or equitable right at stake, no injunction may issue.

25

26

27       [5] "It is a well-established general rule that courts will not by injunction interfere with the exercise of discretionary powers conferred by the state upon municipal corporations, acting through their duly appointed officers, merely because such action may be unwise, extravagant, or a mistake of judgment." *State ex rel.*

28    *Gebhardt v. Superior Court for King County*, 15 Wn.2d 673, 679-80, 131 P.2d 943 (1942).

Orrick Herrington &amp; Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

### 2.  Plaintiffs Have Suffered No Injury.

Various Plaintiffs submitted declarations stating that they have been precluded from using the City's parks and facilities. The evidence is to the contrary. While many facilities where children and youths are likely to be present are restricted, the majority of walking areas and trails in City parks have not been posted with signs and remain accessible to all users without any conditions concerning firearms. Friedli Decl. ¶ 5. Even in the facilities that have signs restricting the possession of firearms, the areas covered by the restrictions are often limited to only a small portion of the park, leaving tracts of open recreational space open to Plaintiffs. *Id.* For example, of the approximately 135 acres of Seattle's Lincoln Park, just a play area, swimming pool, and ball field are posted under the Rule. *Id.* Moreover, no signs have been posted at Discovery Park as of yet, and when signs are posted, the Parks Department anticipates covering just a small portion of its more than 500 acres. *Id.* Thus, Ms. Chan, Mr. Kennar, Mr. Carter, and Mr. Peterson,[6] all of whom testified that they principally use City parks facilities for walking, may continue to walk with concealed pistols at numerous parks facilities, including places such as Lincoln Park and Discovery Park. Thus, for purposes of this motion, the Court must assume that there is a dispute of fact as to whether any of these Plaintiffs have been prevented from using the parks facilities they have traditionally used for recreational purposes.

In every instance, the facts show that each individual Plaintiff contrived a situation where he or she would be asked to leave a facility, when in truth, they had no genuine present intention to recreate. These encounters, manufactured for purposes of this litigation, all of which took place *after* Plaintiffs filed their Complaint, are not instances of injury, but staged events, intended to ensure that Plaintiffs had standing. Because Plaintiffs were not genuinely attempting to use the facilities for intended recreational and educational purposes (and no declaration asserts otherwise), they have suffered no cognizable injury from their purported exclusions.

---

[6] Mr. Goedecke testified that he visits or traverses "through" Victor Steinbrueck Park about "once per month." Declaration of Gary G. Goedecke in Support of Pls.' Mot. for Summ. J. ("Goedecke Decl.") ¶ 8.

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

Indeed, as they admitted in their depositions, none of the Plaintiffs has made a serious inquiry—by physical observation, telephone, or email—to determine whether the City parks facilities they previously used for walking and hiking remain accessible to persons with guns. In consequence, none of them has proved a substantial injury that should be the subject of an injunction. However, as discussed above, the City has submitted evidence that Plaintiffs have not been injured. As this request for entry of judgment including a permanent injunction has been made under Rule 56 and not Rule 65, the existence of a genuine dispute as to the fact of injury requires denial of the requested relief.

### a. Plaintiff Carter

Plaintiff Raymond Carter is not so much a victim of City policy as a man who has been in search of a way to become involved in firearm activism since well before the Rule was passed. As early as July 2008, nearly a year and half *before* the Rule in dispute here was issued, Mr. Carter received an email from Dave Workman, communications director for Plaintiff Second Amendment Foundation ("SAF") stating that SAF founder "Alan Gottlieb would like to invite you to be a plaintiff in a . . . lawsuit against the City of Seattle and Mayor Greg Nickels." Keenan Decl. Ex. E (Carter Dep. Ex. 10). In response, Mr. Carter asked what he would need to do to acquire standing in such a suit: "[P]op down to city hall, meander in to check my gun on the way to a city council meeting, get trespassed out, possibly get arrested . . . ." *Id.*

Mr. Carter was entirely forthright about another significant fact: He has been actively seeking *employment* with SAF. Keenan Decl. Ex. E (Carter Dep. at 11-13). Indeed, he worried that becoming a litigant might delay potential employment with SAF: "I remain available to join the SAF team full-time . . . , though I can see solid strategic reasons to hold me at arms length for the duration of the current kerfuffle . . . ." Keenan Decl. Ex. E (Carter Dep. Ex. 11). As to why there would be "solid strategic reasons" to maintain distance between Carter and the SAF, Carter explained that "it's more the keeping up appearances . . . that sometimes things can look a little too cutesy or set up." Keenan Decl. Ex. E (Carter Dep. at

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    12:8-11).

2        After the Complaint in this case was filed, the record also shows that Mr. Carter went

3    to considerable lengths to create a circumstance by which he would be "impacted " by the

4    City's Rule. Mr. Carter asserts that a "City employee instructed him—in writing—that he was

5    required to leave [a facility], pursuant to the Firearms Rule." Mot. at 9. In fact, Mr. Carter

6    approached the City employee, told her that he was carrying a firearm, and asked if that was

7    permitted. Keenan Decl. Ex. E (Carter Dep. at 28-29). Then, when the City employee told

8    Mr. Carter that she was unsure as to his question, he "pointed her to the city Web site," *id.* at

9    31:5, and waited as she inquired, *id.* at 31:6-7. After Carter effectively persuaded the

10   employee that he was in violation of the Rule, Carter then *dictated* the text for the

11   aforementioned letter to her: "She stated that she was unfamiliar with [how] such a thing

12   should read and asked me for some language. I tossed out a few concepts of things that should

13   probably be included . . . ." *Id.* at 32-33. But Carter was unsatisfied with the first draft of this

14   letter, so *he made his own handwritten edits*, included reference to his constitutional right, and

15   handed it back to the City employee, and had her produce *another* draft. *Id.* at 33-34 & Carter

16   Dep. Ex. 16. When asked if he created this encounter for purposes of this suit, Carter

17   responded: "That was part of my reasoning." *Id.* at 34:5-7.[7]

18       With respect to the alleged impact of the Rule, Mr. Carter declares that he "no longer

19   visits" places such as Alki Beach "because they are subject to the city's Firearms Rule and I do

20   not feel safe going there." Declaration of Raymond Carter in Support of Pls.' Mot. for Summ.

21   J. ("Carter Decl.") ¶ 8. However, in his deposition, Carter admitted that there were times when

22   he would visit Alki Beach without his firearm when he planned to go straight to a bar from the

23   park because firearms are prohibited in bars. Keenan Decl. Ex. E (Carter Dep. at 22-24).

24   Given how readily Mr. Carter disregarded *his* need for firearms when it conflicted with *his*

25   desire to visit a bar, the Court may infer that Mr. Carter's interest in personal safety is

26

---

27   [7] Carter then passed this letter, primarily drafted by him, to Dave Workman, communications director for
     Plaintiff SAF. Keenan Decl. Ex. E (Carter Dep. at 35:19-36:2). Workman apparently caused the text of the letter
     to appear in a fund-raising blog, above the plea: "**Donate to the Second Amendment Foundation and Protect**
28   **Gun Rights.**" Keenan Decl. Ex. E (Carter Dep. Ex. 17).

DEFS.' OPP'N TO MOT. FOR SUMM. J. &                15
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    substantially outweighed by the City's interest in creating a safe and secure environment.

2                  **b.**      **Plaintiffs Chan and Kennar**

3       In their depositions, Ms. Chan and Mr. Kennar testified that they visited Seattle parks

4    principally to walk with friends and family. Keenan Decl. Ex. C (Chan Dep. at 11:5-19);

5    Keenan Decl. Ex. D (Kennar Dep. at 24-28). Their declarations assert that the Rule now

6    prevents them from visiting these parks. Declaration of Winnie P. Chan in Support of Pls.'

7    Mot. for Summ. J. ("Chan Decl.") ¶ 7; Declaration of Robert Kennar in Support of Pls.' Mot.

8    for Summ. J. ("Kennar Decl.") ¶ 8. But neither Ms. Chan nor Mr. Kennar has made any effort

9    to contact the City to determine which portions of parks remain available to persons carrying

10    firearms, and whether any of the trails or beaches they have used in the past have been

11    designated pursuant to the Rule. Indeed, with one questionable exception, neither of these

12    Plaintiffs have even visited their favorite parks to see whether signs have been posted. At best,

13    there is an issue of fact whether these Plaintiffs have suffered any injury, because Defendants

14    have submitted evidence that the trail and walking areas of the parks they testified they used

15    have *not* been designated under the Rule. Friedli Decl. at ¶ 5.

16       The lack of effort to inquire about park accessibility contrasts noticeably with the

17    concerted efforts these Plaintiffs made to create a circumstance where they were excluded

18    from a Park facility. Winnie Chan was asked to be a plaintiff by her husband Thomas

19    McKiddie, Jr., who is the project manager for Plaintiff Citizens Committee for the Right to

20    Keep and Bear Arms. Keenan Decl. Ex. C (Chan Dep. at 34:17-24). Ms. Chan and

21    Mr. Kennar are Community Corrections Officers and know each other from work. Keenan

22    Decl. Ex. C (Chan Dep. at 13:5). With her husband participating, Ms. Chan and Mr. Kennar

23    agreed to meet at the Hiawatha Community Center. Keenan Decl. Ex. C (Chan Dep. at 20:14-

24    18). Their intention was to enter the Center and create a circumstance or event in which they

25    would be asked to leave for carrying a firearm. Keenan Decl. Ex. C (Chan Dep. at 21:15-20).

26    When the three went to the Community Center, they all approached a City employee, advised

27    him that they were carrying firearms (peaceably), advised him about the substance of the Rule,

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

16

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    and essentially asked him to exclude them from the facility. Keenan Decl. Ex. C (Chan Dep.

2    at 17-21). Then, similar to Mr. Carter's efforts to obtain "evidence" of exclusion, Ms. Chan's

3    husband actually handwrote a document for the City employee to sign, purporting to require

4    them to leave; at the request of Plaintiffs and Mr. McKiddie, the Parks employee signed the

5    letter Ms. Chan's husband wrote, and then the Plaintiffs and Mr. McKiddie each signed as

6    "witnesses." Keenan Decl. Ex. C (Chan Dep. at 30:12-24 & Ex. 3); Keenan Decl. Ex. D

7    (Kennar Dep. at 34-36).

8         The contrived efforts Plaintiffs made to improve the odds they would survive any

9    challenge to their standing are understandable. But, even if they have manufactured standing,

10   that is a different question from whether they have sustained genuine injury. Defendants

11   submit that persons who attend a facility for the principal purpose of creating evidence for use

12   in litigation, and who do not attend a facility principally for the recreational or educational

13   uses for which the facility is intended, have not established a substantial injury that should

14   give rise to injunctive relief.

15                    **c.    Plaintiff Peterson**

16        Before the Rule was issued, Mr. Peterson made only a limited number of visits to

17   Seattle Parks. Peterson Dep. at 8-13. Since then, like the other Plaintiffs, Mr. Peterson admits

18   that he has made no effort to travel from his home in Lynnwood to Seattle to ascertain whether

19   parks he uses for walks include areas prohibiting firearms. Keenan Decl. Ex. F (Peterson Dep.

20   at 28:5-25). To the contrary, Mr. Peterson testified to his inaccurate understanding that guns

21   are banned from all areas of *all* parks. Keenan Decl. Ex. F (Peterson Dep. at 28:11-22). In

22   this respect, he is in error. Friedli Decl. ¶ 5.[8] Again, drawing all inference in Defendants'

23   favor, Mr. Peterson is free to use the parks he used formerly, for all of the purposes for which

24   he used them. At best, there is a disputed issue of fact whether Mr. Peterson has suffered any

25   injury, and if he has, whether it is sufficiently compelling to warrant an injunction.

26   _____

27   [8] In fact, Mr. Peterson's only complaint during his deposition was that in 2007 a Seattle Police Officer asked
     him to store his pistol rather than *openly* carrying it into Volunteer Park during a festival that pre-dated the Rule.
     Keenan Decl. Ex. F (Peterson Dep. at 23:17-24:20) (It is unlawful for a person to carry a firearm in a manner that
28   "warrants alarm for the safety of other persons." RCW 9.41.270(1)).

     DEFS.' OPP'N TO MOT. FOR SUMM. J. &          17
     DEFS.' CROSS-MOT. FOR SUMM. J.                              Orrick Herrington & Sutcliffe LLP
     09-2-39574-8 SEA                                            701 5th Avenue, Suite 5600
                                                                 Seattle, Washington 98104-7097
                                                                 tel+1-206-839-4300

### d. Plaintiff Goedecke

Mr. Goedecke's declaration indicates that he visits or travels "through" Victor Steinbrueck approximately once a month. Goedecke Decl. ¶ 8. Traveling through a park once a month is not a substantial use, and given that Victor Steinbrueck Park is very small and is easily circumvented on adjacent sidewalks to get to and from nearby locales, Mr. Goedecke has suffered no substantial injury. Here again, as with each of the other Plaintiffs, Mr. Goedecke contrived the circumstance in which he claims he was excluded from this park. Keenan Decl. Ex. G (Deposition of Gary Goedecke ("Goedecke Dep.") at 17-20). As with all of the individual Plaintiffs, Mr. Goedecke's "use" of the park as an occasional throughway when sidewalks are available is at best incidental and insubstantial, and does not support issuance of an injunction.

### e. Organizational Plaintiffs

Although each Organizational Plaintiff has also submitted a declaration, each identifies just one or two members who use parks. Keenan Decl. Ex. H (Defs.' First Interrog. & Req. for Produc. to Pls. & Resp. & Objections Thereto at 16). Simply put, the Organizational Plaintiffs have submitted no cognizable evidence establishing that they have suffered injury.

As their own statements reveal, and drawing all inferences in Defendants' favor, there is at best a disputed issue of fact whether Plaintiffs have suffered injury, and if they have, whether it is sufficient to warrant an injunction. The failure of each Plaintiff to even *inquire* whether they can continue to walk and use trails in Discovery, Volunteer, Alki, and Lincoln Parks, suggests that they really did not want to know the answer. Defendants are entitled to an inference that Plaintiffs, at least two of whom have direct pecuniary motives for being involved with Organizational Plaintiffs, are more interested in litigating gun rights than in using Seattle Parks for recreational and educational purposes. Even if their exclusions were considered injuries, however, they were not substantial, and are much less significant than the public's interest in promoting safe and secure recreational environments for children.

DEFS.' OPP'N TO MOT. FOR SUMM. J. &          18
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

### 3. The Public Interest Favors Denial of an Injunction.

The balance of hardships tips strongly in favor of the City in its efforts to promote safe and secure parks and facilities for youth to enjoy. *See* Friedli Decl. ¶¶ 11-13. Because a request for injunction is addressed to the Court acting in equity, the criteria for granting such relief "must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, *the interests of the public.*" *Tyler Pipe*, 96 Wn.2d at 792 (emphasis added). Here, the City and the parks visitors it protects have a strong interest in establishing conditions for the safe and secure use of City-owned parks and facilities. Friedli Decl., Ex. A ¶ 1.3. As with public schools, the City's interest in keeping firearms out of designated areas of Parks facilities are designed to protect children and families who use the parks for recreational purposes. *Id.* Parks visitors have an interest in using the City's parks and facilities without fear that some individuals will be carrying firearms. *Id.* Thus, the interests of parks visitors in having Parks facilities that are safe and secure for the education and recreation of children and youth strongly favors denial of an injunction here.

The Rule at issue here is intended to promote the parks visitors' interest in safety by reducing gun violence and injury from avoidable incidents, including thefts, accidents, and escalating confrontations. *Id.* ¶ 1.6. For example, gun owners who engage in sports activities, such as swimming at beaches or pools, or playing basketball or tennis, running, or enjoying playground equipment, may remove their guns and place them in purses, bags, backpacks, jackets, or other places on the ground or floor where they are not locked and secure, they are not in line of sight at all times, and they are not within immediate reach of the owner 100% of the time. These unsafe storage and handling situations make firearms susceptible to being stolen, mishandled, or accidentally discharged. *See* Keenan Decl., Ex. C (Chan Dep. at 30-32) (Ms. Chan and her husband would leave loaded firearms in a backpack on the ground while they played tennis at the Hiawatha Community Center); Keenan Decl., Ex. D (Kennar Dep. at 41:24-42:12) (opining about safe storage in public).

Recent research reflects that increasing the number of armed individuals in public does

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

19

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1 | not enhance public safety. In a study of criminal assaults conducted by the University of

2 | Pennsylvania, researchers determined that persons who were carrying a firearm (presumably

3 | for self-defense) at the time of the assault were *4.5 times more likely to be shot* than persons

4 | who were not carrying a firearm. Friedli Decl. ¶ 8 & Ex. A ¶ 1.10. In other words, firearms

5 | did not enhance personal safety across the population generally. Such research further

6 | supports the City's and parks visitors' interest in the continued existence of the Rule, and

7 | weighs heavily against the relief that this small group of Plaintiffs seeks.

8 |     Several of the Plaintiffs refer in their declarations to their extensive personal training in

9 | the storage, handling, transportation, and use of firearms. Chan Decl. ¶ 4; Kennan Decl. ¶ 5;

10 | Carter Decl. ¶ 6; Peterson Decl. ¶ 7; Goedecke Decl. ¶ 6. Plaintiffs imply that they can be

11 | trusted to handle firearms safely and responsibly, and thus that the Parks Rule does not

12 | enhance safety. In actuality, there is no requirement that gun owners have any training at all,

13 | let alone know and comply with clear policies limiting the use of deadly force.[9] Plaintiffs are

14 | "exceptions to the rule" who merely highlight the need to remove guns from City-owned

15 | facilities used by children and youths, who, by the way, are not permitted to carry firearms.[10]

16 |     For these reasons, among others, it is City policy that *only* members of the Seattle

17 | Police Department and security officers are authorized to carry firearms to promote public

18 | safety and enforce the peace in Parks facilities. Friedli Decl., Ex. A ¶ 4.0. It is not City policy

19 | to attempt to enhance public safety by relying on private gun owners. Rather, the City has

20 | determined that children and youths will find a safer and more secure environment, with a

21 | lower risk of accidental or intentional injury or death due to incidents involving deadly

22 | firearms, if firearms are not permitted in designated facilities intended for their use.

23 | **V.     CONCLUSION**

24 |     For the foregoing reasons, Defendants respectfully request that the Court deny

---

[9] RCW 9.41.070; Keenan Decl. Ex. C (Chan Dep. at 33:20-22); Keenan Decl. Ex. E (Carter Dep. at 40:20-22); Keenan Decl. Ex. F (Peterson Dep. at 16:7-9); Keenan Decl. Ex. G (Goedecke Dep. at 23:5-7).

[10] For purposes of this motion, the Court must accept the reasonable inference that many gun owners visiting City parks have never had any safety training. The Court must also reasonably infer that but for the Rule, numerous untrained and potentially dangerous gun owners will routinely visit parks facilities and endanger children and youths around them.

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

Plaintiffs' Motion in its entirety and grant Defendants' Cross-Motion and find that this

reasonable Rule is not preempted.

Dated: February 1, 2010

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____

Daniel J. Dunne (WSBA No. 16999)
ddunne@orrick.com
George E. Greer (WSBA No. 11050)
ggreeer@orrick.com
David Keenan (WSBA No. 41359)
dkeenan@orrick.com

701 5th Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone: +1-206-839-4300
Facsimile: +1-206-839-4301

*Attorneys for Defendants*

Dated: February 1, 2010

PETER S. HOLMES
SEATTLE CITY ATTORNEY

By: _____ FOR:

Gary Keese (WSBA No. 19265)
Assistant City Attorney
Gary.Keese@seattle.gov

Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
Telephone: +1-206-684-8200
Facsimile: +1-206-684-8284

*Attorneys for Defendants*

OHS West:260815239.11

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

21

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300