# EXHIBIT A



FILED

09 OCT 28 AM 11:23

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 09-2-39574-8 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

WINNIE CHAN, an individual; ROBERT
KENNAR, an individual; RAYMOND
CARTER, an individual; GRAY PETERSON,
an individual; GARY G.GOEDECKE, an
individual; THE SECOND AMENDMENT
FOUNDATION, INC., a Washington non-
profit corporation; CITIZENS COMMITTEE
FOR THE RIGHT TO KEEP AND BEAR
ARMS, a Washington non-profit corporation;
WASHINGTON ARMS COLLECTORS,
INC., a Washington non-profit corporation;
AND NATIONAL RIFLE ASSOCIATION OF
AMERICA, INC., a New York non-profit
association,

          Plaintiffs,

    v.

CITY OF SEATTLE, a municipality;
GREGORY J. NICKELS, Mayor of the City of
Seattle, in his official capacity; SEATTLE
DEPARTMENT OF PARKS AND
RECREATION, a department of the City of
Seattle; and TIMOTHY A. GALLAGHER,
Superintendent, in his official capacity,

          Defendants.

No.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs, by and through their attorneys, allege the following complaint for declaratory and injunctive relief against Defendants City of Seattle, Mayor Greg Nickels, Seattle Department of Parks and Recreation, and Superintendent Timothy Gallagher:

## NATURE OF THE CASE

It is an incontestable fact that the State of Washington has the exclusive right to regulate the possession of firearms in Washington. RCW 9.41.290. It is equally incontestable that cities in the State of Washington may not enact local laws or regulations that prohibit the possession of firearms on city property. *Id.* The Defendants have ignored these clear legal principles by issuing a city regulation that bans the possession of firearms on certain city properties. Defendants have no right to simply ignore aspects of the law with which they disagree. Accordingly, Plaintiffs bring this action for injunctive and declaratory relief, and ask this Court for an order that would require the Defendants to follow the law.

## PARTIES

1.     Plaintiff Winnie Chan is a resident of Seattle, Washington. She has a valid and current Washington Concealed Pistol License and visits Seattle parks and recreation facilities.

2.     Plaintiff Robert Kennar is a resident of Federal Way, Washington. He has a valid and current Washington Concealed Pistol License, and visits Seattle parks and recreation facilities.

3.     Plaintiff Raymond Carter is a resident of Seattle, Washington. He has a valid and current Washington Concealed Pistol License, and visits Seattle parks and recreation facilities.

4.     Plaintiff Gray Peterson is a resident of Lynnwood, Washington. He has a valid and current Washington Concealed Pistol License, and visits Seattle parks and recreation facilities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

5.      Plaintiff Gary Goedecke is a resident of Bothell, Washington who owns a business located in Seattle, Washington. He has a valid and current Washington Concealed Pistol License, and visits Seattle parks and recreation facilities.

6.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including thousands in the State of Washington. The purposes of SAF include education, research, publishing, and legal action focusing on the constitutional right to own and possess firearms. SAF brings this action on behalf of itself and its members.

7.      Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("Citizens Committee") is a Washington nonprofit corporation with its principal place of business in Bellevue, Washington. Citizens Committee has over 650,000 members and contributors nationwide, with approximately 22,000 members in the State of Washington. Citizens Committee seeks to preserve Second Amendment and state constitutional rights through education and advocacy and strives to ensure that firearms rights are not misinterpreted in derogation of the people's right to keep and bear arms for self-defense and other constitutional purposes. Citizens Committee brings this action on behalf of itself and its members.

8.      Plaintiff Washington Arms Collectors ("WAC") is a Washington non-profit corporation and membership organization with its principal place of business in Renton, Washington. WAC has approximately 15,000 members, many of whom reside in, or work in, the City of Seattle. WAC provides a forum for collectors of arms and their accouterments to exchange objects and information in a setting of fellowship and camaraderie, in order to foster research, education, and publication concerning arms and their relationship to history.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 3

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

9.    Plaintiff National Rifle Association of America, Inc. ("NRA") is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia.  NRA has almost four million members, including thousands of members in the State of Washington.  NRA's purposes include protection of the right of citizens to have firearms for lawful defense, hunting, and sporting use, and to promote public safety.  NRA brings this action on behalf of itself and its members.

10.    Defendant City of Seattle ("Seattle" or "the City") is a municipal corporation and first-class city organized under the laws of the State of Washington.

11.    Defendant Gregory J. Nickels ("Mayor Nickels") is the Mayor of the City of Seattle.  Mayor Nickels is the head of the Executive Department, and in that capacity directs and controls all City offices and departments except where that authority is granted to another office by the Seattle City Charter.

12.    Defendant Department of Parks and Recreation ("Parks Department") is an agency of the City of Seattle which was created by the Seattle City Charter and which oversees the management of approximately 400 parks and open areas in its approximately 6,200-acre park system in Seattle, Washington.

13.    Defendant Timothy A. Gallagher is the Superintendent of Seattle's Department of Parks and Recreation.  Superintendent Gallagher is responsible for the management and control of the park and recreation system of the City of Seattle.

## JURISDICTION & VENUE

14.    This Court has jurisdiction under RCW 2.08.010, RCW 7.24.010, and RCW 7.40.010.

15.    Venue is properly in this Court under RCW 4.12.020(2) and RCW 4.12.025(1).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 4

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

9

## FACTS

16.    The ownership of a firearm is a clearly protected right under the United States and Washington Constitutions.  In addition, Washington statutory law grants adults who meet certain criteria the absolute right to obtain a Concealed Pistol License.  Under state law, a Concealed Pistol License entitles the licensee to carry a firearm in public locations, with limited exceptions such as jails, courtrooms, public mental health facilities, bars, airports, schools, and outdoor music festivals.  *See* RCW 9.41.

17.    Washington law states in no uncertain terms that the authority to regulate firearms rests exclusively with the State.  Washington law expressly states:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the . . . possession . . . of firearms, or any other element relating to firearms or parts thereof[.]  Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter.  [. . .]

RCW 9.41.290 ("Preemption Clause").[1]

18.    On June 6, 2008, Mayor Nickels issued Executive Order 07-08 entitled "Gun Safety at City Facilities."  This Executive Order directed all City departments to conduct an inventory of present policies, rules, and leases to determine the extent to which they can prohibit firearms on City property and to implement plans to make such changes.  A true copy

---

[1] RCW 9.41.300, which is referenced in the Preemption Clause, permits cities, towns, counties, and other municipalities to enact laws and ordinances restricting the discharge of firearms in certain locations and restricting the possession of firearms in a municipality-owned stadium or convention center.  RCW 9.41.300(2).  This statutory provision is inapplicable to the present case, which concerns city restrictions that have nothing to do with the discharge of firearms or the possession of firearms in stadiums or convention centers.

Moreover, while the Washington Supreme Court has held that a municipal property owner may impose conditions regarding firearms on its property, it may do so *only* as those conditions relate to the *private use* of municipality-owned property.  *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 357, 144 P.3d 276 (2006) (emphasis added).  The city restrictions at issue here illegally impose conditions on the *public* use of city-owned property.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 5

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900




1    of this Executive Order is attached to this Complaint as Exhibit A and is incorporated by this

2    reference.

3        19.    In October 2008, *after* Mayor Nickels issued Executive Order 07-08,

4    Washington Attorney General Rob McKenna issued an Opinion which put the City of Seattle

5    and Mayor Nickels on further notice that Washington cities may not enact local laws

6    prohibiting possession of firearms on city property or in city-owned facilities.  See AGO 2008

7    No. 8.  A true copy of this Opinion is attached to this Complaint as Exhibit B and is

8    incorporated by this reference.

9        20.    Attorney General McKenna's Opinion was written in language that made it

10   absolutely clear that cities in Washington do not have the authority to enact local laws that

11   prohibit the possession of firearms on city property.  Indeed, the Opinion opened with the

12   following colloquy:

13        Does a city in Washington have the authority to enact a local law that prohibits
         possession of firearms on city property or in city-owned facilities?

14

15        The answer to your question is no.  RCW 9.41.290 "fully occupies and preempts the
         entire field of firearms regulation" and preempts a city's authority to adopt firearms

16       law or regulations of application to the general public, unless specifically authorized
         by state law.  Accordingly, RCW 9.41.290 preempts a city's authority to enact local

17       laws that prohibit possession of firearms on city property or in city-owned facilities.

18       21.    Ignoring the incontestable Washington authorities discussed above, Defendants

19   have now illegally imposed restrictions on a citizen's right to possess a firearm on city-owned

20   property.  Specifically, on October 14, 2009, Seattle's Parks and Recreation Department

21   Superintendent Timothy Gallagher issued Rule/Policy Number P 060-8.14 ("Firearms Rule"

22   or "Rule").  That Rule states, in relevant part:

23        The Department, in its proprietary capacity as owner or manager of
         Department facilities, does not permit the carrying of concealed firearms or

24       the display of firearms, except by law enforcement officers and on-duty
         security officers, at Parks Department facilities at which: 1) children and

25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 6

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility.

Firearms Rule at ¶ 4.0.

22.     The Rule goes on to designate certain Parks Department facilities at which children and youth are likely to be present.  Those facilities are:

> 5.1.1 Playgrounds and Children's play areas;
> 5.1.2 Sports Fields, Sports Courts and other sports facilities;
> 5.1.3 Swimming and Wading Pools;
> 5.1.4 Spray Parks (Water Play Areas);
> 5.1.5 Teen Centers;
> 5.1.6 Community Centers;
> 5.1.7 Environmental Learning Centers;
> 5.1.8 Small craft centers;
> 5.1.9 Performing Arts Centers;
> 5.1.10 Tennis Centers;
> 5.1.11 Skateboard Parks;
> 5.1.12 Golf Courses; and,
> 5.1.13 Swim beaches.

Firearms Rule at ¶ 5.1.  At these facilities, the Parks Department Superintendent may post "appropriate signage indicating to the public that firearms are not permitted at that facility." *Id.* at ¶ 5.2.  The Rule becomes applicable to a particular Parks Department facility once signage has been posted at that facility.  *Id.* at ¶ 4.0.  A person who carries a concealed firearm or displays a firearm at a designated facility where appropriate signage is displayed may be ordered to leave by a police officer or other authorized City employee/agent. *Id.* at ¶ 6.0.  Refusal to leave may subject a violator to citation or arrest for criminal trespass. *Id.* at ¶ 6.1.  A true copy of the Firearms Rule is attached to this Complaint as Exhibit C and is incorporated by this reference.

23.     Also on October 14, 2009, the City issued a Press Release announcing the Firearms Rule and announcing that, by noon on Friday, October 16, 2009, signs would be posted at South Park Community Center at 8319 8th Avenue South, Garfield Community Center at 2323 East Cherry Street, and Bitter Lake Community Center at 13035 Linden

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – 7

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900



Avenue North.  The Press Release further stated that signs will be posted at all designated facilities by December 1, 2009.  A true copy of this Press Release is attached to this Complaint as Exhibit D and is incorporated by this reference.

24.    Defendants performed the above acts despite the fact that the authority to regulate firearms rests exclusively with the State of Washington.  Defendants' refusal to recognize this basic preemption principle has caused and will continue to cause irreparable harm to citizens who are now unable to exercise a basic constitutional right without fear of penalty or prosecution.

25.    The individual Plaintiffs in this lawsuit have suffered harm that is representative of the harm suffered by a broad class of citizens.  For instance, Plaintiff Winnie Chan is a Department of Corrections employee who lives and works in Seattle.  She has a current and valid Washington Concealed Pistol License.  Ms. Chan often carries her personal concealed weapon when she is not on-duty, in part because she worries that people she encounters in her line of work may retaliate against her when she is off-duty.  Ms. Chan enjoys visiting Seattle parks for recreation, however at least one of her favorite parks now displays a sign prohibiting firearms.  Because of the Firearms Rule, she is now unable to visit that park if she wants to exercise her legal right to possess her lawful firearm.

26.    Plaintiff Robert Kennar is a Department of Corrections employee who works in Seattle.  He has a current and valid Washington Concealed Pistol License.  Mr. Kennar always carries his personal concealed weapon when he is not on-duty and when he is lawfully permitted to do so, in part because he worries that people he encounters in his line of work may retaliate against him when he is off-duty.  In addition, Mr. Kennar often witnesses criminal activity in Seattle and himself has been a victim of crime in Seattle.  Mr. Kennar enjoys visiting Seattle parks for recreation, however at least one of his favorite parks now

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 8

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

13

1    displays a sign prohibiting firearms.  Because of the Firearms Rule, he is now unable to visit

2    that park if he wants to exercise his legal right to possess his lawful firearm.

3        27.    Plaintiff Raymond Carter lives and works in Seattle.  He has a current and

4    valid Washington Concealed Pistol License.  He is openly gay, and is a past co-chair of the

5    Seattle Pride Parade and a founder of the Seattle Chapter of Pink Pistols/Cease Fear.  Mr.

6    Carter always carries a concealed weapon when he is lawfully permitted to do so because he

7    feels that, as an openly gay man, he is susceptible to becoming a victim of hate-related crimes.

8    Mr. Carter enjoys visiting Seattle parks for recreation, as well as Seattle community centers

9    for public meetings.  Some of his favorite parks and community centers now display signage

10   prohibiting firearms.  Because Mr. Carter is concerned for his safety, he now refrains from

11   visiting those facilities because he is not able to possess his lawful firearm there under the

12   Firearms Rule.

13       28.    Plaintiff Gray Peterson lives in Lynnwood and works in Everett.  He has a

14   current and valid Washington Concealed Pistol License.  He is openly gay, and he always

15   carries a concealed weapon when he is lawfully permitted to do so because he feels that, as an

16   openly gay man, he is susceptible to becoming a victim of hate-related crimes.  Mr. Peterson

17   and his domestic partner enjoy visiting Seattle parks for recreation, however some of his

18   favorite parks now display signage prohibiting firearms.  Because Mr. Peterson is concerned

19   for his safety, he now refrains from visiting those facilities because he is not able to possess

20   his lawful firearm there under the Firearms Rule.

21       29.    Plaintiff Gary G. Goedecke lives in Bothell and owns a thirty-five year-old

22   business at Pike Place Market in Seattle.  He has a current and valid Washington Concealed

23   Pistol License.  Mr. Goedecke carries a concealed weapon when he is lawfully permitted to do

24   so in part because of the level of dangerous criminal activity in downtown Seattle.  Mr.

25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 9

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Goedecke enjoys visiting Seattle parks and beaches for recreation.  In addition, Mr.

2    Goedecke's business is directly adjacent to a Seattle park that has a high incidence of criminal

3    activity and he fears for the safety of himself and his employees.

4    **FIRST CAUSE OF ACTION: DECLARATORY RELIEF**

5    **-- Against All Defendants --**

6        30.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 29 above.

7        31.    A present controversy exists concerning whether Defendants have legal

8    authority to prohibit the carrying of concealed firearms at designated Parks Department

9    facilities during public use of those facilities.  The individual Plaintiffs' constitutional and

10   statutory rights to carry a firearm in public parks and community centers are affected by this

11   controversy.  In addition, the organizational Plaintiffs' Washington members' constitutional

12   and statutory rights to carry a firearm in public parks and community centers are affected by

13   this controversy, and the protection of these rights is germane to the organizational Plaintiffs'

14   purposes.

15       32.    Plaintiffs are entitled, under RCW 7.24 and Civil Rule 57, to an accelerated

16   judicial declaration that:

17           a.  The Firearms Rule violates Washington statutory and constitutional law and is

18   therefore null and void; and

19           b.  Defendants lack legal authority to enact any ordinance, law, or rule that

20   prohibits the carrying of concealed firearms at Parks Department facilities during public use

21   of those facilities; and

22           c.  Defendants may not post signage in Parks Department facilities

23   communicating that firearms are not permitted, withdraw a person's permission to enter or

24   remain in Parks Department facilities, or enforce the Firearms Rule by any other means; and

25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 10

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

d.  Defendants must immediately remove all signage posted on City property pursuant to the Firearms Rule.

33.    Such declaration will conclusively terminate the controversy giving rise to this proceeding.

## SECOND CAUSE OF ACTION: INJUNCTIVE RELIEF

### – Against All Defendants –

34.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 33 above.

35.    The individual Plaintiffs have a clear constitutional and statutory right to carry a firearm in public parks and community centers and a well-grounded fear of immediate invasion of that right, the invasion of that right has resulted in actual and substantial injuries, and there is no adequate remedy at law to redress those injuries.  In addition, the organizational Plaintiffs' Washington members' constitutional and statutory rights to carry a firearm in public parks and community centers are in jeopardy of immediate invasion, causing actual and substantial injuries without any adequate remedy at law.

36.    Plaintiffs are entitled, under RCW 7.40 and CR 65, to an injunction as follows:

a.  Defendants should be enjoined from posting signage communicating that firearms are not permitted on Parks Department facilities, withdrawing a person's permission to enter or remain at a Parks Department facility pursuant to the Firearms Rule, and enforcing the Firearms Rule by any other means.

b.  Defendants should be ordered to immediately remove all signage posted on City property pursuant to the Firearms Rule.

c.  Defendants should also be enjoined from implementing any other ordinance, law, or rule that prohibits the carrying of concealed firearms at Parks Department facilities during public use of those facilities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 11

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**REQUEST FOR RELIEF**

37.    WHEREFORE, Plaintiffs request that judgment be entered against Defendants as follows:

a.    Declaring that Defendants' actions in enacting and enforcing the Firearms Rule were contrary to law and the Firearms Rule is null and void.

b.    Permanently enjoining Defendants as follows: (1) enjoining Defendants from enforcing the Firearms Rule in any way, (2) enjoining Defendants from implementing any other ordinance, law, or rule that prohibits the carrying of concealed firearms at Parks Department facilities during public use of those facilities, and (3) requiring Defendants to immediately remove all signage posted pursuant to the Firearms Rule.

c.    Awarding Plaintiffs fees, costs, and disbursements incurred in this action as the court deems just and equitable.

d.    Awarding Plaintiffs any additional or further relief which the court finds appropriate, equitable, or just.

DATED this 28 day of October, 2009.

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP

Steven W. Fogg, WSBA No. 23528
Molly A. Malouf, WSBA No. 31972
Attorneys for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – 12

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

17

# EXHIBIT A



**Office of the Mayor**
**City of Seattle**
Gregory J. Nickels, Mayor

**Executive Order: 07-08**
**Gun Safety at City Facilities**

*The Executive Order directs City departments to conduct an inventory of all rules,*
*policies, and leases for all City of Seattle properties and amend such rules, policies and*
*leases in an effort to develop a "gun-free" policy for City of Seattle properties;*

WHEREAS, the City of Seattle has a population of 586,200 with millions of tourists visiting the city annually, a vibrant nightlife, and an expansive cultural and arts scene; and

WHEREAS, the City of Seattle government has vast property holdings throughout the city, including parks, libraries, government buildings, and community and recreational centers; and

WHEREAS, the City of Seattle has policies, contractual agreements, and rules of conduct governing behavior on City property; and

WHEREAS, Seattle's local laws and ordinances relating to firearms are specifically authorized by state law and are consistent with state law; and

WHEREAS, the Washington State Supreme Court has held that a municipal property owner, like a private property owner, may impose conditions related to firearms for the use of its property in order to protect its property interests; and

WHEREAS, the recent shooting involving a permitted handgun highlights the importance of having gun-free policies on City of Seattle property; and

WHEREAS, it is the policy of the City of Seattle, acting in its proprietary capacity, to adopt and enforce policies, rules, and contractual agreements that, consistent with state law, prohibit the possession of dangerous weapons, including firearms, on City property;

NOW, THEREFORE, I, GREGORY J. NICKELS, Seattle Mayor,

declare that it is the policy of the City of Seattle, acting in its proprietary capacity, to

adopt and enforce policies, rules, and contractual agreements that prohibit the

19




possession of dangerous weapons, including firearms, and with the exception of guns issued to law enforcement personnel, on City property;

FURTHERMORE, I direct all City departments to conduct an inventory of all present rules, policies, and contractual agreements, such as leases, within their authority to determine the extent to which they, acting in the City's capacity as owner of the property, prohibit the possession of dangerous firearms on City property; and,

FURTHERMORE, I direct all City departments to report back to the Mayor's Office within 30 days with a plan for implementing the City's policy to, acting in its proprietary capacity, adopt and enforce policies, rules, and contractual agreements that prohibit the possession of dangerous weapons, including firearms, on City property.

FURTHERMORE, any new or amended departmental rules will be developed in accordance with proper administrative procedures.

For inquiries regarding this Executive Order, please contact Regina LaBelle at 206-684-4000.

Dated this 6th day of June, 2008.

Gregory J. Nickels
Mayor, City of Seattle

Executive Order 07-08
Gun Safety at City Facilities

2

20



**EXHIBIT B**

21

 Your City  Seattle



# Department   Of   Parks   and   Recreation
# Rule/Policy

| Subject: Firearms May Be Prohibited as a Condition of Entry Into or Use of Designated Parks Department Facilities at Which Children and Youth are Likely to be Present | Number: P 060 - 8.14 |
|---|---|
| | Effective: October 14, 2009 |

| Approved: | Department: **Parks & Recreation** | |
|---|---|---|

## 1.0 INTRODUCTION AND FINDINGS

**1.1** The City owns and operates various City real property and facilities, including property and facilities under the jurisdiction of the Seattle Parks and Recreation Department ("Parks" or "Department").

**1.2** In 2008 over 1.8 million people visited and attended programs in Parks Department owned community centers, pools, teen centers and environmental learning centers; over 108,000 children and youth visited wading pools; over 59,000 youth events were scheduled at sports fields; and, countless numbers of children and youth visited playgrounds, play areas, and sports courts.

**1.3** As the owner and operator of Department facilities at which children and youth are likely to be present, the City has a strong interest in promoting facility users' and visitors' confidence, particularly families with children, that such facilities are safe and secure places to visit.

**1.4** Carrying concealed firearms and displaying firearms at Department facilities at which children and youth are likely to be present threatens the City's interests in promoting the use of those facilities by children, youth and their families.

**1.5.** Based on the relatively small percentage of Seattle residents who have concealed weapons permits, we conclude that the vast majority of users of Department facilities where children and youth are present are families who do not carry firearms.

**1.6** Such families' safe and secure use of Department facilities is disturbed by the threat of intentional or accidental discharges of firearms in the vicinity of children, which can result from various unforeseen circumstances, (such as the escalation of disputes among individuals carrying firearms; the accidental discharge of firearms in the vicinity of children; the mishandling of firearms; the unsafe temporary storage or placement of

Page 1 of 5

22


firearms that may be found and accidentally discharged by children and youths; and the intimidation that occurs when someone openly displays firearms in the presence of youth and children.

1.7 Children are frightened and threatened by the presence of firearms in facilities designed for their safe use and enjoyment;

1.8 Many injuries to children by firearms occur when children are playing and gain access to firearms they find that are otherwise legally possessed, and there is an increased potential for accidental injuries and deaths from such instances if adults leave their firearms unattended or improperly stored in purses, bags, or other concealed places while they play with their children on park equipment and facilities.

1.9 Parks are gathering places for groups of youth and young adults ages 18 to 25 for a range of activities where fights sometimes occur, and the presence of even otherwise lawfully-possessed firearms increases the likelihood of gun violence to resolve disputes that would not otherwise involve a threat to life or grievous bodily harm.

1.10. Studies demonstrate that individuals possessing firearms are more likely to be shot in an assault than those who do not have a firearm. For example, a recent study conducted by University of Pennsylvania researchers conclude that armed individuals were four and one-half (4.5) times more likely to be shot. It is reasonable for the Department to conclude that more firearms in Parks facilities increases the likelihood that someone will be seriously injured.

1.11. Many parents will not permit their children to play in public spaces where firearms are permitted, depriving some children of the ability to peacefully use city facilities intended for their benefit.

1.12. The City's and Department's interests will be promoted by establishing a policy that the Superintendent may, by erecting appropriate signage at a facility at which children and youth are likely to be present, communicate to the public that firearms are not permitted at that facility as a condition of entry to or use of the facility.

## 2.0 REFERENCES AND AUTHORITY

2.1 This policy/rule is authorized by and promulgated as provided in the City's Administrative Code (SMC Chapter 3.02), in SMC 3.26.040.L (Parks Superintendent's Rule-Making Authority); and in SMC 18.12.040 (Superintendent's authority -- Rulemaking –Enforcement).

2.2 The City earlier proposed a rule regarding firearms on City property. The City and Department conducted a written comment period and held a hearing for the receipt of oral comments. The City decided to narrow the proposal so that it applied only to Parks Department facilities at which children and youth are likely to be present. The Parks Department conducted another comment period and received approximately 1,000



additional written comments. The Superintendent therefore finds that conducting another public hearing to receive additional oral comments on the modified proposal is not necessary.

## 3.0 DEFINITIONS

3.1 **"City"** means the City of Seattle.

3.2 **"Parks Department facilities"** means City owned or operated buildings and improvements operated under the jurisdiction of the Department of Parks and Recreation.

3.3 **"Department"** means the Seattle Department of Parks and Recreation ("Parks').

3.4 **"Designated Parks Facility"** means the facilities listed in Section 5 as Department facilities where children and youth are likely to be present.

3.5 **"Displaying a firearm"** means to carry a firearm in such a manner that the firearm is visible to others,.

3.6 **"Firearm"** means a weapon or device from which a projectile may be fired by an explosive such as gunpowder.

3.7 **"Firearms are not permitted"** means that the carrying of a concealed firearm and the display of a firearm are not permitted as a condition of entry or use of the particular facility.

3.8 **"Law enforcement officer"** means: 1) a sworn Seattle Police officer, or 2) qualified law enforcement officer as defined in 18 U.S.C.A § 926B(c), or a qualified retired law enforcement officer as defined in 18 U.S.C.A. § 926C(c), who is carrying a firearm permitted under 18 U.S.C.A § 926 and is carrying identification as required by that section.

3.9 **"On Duty Security Officer"** means an individual other than a law enforcement officer who: is employed for the purpose of providing security; is required to carry a firearm as a condition of that employment; is providing security services at the time on City property; and has legal authority to carry the firearm at the time.

3. 10 **Carrying a concealed firearm "** means to carry a firearm in such a manner that it is not visible to others. Carrying a concealed firearm does not include storing a firearm lawfully in a vehicle that is located on City property. Carrying a concealed firearm also does not include carrying a lawful firearm onto City property for the purpose of promptly determining: 1) if the facility is designated as one at which firearms are not permitted ; or 2) if the facility has an area designated for the safe storage of firearms.

3.11 **"RCW"** means the Revised Code of Washington.

Page 3 of 5



**3.12 "SMC"** means Seattle Municipal Code.

**3.13 "Appropriate signage"** means signs that indicate to the public that firearms are not permitted as a condition of entry to or use of a particular facility at which children and youth are likely to be present.

**3.14 "Superintendent"** means the Superintendent of Parks and Recreation, or his or her authorized designee.

## 4.0 GENERAL POLICY: CARRYING CONCEALED FIREARMS AND DISPLAYING FIREARMS ARE NOT PERMITTED AT PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT

The Department, in its proprietary capacity as owner or manager of Department facilities, does not permit the carrying of concealed firearms or the display of firearms, except by law enforcement officers and on-duty security officers, at Parks Department facilities at which: 1) children and youth are likely to be present and, 2) appropriate signage has been posted to communicate to the public that firearms are not permitted at the facility. .

## 5.0 DESIGNATED PARKS DEPARTMENT FACILITIES AT WHICH CHILDREN AND YOUTH ARE LIKELY TO BE PRESENT

**5.1 Facilities at which children and youth are likely to be present.** The following Department facilities are designated as facilities where children and youth are likely to be present:

    **5.1.1** Playgrounds and Children's play areas;
    **5.1.2** Sports Fields, Sports Courts and other sports facilities;
    **5.1.3** Swimming and Wading Pools;
    **5.1.4** Spray Parks (Water Play Areas);
    **5.1.5** Teen Centers;
    **5.1.6** Community Centers;
    **5.1.7** Environmental Learning Centers;
    **5.1.8** Small craft centers;
    **5.1.9** Performing Arts Centers;
    **5.1.10** Tennis Centers;
    **5.1.11** Skateboard Parks;
    **5.1.12** Golf Courses; and,
    **5.1.13** Swim beaches.

**5.2 Posting.** The Superintendent may post at a Parks facility at which children and youth are likely to be present appropriate signage indicating to the public that firearms are not permitted at that facility.

Page 4 of 5

25



## 6.0 WITHDRAWAL OF PERMISSION TO REMAIN AT A PARTICULAR DESINGATED FACLILTY

**6.1. No Criminal or Civil Penalties.** This policy/rule does not include any criminal or civil penalties. Rather, it constitutes conditions placed upon a person's permission to enter or remain at a designated Parks Department facility at which appropriate signage has been posted. Such conditions shall be enforced in the same manner and pursuant to the same ordinances and statutes as similar conditions could be enforced by other public or private property owners.

**6.2 Withdrawal of Permission to Enter or Remain at the Designated Facility.** The following individuals have authority to withdraw in writing or orally a person's permission to enter or remain at a designated Parks Department facility:

**6.2.1** Sworn Seattle police officers; and,

**6.2.2** Other City employees or agents delegated such authority by the Superintendent.

## 7.0 GUIDELINES

The Superintendent may issue operating guidelines, procedures, or protocols that, among other things, inform City employees and other authorized persons how to properly implement this policy. Such protocols should include procedures regarding enforcement and, where practicable, the possible safe storage of firearms at designated City facilities.

Page 5 of 5

# EXHIBIT C

News Release: New firearms rule to go into effect



News Center | About the Mayor | Priorities | Issues | Newsletter | Watch | Participate

**Home**
News Center Home
Press Releases
Speeches & Letters
Public Disclosure
Watch
Executive Orders

Mayor Nickels' Priorities
• Transportation: Get Seattle moving
• Keep Our Neighborhoods Safe
• Create Jobs and Opportunity For All
• Build Strong Families and Healthy Communities

**News Headlines**
• Mayor statement on Viaduct vote
• New firearms rule to go into effect
• Quick Lighting Upgrades Turn Stimulus Dollars Into Energy Savings

More Press Releases

**Get the Nickels Newsletter**
First Name
Last Name
E-mail
Zip

10/14/2009
More news from Mayor Nickels

For more information contact:
Alex Fryer  (206) 684-8358

### New firearms rule to go into effect
*New rule will cover Parks and Recreation facilities*
*where children and youth are likely to be present*

SEATTLE – Mayor Greg Nickels today announced that Seattle Parks and Recreation has put into effect a new rule which prohibits the possession or display of firearms at designated facilities where children and youth are likely to be present, such as playgrounds, community and environmental learning centers, sportsfields and courts, swimming beaches, pools, water play areas, skateparks, and golf courses.

"When children and families visit a Seattle Parks and Recreation pool, playground, community center or other facility, they are entitled to a reasonable expectation of safety," said Nickels. "It's common sense to prohibit guns in places where kids and young adults play and learn."

Firearms will be prohibited at designated facilities only after signs are posted notifying visitors of the new rule. By noon on Friday, signs will be posted at South Park Community Center, 8319 8th Ave. S; Garfield Community Center, 2323 E. Cherry St.; and Bitter Lake Community Center, 13035 Linden Ave. N.

The signs will be posted in phases, beginning with community centers, pools and the most intensively used play areas and ballfields. All designated facilities will be posted by Dec. 1.

Anyone who enters one of the posted facilities with a gun will be asked by Parks personnel or Seattle police officers to leave the areas where firearms are prohibited. If they refuse to leave, they may be subject to citation or arrest for criminal trespass by Seattle police. Designated facilities that will be covered by the rule include:

• 26 community centers
• four environmental learning centers
• 10 pools
• 30 wading pools and water play areas
• two small craft centers
• two specialized facilities (tennis center, performing arts center)
• 139 playgrounds and play areas
• 213 ballfields
• six late night recreation sites
• three teen life centers
• 82 outdoor tennis and basketball courts
• two skateparks
• five golf courses
• nine swimming beaches

In 2008, more than 1.8 million people visited and attended programs in Parks-owned community centers, pools, teen life centers and environmental learning centers. More than 108,000 children and youth visited wading pools and more than 59,000 youth events were

News Release: New firearms rule to go into effect 

scheduled at sports fields.

In June, a group of teen boys flashed a gun at several girls outside of the Alki Community Center.

Last December, a former Franklin High School basketball player was shot in the face outside the Garfield Community Center.

In 2004, a woman was shot dead at a Red Cross shelter set up in the Miller Community Center on Capitol Hill.

After a man shot and injured three people at the 2008 Folklife Festival, Nickels directed city departments to evaluate rules, policies and leases related to guns. The suspect in last year's shooting had a concealed weapons permit and a history of mental health problems.

In 2008, the city introduced a policy requiring organizations that lease Seattle Center and other city property to take reasonable steps to prohibit guns during their events. If individuals bring guns to special events at Seattle Center, such as the Folklife Festival, Bumbershoot and the Bite of Seattle, they may safely store their guns in lock boxes provided at the Seattle Center. The lease policy has been formalized as an executive order.

A recent study by the University of Pennsylvania School of Medicine found that people who carried guns for self-defense were 4.5 times more likely to be shot during an assault than those not possessing guns. This study shows that guns increase the risk of injury and death even if those guns are possessed for lawful self-defense purposes only.

Nickels has urged lawmakers in Olympia to ban assault weapons, require criminal background checks at gun shows and require trigger locks and safe storage of firearms. Nickels has long advocated tougher laws that would keep guns out of the hands of the mentally disturbed. In April, the state legislature passed a law prohibiting the possession of firearms by adults and juveniles who are involuntarily committed for 14 days or more for mental health treatment.

The city of Seattle has been actively working on local, regional and national strategies to reduce gun violence. Nickels is a founding member of Mayors Against Illegal Guns, which is promoting federal legislation to assist law enforcement in combating gun trafficking.

Get the Nickels Newsletter and the mayor's inside view on transportation, public safety, economic opportunity and healthy communities at mayor.seattle.gov

### ###

### Office of the Mayor

---

Mayor's Office: Seattle City Hall, 600 Fourth Avenue, 7th Floor
Mailing address: PO Box 94749 Seattle, WA 98124-4749

Home | News Center | About the Mayor | Mayor's Priorities | Issues | Newsletter | Watch | Participate

Seattle.gov: Services | Departments | Staff Directory | Mayor | City Council

Copyright © 1995-2009 City of Seattle

Questions/Complaints | Privacy & Security Policy

# EXHIBIT D

**Opinion**

ATTORNEY GENERAL WASHINGTON

Rob McKenna | Attorney General of Washington

**CITIES AND TOWNS – FIREARMS – PREEMPTION - Authority of city to enact a local law prohibiting possession of firearms on city property or in city-owned facilities.**

**RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.**

*************************************

October 13, 2008

Honorable Bob Morton
State Senator, 7th District
P. O. Box 40407
Olympia, WA 98504-0407

Honorable Kevin Van De Wege
State Representative, 24th District
P. O. Box 40600                                    **Cite As:**
Olympia, WA 98504-0600                         **AGO 2008 No. 8**

Dear Senator Morton and Representative Van De Wege:

By letter previously acknowledged, you have asked the following paraphrased question:

**Does a city in Washington have the authority to enact a local law that prohibits possession of firearms on city property or in city-owned facilities?**

**BRIEF ANSWER**

The answer to your question is no. RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation" and preempts a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

**BACKGROUND**

Your question deals with the authority of cities to enact laws relating to firearms. Article XI, section 11 of the Washington Constitution provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. XI, § 11. "This is a direct delegation of the police power as ample within its limits as that possessed by the Legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws." *City of Spokane v. Portch*, 92 Wn.2d 342, 346, 596 P.2d 1044 (1979). However, the "plenary police power in regulatory



ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 2 -                    AGO 2008 No. 8

matters accorded municipalities by Const. Art. 11, § 11, ceases when the State enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction." *Id.* "Preemption occurs when the Legislature states its intention either expressly or by necessary implication to preempt the field." *Brown v. City of Yakima*, 116 Wn.2d 556, 560, 807 P.2d 353 (1991). Thus, a city's authority to enact laws relating to firearms depends upon the general firearms laws enacted by the State.

RCW 9.41 sets forth a comprehensive scheme of state firearms regulations. This statutory scheme includes preemption. RCW 9.41.290 provides:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

RCW 9.41.290 preempts the authority of cities to adopt laws regulating firearms. The question is whether the scope of this preemption extends to prohibiting cities from enacting local law that prohibits possession of firearms on city property or in city-owned facilities.

## ANALYSIS

In determining the scope of the preemption in RCW 9.41.290, the "objective is to determine the legislature's intent. If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *See State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). "The 'plain meaning' of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* A statute is ambiguous if it is "subject to more than one reasonable interpretation." *In re the Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

In this case, the plain meaning of RCW 9.41.290 establishes that the preemptive effect of the statute is substantial. "Preemption occurs when the Legislature states its intention . . . expressly . . . to preempt the field." *Brown*, 116 Wn.2d at 560. RCW 9.41.290 expressly preempts the field. RCW 9.41.290 provides in part that the "state of Washington *hereby fully occupies and preempts* the entire field of firearms regulation within the boundaries of the state". (Emphasis added.) Not only does RCW 9.41.290 use the words of preemption—"fully occupies and preempts"—it broadly defines the field of firearms regulation to include "the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of

32

 

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 3 -                    AGO 2008 No. 8

firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components." RCW 9.41.290.

Standing alone, the language of RCW 9.41.290 quoted above would establish substantial field preemption. However, RCW 9.41.290 goes on to specifically address the authority of cities to regulate firearms and provides, in part, that "[c]ities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter."

Under RCW 9.41.290, cities may only enact laws and ordinances relating to firearms if two conditions are met. First, cities may only enact laws "that are specifically authorized by state law, as in RCW 9.41.300". RCW 9.41.290. Second, the cities' laws must be "consistent with this chapter." *Id.* Subject to conditions in the statute, RCW 9.41.300 authorizes cities to enact laws restricting the discharge of firearms in any portion of their respective jurisdictions, restricting the possession of firearms in any stadium or convention center, operated by a city, restricting the areas in their respective jurisdictions in which firearms may be sold, and restricting the location of a business selling firearms to not less than five hundred feet from primary or secondary school grounds. RCW 9.41.300(2)(a)-(b), (3)(a)-(b).[1]

The requirement in RCW 9.41.290 that firearms laws adopted by cities be "consistent with this chapter" necessarily implies that inconsistent laws are invalid. RCW 9.41.290 contains additional language, however, that renders this implication explicit. RCW 9.41.290 provides, in part:

> *Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law* shall not be enacted and *are preempted and repealed*, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

(Emphasis added.) In our judgment, the plain language of RCW 9.41.290 demonstrates that the Legislature intended to broadly preempt local laws relating to firearms.

Although the language of RCW 9.41.290 is broad, it does not preempt all city authority with respect to firearms. The Supreme Court has considered RCW 9.41.290 on two occasions. In *Cherry v. Municipality of Metropolitan Seattle*, 116 Wn.2d 794, 808 P.2d 746 (1991), the Court considered whether the Municipality of Metropolitan Seattle (Metro) could discharge an employee who violated Metro's policy prohibiting employees from carrying concealed weapons. The Court held that "RCW 9.41.290 is intended to preempt regulatory city, town or county firearms laws and ordinances, but *does not address internal employment rules limiting on-duty possession of firearms by public employees in the workplace*." *Id.* at 798 (emphasis added). The Court concluded that "RCW 9.41.290 was enacted to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes regulating the general public's possession of firearms." *Id.* at 801. Thus, the purpose of RCW 9.41.290 was "to eliminate a

---

[1] The complete text of RCW 9.41.300 is attached.




ATTORNEY GENERAL OF WASHINGTON

multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation." *Id.*

The Supreme Court next considered RCW 9.41.290 in *Pacific Northwest Shooting Park Association v. City of Sequim*, 158 Wn.2d 342, 144 P.3d 276 (2006). In *Pacific Northwest Shooting Park*, the Association wanted to hold a gun show in the city convention center. The conditional use permit issued by the City of Sequim imposed three conditions on the ability of licensed and unlicensed gun dealers to sell or exchange firearms. The Association argued that these conditions were preempted by RCW 9.41.290. The Court disagreed. According to the Court, "*Cherry* supports the general proposition that when a municipality acts in a capacity that is comparable to that of a private party, the preemption clause does not apply." *Pacific Northwest Shooting Park*, 158 Wn.2d at 357. The Court concluded that a "municipality acts in a proprietary capacity when it acts as the proprietor of a business enterprise for the private advantage of the municipality and it may exercise its business powers in much the same way as a private individual or corporation." *Id.* (citations and internal quotation marks omitted). Therefore, "[b]y issuing a temporary use permit, the city was leasing its property to PNSPA and acting in its private capacity as a property owner." *Id.* The Court held that RCW 9.41.290

> does not prohibit a private property owner from imposing conditions on the sale of firearms on his or her property. RCW 9.41.290. Applying our reasoning in *Cherry*, it follows that a municipal property owner like a private property owner may impose conditions related to firearms for the use of its property in order to protect its property interests. For the same reason that a municipal employer may enact policies regarding possession of firearms in the workplace because a private employer may do so, a municipal property owner should be allowed to impose conditions related to sales of firearms on its property if a private property owner may impose them.

*Pacific Northwest Shooting Park*, 158 Wn.2d at 357. The Court explained that the "critical point is that the conditions the city imposed related to a permit for private use of its property. They were not laws or regulations of application to the general public." *Id.*

Under *Cherry* and *Pacific Northwest Shooting Park*, RCW 9.41.290 does not preempt a city's ability to impose conditions when it is acting in a private capacity. The question is whether this reasoning would apply if a city prohibited the general public from possessing firearms on city property. It is certainly true that RCW 9.41.290 would not preempt a private citizen from prohibiting possession of firearms on his or her property. This prohibition might be enforced by simply refusing to permit someone entry on to the private property with a firearm. However, in this respect, a city is not in the same position as a private citizen. Large parts of city property are generally open to the public. Indeed, citizens may be required to enter city property, for example, to apply for a building permit. For these reasons, neither *Cherry* nor *Pacific Northwest Shooting Park* support the view that cities may prohibit the general public from possessing firearms on city property.



ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege        - 5 -                    AGO 2008 No. 8

It has been suggested that such a prohibition on the possession of firearms on city property might be enforced through the state's criminal trespass laws. RCW 9A.52.070 governs first degree criminal trespass and provides:

> (1)    A person is guilty of criminal trespass in the first degree if he knowingly enters or remains unlawfully in a building.
>
> (2)    Criminal trespass in the first degree is a gross misdemeanor.

RCW 9A.52.080 governs second degree criminal trespass and provides:

> (1)    A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.
>
> (2)    Criminal trespass in the second degree is a misdemeanor.

A person "enters or remains unlawfully" when a person is "in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(3). It is a defense to criminal trespass if the "premises were at the time *open to members of the public* and the actor complied with all *lawful conditions* imposed on access to or remaining in the premises". RCW 9.52.090(2) (emphasis added).

Under the criminal trespass approach, a city would post signs or otherwise notify the public that possession of firearms was prohibited on city property.[2] If an individual did not comply with this requirement, he or she would be charged with criminal trespass.

In our judgment, a city does not have the authority to generally prohibit the possession of firearms on city property except to the extent authorized by RCW 9.41.290. Even in the case of criminal trespass, a member of the public is only required to comply with "lawful conditions". RCW 9A.52.090(2). Prohibiting possession of firearms on city property would not be a lawful condition, because RCW 9.41.290 preempts the power of a city to impose such a prohibition. We reach this conclusion for three reasons.

First, breadth of the language in RCW 9.41.290 persuades us that the Legislature intended to prohibit cities from generally prohibiting firearms. Even though *Cherry* and *Pacific Northwest Shooting Park* recognized that RCW 9.41.290 does not preempt all city authority to regulate firearms, both cases hold that the purpose of RCW 9.41.290 was "to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes *regulating the general public's possession of firearms.*" *Cherry*, 116 Wn.2d at 801 (emphasis added); *Pacific Northwest Shooting Park*, 158 Wn.2d at 356. Thus, the regulation in those cases

---

[2]   There are different ways in which a city might take action to prohibit firearms on city property. One would be for the city legislative authority to enact an ordinance imposing the prohibition. Another would be for a city official to impose the prohibition, if he or she were authorized by city law to impose conditions on access to city property. In our view, the answer to this question does not turn on the manner in which the prohibition might be imposed.



## ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 6 -                     AGO 2008 No. 8

was not directed at the general public's possession of firearms. As the Court explained, the "*critical point is that the conditions* the city imposed related to a permit for private use of its property. They *were not laws or regulations of application to the general public.*" *Pacific Northwest Shooting Park*, 158 Wn.2d at 357 (emphasis added). Under the facts of your question, the city would prohibit the general public from possessing firearms on city property.

Prior to the enactment of RCW 9.41.290, it might have been legal to possess a firearm at a particular place in one city and a crime to possess a firearm in the same place in another city. RCW 9.41.290 was enacted to prevent these conflicting criminal codes. Allowing a city to use criminal trespass to enforce a ban on firearms allows conflicting criminal codes regulating the general public's possession of firearms. In this respect, it makes little difference to a citizen who is subjected to conflicting criminal codes whether he or she is being prosecuted for the gross misdemeanor of first degree trespass, or for the crime of possession of a firearm.

Second, in interpreting a statute "each provision of a statute should be read together (*in pari materia*) with other provisions in order to determine the legislative intent underlying the entire statutory scheme." *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). "The purpose of interpreting statutory provisions together with related provisions is to achieve a harmonious and unified statutory scheme that maintains the integrity of the respective statutes." *Id.* Reading RCW 9.41.290 together with other firearms statutes persuades us that the Legislature did not intend to permit cities to prohibit the general public from possessing firearms. The Legislature has expressly prohibited the possession of firearms in specific places. These include (a) restricted access areas of a jail, or of a law enforcement facility, or any place used for the confinement of a certain person, (b) the areas in any building which are used in connection with court proceedings, including courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings, (c) the restricted access areas of certain public mental health facilities, (d) that portion of an establishment classified by the state liquor control board as off-limits to persons under twenty-one years of age, and (e) the restricted access areas of a commercial service airport designated in the airport security plan approved by the federal transportation security administration. RCW 9.41.300(1)(a)-(e). The Legislature also prohibited possession of firearms "while on the site of an outdoor music festival." RCW 70.108.150. The Legislature has also expressly authorized cities to prohibit firearms in certain places. This includes restricting the discharge of firearms in any portion of their respective jurisdictions, restricting the possession of firearms in any stadium or convention center, operated by a city, restricting the areas in their respective jurisdictions in which firearms may be sold, and restricting the location of a business selling firearms to not less than five hundred feet from primary or secondary school grounds. RCW 9.41.300(2)(a)-(b), (3)(a)-(b).

The Legislature has carefully set out the places where the general public is prohibited from possessing firearms. "Where a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions." *In re Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999). We conclude that the Legislature did not intend that the possession of firearms would be prohibited in the places that were not listed. This conclusion is buttressed by the fact that the Legislature's prohibition of firearms is very narrow. The Legislature prohibited the possession of firearms in the "restricted access areas of a jail, or of a



ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 7 -          AGO 2008 No. 8

law enforcement facility, or any place used for the confinement of [certain] person[s]" but "[r]estricted access areas *do not include common areas of egress or ingress open to the general public*". RCW 9.41.300(1)(a).  The Legislature prohibited possession of firearms in certain "restricted areas" of courthouses.  However, the Legislature provided that the "restricted areas do not include common areas of ingress and egress to the building that is used in connection with court proceedings, when it is possible to protect court areas without restricting ingress and egress to the building.  The restricted areas shall be the minimum necessary to fulfill the objective of this subsection".  RCW 9.41.300(1)(b).  The Legislature prohibited possession of firearms in the restricted areas of certain mental health facilities but, again, the Legislature provided that "[r]estricted access areas do not include common areas of egress and ingress open to the general public".  RCW 9.41.300(1)(c).  Even the restricted areas of airports where firearms are prohibited do not include "airport drives, general parking areas and walkways, and shops and areas of the terminal that are outside the screening checkpoints and that are normally open to unscreened passengers or visitors to the airport."  RCW 9.41.300(1)(e).  Thus, even when the Legislature prohibited the possession of firearms, it did so only in restricted areas.  The Legislature did not intend to impose a general prohibition on a citizen's ability to possess a firearm.

Third, the evolution of the preemption of local firearms laws establishes that the Legislature intended RCW 9.41.290 to broadly preempt local authority and to prohibit local government from prohibiting citizens from possessing firearms.  In 1935, Washington adopted firearms laws "modeled after the uniform firearms act which was approved by the National Conference of Commissioners on Uniform State Laws, in 1930.  See 1930 Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, 562-567."  *Olsen v. Delmore*, 48 Wn.2d 545, 548, 295 P.2d 324 (1956).  Laws of 1935, ch. 172.  The 1935 law did not contain a provision similar to RCW 9.41.290 that addressed the preemption of local authority to adopt firearms laws.  In 1961, the Legislature reenacted the state's firearms laws.  Laws of 1961, ch. 124.  The 1961 law provided that "[a]ll laws or parts of laws of the state of Washington, its subdivisions and municipalities inconsistent herewith are hereby preempted and repealed."  Laws of 1961, ch. 124, § 14.

Although the 1961 law preempted and repealed inconsistent local law, it did not generally preempt local authority to adopt firearms laws that were not inconsistent with state firearms law.  This was the holding in *Second Amendment Foundation v. City of Renton*, 35 Wn. App. 583, 668 P.2d 596 (1983).  In *Second Amendment Foundation*, Renton adopted an ordinance prohibiting the possession of firearms where alcoholic beverages are dispensed by the drink.  The plaintiff argued that this ordinance was preempted by section 12 of the 1961 law.  The Court of Appeals rejected this argument, because the "provision served only to repeal inconsistent municipal legislation in effect in 1961, and has no bearing on the present case."  *Second Amendment Foundation*, 35 Wn. App. at 588.  The court held that there was no express preemption of local authority to regulate firearms.  The court explained that a "careful examination of the Uniform Firearms Act, RCW Ch. 9.41, demonstrates no express preemption concerning the possession of firearms on premises where liquor is sold by the drink.  The legislature has not indicated an intention to preempt municipal regulation in all areas of gun control.  The power of municipalities to so legislate survives."  *Second Amendment Foundation*, 35 Wn. App. at 588.




ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege           - 8 -                    AGO 2008 No. 8

The Court next considered whether there was a conflict between state law and the Renton ordinance. The Court concluded that there was no conflict, because Washington laws "do not expressly state an unqualified right to be in possession of a firearm at any time or place. The Renton ordinance does not purport to contradict or restrict any provision of the statute. Therefore, the statute and ordinance are not inconsistent." *Id.* at 588-89. Thus, "[w]hile an absolute and unqualified local prohibition against possession of a pistol by the holder of a state permit would conflict with state law, an ordinance which is a limited prohibition reasonably related to particular places and necessary to protect the public safety, health, morals and general welfare is not preempted by state statute." *Id.* at 589.

In 1983, the Legislature adopted RCW 9.41.290. Laws of 1983, ch. 232, § 12. The 1983 version of RCW 9.41.290 provided that "[c]ities, towns, and counties may enact only those laws and ordinances relating to firearms that are consistent with this chapter. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted." Laws of 1983, ch. 232, § 12. Although RCW 9.41.290 was enacted after *Second Amendment Foundation* was argued, the Court explained that section 12 "prohibits the enactment of local ordinances inconsistent with the requirements of RCW Ch. 9.41. It does not militate against the result reached here." *Second Amendment Foundation*, 35 Wn. App. at 588 n.3. Thus, the 1983 version of RCW 9.41.290 only preempted inconsistent local firearms laws.

In an addendum to AGO 1983 No. 14 (Addendum dated September 22, 1983), we discussed the limited scope of the preemptive language of section 12. We noted that the

> critical issue involves *the very limited preemptive effect of the language employed in § 12* of SSB 3782 (now chapter 232, Laws of 1983). It has, unfortunately, become apparent to us since AGO 1983 No. 14 was issued that some proponents and many supporters of that bill were misled into thinking that the language of § 12 was sufficient to prevent the continuing enactment or enforcement of local ordinances addressing the kinds of places where weapons might be possessed-with or without a permit. Such ordinances, in the minds of many, have led to a confusing patchwork of prohibitions from one locality to the next, across the state.

AGO 1983 No. 14 (Addendum dated September 22, 1983) at 1 (emphasis added). We explained that it "is most certainly within the power of the legislature to effect a policy that such a patchwork situation will not exist." *Id.* Also, we suggested that language such as "preemption" or "occupies the field" would accomplish this goal:

> If the legislature intends to accomplish this policy through the technique of "preemption" there are numerous judicial decisions, both within our own state and elsewhere, that contain examples of appropriate terminology that should be used. For, quite simply, *preemption indicates a complete take over of a field of activity to the exclusion of all local actions, regulations or interference*-and thus, if that is the intention of the legislature, *the best and most effective way to manifest that intent would be to use the term "preemption" or "occupies the field"* or similar terms.

 

ATTORNEY GENERAL OF WASHINGTON

AGO 1983 No. 14 (Addendum dated September 22, 1983) at 1-2 (emphasis added).

In 1985, the Legislature amended RCW 9.41.290. Laws of 1985, ch. 428, § 1. The amendment included the use of both of the terms "preemption" and "occupies the field" suggested in AGO 1983 No. 14. The amendment, in bill draft form, provided:

> The state of Washington hereby *fully occupies and preempts the entire field* of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter. Such local ordinances shall have the same or lesser penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

Laws of 1985, ch. 428, § 1 (italicized emphasis added). The 1985 legislation also added RCW 9.41.300 to RCW 9.41. Laws of 1985, ch. 428, § 2. RCW 9.31.300 prohibited possession of firearms in certain places. Laws of 1985, ch. 428, § 2(1). The statute also provided: "*Notwithstanding RCW 9.41.290*, cities, towns, counties, and other municipalities may enact laws and ordinances" restricting the discharge and possession of firearms in certain places. Laws of 1985, ch. 428, § 2(2). The sequence of events leading to the 1985 amendment of RCW 9.41.290 persuades us that the Legislature intended to preempt all local authority to impose a prohibition on the public's ability to possess firearms. The use of the terms "preempt" and "occupies the field" confirm that RCW 9.41.290 was intended to broadly preempt local authority to adopt a ban on the possession of firearms.

The 1994 amendment to RCW 9.41.290 and .300 also confirms this view. In 1993, the Court of Appeals decided *City of Seattle v. Ballsmider*, 71 Wn. App. 159, 856 P.2d 1113 (1993). In *Ballsmider*, the defendant violated a Seattle ordinance by standing on the back porch of his Seattle residence and firing a gun into the air. The Seattle Municipal Court imposed a sentence of 365 days' confinement with 360 days suspended and a $5,000 fine with $4,500 suspended. The defendant argued that "the penalty imposed by local firearms ordinances cannot exceed that imposed by the State firearms statutes, and that his sentence was therefore contrary to law because his sentence and the maximum penalty under SMC 12A.28.050 (365 days and $5,000) exceed the maximum penalty allowed under RCW 9.41.230 (90 days and $1,000)." *Ballsmider*, 71 Wn. App. at 161. The Court rejected this argument, pointing to the language in RCW 9.41.300(2): "Notwithstanding RCW 9.41.290." According to the Court:

> The definition of "notwithstanding" is "in spite of," which in turn is defined as "in defiance of, *regardless of* . . ." Under these definitions, "notwithstanding RCW 9.41.290" means "regardless of anything in RCW 9.41.290." Had the Legislature



ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege            - 10 -                          AGO 2008 No. 8

intended that local governments disregard only contrary provisions or restrictions in the preemption statute, it could have easily said "notwithstanding any contrary provisions or restrictions in RCW 9.41.290" instead of "notwithstanding RCW 9.41.290." *Thus, the effect of "notwithstanding RCW 9.41.290" is that the preemption statute and its restrictions, including its penalty restrictions, are to be disregarded and have absolutely no bearing on laws enacted pursuant to RCW 9.41.300(2)(a).*

*Ballsmider*, 71 Wn. App. at 162–163 (emphasis added) (citations omitted). The Court concluded that this reading of RCW 9.41.300(2) was consistent with RCW 9.41.290. According to the Court, the preemption language in RCW 9.41.290

applies to the entire range of firearms regulation, including "registration, licensing, possession, purchase, sale, acquisition, transfer, *discharge*, and transportation of firearms . . ." (Emphasis added). RCW 9.41.300(2) and its "[n]otwithstanding RCW 9.41.290" language merely give local governments authority, without penalty or other restrictions, to enact laws regarding the *discharge* of firearms in areas where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized. This limited exception does not swallow or render meaningless the general preemption statute which, as noted above, applies to much more than the regulation of the discharge of firearms.

*Ballsmider*, 71 Wn. App. at 163-64.

In 1994, the Legislature amended RCW 9.41.290 and RCW 9.41.300. Laws of 1994, 1st Sp. Sess., ch. 7, §§ 428, 429. In bill draft form, the amendments to RCW 9.41.290 provided:

The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, <u>as in RCW 9.41.300</u>, and are consistent with this chapter. Such local ordinances shall have the same ((~~or lesser~~)) penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

Laws of 1994, 1st Sp. Sess., ch. 7, § 428. In bill draft form, RCW 9.41.300, which provides limited authority to municipalities to enact ordinances relating to firearms was amended in part to provide:

 

ATTORNEY GENERAL OF WASHINGTON

Honorables Morton and Van De Wege          - 11 -                    AGO 2008 No. 8

(2)     ((Notwithstanding  RCW  9.41.290,)) Cities, towns, counties, and other municipalities may enact laws and ordinances:

. . . .

(4)     Violations of local ordinances adopted under subsection (2) of this section must have the same penalty as provided for by state law.

Laws of 1994, 1st Sp. Sess., ch. 7, § 429(2), (4).

The 1994 amendments had the effect of changing the law as it was interpreted by the court in *Ballsmider*, which read the phrase "notwithstanding RCW 9.41.290" in RCW 9.41.300 as "allow[ing] local governments relatively unlimited authority" in the specific areas covered by RCW 9.41.300(2). *Ballsmider*, 71 Wn. App. at 163. The repeal of the "notwithstanding" language supports the interpretation that the Legislature intended that local governments have limited ability to regulate firearms. The 1994 amendments require that the penalties be the same as provided for by state law. The amendments even eliminate the authority of local governments to impose lesser penalties. The addition of the phrase "as in RCW 9.41.300" to RCW 9.41.290 further limits local authority to regulate firearms.  Local governments may only regulate if "specifically authorized by state law, as in RCW 9.41.300". Laws of 1994, 1st Sp. Sess., ch. 7, § 428.

To summarize, RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation within the boundaries of the state".  While RCW 9.41.290 does not preempt all city authority with regard to firearms, it does preempt a city's authority to adopt firearms laws or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

We trust that this opinion will be of assistance to you.

Sincerely,

ROB MCKENNA
Attorney General

WILLIAM B. COLLINS
Deputy Solicitor General
360-753-6245

:pmd

# EXHIBIT B



01-15-10P03:55 REF:

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

Winnie Chan, et al.,

                Plaintiffs,

    v.

City of Seattle, et al.,

                Defendants.

NO. 09-2-39574-8 SEA
NOTICE FOR HEARING
SEATTLE COURTHOUSE ONLY
(Clerk's Action Required )  (NTHG)

TO:    THE CLERK OF THE COURT and to all other parties listed on Page 2:
    PLEASE TAKE NOTICE that an issue of law in this case will be heard on the date below and the
    Clerk is directed to note this issue on the calendar checked below.

Calendar Date: <u>February 12, 2010</u>        Day of Week: <u>Friday</u>

Nature of Motion: <u>Plaintiffs' Motion for Summary Judgment!</u>

| CASES ASSIGNED TO INDIVIDUAL JUDGES – Seattle |
| --- |
| If oral argument on the motion is allowed (LR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. Working Papers: The *judge's name*, date and time of hearing *must* be noted in the upper right corner of the Judge's copy.  *Deliver Judge's copies to Judges' Mailroom at C203.* |

      []  Without oral argument (Mon - Fri)      [ X ]  With oral argument (requested)
      Hearing Date/Time:  Friday, February 12, 2010 at 9:00 a.m.
      Judge's Name: Gregory P. Canova      Trial Date: April 18, 2011

| CHIEF CRIMINAL DEPARTMENT - Seattle in E1201 |
| --- |
| [ ] Bond Forfeiture  3:15 pm, 2nd Thur of each month |

[ ] Bond Forfeiture  3:15 pm, 2nd Thur of each month
[ ] Certificates of Rehabilitation- Weapon Possession (Convictions from Limited Jurisdiction Courts)
3:30 First Tues of each month

**CHIEF CIVIL DEPARTMENT – Seattle -- (Please report to W1060 for assignment)**
*Deliver working copies to Judges' Mailroom, Room C203.  In upper right corner of papers write "Chief Civil Department" or judge's name and date of hearing*

| | |
| --- | --- |
| [ ]Extraordinary Writs (Show Cause Hearing) (LR 98.40) | 1:30 p.m. Tues/Wed -report to Room W1060 |
| [ ]Supplemental Proceedings (1:30 pm Tues/Wed)(LR 69) | **Non-Assigned Cases:** |
| [ ]DOL Stays 1:30 pm Tues/Wed | [ ] Non-Dispositive Motions M-F (without oral argument). |
| [ ]Motions to Consolidate with multiple judges assigned (without oral argument) (LR 40(a)(4)) | [ ] Dispositive Motions and Revisions (1:30 pm Tues/Wed) |
| | [ ] Certificates of Rehabilitation (Employment) 1:30 pm Tues/Wed (LR 40(2)(B)) |

    You may list an address that is not your residential address where you agree to accept legal documents.
Sign:_____    Print/Type Name: Steven W. Fogg
WSBA # 23528 (if attorney)    Attorney for: Plaintiffs
Address: 1001 Fourth Avenue, Suite 3900    City, State, Zip: Seattle, Washington 98154-1051
Telephone: 206-625-8600    Date: January 15, 2010

## DO NOT USE THIS FORM FOR FAMILY LAW, EX PARTE OR RALJ MOTIONS.

NOTICE FOR HEARING - Seattle Courthouse Only        Page 1
ICSEA031407
www.metrokc.gov/kcscc/forms.htm

---

**LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE**

---

Name:     George E. Greer, Daniel J. Dunne
          David Keenen

Service Address: 701 5th Avenue, Suite 5700

City, State, Zip: Seattle, WA  98104

WSBA# 1567    Atty For: Defendants

Telephone #: 206-839-4300

Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____Atty For:_____

Telephone #: _____


Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____Atty For:_____

Telephone #: _____


## IMPORTANT NOTICE REGARDING CASES

Party requesting hearing must file motion & affidavits separately along with this notice.  List the names, addresses and telephone numbers of all parties requiring notice (including GAL) on this page.  Serve a copy of this notice, with motion documents, on all parties.

The original must be filed at the Clerk's Office not less than **six** court days prior to requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance).

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES AND ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The SEATTLE COURTHOUSE is in Seattle, Washington at 516 Third Avenue.  The Clerk's Office is on the sixth floor, room E609.  The Judges' Mailroom is Room C203.

44



THE HONORABLE GREGORY P. CANOVA
Noted: Friday, February 12, 2010, 9:00 a.m.
(With Oral Argument)

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

WINNIE CHAN, et al.,

                    Plaintiffs,

     v.

CITY OF SEATTLE, et al.,

                    Defendants.

No. 09-2-39574-8 SEA

**PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

45

# TABLE OF CONTENTS

I.    INTRODUCTION AND RELIEF REQUESTED ..................................................... 3

II.   STATEMENT OF FACTS .......................................................................... 4

    A.   The City enacts a Firearms Rule that conflicts with and is far more restrictive than state law. ................................................................................................ 4

    B.   The City is enforcing the Firearms Rule against Washington citizens even though the Rule violates state law. ...................................................................... 6

III.  STATEMENT OF ISSUES ......................................................................... 10

IV.   EVIDENCE RELIED UPON ....................................................................... 10

V.    ARGUMENT AND AUTHORITY ................................................................ 11

    A.   The Firearms Rule violates clearly established state law. ............................. 11

    B.   Declaratory relief is appropriate here. ..................................................... 14

    C.   Injunctive relief is also appropriate here. ................................................. 17

VI.   CONCLUSION ....................................................................................... 18

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## I.  INTRODUCTION AND RELIEF REQUESTED

In 1983, the state of Washington enacted a statutory scheme that comprehensively and preemptively regulates all aspects of firearm possession in the state of Washington.  RCW 9.41.010-9.41.810.  This firearms statute includes a provision entitled "State Preemption." RCW 9.41.290.  That provision states in no uncertain terms that the Washington Legislature "fully occupies and preempts the entire field of firearms regulation within the boundaries of the state." RCW 9.41.290.   To avoid the dangers and unfairnesses inherent in a patchwork quilt of conflicting local regulations, the state preemption provision warned that "[l]ocal laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law **shall not be enacted and are preempted and repealed**." *Id.* (emphasis added).

Despite the undeniable fact that the legislature has the exclusive authority to regulate firearms in Washington, defendants City of Seattle, Mayor Mike McGinn,[1] Seattle Department of Parks and Recreation, and Superintendent Gallagher (collectively, "defendants" or "the City") have enacted a firearms ban in certain City parks and recreation facilities that is far more restrictive than the state regulatory scheme found in RCW 9.41. Worse, the City knows to a certainty that this gun ban violates the law.  Indeed, in a May 2006 letter to Speaker of the House Frank Chopp, then-Mayor Greg Nickels admitted that only the legislature had the power to regulate firearms, stating:

> We cannot accomplish anything without your personal leadership in Olympia. **State law preempts any and all local regulations related to firearms.  Our hands are tied at the local level and we are unable to adopt any local laws to protect our residents from gun crime.**

Declaration of Steven W. Fogg ("Fogg Decl."), Ex. D at 2 (emphasis added).

---

[1] As originally filed in October 2009, this Complaint named then-Mayor Gregory Nickels as one of the defendants.  Since then, Mayor Nickels has left office and been replaced by Mayor Mike McGinn.  The parties have therefore stipulated to substitute Mayor McGinn for Mayor Nickels. *See* Stipulation and (Proposed) Order Substituting Defendant, filed on January 14, 2010.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 3

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Attorney General Rob McKenna reinforced this message in 2008 in response to a letter from state legislators that asked "Does a city in Washington have the authority to enact a local law that prohibits possession of firearms on city property or in city-owned facilities?" Fogg Decl., Ex. E at 1. Attorney General McKenna responded to this question as follows:

> **The answer to your question is no.** RCW 9.41.290 "fully occupies and preempts the entire field of firearms regulation" and preempts a city's authority to adopt firearms law or regulations of application to the general public, unless specifically authorized by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities.

*Id.* (emphasis added). McKenna went on to state that a city cannot regulate firearm possession under the guise of property ownership because "[l]arge parts of city property are generally open to the public." *Id.* at 4.

Notwithstanding these clear and unmistakable warnings, the City has enacted and is enforcing an illegal gun ban that every day violates the rights of ordinary Washington citizens like plaintiffs Winnie Chan, Robert Kennar, Raymond Carter, Gray Peterson, and Gary Goedecke (collectively, "individual plaintiffs"). Accordingly, the individual plaintiffs – joined by the Second Amendment Foundation ("SAF"), National Rifle Association of America ("NRA"), Citizens Committee for the Right to Keep and Bear Arms ("Citizens Committee"), and Washington Arms Collectors (collectively, "organizational plaintiffs") – come before this court seeking declaratory and injunctive relief on summary judgment. This case presents a pure of issue of law. It can and should be decided now in plaintiffs' favor.

## II. STATEMENT OF FACTS

### A. The City enacts a Firearms Rule that conflicts with and is far more restrictive than state law.

In Washington, adults have the constitutional and statutory right to carry a concealed firearm in most public locations – including city parks – if they have a valid Concealed Pistol

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 4

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  License. RCW 9.41.010-9.41.810, 70.108.150. Washington law also permits adults to openly

2  carry a holstered firearm in any place where it is otherwise legal to possess a firearm if such

3  carrying is done peacefully. RCW 9.41.270.

4      Ignoring these clear statutory directives, Seattle's Parks and Recreation Department

5  issued a rule on October 14, 2009 that completely contradicts the state regulatory scheme.

6  The City's firearms rule prohibits citizens from possessing a lawful firearm on city-owned

7  property where "children and youth are likely to be present":

8      The Department, in its proprietary capacity as owner or manager of
   Department facilities, does not permit the carrying of concealed firearms or
9      the display of firearms, except by law enforcement officers and on-duty
   security officers, at Parks Department facilities at which: 1) children and
10     youth are likely to be present and, 2) appropriate signage has been posted
   to communicate to the public that firearms are not permitted at the facility.

11 Fogg Decl., Ex. A at ¶ 4.0. This rule, known as the "Firearms Rule," goes on to designate an

12 extensive list of Parks Department facilities as facilities at which children and youth are likely

13 to be present. Those facilities are:

14
15     5.1.1 Playgrounds and Children's play areas;
       5.1.2 Sports Fields, Sports Courts and other sports facilities;
16     5.1.3 Swimming and Wading Pools;
       5.1.4 Spray Parks (Water Play Areas);
17     5.1.5 Teen Centers;
       5.1.6 Community Centers;
       5.1.7 Environmental Learning Centers;
18     5.1.8 Small craft centers;
       5.1.9 Performing Arts Centers;
19     5.1.10 Tennis Centers;
       5.1.11 Skateboard Parks;
20     5.1.12 Golf Courses; and,
       5.1.13 Swim beaches.

21 Id. at ¶ 5.1. At these facilities, the Parks Department Superintendent may post "appropriate

22 signage indicating to the public that firearms are not permitted at that facility." Id. at ¶ 5.2.

23 The Rule becomes applicable to a particular Parks Department facility once signage has been

24 posted at that facility. Id. at ¶ 4.0.

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 5

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    As a result of the Firearms Rule, a police officer or other authorized City employee

2  may order a person to leave a Parks Department facility *even if that person has a valid*

3  *Concealed Pistol License and is permitted by state law to carry a concealed pistol.*  *Id.* at ¶

4  6.0.  Refusal to leave may subject a violator to citation or arrest for criminal trespass.[2]  *Id.* at ¶

5  6.1.

6    In conjunction with the enactment of its new Firearms Rule, the City also issued a

7  Press Release announcing that, by noon on October 16, 2009, signage announcing the

8  firearms ban would be posted at the South Park Community Center, the Garfield Community

9  Center, and the Bitter Lake Community Center.  Fogg Decl., Ex. C.  The Press Release further

10  stated that signs will be posted at approximately 530 designated facilities by December 1,

11  2009.  *Id.*

12    **B.**    **The City is enforcing the Firearms Rule against Washington citizens even**
            **though the Rule violates state law.**

13    The individual plaintiffs all possess lawful and valid Concealed Pistol Licenses.[3]

14  Because the individual plaintiffs are properly licensed, state law entitles them to carry

15  concealed weapons to City parks and other designated facilities.  Nevertheless, and as will be

16  discussed below, the City is aggressively enforcing the Firearms Rule in a manner that denies

17  the individual plaintiffs their right to carry concealed weapons in places like City parks and

18  recreation facilities.

19

20

21    _____

22    [2] The Firearms Rule was likely a direct result of Executive Order 07-08 ("Gun Safety at City
      Facilities"), which was issued by then-Mayor Nickels in June 2008.  This Executive Order directed all
      City departments to conduct an inventory of present policies, rules, and leases to determine the extent

23    to which they can prohibit firearms on City property and to implement plans to make such changes.
      Fogg Decl., Ex. B.

24    [3] *See* Chan Decl., Ex. A; Kennar Decl., Ex. A; Carter Decl., Ex. A; Peterson Decl., Ex. A;
      Goedecke Decl., Ex. A (copies of individual plaintiffs' Concealed Pistol Licenses).

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 6

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

<u>Plaintiff Winnie Chan.</u>  Ms. Chan is a 36 year-old parole and probation officer for the Washington Department of Corrections.  Declaration of Winnie P. Chan ("Chan Decl.") at ¶¶ 2-3.  She lives, works, and recreates in Seattle.  *Id.* at ¶ 2.  Ms. Chan's job requires her to supervise offenders released from incarceration.  Because this job has the potential to be very dangerous, she is required to be armed and has received substantial training in all aspects of firearm use.  *Id.* at ¶ 3-4.

Ms. Chan sometimes carries a personal firearm when she is off-duty in part because of the likelihood that she will encounter people that she has apprehended in her line of work who may wish to cause her harm.  *Id.* at ¶ 6.  Ms. Chan's professional experience has taught her that crime can be committed anywhere and by anyone; for that reason, she occasionally carries her lawful firearm in public in order to protect herself.  *Id.*

Ms. Chan enjoys walking in Lincoln Park, Discovery Park, and the Alki Beach area.  She also occasionally walks and plays tennis at the Hiawatha Community Center.  *Id.* at ¶ 7.  All of these places are currently (or will soon become) subject to the Firearms Rule.  For that reason, Ms. Chan no longer feels that she can protect herself when she visits those locations.  *Id.*  In fact, City officials recently asked Ms. Chan and plaintiff Robert Kennar to leave the Hiawatha Community Center because they possessed otherwise lawful firearms.  *Id.* at ¶ 8.  The City did so even though no firearm-banning signage had yet been posted at that center – a blatant violation of the Firearms Rule, which only applies where "appropriate signage has been posted."  *Id.*; Fogg Decl., Ex. A at ¶ 4.0.

<u>Plaintiff Robert Kennar.</u>  Like Ms. Chan, Mr. Kennar is an armed parole and probation officer for the Washington Department of Corrections.  Declaration of Robert Kennar ("Kennar Decl.") at ¶ 4.  He works and recreates in Seattle.  *Id.* at ¶ 2.  Mr. Kennar is a 60 year-old man who has a distinguished record of military service.  *Id.* at ¶¶ 2, 5.  He served in

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 7

**CORR CRONIN MICHELSON**
**BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

51

1   the United States Army from 1971 until 1973 and the United States Air Force from 1979 until

2   2009, and he is currently a member of the Washington State Guard. *Id.* at ¶ 5. In conjunction

3   with his extensive military service, as well as his current and past employment, Mr. Kennar

4   has been trained in all aspects of firearms maintenance and use. *Id.* In fact, he is a certified

5   Department of Corrections instructor in safe firearms handling. *Id.* Mr. Kennar is a member

6   of the NRA and the Washington Arms Collectors. *Id.* at ¶ 3.

7        When Mr. Kennar is off-duty, he always carries his personal firearm when he is

8   lawfully permitted to do so. *Id.* at ¶ 7. Like Ms. Chan, Mr. Kennar is legitimately concerned

9   about being threatened by people that he has encountered through his line of work. *Id.* In

10  addition, as a Department of Corrections employee, Mr. Kennar is familiar with the criminal

11  activity in Seattle and he believes that some Seattle streets and parks are unsafe. *Id.* In fact,

12  he has himself been the victim of crime in Seattle. *Id.* Mr. Kennar frequently visits Seattle

13  parks on his days off, including parks subject to the Firearms Rule: namely, Lincoln Park, the

14  Alki Beach area, the Green Lake area, Volunteer Park, Discovery Park, and Gas Works Park.

15  Because of the Firearms Rule, Mr. Kennar has stopped going to his favorite parks. *Id.* at ¶ 8.

16  In fact, he was recently asked to leave the Hiawatha Community Center because he was

17  carrying an otherwise lawful firearm. The City employee on-site at the Community Center

18  cited the Firearms Rule as his reasoning, despite the fact that no signs had yet been posted.

19  *Id.* at ¶ 9.

20       <u>Plaintiff Raymond Carter.</u> Mr. Carter is a 44 year-old gay man who is a past co-chair

21  of the Seattle Pride Parade and the founding President of the Seattle Chapter of Pink

22  Pistols/Cease Fear. Declaration of Raymond Carter ("Carter Decl.") at ¶¶ 2, 4. He lives,

23  works, and recreates in Seattle, and is a SAF and NRA member. *Id.* at ¶¶ 2-3. He routinely

24  carries a firearm when he is lawfully permitted to do so because he strongly believes that as

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 8

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

52

1    an openly gay man, he is more susceptible to becoming a victim of a hate-related crime but,

2    because of health issues, he does not feel that he is physically capable of running away. *Id.* at

3    ¶ 7. Mr. Carter used to regularly go walking in Lincoln Park, the Alki Beach area, and

4    Volunteer Park, and he twice visited the High Point Community Center for public meetings.

5    *Id.* at ¶ 8. However, because those facilities are now subject to the Firearms Rule, he no

6    longer exercises his right to visit them because he does not feel safe there. *Id.*

7         Recently, Mr. Carter entered the Alki Community Center and informed the employee

8    working there that he was carrying a holstered firearm and that he possessed a valid license to

9    do so. *Id.* at ¶ 9. The City employee instructed him – in writing – that he was required to

10   leave, pursuant to the Firearms Rule. *Id.*

11        <u>Gray Peterson.</u>  Mr. Peterson is a 28 year-old man who describes himself as a

12   "progressive gay liberal." Declaration of Gray Peterson ("Peterson Decl.") at ¶¶ 2, 5. He is

13   also a member of the NRA who, like Mr. Carter, always carries a firearm when he is lawfully

14   permitted to do so in order to protect himself from hate crimes. *Id.* at ¶ 8. Mr. Peterson is

15   often credited for leading the charge to educate Washington law enforcement agencies about

16   the legality of openly carrying a firearm. *Id.* at ¶ 4.

17        Mr. Peterson visits Seattle parks with his domestic partner. *Id.* at ¶ 9. These parks

18   include Volunteer Park, Cal Anderson Park, and the Green Lake area, all of which are

19   currently (or will eventually be) subject to the Firearms Rule. Mr. Peterson has not been

20   willing to visit these parks since the Firearms Rule went into effect because he does not feel

21   safe there. *Id.*

22        <u>Gary Goedecke.</u>  Mr. Goedecke is a 63 year-old Bothell resident.  Declaration of Gary

23   Goedecke ("Goedecke Decl.") at ¶ 2. He owns a 35 year-old business at Pike Place Market in

24   downtown Seattle. He has served the City of Seattle's chartered public corporation known as

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 9

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   the Pike Place Market Preservation and Development Authority, and its related entities, in a

2   variety of leadership capacities since 1974. *Id.* at ¶ 4. He is a veteran who is trained in the

3   use of Nike Hercules missiles and air defense artillery automatic weapons, and he earned a

4   Viet Nam Commendation medal, a Viet Nam Service medal, and a Bronze Star medal for

5   meritorious service during the Viet Nam war. *Id.* at ¶ 6.

6        Mr. Goedecke always carries a firearm when he is lawfully permitted to do so in order

7   to protect himself, his wife, and his employees. He is particularly likely to carry his firearm

8   when he is at his place of business due to the level of dangerous criminal activity in

9   downtown Seattle. *Id.* at ¶ 7. In addition, Pike Place Market is directly adjacent to Victor

10  Steinbrueck Park, which Mr. Goedecke passes through regularly and believes to be an area of

11  significant criminal activity. *Id.* at ¶¶ 7-8. He also regularly visits the Alki Beach area and

12  the Green Lake area. *Id.* at ¶ 8. A Seattle Police officer recently told Mr. Goedecke that due

13  to the new Firearms Rule, Mr. Goedecke could not cross the street into Victor Steinbrueck

14  Park because he was carrying an otherwise lawful firearm. *Id.* at ¶ 9.

### III. STATEMENT OF ISSUES

16       Are the plaintiffs, current holders of lawful Washington Concealed Pistol Licenses and

17  organizations whose members are so licensed, entitled to a judgment declaring the Firearms

18  Rule null and void, enjoining the enforcement of that rule, and requiring the City to remove

19  all gun ban signage posted under the rule where the City enacted the rule despite clear legal

20  authority that such regulation is unlawful under state law?

### IV. EVIDENCE RELIED UPON

22       This motion for summary judgment is based upon the evidence and authorities cited

23  herein, and the Declarations of Steven Fogg, Winnie Chan, Robert Kennar, Raymond Carter,

24  Gray Peterson, Gary Goedecke, David Workman, Leland Bull, and Christopher Cox.

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 10

**CORR CRONIN MICHELSON**
**BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

# V. ARGUMENT AND AUTHORITY

Summary judgment in the moving party's favor is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Where a trial court is faced with questions of a purely legal nature, it is proper to decide the case on summary judgment. *Kinnear v. The Hertz Corp.*, 86 Wn.2d 407, 418 (1976). The issues presented by this case pertain to statutory authority and constitutional limitations, and are therefore issues of law to be determined by this Court. *Okeson v. Seattle*, 150 Wn.2d 540, 549 (2003).

## A. The Firearms Rule violates clearly established state law.

The possession of a firearm is a clearly protected right under the United States and Washington Constitutions. U.S. CONST. amend. II; *District of Columbia v. Heller*, 128 S.Ct. 2783, 2797 (2008); WASH. CONST. art. I, § 24. Indeed, our state Constitution explicitly states that "[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired[.]" WASH. CONST. art. I, § 24.

In furtherance of this clear policy, the Washington legislature has created a comprehensive statutory scheme which aims to protect the citizen's right to bear arms while simultaneously protecting the public's safety from firearm-related dangers. *See* RCW 9.41.010-9.41.810, 70.108.150. Under this statutory scheme, an adult who meets certain criteria may obtain a Concealed Pistol License which entitles him/her to carry a concealed firearm in public locations with limited exceptions such as jails, courtrooms, public mental health facilities, bars, airports, schools, and outdoor music festivals. *Id.* In addition, persons may openly carry lawful firearms in places where firearm possession is otherwise legal if they do so in a manner that does not manifest an intent to intimidate or warrant alarm. RCW 9.41.270.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 11

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

55

1  In addressing the interests of firearm possession and public safety, the Washington

2  legislature made it abundantly clear that the authority to regulate firearms rests exclusively

3  with the state:

4  The state of Washington hereby **fully occupies and preempts the entire field of firearms regulation within the boundaries of the state,**

5  including the . . . possession . . . of firearms, or any other element relating to firearms or parts thereof[.]  **Cities, towns, and counties or other**

6  **municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW**

7  **9.41.300, and are consistent with this chapter.**  [. . .]  Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the

8  requirements of state law **shall not be enacted and are preempted and repealed** [. . .].

9  RCW 9.41.290 ("Preemption Clause") (emphasis added).[4]  This Preemption Clause "was

10  enacted to reform that situation in which counties, cities, and towns could each enact

11  conflicting local criminal codes regulating the general public's possession of firearms" and

12  aims to "creat[e] statewide uniformity of firearms regulation of the general public." *Cherry v.*

13  *Mun. of Metro. Seattle*, 116 Wn.2d 794, 801-02 (1991); *see also Rabon v. Seattle*, 135 Wn.2d

14  278, 289 (1998) ("Preemption may be found where there is express legislative intent to

15  preempt the field or such intent appears by necessary implication"); *Shoreline v. Club for*

16  *Free Speech*, 109 Wn. App. 696, 703 (2001) ("when statutory language is clear and

17  unequivocal, courts must assume the legislature meant exactly what it said and apply the

18  statute as written") (internal quotation omitted).

19  Because the state of Washington has preempted the field of firearms regulation, a

20  municipality may not regulate the lawful possession of firearms on its property when that

21  property is being used by the general public for a public purpose. *Pac. Northwest Shooting*

22

23

24  [4] While the Preemption Clause provides that municipalities may regulate firearms to the extent specifically authorized by state law, no state law allows a municipality to ban the possession of

25  otherwise lawfully possessed firearms from city parks property during public use of that property.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 12

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

56

1    *Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 357 (2006).[5] The City is well aware of the

2    Preemption Clause and the limits it imposes on local actions to regulate firearms. In May

3    2006, for instance, then-Mayor Nickels wrote a letter to Speaker of the House Frank Chopp in

4    which he urged Representative Chopp to work toward adopting reasonable gun regulations.

5    Fogg Decl., Ex. D. In that letter, Mayor Nickels discussed the problem of gun violence in

6    Seattle, then admitted:

7    > We cannot accomplish anything without your personal leadership in Olympia.
     > **State law preempts any and all local regulations related to firearms. Our**
8    > **hands are tied at the local level and we are unable to adopt any local laws**
     > **to protect our residents from gun crime.**

9    *Id.* at 2 (emphasis added).[6]

10   Indeed, Attorney General Rob McKenna unequivocally reinforced this conclusion in

11   an Opinion issued shortly after Mayor Nickels directed all Seattle departments to assess and

12   implement plans to prohibit firearms on City property in 2008. *See* Fogg Decl., Exs. B, E. In

13   responding to the question, "Does a city in Washington have the authority to enact a local law

14   that prohibits possession of firearms on city property or in city-owned facilities?", McKenna

15   wrote:

16   > The answer to your question is no. RCW 9.41.290 "fully occupies and preempts the
17   > entire field of firearms regulation" and preempts a city's authority to adopt firearms
18   > law or regulations of application to the general public, unless specifically authorized

---

19   [5] The City may erroneously argue that *Pac. Northwest Shooting Park Ass'n v. City of Sequim*

20   validates the Firearms Rule because it holds that a city, acting in its proprietary capacity, may regulate
     firearms in the same way that a private property owner may. 158 Wn.2d at 357. But this is only true

21   if the regulations pertain to the *private* use of city-owned property and are not "laws or regulations of
     application to the general public." *Id.* Indeed, Attorney General McKenna expressly stated that the

22   *City of Sequim* case does *not* support the proposition "that cities may prohibit the general public from
     possessing firearms on city property." Fogg Decl., Ex. E at 4.

23   [6] There may, in fact, be other instances where city officials acknowledged the limits imposed

24   by the Preemption Clause. However, as of the date of this motion, the City had not yet responded to
     plaintiffs' discovery requests seeking such information. Plaintiffs therefore reserve the right to

25   supplement this motion at a later date, if necessary.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 13

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

57

by state law. Accordingly, RCW 9.41.290 preempts a city's authority to enact local laws that prohibit possession of firearms on city property or in city-owned facilities. Fogg Decl., Ex. E at 1. McKenna went on to state that a city cannot regulate firearm possession under the guise of property ownership because "[l]arge parts of city property are generally open to the public." *Id.* at 4.

The City's Firearms Rule unquestionably violates state law. The ability to regulate the possession of firearms in public parks and recreational facilities, during the public use of those facilities, lies within the exclusive province of the State. Statutes and case law are clear, as is the Attorney General's Opinion.[7] The Firearms Rule is unlawful and unconstitutional in its entirety. *See* WASH. CONST. art. XI, § 11 ("Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws"); *Rabon*, 135 Wn.2d at 287 ("an ordinance is unconstitutional if a state enactment preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the ordinance and a statute which cannot be harmonized").

**B.  Declaratory relief is appropriate here.**

A person may ask a court to determine the validity of an ordinance, and obtain a declaration of rights under that ordinance, if his/her "rights, status or other legal relations are affected by" that rule. RCW 7.24.020. Such declaratory relief is "peculiarly well suited to the judicial determination of controversies concerning constitutional rights and [. . .] the constitutionality of legislative action or inaction." *Seattle Sch. Dist. v. State*, 90 Wn.2d 476, 490 (1978). Courts typically will not issue declaratory judgments, however, in the absence of a justiciable controversy. *To-Ro Trade Shows v. Grant Collins*, 144 Wn.2d 403, 411 (2001).

---

[7] Attorney General Opinions are entitled to great weight by this Court. *Belas v. Kiga*, 135 Wn.2d 913, 928 (1998).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 14

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    A justiciable controversy exists where there is: (1) an actual, present, and existing dispute, as

2    opposed to a dispute that is possible, hypothetical, moot, or speculative, (2) between parties

3    that have genuine and opposing interests, (3) which involves direct and substantial interests as

4    opposed to potential, theoretical, or abstract interests, and (4) a judicial determination of

5    which will conclusively terminate the controversy. *Id.*; RCW 7.24.060.

6         The present case involves a justiciable controversy. First, an actual dispute currently

7    exists: the City is prohibiting the general public from carrying otherwise lawful firearms onto

8    hundreds of designated parks and recreational facilities despite State preemption, and all but

9    one of the individual plaintiffs have been told to leave city parks and recreation property

10   because they were lawfully carrying a firearm. *See* Chan Decl. at ¶ 8; Kennar Decl. at ¶ 9;

11   Carter Decl. at ¶ 9; Goedecke Decl. at ¶ 9. There is nothing hypothetical, moot, or speculative

12   about this dispute. Second, the parties have genuine and opposing interests. The individual

13   plaintiffs, on one hand, possess Concealed Pistol Licenses and wish to exercise their

14   constitutional and statutory rights to carry their lawful firearms while recreating and engaging

15   in their constitutional right to peacefully assemble on public property.[8] *See* Chan Decl. at ¶¶

16   5-7; Kennar Decl. at ¶¶ 6-8; Carter Decl. at ¶¶ 5, 7-8; Peterson Decl. at ¶¶ 6, 8-9; Goedecke

17   Decl. at ¶¶ 5, 7-8. The City, on the other hand, has justified banning lawful firearms in parks

18   and recreation facilities by citing to its responsibility to protect children. Fogg Decl., Ex. A at

19

20

21        [8] The organizational plaintiffs have members in Washington with these same interests, and the
organizational plaintiffs' central purposes focus on their members' right to possess firearms.

22   Declaration of David P. Workman at ¶¶ 2-7 (representing plaintiffs SAF and Citizens Committee);
Declaration of Christopher W. Cox at ¶¶ 2-4 (representing plaintiff NRA); Declaration of Leland L.

23   Bull, Jr. at ¶¶ 2-4 (representing plaintiff WAC). *See Am. Legion Post No. 149 v. Dep't of Health*, 164
Wn.2d 570, 595 (2008) (an organization may have standing in a representative capacity where their

24   members would have standing to sue in their own right, where the interests they seek to protect are
germane to its purpose, and where the claims and requested relief does not require the participation of

25   individual members).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 15

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

¶ 1.0. The interest in bearing arms for self-protection and the interest in regulating firearms possession are both genuine and potentially competing.

Third, plaintiffs' interests in exercising their constitutional and statutory rights while recreating and assembling are direct and substantial. As it currently stands, the individual plaintiffs (and the organizational plaintiffs' members) cannot visit their favorite city parks and community meeting centers while simultaneously carrying their otherwise lawful firearms – a right protected by the United States and Washington Constitutions and by Washington statute – without violating a City rule and risking the humiliation of being asked to leave (or of being arrested for trespass if they fail to comply). And finally, a judicial determination of plaintiffs' rights will indeed terminate this controversy as it would conclusively establish that the City's Firearms Rule was an unlawful attempt to bypass the State's exclusive authority to regulate firearms possession.

In sum, the four elements of a justiciable controversy are present and are indisputable. No genuine issue of fact is present and the statutory and case law plainly demonstrate that the City's Firearms Rule violates state statutory and constitutional law. Plaintiffs are entitled to a declaration that the City's Firearms Rule is unlawful and unenforceable in its entirety.

The declaratory relief plaintiffs seek from this court is not unusual or extraordinary. A review of the relevant case law demonstrates that courts do not hesitate to grant declaratory relief on summary judgment where municipal regulations conflict with state law. For example, a city ordinance requiring a telephone franchisee to move underground lines at its own expense was declared null and void where a state regulation essentially required the relocation of lines to be paid for by the party requesting it. *See Gen. Tel. Co. of the N.W., Inc. v. City of Redmond*, 105 Wn.2d 579, 587 (1986) (affirming trial court's decision to grant declaratory relief on summary judgment). And where state law provided that property

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 16

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

development rights vest at the time a developer files a legally sufficient permit or plat application, a county ordinance stating otherwise was preempted and therefore declared invalid. *Adams v. Thurston County*, 70 Wn. App. 471, 482 (1993) (affirming trial court's decision to grant declaratory relief on summary judgment). Declaratory relief is appropriate here.

C.    **Injunctive relief is also appropriate here.**

A declaration from this Court that the Firearms Rule is unlawful will go a long way toward restoring plaintiffs' clear legal rights. The plaintiffs will not receive complete relief, however, until the City is required to remove all signage posted pursuant to the Firearms Rule and is permanently enjoined from enforcing the Firearms Rule in any way. Such injunctive relief is appropriate where: (1) the plaintiffs have a clear legal or equitable right, (2) the plaintiffs have a well-grounded fear of the immediate invasion of that right, and (3) the acts complained of are resulting, or will result, in actual and substantial injury to the plaintiffs. *Wash. Fed'n of State Employees v. State*, 99 Wn.2d 878, 887-88 (1983).

Here, there is no question that the individual plaintiffs have a clear legal right to carry their lawful firearms in areas where state law permits them to do so. *See* WASH. CONST. art. I, § 24; RCW 9.41.010-9.41.810, 70.108.150. And because the City's Firearms Rule clearly prohibits plaintiffs from exercising this right, there is no question that plaintiffs have a well-grounded fear of the immediate invasion of that right. And finally, the plaintiffs have been injured in that they have been prohibited from entering public property despite the fact that they are acting in accordance with state law. *See* Chan Decl. at ¶ 8; Kennar Decl. at ¶ 9; Carter Decl. at ¶ 9; Peterson Decl. at ¶ 9; Goedecke Decl. at ¶ 9.[9]

---

[9] Nor will money damages do anything to make the plaintiffs whole. *See Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209 (2000) (injunctive relief will not be granted where a plaintiff has an adequate remedy at law). No monetary award would restore a taxpaying citizen's right to enter public property for public use while exercising a constitutional and statutory right.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 17

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

61

The Firearms Rule clearly conflicts with a general state law, is unconstitutional on that basis, and injunctive relief is required to remedy the injuries it has caused. It is well within this Court's ability to grant this relief. For example, where a Seattle ordinance regarding historic landmarks conflicted with a state statute expressly permitting the University of Washington to alter and demolish certain University-owned property, the ordinance was declared unconstitutional as applied and both injunctive and declaratory relief were granted. *State v. City of Seattle*, 94 Wn.2d 162, 166-67 (1980) (affirming trial court's decision to grant injunctive and declaratory relief on summary judgment). Similarly, the City's rule here is preempted, is unconstitutional, and requires injunctive relief.

## VI. CONCLUSION

The legislature has unmistakably stated that it fully occupies and preempts the field of firearms regulation. Accordingly, if guns are to be banned in city parks, it is for the legislature – not the defendants – to decide. Instead of accepting this basic legal principle, defendants have illegally taken the law into their own hands by enacting and enforcing a Firearms Rule that ignores state law and violates the rights of Washington citizens like the individual plaintiffs. This Court should restore order by granting plaintiffs' motion for summary judgment. A proposed order is attached.

DATED this 15th day of January, 2010.

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP

Steven W. Fogg, WSBA No. 23528
Molly A. Malouf, WSBA No. 31972
Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 18

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

62



THE HONORABLE GREGORY P. CANOVA

1

2

3

4

5

6

7

8          SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

9    WINNIE CHAN, et al.,                    No. 09-2-39574-8 SEA

10                            Plaintiffs,    **ORDER GRANTING PLAINTIFFS'**
                                             **MOTION FOR SUMMARY JUDGMENT**
11         v.

12   CITY OF SEATTLE, et al.,                **[PROPOSED]**

13                            Defendants.

14

15         THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment.

16   The Court has reviewed:

17         1.    Plaintiffs' Motion for Summary Judgment,

18         2.    Declarations submitted in support of Plaintiffs' Motion for Summary

19   Judgment, with exhibits,

20         3.    Defendants' Response to Plaintiffs' Motion for Summary Judgment,

21         5.    Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment,

22         6.    _____,

23         7.    _____, and

24         8.    the records and files herein,

25

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

and has considered the arguments of counsel.  The Court finds that there is no genuine issue of material fact on which reasonable minds could differ.  Further, the Court concludes that, pursuant to RCW 9.41.290, the City of Seattle's authority to regulate the possession of firearms in City parks and recreation facilities during public use of those facilities is preempted by state law, and therefore Seattle's Department of Parks and Recreation's Rule/Policy Number P 060-8.14 ("Firearms Rule") violates Washington law and, on that basis, is null and void.  Plaintiffs are entitled to judgment as a matter of law.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion for Summary Judgment is GRANTED,

2.    The City of Seattle's Firearms Rule is declared null and void,

3.    The City of Seattle is permanently enjoined from enforcing the Firearms Rule in any way.

4.    The City is further ordered to immediately remove all signage posted pursuant to the Firearms Rule.

Dated this _____ day of _____, 2010.

_____
THE HONORABLE GREGORY P. CANOVA

Presented by:

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP

_____
Steven W. Fogg, WSBA No. 23528
Molly A. Malouf, WSBA No. 31972

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

64

# EXHIBIT C

The Honorable Greg Canova

1

2

3

4

5

6

7

8

9

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| 10  WINNIE CHAN, an individual; ROBERT | Case No. 09-2-39574-8 SEA |

WINNIE CHAN, an individual; ROBERT KENNAR, an individual; RAYMOND CARTER, an individual; GRAY PETERSON, an individual; GARY G. GOEDECKE, an individual; THE SECOND AMENDMENT FOUNDATION, INC., a Washington non-profit corporation; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS, a Washington non-profit corporation; WASHINGTON ARMS COLLECTORS, INC., a Washington non-profit corporation; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., a New York non-profit association,

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs,

v.

CITY OF SEATTLE, a municipality; GREGORY J. NICKELS, Mayor of the City of Seattle, in his official capacity; SEATTLE DEPARTMENT OF PARKS AND RECREATION, a department of the City of Seattle; and TIMOTHY A. GALLAGHER, Superintendent, in his official capacity,

Defendants.

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

# TABLE OF CONTENTS

**Page**

I.    RELIEF REQUESTED ................................................................................. 1

II.   INTRODUCTION ....................................................................................... 1

III.  STATEMENT OF FACTS ............................................................................ 3

IV.   ARGUMENT AND AUTHORITY ................................................................. 5

    A.   Plaintiffs Do Not Have an Established Right to Bring Firearms into Parks and Community Centers Under the Federal or State Constitutions. ................... 5

    B.   The Rule Does Not Fall Within the Preemption Statute. ......................... 6

        1.   City Departments Issue Rules to Manage Their Property ................ 6

        2.   The Preemption Statute Does Not Preempt Local Rules or Policies. ....... 7

        3.   The Rule Does Not Include Criminal Penalties. ......................... 9

    C.   Injunctive Relief is Inappropriate ...................................................... 11

        1.   Plaintiffs Have No Clear or Equitable Rights at Stake. .............. 12

        2.   Plaintiffs Have Suffered No Injury. ........................................... 13

            a.   Plaintiff Carter ................................................................... 14

            b.   Plaintiffs Chan and Kennar ................................................ 16

            c.   Plaintiff Peterson .............................................................. 17

            d.   Plaintiff Goedecke ............................................................. 18

            e.   Organizational Plaintiffs. .................................................. 18

        3.   The Public Interest Favors Denial of an Injunction. ................... 19

V.    CONCLUSION ......................................................................................... 20

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

i

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*District of Columbia v. Heller,*
  ___ U.S. ___, 128 S. Ct. 2783, 171 L. Ed. 2d 637,
    *aff'd sub nom. Parker v. District of Columbia,* 128 S. Ct. 2994 (2008) ...................... 5, 12

*Fresno Rifle & Pistol Club, Inc. v. Van De Kamp,*
  965 F.2d 723 (9th Cir. 1992) ................................................................................. 5

### STATE CASES

*Am. Legion Post #149 v. Wash. Dep't of Health,*
  164 Wn.2d 570, 192 P.3d 306 (2008) ................................................................... 1

*Applied Indus. Materials Corp. v. Melton,*
  74 Wn. App. 73, 872 P.2d 87 (1994) ............................................................. 7, 8, 9

*Arnold v. Melani,*
  75 Wn.2d 143, 449 P.2d 800 (1968) ................................................................ 11, 12

*ATU Legislative Council of Wash. v. State,*
  145 Wn.2d 544, 40 P.3d 656 (2002) ............................................................... 10, 11

*Cherry v. Municipality of Metro. Seattle,*
  116 Wn.2d 794, 808 P.2d 746 (1991) ............................................................. 8, 9, 10

*City of Seattle v. Montana,*
  129 Wn.2d 583, 919 P.2d 1218 (1996) ............................................................. 5, 12

*In re Detention of Williams,*
  147 Wn.2d 476, 55 P.3d 597 (2002) ..................................................................... 7

*Holmes Harbor Water Co. v. Page,*
  8 Wn. App. 600, 508 P.2d 628 (1973) ............................................................. 11, 12

*Kucera v. Dep't of Transp.,*
  140 Wn.2d 200, 995 P.2d 63 (2000) .................................................................... 11

*Oltman v. Holland Am. Line USA, Inc.,*
  163 Wn.2d 236, 178 P.3d 981 (2008) ................................................................... 10

*Pac. Nw. Shooting Park Ass'n v. City of Sequim,*
  158 Wn.2d 342, 144 P.3d 276 (2006) ............................................................... 9, 10

*State ex rel. Gebhardt v. Superior Court for King County,*
  15 Wn.2d 673, 131 P.2d 943 (1942) ..................................................................... 12

*State ex rel. Tubbs v. City of Spokane,*
  53 Wn.2d 35, 330 P.2d 718 (1958) ........................................................................ 6

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

ii

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

*State v. Baldwin,*
  109 Wn. App. 516, 37 P.3d 1220 (2001) ................................................. 7, 8

*State v. Blair,*
  65 Wn. App. 64, 827 P.2d 356 (1992) ........................................................ 6

*State v. Morgan,*
  78 Wn. App. 208, 896 P.2d 731 (1995) ...................................................... 6

*Tyler Pipe Indus., Inc. v. State Dep't of Revenue,*
  96 Wn.2d 785, 638 P.2d 1213 (1982) .................................................. 11, 19

*Wash. Fed'n of State Employees, Council 28, AFL-CIO v. State,*
  99 Wn.2d 878, 665 P.2d 1337 (1983) ....................................................... 11

*Wash. Fed'n of State Employees, Council 28, AFL-CIO v. Office of Fin. Mgmt.,*
  121 Wn.2d 152, 849 P.2d 1201 (1993) ..................................................... 10

*Weden v. San Juan County,*
  135 Wn.2d 678, 958 P.2d 273 (1998) ......................................................... 7

*Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima,*
  122 Wn.2d 371, 858 P.2d 245 (1993) ......................................................... 1

**DOCKETED CASES**

*Estes v. Vashon Maury Island Fire Protection Dist. No. Thirteen,*
  No. 05-2-02732-1 KNT (King County Super. Ct. Mar. 9, 2005 ) ................... 10

**STATE STATUTES**

RCW 9.41.070 ...................................................................................... 20

RCW 9.41.070(1)(c) ............................................................................... 4

RCW 9.41.270(1) ................................................................................. 17

RCW 9.41.290 ............................................................................... *passim*

RCW 9.94A.8445(1) ............................................................................... 8

RCW 19.190.110 ................................................................................... 8

RCW 46.61.667(5) ................................................................................. 8

RCW 80.50.110(1) ................................................................................. 8

Act of Apr. 9, 1985, ch. 428, 198 Wash. Laws 1866 ............................... 8, 9

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

69

## MISCELLANEOUS

Seattle Mun. Code. § 3.26.040 ........................................................................................ 6

Seattle Mun. Code. § 18.12.040 ...................................................................................... 6

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

iv

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

70

1    **I.    RELIEF REQUESTED**

2        Defendants request that Plaintiffs' Motion for Summary Judgment be denied.

3    Additionally, Defendants cross-move for summary judgment in their favor on Plaintiffs'

4    claims under RCW 9.41.290.

5    **II.    INTRODUCTION**

6        Plaintiffs challenge the City of Seattle's rule to create a safe and secure environment

7    free of guns for children who use recreation and education facilities that the City owns and

8    operates.  The City of Seattle welcomes this opportunity to obtain a ruling that its Parks

9    Department Rule (the "Rule") prohibiting visitors from carrying firearms in designated

10   facilities where children are likely to be present is a permissible exercise of its authority to

11   place conditions on the use of municipal properties it operates.[1]  While only a small minority

12   of the visitors to City parks wish to carry deadly firearms, Defendants agree for purposes of

13   this motion that there is a present controversy that is appropriate for judicial resolution.

14       Plaintiffs have not argued that the Rule is unconstitutional, and for good reason—

15   federal and state courts have recognized only a limited constitutional right to carry firearms.

16   In addition, both the United States and Washington Supreme Courts have held that reasonable

17   regulation of firearms is constitutionally permissible.  As a result, the sole legal issue now

18   before the Court is whether the Rule is preempted by a state firearms statute, RCW 9.41.290

19   (the "Preemption Statute").

20       Plaintiffs argue that the Washington Legislature "occupies and preempts the entire field

21   of firearms regulation."  Pls.' Mot. for Summ. J. ("Motion") at 12 (quoting RCW 9.41.290).

22   This is obviously true, but only as far as it goes.  The City of Seattle agrees that the State has

23

24   [1] The City reserves all of its affirmative defenses, including its affirmative defense that certain Plaintiffs lack standing to bring claims and seek relief in a civil action.  For example, the City believes that the Organizational

25   Plaintiffs each lack standing to assert claims that have been asserted by individuals with standing.  *See Am. Legion Post #149 v. Wash. Dep't of Health*, 164 Wn.2d 570, 595, 192 P.3d 306 (2008) (an organization has

26   standing when, *inter alia*, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *Yakima County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122

27   Wn.2d 371, 381, 858 P.2d 245 (1993) (declining to liberally construe the issue of standing where "all the arguments raised by the Fire District could be adequately, if not more effectively, presented by the other plaintiffs

28   in this case").

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

1

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel +1-206-839-4300

1   occupied the field of "firearms *regulation*," but the Rule is not a regulation of firearms because

2   it is not generally applicable to all conduct throughout the city's jurisdiction, and it does not

3   impose penalties for violations. Rather, the policy establishes conditions for the use of

4   facilities that the City itself owns. Persons who do not comply may have their permission to

5   enter and use the facilities revoked.

6       Moreover, RCW 9.41.290 did not preempt "rules," but only "laws and ordinances." In

7   numerous other preemption statutes, however, the Legislature specifically included "rules"

8   within the scope of the subject that was preempted. But not in RCW 9.41.290. This omission

9   of "rules" in RCW 9.41.290 is perfectly consistent with the general intention of the statute.

10  Because Plaintiffs do not address the distinction between ordinances and rules, in particular,

11  that criminal regulations cannot be enacted through rulemaking, they misconstrue the

12  preemption statute to have broader effect than the Legislature intended.

13      The Washington legislature enacted the Preemption Statute to eradicate the risk that

14  persons traveling freely from county to county and city to city might be acting lawfully one

15  minute, and subject to criminal penalties for the identical behavior the next. But—like policies

16  that prohibit spitting and running at municipal swimming pools, or bringing food into certain

17  areas of facilities—the Rule is a condition of use of designated facilities, not a criminal

18  ordinance of general application throughout the entire city. Any visitor who wishes to make

19  use of the City's facilities is required to know and comply with the rules on which that

20  privilege is conditioned. Where visitors do not comply with any of these policies, their

21  privilege of use may be withdrawn and they may be required to leave. The Rule here simply

22  adds to a list of conditions of use, all of which are calibrated to make Seattle parks facilities

23  safe for visitors, particularly the children and families that make up the majority of park users.

24      Finally, and most importantly, Plaintiffs give short shrift to the controlling Washington

25  Supreme Court cases that have held that the Preemption Statute does not apply where a

26  municipality acts in its proprietary capacity, such as when it acts as an employer establishing

27  rules for employment, or as a property owner setting rules of use. Instead, Plaintiffs rely

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &                    2
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  heavily on an Attorney General Opinion, but opinions of elected officials construing statutes

2  are not legal precedent.  It is the judiciary, not the executive, that is constitutionally charged

3  with the primary responsibility to construe State statutes.

4    Because RCW 9.41.290 does not preempt a local government from imposing

5  conditions on the use of its own property, Plaintiffs' motion for summary judgment should be

6  denied, and Defendants' cross-motion granted.  Plaintiffs' request for issuance of an injunction

7  must also be denied because both the legal merits and the public interest favor Defendants.

8  **III. STATEMENT OF FACTS**

9    On October 14, 2009, the City of Seattle enacted Rule/Rule Number P 060-8.14,

10  intended to make certain Parks Department facilities free from dangerous firearms:

11    The Department, in its proprietary capacity as owner or manager of Department
  facilities, does not permit the carrying of concealed firearms or the display of
12    firearms . . . at Parks Department facilities at which:  1) children and youth are
  likely to be present and, 2) appropriate signage has been posted to communicate
13    to the public that firearms are not permitted at the facility.

14  Declaration of Eric Friedli ("Friedli Decl."), Ex. A ¶ 4.0.  The City found that in 2008, over

15  1.8 million people had visited and attended programs in Seattle Parks Department-owned

16  community centers, pools, teen centers, and environmental learning centers.  *Id.* ¶ 1.2.  At least

17  tens of thousands of youths visit these same facilities every year.  *Id.*  As the owner of these

18  facilities, the City recognized that it has an abiding interest in ensuring that the facilities are

19  safe and secure places for children to visit.  *Id.* ¶¶ 1.3-1.4.  The City also found that families'

20  safe and secure use of City-owned facilities is "disturbed by the threat of intentional or

21  accidental discharges of firearms in the vicinity of children."  *Id.* ¶ 1.6.

22    To promote its interests in providing safe and secure facilities for children and families,

23  the City Department of Parks and Recreation issued the Rule, quoted above.  *Id.* ¶¶ 1.1-1.12.

24  The City based its Rule on sound public safety considerations, including:

25    •  "In 2008 . . . over 108,000 children and youth visited wading pools; over
   59,000 youth events were scheduled at sports fields; and, countless numbers
26     of children and youth visited playgrounds, play areas, and sports courts."
   *Id.* ¶ 1.2.

27    •  "As the owner and operator of Department facilities at which children and

28

DEFS.' OPP'N TO MOT. FOR SUMM. J.      3
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    youth are likely to be present, the City has a strong interest in promoting
2    facility users' and visitors' confidence, particularly families with children,
     that such facilities are safe and secure places to visit." *Id.* ¶ 1.3.

3    • "Carrying concealed firearms and displaying firearms at Department
       facilities at which children and youth are likely to be present threatens the
4      City's interests in promoting the use of those facilities by children, youth
       and their families." *Id.* ¶ 1.4.
5
6    • The "safe and secure use of Department facilities is disturbed by the threat
       of intentional or accidental discharges of firearms in the vicinity of
7      children, which can result from various unforeseen circumstances, (such as
       the escalation of disputes among individuals carrying firearms . . . .)." *Id.*
       ¶ 1.6.
8
9    • "Studies demonstrate that individuals possessing firearms are more likely to
       be shot in an assault than those who do not have a firearm. . . . It is
10     reasonable for the Department to conclude that more firearms in Parks
       facilities increases the likelihood that someone will be seriously injured."
11     *Id.* ¶ 1.10.

12   • "The City's and Department's interests will be promoted by . . . [this]
       policy . . . ." *Id.* ¶ 1.12.

13   After enacting the Rule, the City then proceeded to post conspicuous signs advising people of

14   its policy prohibiting firearms in those City-owned parks facilities where children were likely

15   to be present. Friedli Decl. ¶ 4.

16        A recent survey of Seattle voters revealed that approximately 4% live in households

17   where a member has obtained a concealed pistol license. Declaration of Ian Stewart ¶ 5. For

18   purposes of this motion, the Court must draw the reasonable inference that the overwhelming

19   majority of the visitors to Seattle Parks do not carry any firearms. By reasonable inference,

20   then, a very small percentage of parks visitors are arguably affected by the Rule.

21        Moreover, by law, no one under the age of 21 may obtain a concealed pistol license,

22   RCW 9.41.070(1)(c), so by definition, children and youth may not choose to carry firearms in

23   self-defense. It is noteworthy that many of the Plaintiffs do not use Seattle parks facilities for

24   the purpose of providing children a safe and secure environment for education and recreation.

25   Declaration of David S. Keenan in Support of Defs.' Opp'n to Pls.' Mot. for Summ. J. &

26   Defs.' Cross-Mot. for Summ. J. ("Keenan Decl.") Ex. C (Deposition of Winnie Chan ("Chan

27   Dep.") at 11:5-19); Keenan Decl. Ex. E (Deposition of Raymond Carter ("Carter Dep.") at

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &          4
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

21:6-7); Keenan Decl. Ex. F (Deposition of Gray Peterson ("Peterson Dep.") at 9:14-16; 11:9-12).

## IV.   ARGUMENT AND AUTHORITY

### A.   Plaintiffs Do Not Have an Established Right to Bring Firearms into Parks and Community Centers Under the Federal or State Constitutions.

Neither the Second Amendment nor related federal case law provide a basis for the rights claimed by Plaintiff.  First, Plaintiffs' claim that "possession of a firearm is a clearly protected right" under the Second Amendment (Mot. at 11), has no application here, because "the Second Amendment stays the hand of the national government only." *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir. 1992).  However, even if the Second Amendment did apply to any degree here, the recent Supreme Court decision Plaintiffs cite from *District of Columbia v. Heller*, __ U.S. __, 128 S. Ct. 2783, 171 L. Ed. 2d 637, *aff'd sub nom. Parker v. District of Columbia*, 128 S. Ct. 2994 (2008), refutes the very right they claim.  The core holding of *Heller* was that "the absolute prohibition of handguns held and used for *self-defense in the home*" violates the Second Amendment.  *Id.* at 2822 (emphasis added).  In limiting its holding, the *Heller* Court observed that rights under the Second Amendment were "not unlimited," *id.* at 2799, and held that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  *Id.* at 2816-17; *see also id.* at 2817 n.26 (noting that sensitive places such as schools and government buildings were only "examples," and "our list does not purport to be exhaustive").  Thus, even if the Second Amendment limited state and local authority, the very case law Plaintiffs cite would readily accommodate the Rule at issue here.

Plaintiffs find no greater support for the rights they claim under the Washington Constitution (Mot. at 11), because the Washington Supreme Court has "consistently held that the right to bear arms in art. I, § 24 is not absolute, but instead subject to reasonable regulation by the State under its police power."  *City of Seattle v. Montana*, 129 Wn.2d 583, 593, 919 P.2d 1218 (1996) (internal quotation marks omitted).  Consistent with this authority,

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  the City of Seattle's Rule, restricting guns only in designated government facilities, was

2  carefully crafted to serve its goal of protecting children, and only restricts firearms at certain

3  designated Parks facilities or portions thereof where the City has determined children and

4  youth are likely to be present, and which have been posted with appropriate signage. Friedli

5  Decl., Ex. A ¶ 4.0. In this motion, the Rule's constitutionality has not been challenged and

6  must be presumed.

7  **B.    The Rule Does Not Fall Within the Preemption Statute.**

8  **1.    City Departments Issue Rules to Manage Their Property.**

9  The Superintendent of the Seattle Department of Parks and Recreation has issued a

10  reasonable Rule concerning the use of certain Parks facilities, which in no way falls within the

11  reach of the Preemption Statute. The Superintendent's actions here start from the fundamental

12  principle that "[a] city . . . may control the use of its property so long as the restriction is for a

13  lawful nondiscriminatory purpose." *State v. Morgan*, 78 Wn. App. 208, 211, 896 P.2d 731

14  (1995); *see also State ex rel. Tubbs v. City of Spokane*, 53 Wn.2d 35, 39, 330 P.2d 718 (1958)

15  (holding that in managing its property, a city "acts in its proprietary capacity and has the same

16  duties, obligations, and responsibilities, and also the same rights and powers, as other like

17  proprietors"); *State v. Blair*, 65 Wn. App. 64, 67, 827 P.2d 356 (1992) ("The State, no less

18  than a private owner of property, has power to preserve property under its control for the use to

19  which it is lawfully dedicated." (internal quotation marks omitted)). Without this principle,

20  departments and offices of cities throughout the State could not make the day-to-day decisions

21  they need in order to efficiently and safely managing their facilities for the use and benefit of

22  the municipality and its residents.

23  Here, the Superintendent is charged with the management and control of the City's

24  recreation systems. Seattle Mun. Code. § 3.26.040. In order to carry out this mandate, the

25  Superintendent may, among other things, adopt rules and policies concerning such things as

26  the use of parks, the conduct of visitors in parks, restricted areas within parks, and recreation

27  programs. Seattle Mun. Code. § 18.12.040. Consistent with this authority to set rules and

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &          6
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1   policies, the Superintendent has issued the Rule at issue here relating to a condition of use for

2   Parks facilities, which "does not include any criminal or civil penalties." Friedli Decl., Ex. A

3   ¶ 6.1. The Rule is not an ordinance adopted by the Seattle City Council or an order by the

4   Mayor, but instead simply "constitutes conditions placed upon a person's permission to enter

5   or remain" in Seattle parks facilities, consistent with the City's authority as a proprietor of City

6   property. *Id.* Therefore, Plaintiffs here face a heavy burden in overturning the City's

7   reasonable and narrow Rule, enacted to protect its residents while they are using its property.

8            2.       **The Preemption Statute Does Not Preempt Local Rules or Policies.**

9            The Preemption Statute preempts "laws and ordinances," but includes no language

10  reflecting an intention to preempt local "rules" and "policies." RCW 9.41.290. Where a

11  statute's language is clear, "its plain meaning must be given effect without resort to rules of

12  statutory construction." *Applied Indus. Materials Corp. v. Melton*, 74 Wn. App. 73, 78, 872

13  P.2d 87 (1994). Moreover, the Legislature is presumed to understand what it is doing in

14  drafting the language of a statute. *Id.* at 79. For this reason, Washington courts require that

15  the "Legislature must *expressly* indicate an intent to preempt a particular field." *Weden v. San*

16  *Juan County*, 135 Wn.2d 678, 695, 958 P.2d 273 (1998). Therefore, as a threshold matter, the

17  plain language of the Preemption Statute only extends to laws and ordinances that purport to

18  regulate firearms, none of which encompass the City's Rule. That should end the inquiry.

19           However, even if the Court were to determine that the Preemption Statute is

20  ambiguous, the canons of statutory construction provide further evidence that the City's Rule

21  is not covered. First, in interpreting a statute, "[o]missions are deemed to be exclusions." *In*

22  *re Detention of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). Also, "[i]n construing a

23  statute, it is always safer not to add to, or subtract from, the language of the statute *unless*

24  *imperatively required* to make it a rational statute." *Applied Indus.*, 74 Wn. App. at 79. As a

25  consequence, the Legislature's choice only to cover laws and ordinances in the Preemption

26  Statute is deemed to exclude rules. In addition, "when a former statute is amended, or an

27  uncertainty is clarified by subsequent legislation, the amendment is strong evidence of what

28

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    the Legislature intended in the first statute." *State v. Baldwin*, 109 Wn. App. 516, 527, 37 P.3d

2    1220 (2001). Importantly, in 1985, "RCW 9.41.290 was amended *to clarify* the preemptive

3    intent of the section." *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 798 n.1, 808

4    P.2d 746 (1991) (emphasis added). Although the Legislature substantially modified the

5    Preemption Statute, it left intact the limited references to "laws and ordinances" without

6    extending the reach of the statute to "rules" or "policies." Keenan Decl., Ex. A (Act of Apr. 9,

7    1985, ch. 428, 1985 Wash. Laws 1866 (amending RCW 9.41.290)). When the Legislature set

8    out specifically to ensure that its preemptive effect was clear, it continued that omission.

9            The significance of this omission is highlighted by the fact that the Legislature is

10   explicit when it wishes to preempt "rules" in other similar preemption statutes. Thus, in

11   contrast to the limited references to "laws and ordinances" in RCW 9.41.920, other preemption

12   statutes under the Revised Code of Washington make specific reference to rules and other

13   types of local administrative actions that they purport to preempt. *See, e.g.*, RCW

14   9.94A.8445(1) (intending to "preempt all *rules*, regulations, codes, statutes, or ordinances of

15   all cities" (emphasis added)); RCW 19.190.110 ("This chapter supersedes and preempts all

16   *rules*, regulations, codes, ordinances, and other laws adopted by a city . . . ." (emphasis

17   added)); RCW 46.61.667(5) ("The state preempts the field . . ., and this section supersedes any

18   local *laws*, *ordinances*, orders, *rules*, or regulations enacted by a . . . municipality . . . ."

19   (emphasis added)); RCW 80.50.110(1) (preempting "any other law of this state, or any *rule* or

20   regulation" (emphasis added)).

21           As the language in these other preemption statutes reflects, the Legislature very clearly

22   knows how to specify the reach of its enactments. Because "[a] legislative body is presumed

23   not to have used superfluous words," *Applied Indus.*, 74 Wn. App. at 79, one can presume that

24   when the Legislature specified that it was preempting "laws, ordinances, . . . [and] rules" in

25   one statute, e.g., RCW 46.61.667(5), but only "laws and ordinances" in the statute at issue

26   here, those differences were intentional. It is telling that when it set out to clarify the

27

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &                8
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

78

1  preemptive effect of RCW 9.41.290, more than tripling the length of the statute,[2] one of the

2  few things the Legislature did not amend was the two specific references to "laws and

3  ordinances." Furthermore, because Seattle's Rule is not a regulation of firearms of general

4  application to all persons throughout the City, it can hardly be said that reading the Preemption

5  Statute to cover rules is "*imperatively required* to make it a rational statute." *Applied Indus.*,

6  74 Wn. App. at 79 (emphasis added).

7             3.    **The Rule Does Not Include Criminal Penalties.**

8        Seattle's Rule is also not preempted because it is not a general regulation of firearms

9  subject to criminal penalties. "[T]he central purpose of RCW 9.41.290 was to eliminate

10  *conflicting municipal criminal codes* and to 'advance uniformity in *criminal* firearms

11  regulation.'" *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 356, 144 P.3d

12  276 (2006) (quoting *Cherry*, 116 Wn.2d at 801). Thus, the State Supreme Court explained in

13  *Cherry*: "The reasonable conclusion is that RCW 9.41.290 was enacted to reform that

14  situation in which counties, cities, and towns could each enact conflicting local criminal codes

15  regulating the general public's possession of firearms." *Cherry*, 116 Wn.2d at 801; *see also id.*

16  ("We hold that the Legislature, in amending RCW 9.41.290, sought to eliminate a multiplicity

17  of local laws relating to firearms and to advance uniformity in criminal firearms regulation.").

18        Moreover, the fact that the Firearms Act and its Preemption Statute are codified under

19  Washington's criminal code at Title 9 is "particularly significant," *Sequim*, 158 Wn.2d at 356,

20  and "supports [the court's] analysis regarding the *penal* focus of the preemption clause." *Id.* at

21  356 n.6. (emphasis added). Therefore, in contrast to criminal enactments, "it follows that a

22  municipal property owner may impose conditions related to firearms for the use of its property

23  in order to protect its property interests." *Id.* at 357. Here, the Rule "does not include any

24  criminal or civil penalties," but instead places conditions "upon a person's permission to enter

25  or remain at a designated Parks Department facility at which appropriate signage has been

26  posted." Friedli Decl., Ex. A ¶ 6.1. As simply a condition of entry or use with no criminal

27  _____

28  [2] In amending the Preemption Statute, the Legislature increased its size from 42 to 142 words. Keenan Decl.,
Ex. A (Act of Apr. 9, 1985, ch. 428, 1985 Wash. Laws 1866 (amending RCW 9.41.290)).

DEFS.' OPP'N TO MOT. FOR SUMM. J. &amp;                       9                    Orrick Herrington &amp; Sutcliffe LLP
DEFS.' CROSS-MOT. FOR SUMM. J.                                                          701 5th Avenue, Suite 5600
09-2-39574-8 SEA                                                                   Seattle, Washington 98104-7097
                                                                                         tel+1-206-839-4300

1  penalty attached to the possession of firearms, the Rule is well outside the reach of the

2  Preemption Statute.

3       Additionally, "[s]tatutes should be construed to effect their purpose and courts should

4  avoid unlikely, strained, or absurd results in arriving at an interpretation." *Cherry*, 116 Wn.2d

5  at 802. Thus in *Cherry*, the court characterized the argument that the Preemption Statute

6  prevented a municipal employer from prohibiting firearms on the job as an "extreme

7  interpretation," and held that the policy at issue there was not preempted. *Id.* at 802-03.

8  Similar to *Cherry* and *Sequim*, the City here was acting in its capacity as a property owner to

9  protect its interests by ensuring the safety of visitors to municipal property, something that

10  another trial judge of the King County Superior Court has already allowed under the

11  Preemption Statute.[3] The position advanced by Plaintiffs, that a municipality cannot condition

12  use of its property with respect to deadly firearms, is the kind of "extreme interpretation" of

13  the Preemption Statute that the courts have already rejected, and further supports judgment for

14  Defendants.

15       Plaintiffs' repeated references to the State Attorney General Opinion ("AGO") in

16  support of its arguments (Mot. at 4, 13; Declaration of Steven W. Fogg in Support of Pls.'

17  Mot. for Summ. J. ("Fogg Decl.") Ex. E), are not controlling and are not entitled to deference

18  because the court "remains the final authority on the proper construction of a statute." *Wash.*

19  *Fed'n of State Employees, Council 28, AFL-CIO v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 165,

20  849 P.2d 1201 (1993); *ATU Legislative Council of Wash. v. State*, 145 Wn.2d 544, 554, 40

21  P.3d 656 (2002) ("However, this court gives little deference to attorney general opinions on

22

---

23     [3] *Estes v. Vashon Maury Island Fire Protection Dist. No. Thirteen*, No. 05-2-02732-1 KNT (King County
   Super. Ct. Mar. 9, 2005), Keenan Decl. Ex. B (Order). Washington courts permit parties to cite the unpublished

24  opinions of one trial court to another trial court. *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 248, 178
   P.3d 981 (2008). In *Estes*, the plaintiff sought to overturn a fire district's policy prohibiting "the possession and

25  use of firearms and other dangerous weapons by its officers and members or by *visitors* . . . while on [D]istrict
   property," arguing in part that the policy was preempted under RCW 9.41.290. Keenan Decl. Ex. B (Motion) at 1

26  (emphasis added; alteration in original). The Fire District then moved for summary judgment, in part on the
   question: "Does RCW 9.41.290 prohibit a public agency and employer from banning firearms on premises

27  owned by the agency?" *Id.* at 2. In support of its position that the policy was not preempted, the Fire District
   argued that the rule in *Cherry* allowed for the policy, "regardless of who it affects." *Id.* at 4. The trial court, after

28  considering the pleadings, granted the defendant's motion for summary judgment. *Id.* (Order).

DEFS.' OPP'N TO MOT. FOR SUMM. J. &
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

10

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1   issues of statutory construction.").[4]  In particular, the portion of the AGO that addresses

2   municipal authority to set conditions of use of its own property is little more than a sentence,

3   with little or no legal reasoning, and without additional supporting authority.  Fogg Decl. Ex. E

4   at 4.

5       C.    **Injunctive Relief is Inappropriate.**

6       "'An injunction is an extraordinary equitable remedy designed to prevent serious

7   harm,'" and "'[i]ts purpose is not to protect a plaintiff from mere inconveniences or

8   speculative and insubstantial injury.'" *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 221, 995

9   P.2d 63 (2000) (quoting *Tyler Pipe Indus., Inc. v. State Dep't of Revenue*, 96 Wn.2d 785, 796,

10  638 P.2d 1213 (1982)).  "An injunction does not issue to a petitioner as an absolute right and is

11  granted only on a clear showing of necessity . . . ."  *Holmes Harbor Water Co.  v. Page*, 8 Wn.

12  App. 600, 603, 508 P.2d 628 (1973).  A party seeking permanent injunctive relief must show:

13  (1) that the party has a clear legal or equitable right; (2) that the party has a well-grounded fear

14  of immediate invasion of that right; and (3) that the acts complained of are either resulting in

15  or will result in actual and substantial injury to the party.  *Wash. Fed'n of State Employees,*

16  *Council 28, AFL-CIO v. State*, 99 Wn.2d 878, 888, 665 P.2d 1337 (1983).  Failure to establish

17  any one or more of these three criteria "dictates that the requested relief be denied."  *Id.*

18  Significantly, "since injunctions are addressed to the equitable powers of the court, the listed

19  criteria must be examined in light of equity including balancing the relative interests of the

20  parties and, if appropriate, *the interests of the public*."  *Tyler Pipe*, 96 Wn.2d at 792 (emphasis

21  added).  Thus, a request for injunctive relief "will be denied if the harm done to the defendant

22  by granting the injunction will be disproportionate to the benefit secured by the plaintiff."

23

24  _____

    [4] Plaintiffs' citation to a letter from Mayor Nickels Representative Frank Chopp in 2006 is similarly
    unavailing.  Mayor Nickels requested the State's assistance on "regulations" relating to "gun crime."  Declaration

25  of Gregory J. Nickels, Ex. A at 1-2.  In fact, Mayor Nickels provided four very specific examples of where he
    thought the Legislature should act:  (1) using gun tracing data to combat trafficking in guns; (2) banning assault

26  weapons; (3) requiring background checks on firearms sales at gun shows; and (4) requiring safe storage of
    firearms.  *Id.* at 2-3.  Nowhere in this letter, which Plaintiffs hold out as an 'admission,' (Mot. at 13), did Mayor

27  Nickels state that the City was preempted from setting reasonable conditions of use on municipal property.  This
    is because, unlike the specific proposals Mayor Nickels outlined in his letter, the Rule at issue here does not

28  purport to regulate firearms generally throughout the City, nor does it relate to criminal statute.

    DEFS.' OPP'N TO MOT. FOR SUMM. J. &                 11
    DEFS.' CROSS-MOT. FOR  SUMM. J.
    09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

81

1    *Holmes*, 8 Wn. App. at 603. Ultimately, a court may refuse to enjoin or compel an action on

2    equitable principles. *Arnold v. Melani*, 75 Wn.2d 143, 146-47, 449 P.2d 800 (1968). In light

3    of these stringent standards and balancing of interests, including those of Defendants and the

4    public, Plaintiffs face a difficult task in demonstrating entitlement to injunctive relief.[5]

5        1.    **Plaintiffs Have No Clear or Equitable Rights at Stake.**

6            As a threshold matter, Plaintiffs fail to satisfy the first and most significant criterion for

7    the granting of injunctive relief, because they do not have a clear legal or equitable right to

8    carry firearms into Parks facilities. *See* Section IV.A, *supra*. First, the Second Amendment

9    bears no application at all, and if it did, the narrow right it provides readily accommodates the

10   Rule at issue here. *Heller*, 128 S. Ct. at 2816-17. Second, the Washington Supreme Court has

11   consistently held that the right to bear arms in the State Constitution is not absolute, and thus is

12   subject to reasonable regulation. *City of Seattle*, 129 Wn.2d at 593. In short, Plaintiffs have

13   not on this motion proved that they have any federal or state constitutional right that has been

14   violated by Defendants. Nor have they identified any other source of a right that is *personal* to

15   any Plaintiff.

16           Even if RCW 9.41.290 preempted the Rule, it confers no private right of action on any

17   individual. Plaintiffs have not alleged any claim for damages arising under RCW 9.41.290,

18   nor could they, because that statute, included in the *criminal* chapter of the Revised Code of

19   Washington concerning firearms, includes no language reflecting legislative intent to create

20   private rights of action in favor of citizens. Seattle concedes (for purposes of this motion) that

21   there exists a justiciable controversy within the scope of the Declaratory Judgment Act

22   ("DJA"), but Plaintiffs have cited no legal precedent holding that the existence of a claim

23   under the DJA is tantamount to, or gives rise to, a personal right such that an action for

24   injunction may lie. With no clear legal or equitable right at stake, no injunction may issue.

25

26    

27       [5] "It is a well-established general rule that courts will not by injunction interfere with the exercise of
     discretionary powers conferred by the state upon municipal corporations, acting through their duly appointed
     officers, merely because such action may be unwise, extravagant, or a mistake of judgment." *State ex rel.*

28   *Gebhardt v. Superior Court for King County*, 15 Wn.2d 673, 679-80, 131 P.2d 943 (1942).

DEFS.' OPP'N TO MOT. FOR SUMM. J.         12
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

2.     **Plaintiffs Have Suffered No Injury.**

Various Plaintiffs submitted declarations stating that they have been precluded from using the City's parks and facilities. The evidence is to the contrary. While many facilities where children and youths are likely to be present are restricted, the majority of walking areas and trails in City parks have not been posted with signs and remain accessible to all users without any conditions concerning firearms. Friedli Decl. ¶ 5. Even in the facilities that have signs restricting the possession of firearms, the areas covered by the restrictions are often limited to only a small portion of the park, leaving tracts of open recreational space open to Plaintiffs. *Id.* For example, of the approximately 135 acres of Seattle's Lincoln Park, just a play area, swimming pool, and ball field are posted under the Rule. *Id.* Moreover, no signs have been posted at Discovery Park as of yet, and when signs are posted, the Parks Department anticipates covering just a small portion of its more than 500 acres. *Id.* Thus, Ms. Chan, Mr. Kennar, Mr. Carter, and Mr. Peterson,[6] all of whom testified that they principally use City parks facilities for walking, may continue to walk with concealed pistols at numerous parks facilities, including places such as Lincoln Park and Discovery Park. Thus, for purposes of this motion, the Court must assume that there is a dispute of fact as to whether any of these Plaintiffs have been prevented from using the parks facilities they have traditionally used for recreational purposes.

In every instance, the facts show that each individual Plaintiff contrived a situation where he or she would be asked to leave a facility, when in truth, they had no genuine present intention to recreate. These encounters, manufactured for purposes of this litigation, all of which took place *after* Plaintiffs filed their Complaint, are not instances of injury, but staged events, intended to ensure that Plaintiffs had standing. Because Plaintiffs were not genuinely attempting to use the facilities for intended recreational and educational purposes (and no declaration asserts otherwise), they have suffered no cognizable injury from their purported exclusions.

---

[6] Mr. Goedecke testified that he visits or traverses "through" Victor Steinbrueck Park about "once per month." Declaration of Gary G. Goedecke in Support of Pls.' Mot. for Summ. J. ("Goedecke Decl.") ¶ 8.

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    Indeed, as they admitted in their depositions, none of the Plaintiffs has made a serious

2    inquiry—by physical observation, telephone, or email—to determine whether the City parks

3    facilities they previously used for walking and hiking remain accessible to persons with guns.

4    In consequence, none of them has proved a substantial injury that should be the subject of an

5    injunction.  However, as discussed above, the City has submitted evidence that Plaintiffs have

6    not been injured.  As this request for entry of judgment including a permanent injunction has

7    been made under Rule 56 and not Rule 65, the existence of a genuine dispute as to the fact of

8    injury requires denial of the requested relief.

9                              a.    **Plaintiff Carter**

10    Plaintiff Raymond Carter is not so much a victim of City policy as a man who has been

11    in search of a way to become involved in firearm activism since well before the Rule was

12    passed.  As early as July 2008, nearly a year and half *before* the Rule in dispute here was

13    issued, Mr. Carter received an email from Dave Workman, communications director for

14    Plaintiff Second Amendment Foundation ("SAF") stating that SAF founder "Alan Gottlieb

15    would like to invite you to be a plaintiff in a . . . lawsuit against the City of Seattle and Mayor

16    Greg Nickels."  Keenan Decl. Ex. E (Carter Dep. Ex. 10).  In response, Mr. Carter asked what

17    he would need to do to acquire standing in such a suit: "[P]op down to city hall, meander in to

18    check my gun on the way to a city council meeting, get trespassed out, possibly get

19    arrested . . . ."  *Id.*

20    Mr. Carter was entirely forthright about another significant fact: He has been actively

21    seeking *employment* with SAF.  Keenan Decl. Ex. E (Carter Dep. at 11-13).  Indeed, he

22    worried that becoming a litigant might delay potential employment with SAF: "I remain

23    available to join the SAF team full-time . . . , though I can see solid strategic reasons to hold

24    me at arms length for the duration of the current kerfuffle . . . ."  Keenan Decl. Ex. E (Carter

25    Dep. Ex. 11).  As to why there would be "solid strategic reasons" to maintain distance between

26    Carter and the SAF, Carter explained that "it's more the keeping up appearances . . . that

27    sometimes things can look a little too cutesy or set up."  Keenan Decl. Ex. E (Carter Dep. at

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &           14
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

12:8-11).

  After the Complaint in this case was filed, the record also shows that Mr. Carter went to considerable lengths to create a circumstance by which he would be "impacted" by the City's Rule. Mr. Carter asserts that a "City employee instructed him—in writing—that he was required to leave [a facility], pursuant to the Firearms Rule." Mot. at 9. In fact, Mr. Carter approached the City employee, told her that he was carrying a firearm, and asked if that was permitted. Keenan Decl. Ex. E (Carter Dep. at 28-29). Then, when the City employee told Mr. Carter that she was unsure as to his question, he "pointed her to the city Web site," *id.* at 31:5, and waited as she inquired, *id.* at 31:6-7. After Carter effectively persuaded the employee that he was in violation of the Rule, Carter then *dictated* the text for the aforementioned letter to her: "She stated that she was unfamiliar with [how] such a thing should read and asked me for some language. I tossed out a few concepts of things that should probably be included . . . ." *Id.* at 32-33. But Carter was unsatisfied with the first draft of this letter, so *he made his own handwritten edits*, included reference to his constitutional right, and handed it back to the City employee, and had her produce *another* draft. *Id.* at 33-34 & Carter Dep. Ex. 16. When asked if he created this encounter for purposes of this suit, Carter responded: "That was part of my reasoning." *Id.* at 34:5-7.[7]

  With respect to the alleged impact of the Rule, Mr. Carter declares that he "no longer visits" places such as Alki Beach "because they are subject to the city's Firearms Rule and I do not feel safe going there." Declaration of Raymond Carter in Support of Pls.' Mot. for Summ. J. ("Carter Decl.") ¶ 8. However, in his deposition, Carter admitted that there were times when he would visit Alki Beach without his firearm when he planned to go straight to a bar from the park because firearms are prohibited in bars. Keenan Decl. Ex. E (Carter Dep. at 22-24). Given how readily Mr. Carter disregarded *his* need for firearms when it conflicted with *his* desire to visit a bar, the Court may infer that Mr. Carter's interest in personal safety is

---

[7] Carter then passed this letter, primarily drafted by him, to Dave Workman, communications director for Plaintiff SAF. Keenan Decl. Ex. E (Carter Dep. at 35:19-36:2). Workman apparently caused the text of the letter to appear in a fund-raising blog, above the plea: "**Donate to the Second Amendment Foundation and Protect Gun Rights.**" Keenan Decl. Ex. E (Carter Dep. Ex. 17).

DEFS.' OPP'N TO MOT. FOR SUMM. J.      15
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    substantially outweighed by the City's interest in creating a safe and secure environment.

2    **b.    Plaintiffs Chan and Kennar**

3    In their depositions, Ms. Chan and Mr. Kennar testified that they visited Seattle parks

4    principally to walk with friends and family. Keenan Decl. Ex. C (Chan Dep. at 11:5-19);

5    Keenan Decl. Ex. D (Kennar Dep. at 24-28). Their declarations assert that the Rule now

6    prevents them from visiting these parks. Declaration of Winnie P. Chan in Support of Pls.'

7    Mot. for Summ. J. ("Chan Decl.") ¶ 7; Declaration of Robert Kennar in Support of Pls.' Mot.

8    for Summ. J. ("Kennar Decl.") ¶ 8. But neither Ms. Chan nor Mr. Kennar has made any effort

9    to contact the City to determine which portions of parks remain available to persons carrying

10   firearms, and whether any of the trails or beaches they have used in the past have been

11   designated pursuant to the Rule. Indeed, with one questionable exception, neither of these

12   Plaintiffs have even visited their favorite parks to see whether signs have been posted. At best,

13   there is an issue of fact whether these Plaintiffs have suffered any injury, because Defendants

14   have submitted evidence that the trail and walking areas of the parks they testified they used

15   have *not* been designated under the Rule. Friedli Decl. at ¶ 5.

16   The lack of effort to inquire about park accessibility contrasts noticeably with the

17   concerted efforts these Plaintiffs made to create a circumstance where they were excluded

18   from a Park facility. Winnie Chan was asked to be a plaintiff by her husband Thomas

19   McKiddie, Jr., who is the project manager for Plaintiff Citizens Committee for the Right to

20   Keep and Bear Arms. Keenan Decl. Ex. C (Chan Dep. at 34:17-24). Ms. Chan and

21   Mr. Kennar are Community Corrections Officers and know each other from work. Keenan

22   Decl. Ex. C (Chan Dep. at 13:5). With her husband participating, Ms. Chan and Mr. Kennar

23   agreed to meet at the Hiawatha Community Center. Keenan Decl. Ex. C (Chan Dep. at 20:14-

24   18). Their intention was to enter the Center and create a circumstance or event in which they

25   would be asked to leave for carrying a firearm. Keenan Decl. Ex. C (Chan Dep. at 21:15-20).

26   When the three went to the Community Center, they all approached a City employee, advised

27   him that they were carrying firearms (peaceably), advised him about the substance of the Rule,

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &                    16                    Orrick Herrington & Sutcliffe LLP
DEFS.' CROSS-MOT. FOR SUMM. J.                                                701 5th Avenue, Suite 5600
09-2-39574-8 SEA                                                              Seattle, Washington 98104-7097
                                                                             tel+1-206-839-4300

1  and essentially asked him to exclude them from the facility. Keenan Decl. Ex. C (Chan Dep.

2  at 17-21). Then, similar to Mr. Carter's efforts to obtain "evidence" of exclusion, Ms. Chan's

3  husband actually handwrote a document for the City employee to sign, purporting to require

4  them to leave; at the request of Plaintiffs and Mr. McKiddie, the Parks employee signed the

5  letter Ms. Chan's husband wrote, and then the Plaintiffs and Mr. McKiddie each signed as

6  "witnesses." Keenan Decl. Ex. C (Chan Dep. at 30:12-24 & Ex. 3); Keenan Decl. Ex. D

7  (Kennar Dep. at 34-36).

8         The contrived efforts Plaintiffs made to improve the odds they would survive any

9  challenge to their standing are understandable. But, even if they have manufactured standing,

10  that is a different question from whether they have sustained genuine injury. Defendants

11  submit that persons who attend a facility for the principal purpose of creating evidence for use

12  in litigation, and who do not attend a facility principally for the recreational or educational

13  uses for which the facility is intended, have not established a substantial injury that should

14  give rise to injunctive relief.

15              **c.    Plaintiff Peterson**

16         Before the Rule was issued, Mr. Peterson made only a limited number of visits to

17  Seattle Parks. Peterson Dep. at 8-13. Since then, like the other Plaintiffs, Mr. Peterson admits

18  that he has made no effort to travel from his home in Lynnwood to Seattle to ascertain whether

19  parks he uses for walks include areas prohibiting firearms. Keenan Decl. Ex. F (Peterson Dep.

20  at 28:5-25). To the contrary, Mr. Peterson testified to his inaccurate understanding that guns

21  are banned from all areas of *all* parks. Keenan Decl. Ex. F (Peterson Dep. at 28:11-22). In

22  this respect, he is in error. Friedli Decl. ¶ 5.[8] Again, drawing all inference in Defendants'

23  favor, Mr. Peterson is free to use the parks he used formerly, for all of the purposes for which

24  he used them. At best, there is a disputed issue of fact whether Mr. Peterson has suffered any

25  injury, and if he has, whether it is sufficiently compelling to warrant an injunction.

26

27  ――――――――――――

[8] In fact, Mr. Peterson's only complaint during his deposition was that in 2007 a Seattle Police Officer asked him to store his pistol rather than *openly* carrying it into Volunteer Park during a festival that pre-dated the Rule. Keenan Decl. Ex. F (Peterson Dep. at 23:17-24:20) (It is unlawful for a person to carry a firearm in a manner that "warrants alarm for the safety of other persons." RCW 9.41.270(1)).

28  DEFS.' OPP'N TO MOT. FOR SUMM. J. &          17
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

### d.    Plaintiff Goedecke

Mr. Goedecke's declaration indicates that he visits or travels "through" Victor Steinbrueck approximately once a month. Goedecke Decl. ¶ 8. Traveling through a park once a month is not a substantial use, and given that Victor Steinbrueck Park is very small and is easily circumvented on adjacent sidewalks to get to and from nearby locales, Mr. Goedecke has suffered no substantial injury. Here again, as with each of the other Plaintiffs, Mr. Goedecke contrived the circumstance in which he claims he was excluded from this park. Keenan Decl. Ex. G (Deposition of Gary Goedecke ("Goedecke Dep.") at 17-20). As with all of the individual Plaintiffs, Mr. Goedecke's "use" of the park as an occasional throughway when sidewalks are available is at best incidental and insubstantial, and does not support issuance of an injunction.

### e.    Organizational Plaintiffs

Although each Organizational Plaintiff has also submitted a declaration, each identifies just one or two members who use parks. Keenan Decl. Ex. H (Defs.' First Interrog. & Req. for Produc. to Pls. & Resp. & Objections Thereto at 16). Simply put, the Organizational Plaintiffs have submitted no cognizable evidence establishing that they have suffered injury.

As their own statements reveal, and drawing all inferences in Defendants' favor, there is at best a disputed issue of fact whether Plaintiffs have suffered injury, and if they have, whether it is sufficient to warrant an injunction. The failure of each Plaintiff to even *inquire* whether they can continue to walk and use trails in Discovery, Volunteer, Alki, and Lincoln Parks, suggests that they really did not want to know the answer. Defendants are entitled to an inference that Plaintiffs, at least two of whom have direct pecuniary motives for being involved with Organizational Plaintiffs, are more interested in litigating gun rights than in using Seattle Parks for recreational and educational purposes. Even if their exclusions were considered injuries, however, they were not substantial, and are much less significant than the public's interest in promoting safe and secure recreational environments for children.

DEFS.' OPP'N TO MOT. FOR SUMM. J. &          18
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

### 3.     The Public Interest Favors Denial of an Injunction.

The balance of hardships tips strongly in favor of the City in its efforts to promote safe and secure parks and facilities for youth to enjoy. *See* Friedli Decl. ¶¶ 11-13. Because a request for injunction is addressed to the Court acting in equity, the criteria for granting such relief "must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, *the interests of the public.*" *Tyler Pipe*, 96 Wn.2d at 792 (emphasis added). Here, the City and the parks visitors it protects have a strong interest in establishing conditions for the safe and secure use of City-owned parks and facilities. Friedli Decl., Ex. A ¶ 1.3. As with public schools, the City's interest in keeping firearms out of designated areas of Parks facilities are designed to protect children and families who use the parks for recreational purposes. *Id.* Parks visitors have an interest in using the City's parks and facilities without fear that some individuals will be carrying firearms. *Id.* Thus, the interests of parks visitors in having Parks facilities that are safe and secure for the education and recreation of children and youth strongly favors denial of an injunction here.

The Rule at issue here is intended to promote the parks visitors' interest in safety by reducing gun violence and injury from avoidable incidents, including thefts, accidents, and escalating confrontations. *Id.* ¶ 1.6. For example, gun owners who engage in sports activities, such as swimming at beaches or pools, or playing basketball or tennis, running, or enjoying playground equipment, may remove their guns and place them in purses, bags, backpacks, jackets, or other places on the ground or floor where they are not locked and secure, they are not in line of sight at all times, and they are not within immediate reach of the owner 100% of the time. These unsafe storage and handling situations make firearms susceptible to being stolen, mishandled, or accidentally discharged. *See* Keenan Decl., Ex. C (Chan Dep. at 30-32) (Ms. Chan and her husband would leave loaded firearms in a backpack on the ground while they played tennis at the Hiawatha Community Center); Keenan Decl., Ex. D (Kennar Dep. at 41:24-42:12) (opining about safe storage in public).

Recent research reflects that increasing the number of armed individuals in public does

Orrick Herrington &amp; Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

89

1  not enhance public safety.  In a study of criminal assaults conducted by the University of

2  Pennsylvania, researchers determined that persons who were carrying a firearm (presumably

3  for self-defense) at the time of the assault were *4.5 times more likely to be shot* than persons

4  who were not carrying a firearm.  Friedli Decl. ¶ 8 & Ex. A ¶ 1.10.  In other words, firearms

5  did not enhance personal safety across the population generally.  Such research further

6  supports the City's and parks visitors' interest in the continued existence of the Rule, and

7  weighs heavily against the relief that this small group of Plaintiffs seeks.

8       Several of the Plaintiffs refer in their declarations to their extensive personal training in

9  the storage, handling, transportation, and use of firearms.  Chan Decl. ¶ 4; Kennar Decl. ¶ 5;

10  Carter Decl. ¶ 6; Peterson Decl. ¶ 7; Goedecke Decl. ¶ 6.  Plaintiffs imply that they can be

11  trusted to handle firearms safely and responsibly, and thus that the Parks Rule does not

12  enhance safety.  In actuality, there is no requirement that gun owners have any training at all,

13  let alone know and comply with clear policies limiting the use of deadly force.[9]  Plaintiffs are

14  "exceptions to the rule" who merely highlight the need to remove guns from City-owned

15  facilities used by children and youths, who, by the way, are not permitted to carry firearms.[10]

16       For these reasons, among others, it is City policy that *only* members of the Seattle

17  Police Department and security officers are authorized to carry firearms to promote public

18  safety and enforce the peace in Parks facilities.  Friedli Decl., Ex. A ¶ 4.0.  It is not City policy

19  to attempt to enhance public safety by relying on private gun owners.  Rather, the City has

20  determined that children and youths will find a safer and more secure environment, with a

21  lower risk of accidental or intentional injury or death due to incidents involving deadly

22  firearms, if firearms are not permitted in designated facilities intended for their use.

23  **V.    CONCLUSION**

24       For the foregoing reasons, Defendants respectfully request that the Court deny

---

25  [9] RCW 9.41.070; Keenan Decl. Ex. C (Chan Dep. at 33:20-22); Keenan Decl. Ex. E (Carter Dep. at 40:20-

26  22); Keenan Decl. Ex. F (Peterson Dep. at 16:7-9); Keenan Decl. Ex. G (Goedecke Dep. at 23:5-7).

    [10] For purposes of this motion, the Court must accept the reasonable inference that many gun owners visiting

27  City parks have never had any safety training.  The Court must also reasonably infer that but for the Rule,

    numerous untrained and potentially dangerous gun owners will routinely visit parks facilities and endanger

28  children and youths around them.

DEFS.' OPP'N TO MOT. FOR SUMM. J. &      20
DEFS.' CROSS-MOT. FOR SUMM. J.
09-2-39574-8 SEA

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  Plaintiffs' Motion in its entirety and grant Defendants' Cross-Motion and find that this

2  reasonable Rule is not preempted.

3

Dated: February 1, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5                                          By:

6                                              Daniel J. Dunne (WSBA No. 16999)
                                               ddunne@orrick.com
7                                              George E. Greer (WSBA No. 11050)
                                               ggreeer@orrick.com
8                                              David Keenan (WSBA No. 41359)
                                               dkeenan@orrick.com
9

10                                             701 5th Avenue, Suite 5600
                                               Seattle, WA  98104-7097
11                                             Telephone:  +1-206-839-4300
                                               Facsimile:  +1-206-839-4301
12
                                           *Attorneys for Defendants*
13
                                           PETER S. HOLMES
14  Dated: February 1, 2010                SEATTLE CITY ATTORNEY

15                                         By:

16                                             Gary Keese (WSBA No. 19265)
                                               Assistant City Attorney
17                                             Gary.Keese@seattle.gov

18                                             Seattle City Attorney
19                                             600 Fourth Avenue, 4th Floor
                                               P.O. Box 94769
20                                             Seattle, WA  98124-4769
                                               Telephone:  +1-206-684-8200
21                                             Facsimile:   +1-206-684-8284

22                                         *Attorneys for Defendants*

23  OHS West:260815239.11

24

25

26

27

28

DEFS.' OPP'N TO MOT. FOR SUMM. J. &           21                    Orrick Herrington & Sutcliffe LLP
DEFS.' CROSS-MOT. FOR  SUMM. J.                                          701 5th Avenue, Suite 5600
09-2-39574-8 SEA                                                      Seattle, Washington  98104-7097
                                                                          tel+1-206-839-4300

91