# EXHIBIT D

RECEIVED O.H.S. LLP

FEB 0 8 2009

02-08-10P12:45 REF:

THE HONORABLE CATHERINE SHAFFER
Noted: Friday, February 12, 2010, 2:00 p.m.
(With Oral Argument)

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

9    WINNIE CHAN, et al.,

10                              Plaintiffs,          No. 09-2-39574-8 SEA

11          v.                                        **REPLY IN SUPPORT OF PLAINTIFFS'
                                                      MOTION FOR SUMMARY JUDGMENT**
12   CITY OF SEATTLE, et al.,

13                              Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT



**CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   The law could not be clearer: "The state of Washington hereby fully occupies and preempts

2   the entire field of firearms regulation within the boundaries of the state[.]" RCW 9.41.290. In

3   attempting to evade this plain mandate, the City misconstrues the relevant law, draws distinctions

4   that make no difference, raises questionable policy arguments that are better left for the legislature,

5   and makes baseless and irrelevant claims in order to call the veracity and motives of the individual

6   plaintiffs into question. Take away the red herrings and what remains are three simple legal

7   arguments, none of which has any merit.[1]

8   **1. The City's right to manage its property does not apply where there is state preemption.**

9   The City obviously has the general power to issue rules to manage its property, but that

10   power does not overcome the principle of preemption or make the Firearms Rule legal. Not one of

11   the cases cited by the City (Opp. at 5-6) involves a city's attempt to regulate the use of its property

12   in a way that was preempted by state law; indeed, none of the City's cases even mentions the word

13   preemption. *See State ex rel. Tubbs v. City of Spokane*, 53 Wn.2d 35, 39 (1958) (city could not be

14   compelled to rent stadium to hockey promoters because "[a]mong a proprietor's elementary rights,

15   **in the absence of any legislative or contractual prohibition**, is the right to rent his property or

16   not, as he chooses") (emphasis added); *State v. Morgan*, 78 Wn. App. 208, 211 (1995) (no

17   probable cause for trespass arrest); *State v. Blair*, 65 Wn. App. 64, 67-68 (1992) (city could restrict

18   access to city-owned housing where housing is not for the general public).

19   Second, the Supreme Court case on which the City appears to implicitly rely does not

20   support the City's position. In *Pac. N.W. Shooting Park Ass'n v. City of Sequim* ("*Sequim*"), the

21   Court stated – in *dicta* – that preemption does not prohibit the city from imposing contractual

22   conditions on the sale of firearms on city property in order to protect its property interests, as long

23

24   [1] The City's purported cross-motion for summary judgment, filed in conjunction with its opposition, was not properly noted or scheduled in accordance with court rules. *See* CR 56(c); KCLCR 7(b)(5)(A). Therefore, if the City attempts to file a reply brief, the plaintiffs will move to strike.

25

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    as those conditions relate to the private use of city property. 158 Wn.2d 342, 357 (2006). "**The**

2    **critical point is that the conditions the city imposed related to a permit for private use of its**

3    **property. They were not laws or regulations of application to the general public.**" *Id.*

4    (emphasis added). In contrast, the Firearms Rule is a regulation that applies across-the-board to

5    the public use of City property. It is therefore a regulation of application to the general public – as

6    opposed to a contractual condition imposed on private party gun sales on city property – and the

7    City's role as a property owner cannot be used as a blanket exception to preemption.[2] *Id.* Indeed,

8    Attorney General Rob McKenna reached the same conclusion.[3] Fogg Decl., Ex. E at 4 (while

9    private citizens are not preempted from prohibiting firearms on their property, "a city is not in the

10    same position as a private citizen. Large parts of city property are generally open to the public").

11    **2. The Preemption Clause does not exclude "rules" or "policies" from its reach.**

12    The City's argument that the Firearms Rule is not preempted because the Preemption

13    Clause applies only to "laws and ordinances" rather than "rules" or "policies" (Opp. at 7-9) was

14    considered and rejected by McKenna, who concluded that "the manner in which the prohibition

15    might be imposed" is inconsequential to the preemption analysis.[4] Fogg Decl., Ex. E at 5 n.2. The

16    first sentence of the Preemption Clause is dispositive: "The state of Washington hereby **fully**

17    **occupies and preempts the entire field of firearms regulation within the boundaries of the**

---

18    [2] Rather than addressing head-on the clear holding of *Sequim*, the City appears to re-interpret the case
19    as standing for the proposition that a regulation must be of "general application throughout the entire city" to
        be preempted. Opp. at 2, 11 n.4. There is no legal basis for this interpretation.

20    [3] The City dismisses McKenna's Opinion as a non-binding opinion of an elected official. Opp. at 3,
        10-11. In doing so, it ignores the clear rule that Attorney General Opinions are persuasive and entitled to great
21    weight by this Court. *See, e.g., Branson v. Port of Seattle*, 152 Wn.2d 862, 884-85 (2004); *Thurston County v.
        City of Olympia*, 151 Wn.2d 171, 177 (2004). Here, McKenna's Opinion provides a thorough review and
22    analysis of the law and should be carefully considered.

23    [4] The Supreme Court also declined to follow this reasoning on two previous occasions. *See Sequim*,
        158 Wn.2d at 353-57 (city argued that preemption applied only to formal laws and ordinances; Court declined
24    to so hold and decided the case on alternate grounds); *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d
        794, 800-01 (1991) (city invited the Court to hold that only formal laws and ordinances were preempted but
25    Court declined and instead explained that the "laws and ordinances" language refers to "laws of application to
        the general public, not internal rules for employee conduct").

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  **state**[.]" RCW 9.41.290 (emphasis added). This unequivocal expression of preemption applies to

2  "the **entire field** of firearms regulation[,]" not just laws and ordinances. The second sentence, on

3  which the City relies, enables municipalities to enact a very narrow range of firearms regulation

4  **despite** state preemption – it does not, conversely, reduce the scope of the state's preemption by

5  allowing municipalities to adopt rules or policies.

6      If this Court were to read the Preemption Clause as the City urges, it would permit a

7  municipality to regulate firearms to its heart's content as long as it did so under the guise of a

8  "rule" or "policy." This cannot be what the legislature intended, as such an interpretation would

9  render the Clause's first sentence completely meaningless. *See City of Seattle v. Winebrenner*, 167

10  Wn.2d 451, 464 (2009) (a court cannot interpret a statute in such a way that would render portions

11  of its language meaningless). In fact, the Clause's history makes abundantly clear the legislature's

12  determination to keep the universe of firearms regulation within its exclusive reach. The

13  legislature first attempted to preempt firearms regulation in 1983. *See* Laws of 1983, ch. 232, § 12.

14  Because the legislature did not explicitly express its intent to preempt the entire field of firearms

15  regulation, the statute was deemed as preempting only **inconsistent** local firearm laws. *See id.*;

16  *Second Amendment Found. v. City of Renton*, 35 Wn. App. 583, 588 n.3 (1983). To solve this

17  problem, the legislature amended the statute in 1985, and again in 1994, adding the words "fully

18  occupies and preempts the entire field[.]" *See* Laws of 1985, ch. 428, § 1; Laws of 1994, 1st Sp.

19  Sess., ch. 7, § 428. Both the 1985 and 1994 legislation followed court decisions limiting the

20  preemptive effect of RCW 9.41.290 and 9.41.300. In other words, when courts limited the

21  Clause's preemptive reach, the legislature responded by amending the statute with stronger

22  preemption language. To interpret the Preemption Clause as the City now urges would be to

23  completely ignore clear legislative directives to the contrary.[5]

24  _____

25      [5] This Court should not be distracted by the City's citation to other preemption statutes. Opp. at 8.
    Those statutes do not contain pronouncements of state preemption nearly as broad and sweeping as the

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 3

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

96

**3. The Firearms Rule *does* include criminal penalties.**

The City's argument that the Firearms Rule is not a criminal regulation (Opp. at 9) is, quite simply, wrong. The sanction for refusing to leave a parks facility is citation or arrest for **criminal trespass**. Fogg Decl., Ex. C at 1; Malouf Decl., Ex. A. In fact, City officials have informed Parks Department employees that, in enforcing the Rule, they should call the police if the person refuses to leave. Malouf Decl., Exs. B & C. This certainly constitutes "criminal firearms regulation" falling within the preemption statute's reach. *See Cherry*, 116 Wn.2d at 801 (preemption seeks to "advance uniformity in criminal firearms regulation").[6] The Attorney General agrees. *See* Fogg Decl., Ex. E at 6 ("Allowing a city to use criminal trespass to enforce a ban on firearms allows conflicting criminal codes regulating the general public's possession of firearms").[7]

**4. An injunction is appropriate and necessary to enforce declaratory relief.**

"[T]he combining of declaratory and coercive relief is proper and even common" where, as here, a municipality is engaging in abusive practices that violate state law. *See Ronken v. Bd. of County Comm'rs of Snohomish County*, 89 Wn.2d 304, 311-12 (1977); *see also* RCW 7.24.080. Yet in arguing against injunctive relief, the City not only raises irrelevant and inaccurate accusations against the individual plaintiffs, it also applies an incorrect standard. *See Wash. Fed'n*

---

Preemption Clause at issue here. Moreover, language used in one statute has no bearing on the interpretation of language used in unrelated statutes. *See, e.g., HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 454 (2009); *Int'l Ass'n of Fire Fighters v. City of Everett*, 146 Wn.2d 29, 39-40 (2002). In any event, the statutes cited by the City involve areas of law heavily regulated by various agencies and therefore inclusion of the term "rule" was more obviously necessary. *See* RCW 80.50.110 (regarding selection and utilization of energy facility sites and environmental impacts resulting from such sites); RCW 9.94A.8445(1) (regarding residency restrictions for sex offenders and referring in part to "local agencies"); RCW 19.190.110 (regarding the regulation of commercial e-mail and referring in part to "local agenc[ies]"); RCW 46.61.667(5) (regarding traffic laws, specifically regulation of use of cell phones while driving).

[6] *Cherry* does not save the Firearms Rule from state preemption. 116 Wn.2d at 801-02 (Preemption Clause does not "prohibit reasonable work rules regarding possession of weapons in the public workplace" because it preempts "laws of application to the general public, not internal rules for employee conduct").

[7] It is unclear whether the policy challenged in *Estes v. Vashon Maury Island Fire Prot. Dist. No. 13* included criminal trespass as its enforcement mechanism. *See* Keenan Decl., Ex. B. In any event, there is certainly a substantial difference between regulating firearms in parks versus fire stations, as the latter were not created for the purpose of providing recreational and gathering opportunities to the public.

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 4

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   *of State Employees v. State*, 99 Wn.2d 878, 887-88 (1983) (injunction is appropriate where plaintiff

2   has clear legal or equitable right and well-grounded fear of immediate invasion of that right, and

3   where act complained of is resulting, or will result, in actual and substantial injury). Here, the

4   individual plaintiffs have the clear legal right to carry a firearm anywhere the state has not

5   expressly prohibited.[8] *See* RCW 9.41.290. Further, the individual plaintiffs have obvious reason

6   to fear the immediate invasion of that right, as the City has already posted firearms-banning

7   signage. Friedli Decl. at ¶ 4. Finally, most of the individual plaintiffs have been told by parks

8   officials that they may not enter parks premises. *See* Motion at 7-10, 17. The City's exaggerated

9   argument that the plaintiffs' injuries are disingenuous not only thoroughly mischaracterizes their

10  testimony but also misses the point: these law-abiding citizens should be free to use public

11  recreation facilities without having to carefully tip-toe to avoid areas with posted signage.

12        The City's policy arguments are inappropriate in these proceedings and should have no

13  bearing.[9] Such arguments are better directed toward the state legislature, which is the only body

14  that can control this issue. *See, e.g., Wash. State Labor Council v. Reed*, 149 Wn.2d 48, 64 (2003)

15  ("Courts do not have the authority to legislate, only to construe existing law"). Not only does that

16  explain Mayor Nickels' statement to Representative Chopp that his "hands are tied" at the local

17  level, *see* Nickels Decl. at ¶¶ 4 & 6, but it also explains why Seattle City Councilmember Richard

18  McIver stated, in an e-mail to the Alki Community Council, "While I would support a gun ban in

19  city parks, I think you really need to direct your lobbying to members of the State Legislature who

20  do have the power to address this issue." Malouf Decl., Ex. E at 2.

21        For the reasons stated above, plaintiffs' motion for summary judgment should be granted.

22

23        [8] The City's argument that the Preemption Clause does not confer a private right of action is nonsensical: if that were the case, no one would ever be able to challenge a firearms regulation that violates preemption – a result that clearly runs contrary to the case law.

24        [9] For obvious reasons, the City omitted the fact that an overwhelming majority (**96%**) of the people commenting on the proposed gun ban **opposed** such a ban. Malouf Decl., Ex. D.

25

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 5

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 8th day of February, 2010.

2                              CORR CRONIN MICHELSON
3                              BAUMGARDNER & PREECE LLP

4

5                              Steven W. Fogg, WSBA No. 23528
6                              Molly A. Malouf, WSBA No. 31972
                               Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 6

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT E

1

1    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2    IN AND FOR KING COUNTY

3    -------------------------------------------------------

4    WINNIE CHAN, et al.,    )

                           )

5             Plaintiffs,    )  KING COUNTY CAUSE

                           )  No. 09-2-39574-8 SEA

6        vs.            )

                           )

7    CITY OF SEATTLE, et al.,  )

                           )  **ORIGINAL**

8        Defendants.    )

    -------------------------------------------------------

9

10    REPORTER'S EXPEDITED VERBATIM REPORT OF PROCEEDINGS

11

12    --oOo--

13    FRIDAY, FEBRUARY 12, 2010

14    --oOo--

15    Heard before the Honorable Catherine Shaffer, at King

16    County Courthouse, 516 Third Avenue, Department 11,

17    Seattle, Washington.

18    --oOo--

19

20

21

22    CYNTHIA A. KENNEDY

           CSR No. 3005

23    Official Court Reporter

    King County Superior Court

24    516 Third Avenue, C912

    Seattle, Washington 98104

25    (206) 296-9188

2

1                    A P P E A R A N C E S :

2                         --oOo--

3

4    STEVEN W. FOGG and MOLLY A. MALOUF, Attorneys at Law,
     appearing on behalf of the Plaintiffs;

5

6    DANIEL DUNNE and DAVID KEENAN, Attorneys at Law,
     appearing on behalf of the Defendants.

7

8                         --oOo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

CHRONOLOGICAL INDEX

--oOo--

FRIDAY, FEBRUARY 12, 2010

Summary Judgment Hearing                    4

Argument by Mr. Fogg                        5

Argument by Mr. Dunne                      16

Argument by Mr. Fogg                       30

Court's Analysis                           34

Court's Rulings                            51

Concluded                                  51

--oOo--

103

4

```
 1                    SEATTLE, WASHINGTON

 2               FRIDAY, FEBRUARY 12, 2010

 3               AFTERNOON SESSION - 2 P.M.

 4                       --oOo--

 5          THE COURT:  Be seated.  Good afternoon,

 6    everybody.

 7          I want to tell everybody that I have had the

 8    chance to review all of your pleadings and all the

 9    cases cited, and I have copies of the cases that you

10    relied on here on the bench.  I also have the section

11    of the Revised Code of Washington that we have been

12    discussing here, as well as the other statutes.

13          I do not know if it is Mr. Fogg or

14    Ms. Malouf.  Mr. Fogg's arguing?  Okay.  15 minutes to

15    argue.  Tell me up front how much time you are

16    reserving for rebuttal, if you would.  And 15 minutes

17    to respond.

18          And who is arguing for the City?

19          MR. DUNNE:  I am, Your Honor, Dan Dunne.

20          THE COURT:  Thank you.  Go right ahead,

21    Mr. Fogg.

22          MR. FOGG:  Good afternoon, Your Honor.  Steve

23    Fogg on behalf of the plaintiffs in this case.  I'd

24    like to reserve, say, three minutes.

25          THE COURT:  And before we get you started, I
```

5

1    see somebody cupping their ear.

2           Do you need a hearing device, sir?

3           AUDIENCE MEMBER:  If possible, please.

4           THE COURT:  Sure.

5           AUDIENCE MEMBER:  Thank you, Your Honor.

6           THE COURT:  If everybody doesn't mind waiting

7    for a minute, we will just have my bailiff run

8    downstairs to the interpreter's office and grab a

9    hearing device, and as soon as we are set up, I will

10   come back on the bench.

11          MR. FOGG:  Sure.

12          THE COURT:  All right.  Thanks, everyone.

13          (Pause in proceedings.)

14          THE COURT:  Be seated, everybody.  Thanks for

15   waiting, everyone.

16          I am sorry, Mr. Fogg, I cut you off when you

17   were telling me you wanted to reserve three minutes.

18          MR. FOGG:  That's all right, Your Honor.

19          THE COURT:  Go ahead.

20          MR. FOGG:  Thanks.

21          Your Honor, we're here on behalf of the

22   plaintiffs.  We're asking that you grant our motion for

23   summary judgment.

24          There's three basic reasons I think our

25   argument distills and the three reasons why you should

6

1    do so.

2            First, the firearms rule that's been passed

3    by the City violates the clear statutory language of

4    preemption found in the statute that I know you're

5    familiar with, 9.41.290.

6            Second, it violates the clear and

7    comprehensive scheme -- regulatory scheme that's been

8    enacted by the Legislature in both 290 and 300.

9            And, third, it clearly violates the purpose

10   of this preemption statute, which is to promote

11   uniformity amongst the state firearms laws.

12           I want to start with the language itself

13   because I think it's -- I don't want to belabor it.

14   But it's unmistakably clear from reading the language

15   that the Legislature owns and occupies the field of

16   firearms regulation.  It literally could not be more

17   clear.  It states that they fully -- the state fully

18   occupies and preempts the entire field of firearms

19   regulation.

20           Now, that's a very clear statement of intent,

21   and I know this court knows from other cases, this

22   isn't the sort of case where you have to divine the

23   intent or you have to -- or it's sort of murky, you

24   know, that you have to infer whether or not the

25   Legislature intended to preemption.

1          Here, they've made it clear, not just in the
2     language, which could not be more clear, but in the --
3     if you look at the legislative history, which we've
4     tried to give you a sense of, every time somebody has
5     said, are you really sure that you guys meant that you
6     preempt the field.  Isn't it possible that the City has
7     some power?  Every time there's been an attack on the
8     scope of that preemption language, it has been amended
9     and made stronger.
10          So I think that you take that together, you
11     look at the Lenci case which says if the Legislature
12     affirmatively expresses its intent to occupy the field,
13     there is no room for doubt.  That's Lenci at 63 Wn.2d
14     664.  That's a 1964 case.  There is no room for doubt
15     here, and, for that reason alone, based on the
16     language, preemption applies and supports our argument
17     for summary judgment.
18          The second reason that you should grant it is
19     it's not just a matter of intent.  If you look at the
20     scheme that's been affected here, we have in 290, the
21     preemption statute, and so the default position is that
22     the City -- or that the state occupies the field.  And
23     then in 300, we have some very carefully delineated
24     exceptions where the state has -- and, again, this was
25     an amendment so this was after there had been some

8

1   question in the case law.  This is an amendment to make

2   it very clear that, look, cities, you can only regulate

3   in these very limited exceptions.  And none of it --

4   it's uncontested here that none of the exceptions that

5   are listed in 300 apply to parks, that the City is not

6   arguing that the scheme gives them the right to do

7   this.

8            What's interesting about 9.41.300 is, if you

9   look at the exceptions, how the great pains that the

10  Legislature took to protect public space, even when

11  granting cities the power to prohibit or ban firearms.

12  So, for instance, if you look at 9.41.300(b), we're in

13  a place, a courtroom, where a municipality can ban

14  firearms.  But, what I found interesting is if you

15  look, they say, but, you know, you can't do it -- you,

16  the City, can't prohibit firearms possession in "common

17  areas of ingress and egress."  They say things like,

18  the restricted areas shall be the minimum necessary to

19  fulfill the objective.  You have this great effort

20  underway to protect public space as much as possible

21  while, at the same time, giving the City the right to

22  ban firearms in some very limited exceptions.

23            If you were to credit the City's argument,

24  the City's argument sort of turns that on its head and

25  says, oh, you know, we can't -- that the Legislature

1    would have been fine with us regulating firearms in

2    vast amounts of public space.  I mean, I don't know

3    what the percentage of parks and playgrounds are, but

4    it's a huge amount of public space.  That doesn't make

5    sense.  It violates the scheme, and, surely, if that

6    was the legislative intent, then, in 9.41.300, the City

7    would have been given explicit permission to act in

8    that fashion.

9         THE COURT:  Can the City really do any

10   banning in courthouses under this language, or is this

11   state regulation?  I ask because the section dealing

12   with powers of cities, towns, counties, and so forth

13   under 300 seems to be under section 2 versus (1)(b).

14        MR. FOGG:  I think it is -- if you looked at

15   the -- I think it was the -- this language came out in

16   response to the Ballsmider case where that was sort of

17   the issue was, does -- was the -- was the state sort of

18   stepping back and allowing the City to do whatever it

19   wanted in that context or was it still an exercise of

20   state authority.  And I think Ballsmider -- or the

21   Legislature, in passing the amendment, made it very

22   clear that, no, this is -- you're still acting under

23   state authority, that we're not seeing the right even

24   there.

25        The third reason that I think that our motion

1    should be granted, in addition to the language, in
2    addition to the scheme, is that the whole point of
3    preemption is to promote uniformity of firearms
4    regulation. It makes sense for the public to know that
5    the laws aren't going to change from county to county
6    or from jurisdiction to jurisdiction.
7         This firearms rule doesn't just -- it doesn't
8    promote uniformity. It actually makes things worse
9    because now the patchwork quilt problem that this is
10   intended to solve, you've got many more pieces in the
11   patchwork. Now, a lawful gun owner doesn't just have
12   to worry about, hmm, is the law going to change between
13   Seattle and Tacoma. They have to worry about within a
14   park, is it going to change from playground to
15   playground, literally from acre to acre as opposed to
16   county by county. That is another reason why it
17   doesn't make sense.
18        The City acknowledges the statute. I mean
19   they have to, and they acknowledge that the preemption
20   statute covers firearm regulation. They seek to evade
21   it by employing what I would call sort of a naming
22   game. They say, well, sure, we can't regulate
23   firearms, but this isn't a regulation. This is a rule,
24   and rules are different. Rules -- the point's made
25   clear in their opposition. They say in their

1   introduction, "The rule is not a regulation of firearms
2   because it is not generally applicable to all conduct
3   throughout the City's jurisdiction, and it does not
4   impose penalties for violations."
5           And, I'm going to urge you to pay attention
6   not to what they call this piece of regulation but what
7   it actually does.  And, in fact, it does apply.  It's
8   generally applicable the all conduct throughout the --
9   throughout the City.  If you want to use a park -- if
10  you're a citizen and you want to use a park, this law
11  applies to you.  It does -- so it's very different, by
12  the way, from the Cherry case where that applied
13  only -- obviously that's not the general public.
14  That's only if you happen to be a city employee.
15          The rule does impose a penalty.  They say,
16  well, we're not prosecuting anybody for possession of a
17  firearm in the city.  Well, they are.  The fact is that
18  if you lawfully have a firearm in the park and you
19  don't leave, you will be arrested and you will be
20  prosecuted for criminal trespass.  And, so, saying that
21  there's to penalty, that's sort of like saying, well,
22  there's no penalty for robbery as long you don't commit
23  robbery.  True, but, the fact is if you commit the
24  robbery, you're going to be prosecuted.  And, here, if
25  you carry -- if you carry a gun in the park, you will

1  be prosecuted for criminal trespass.

2        So, I would urge the court not to, as I'm

3  sure it has to do routinely, not to look at the labels

4  that lawyers place but what the actual conduct is here.

5  And what we have here, pure and simple, is firearm

6  regulation.

7        I think you can also take some notice of the

8  City's conduct in the fact that what they're doing here

9  is a rather -- is sweeping and seeking to prohibit guns

10  throughout these vast areas of property is sweeping,

11  and, yet, it's been a fact of life.  Preemption has

12  been a fact of life for the last 50 years, and I think

13  it's fair to say the City has never liked it, but I

14  think they've all realized that there's not much that

15  can be done about it, which is why we submitted to you

16  Mayor Nickels' quote that, you know, our hands are

17  tied, and we're unable to adopt any local laws to

18  protect our residents from gun crime.

19        What is this rule other than a law designed,

20  in their view, to protect residents from gun crime?  He

21  says, "I certainly understood that the statute

22  preempted the City of Seattle from passing ordinances

23  that would generally regulate firearms throughout the

24  City of Seattle subject to possible criminal penalties.

25  That's exactly what this rule does.  It generally

1  regulates firearms throughout the city and those who

2  violate the rule will be subject to criminal penalties.

3          The fact -- if it was really so obvious, if

4  it was really so evident that the Legislature said,

5  sure, cities, you know, you can ban -- that you can ban

6  guns in the cities to your hearts content, it surely

7  would have happened before now.  I think what we are

8  seeing here, the fact that it's only happening now, is

9  some evidence that they knew good and well that the

10  preemption statute prohibited this statute.  Not only

11  did the City understand that, the attorney general

12  understands that.

13          Now, we're not saying that the attorney

14  general opinion is dispositive precedent.  It's not.

15  But neither is that a reason to discard it and to pay

16  no attention to it.  If you look at the case law,

17  Thurston County versus City of Olympia, that's 151

18  Wn.2d 171, that it encourages trial courts to give

19  "Great weight to the attorney general in matters of

20  statutory interpretation."  It's a well-reasoned

21  opinion.  It's, of course -- you know, I would say

22  that, but it's a long opinion.  It's exhaustive.  And I

23  think more to the point, it's objective.  You know, you

24  have to assume that you're getting briefs from lawyers

25  who have a client, who have a point of view.  The

14

1    attorney generally really doesn't have a dog in this

2    hunt, and the fact that they've examined this and came

3    down so conclusively on this side of preemption is

4    something that you should -- we would urge you to give

5    some weight to.

6         I want to finish up by just talking a little

7    bit about what I think the two key cases, Cherry and

8    Sequim. At least they seem like they're the key cases

9    to me only because they explicitly address the statute.

10        THE COURT: I don't think you need to spend a

11   lot of time on Cherry. I would like to hear you talk

12   about Sequim.

13        MR. FOGG: Well, Sequim, I would just go back

14   to what they say the critical point is, which is, the

15   conditions that City imposed related to a permit for

16   private use of its property. They were not laws or

17   regulations applicable to the general public.

18        What we have here is a regulation that is

19   applicable to the general public. It's completely

20   different from a permit that's given to somebody for

21   the private use of the property. This is public use of

22   the property, and the City cannot hide behind its role

23   as a landowner in that -- in that situation.

24        I think what we have here, Your Honor, just

25   to sort of sum up, is that we're asking -- what we're

1    asking you to do is to --

2            THE COURT:  Do you think that the

3    Legislature's statements in 9.41.300(3)(b) --

4            MR. FOGG:  So 9.41.300, and then what was it?

5            THE COURT:  300(3)(b) and (3)(a).

6            Do you think those two provisions are a

7    response by the Legislature to the Sequim decision?

8            MR. FOGG:  (Reviewing.)  Well, I'm going to

9    do something I hate to do and admit that I don't know

10   because I don't know when these were added.  But I do

11   think that it is evidence, again, of the Legislature

12   responding that, look, no, we really have control over

13   this area, and every time there -- you know, there is

14   any sort of sense that, no, actually maybe you didn't

15   mean to take control over this area, they say, no, we

16   really meant it when we said we possess and control the

17   entire field of firearms regulation.  In short, we do

18   think it's as simple as the Legislature has said it

19   repeatedly, we are in a system where the state has

20   authority over the City.  And the fact that the City

21   has not been able to achieve what it thinks is the

22   right thing in Olympia is no reason for it to be able

23   to employ what's clearly a firearm regulation and to

24   call it a rule and hope for the last.

25           So I'll reserve any remaining time I have.

16

1          THE COURT:  I have one last question before

2  you go, Mr. Fogg.

3          You are making any argument under the second

4  amendment?

5          MR. FOGG:  None.

6          THE COURT:  Okay.  Why not?

7          MR. FOGG:  I don't think it's necessary.

8          THE COURT:  Okay.  Thank you.

9          MR. FOGG:  Thank you.

10         THE COURT:  Let me hear from you in the

11  response.  Go right ahead, Mr. Dunne.

12         MR. DUNNE:  Thank you, Your Honor.  Dan Dunne

13  on behalf of the defendants, City of Seattle, the

14  mayor, and the superintendent.

15         Let me start by addressing your last --

16  next to last question -- well, your last two questions.

17  The Second Amendment provides no right outside of the

18  home.  That right is very limited --

19         THE COURT:  It's hard to read Judge Scalia's

20  decision that way.  He does talk about the right to

21  keep arms as being related to right to have them in the

22  home, but the right to bear arms seems to be related to

23  the right to transport them.

24         MR. DUNNE:  The only holding of that case is

25  that the City may not restrict a person's ability to

1    have operable firearms in the home.  That's as far as

2    it goes for the purpose of self-defense.  It does not

3    hold anything broader than that.

4         So, at this time, especially the Ninth

5    Circuit, there is no Second Amendment right to carry

6    firearms into public spaces.  And under Ninth Circuit

7    law, as it currently stands, the Second Amendment

8    doesn't even apply to local state governments.

9         THE COURT:  Under previous rulings by, among

10    others, the U.S. Supreme Court that indicated that the

11    right wasn't personal, but how Heller seems to say

12    something very different about the way to construe the

13    right and it just brushes away the past precedent that

14    the Ninth Circuit decision relies on.

15         MR. DUNNE:  The District of Columbia has

16    authority by delegation of congress, and, therefore, it

17    is an instrument of the federal government, so there is

18    a case pending before the court currently out of

19    Chicago that will address whether it applies to the

20    state.  But that has not been decided, and until it is,

21    in this jurisdiction, the Ninth Circuit has decided

22    that question and the current law is that it does not

23    apply to states and local rules and municipalities, so

24    that is what we are here with.

25         But it's not an issue because that claim

18

1    hasn't been made by the plaintiffs.

2             THE COURT:  Okay.

3             MR. DUNNE:  With respect to 9.41.300 in your

4    question about subsection (3)(a), that is not a

5    response the Sequim.  The language there provides that

6    cities, towns, and counties may enact ordinances

7    restricting the areas with respect to jurisdictions

8    where firearms may be sold.  Sequim involved a permit

9    for use of profit.  It didn't involve an ordinance and

10   didn't have a restriction on the general areas where

11   firearms would be sold.

12            But that really gets to the heart of what

13   we're here to talk about.  The plaintiffs say over and

14   over that the law cannot be clearer that the State of

15   Washington fully occupies and preempts the entire field

16   of firearms regulation.  But, for the most part, they

17   beg the question about what it means to regulate

18   firearms, and they ignore both Sequim and Cherry in

19   what they say.

20            Obviously, there is no case that they can

21   cite either at the court of appeals level and the

22   Supreme Court level that sustains their position with

23   respect to the kinds of rules that we are advocating.

24   They do refer to Ballsmider.  Ballsmider was a case

25   where the City enacted a criminal ordinance, and the

1    Legislature reacted to that, as they have over time,

2    and modified RCW 9.41.290. Every time they have

3    modified that statute, they have left in the language

4    that refers to penalties. Every time they've modified

5    that statute, they have left in the language that

6    refers to laws and ordinances and have not expanded it

7    to rules.

8         So the Legislature has paid a substantial

9    amount of attention to the language in that statute,

10   but consistent with our argument about what the

11   interpretation should be, and I would submit completely

12   consistent with how it's been construed by Cherry and

13   Sequim, they have never touched the limitations on laws

14   and ordinances.

15        And it's critical to realize two things about

16   that statute. First, that statute was enacted as part

17   of a uniform law provision. Many states across the

18   country enacted similar statutes, and the uniform law

19   provision was for criminal regulation of firearms. And

20   it's in Title 9, which is a criminal code. And both

21   Cherry and Sequim find this to be extremely

22   significant.

23        Now, what the City has done is it's passed a

24   policy. The way a City passes a policy is, it does so

25   by enacting a rule or policy pursuant to its rights

```
 1   under its charter.  The City has not enacted an
 2   ordinance.
 3           If the court looks at Title 35A, chapter 11,
 4   section 020, in that section --
 5           THE COURT:  Just a moment.
 6           MR. DUNNE:  I have a copy of that, Your
 7   Honor.
 8           THE COURT:  That's okay.  We've got it here.
 9           MR. DUNNE:  In that section, it provides that
10   the only -- the only entity of city government that can
11   enact an ordinance with criminal penalties is the City
12   Council.  And then in the following chapter, chapter
13   12, where you have a council, mayor fashion of
14   government, it tells you how the council and the mayor
15   wants to act together.
16           Park superintendents cannot pass criminal
17   rules, cannot pass criminal ordinances.  They cannot
18   enact criminal penalties or even civil penalties.
19           THE COURT:  Hang on just one second, if you
20   would.
21           MR. DUNNE:  I think it's the second
22   paragraph, if I'm not mistaken.
23           THE COURT:  I'm almost there.
24           Okay.  Go ahead.
25           MR. DUNNE:  So I think Mr. Fogg tends to
```

1    minimize this, but there is a clear, real, and

2    fundamental difference recognized in the law between

3    how you enact a policy and what an ordinance is.

4         Now, we've cited at least five other statutes

5    in which the word rule has appeared, and those appear

6    in our brief. And the response to that from the

7    plaintiff is, don't be distracted by these other

8    statutes. They're all preemption statutes and they

9    cite case law that says you can't refer to a statute

10   for one purpose to interpret language in a different

11   statute.

12        But that case law relates to statutes that

13   are enacted for different purposes. These preemption

14   statutes are all enacted for the same purpose. They

15   also say, well -- well, those statutes refer to local

16   agencies and so it's more appropriate to include a

17   rule -- a word like rule in those statutes because

18   they're also attempting to preempt the activities of

19   local agencies. Well, I think that's what our parks

20   department is, is a local agency. And they prove our

21   point by saying that. The whole point is if they

22   wanted to preempt rules and go beyond criminal

23   regulation, they would -- they would include that

24   language.

25        But it's completely consistent with our

1   interpretation and what the Supreme Court has said to

2   omit rules because you can't have a criminal rule.  And

3   if the point is to regulate firearms in a criminal

4   manner, you would not include rule.  That would be

5   inconsistent.

6          Now, I think Your Honor's probably perfectly

7   aware of the canons of statutory construction that we

8   have cited, but it would be inappropriate, as Cherry

9   and Sequim have indicated, to import something into the

10   statute that isn't there.  It would be inappropriate to

11   import the word rule in when it isn't there, especially

12   when this statute has been amended so many times as it

13   has.

14          And let me just go to what the real

15   fundamental holdings of Cherry and Sequim are.  The

16   most fundamental holding of Cherry is this:  "We hold

17   that the Legislature in amending RCW 9.141.290 sought

18   to eliminate a multiplicity of local laws related to

19   firearms and to advance uniformity in criminal firearms

20   regulation."  That is the core holding of Cherry.

21          You will also find in Cherry that it says

22   over and over again that there is a distinction between

23   "laws and ordinances" and internal workplace rules, and

24   that there is no indication in this statute that the

25   Legislature had any intent to regulate internal

23

1  workplace rules.

2          THE COURT:  Let me take you to the next line,

3  Mr. Dunne.

4          MR. DUNNE:  Okay.

5          THE COURT:  "The laws and ordinances

6  preempted are laws at application to the general

7  public, not internal rules for employee conduct."  So

8  the court did not just look at the label of rule.  It

9  looked at the operation of the rule and said, well,

10 here we have a true rule for employee conduct, not a

11 law of application to the general public.

12         Can you distinguish that?

13         MR. DUNNE:  Yes, absolutely.

14         So the law of general application to the

15 public would be an ordinance because it would apply to

16 property that is owned by others, not just by the City.

17 A rule can only apply to property owned by the City.

18         THE COURT:  So if you pass a rule that

19 applies to the general public, you are going to have a

20 problem?

21         MR. DUNNE:  You can't.  You cannot pass a

22 rule that applies penalties to the general public.  You

23 must do that by ordinance.  That's the whole point.

24         THE COURT:  Okay.

25         MR. DUNNE:  Additionally, what would regulate

123

1    general public is an ordinance that tells people,

2    generally, where they can and they can't engage in a

3    particular activity throughout the entire jurisdiction

4    of the City.  And perhaps the best analogy for this,

5    Your Honor, would be smoking.  There was a time in this

6    state when individual establishments had policies that

7    when you walked into their restaurant or their

8    building, you could not smoke.  And if you violated

9    that or didn't comply, you would be asked to leave.

10   And if you did not leave, then you would be subjected

11   to possible criminal trespass.

12           That doesn't mean that the act of smoking is

13   criminalized because, obviously, private property

14   owners can't criminalize anybody's behavior.  What that

15   means is you're permission to enter their premises was

16   revoked, which they had every right to do, and Sequim

17   says that the City has every right that private

18   property owners have.

19           So when you revoke that and they still don't

20   leave, it isn't the smoking that is criminalized or are

21   regulated, it is the act of refusing to leave when the

22   property owner has asked you to leave.  That gives rise

23   to trespass.

24           That is the most fundamental distinction.

25   And there is no explanation for that distinction that's

25

1    provided by the plaintiffs.  I would submit that the

2    plaintiffs' argument really plays more word games than

3    the court should count on this because there is a

4    fundamental difference between criminalizing the act

5    and criminalizing someone who trespasses because they

6    haven't left property.

7        There's no viol -- there's no citation for

8    carrying a firearm.  There's no criminal penalty for

9    carrying a firearm, none of that actually comes to

10    pass.  You get the opportunity to leave, and, if you

11    don't leave, then you are in violation of whether you

12    have permission to be on the premises.  You are not in

13    violation of some firearm regulation.

14        So, that a critical distinction.

15        If we go to the Sequim decision --

16        THE COURT:  I'm there.

17        MR. DUNNE:  Two critical passages from Sequim

18    both in paragraph 32, the next to last paragraph.

19        THE COURT:  Which page?

20        MR. DUNNE:  It's the last -- just about the

21    last page, Your Honor.  So, page 11 in the WestLaw

22    printout, the last paragraph before Conclusion.

23        THE COURT:  I'm they're.  And you are on page

24    357, 1483 by the way.

25        MR. DUNNE:  Okay.  And the court says,

 1  "Applying our reasoning in Cherry it follows that a

 2  municipal property owner, like a private property

 3  owner, may impose conditions related to firearms for

 4  the use of its property in order to protect its

 5  interest."

 6            THE COURT:  "It's property test."

 7            MR. DUNNE:  Yes.  And that is --

 8            THE COURT:  Not its interest, its property

 9  interest.

10            MR. DUNNE:  (Reviewing.)  Correct.  I'm

11  sorry, Your Honor.  And that is exactly what the City

12  is doing.

13            Now, the Seattle Municipal Code delegates to

14  the superintendent certain rights and responsibilities.

15  It delegates to the superintendent the responsibility

16  to manage and control the park and recreation system.

17  It also delegates generally all responsibilities for

18  the management and control of the park and recreation

19  system.

20            As proprietor, they have responsibilities.

21  And these are in the State ex rel. Tubbs versus City of

22  Spokane case, which says that "When a City acts in its

23  proprietary capacity, it has the same duties,

24  obligations, and responsibilities, and also the same

25  rights and powers as other like proprietors."

27

1          THE COURT:  Do you want to take me to that

2     page?  I have that case here, too.

3          MR. DUNNE:  That is quoted in our brief, and

4     that is page 39 of the Washington Reporter.

5          THE COURT:  Okay.  Go right ahead.

6          MR. DUNNE:  So that really gets us to the

7     fundamental distinction.  The City has two hats that it

8     can wear.  It can wear a hat where the Legislature has

9     conferred upon it police powers, and with police

10    powers, it can engage in regulation, and that regulates

11    all activity that occurs in the city on anybody's

12    property by anybody under any circumstances.  So that's

13    a police power.  You know, you put your police hat on.

14          That's one way the City can act.  And to do

15    that, it must act by ordinance.  And that's a -- you

16    know, there are democratic safeguards because you have

17    to have the majority of council members.  You have to

18    have the mayor.

19          On the other hand, it can act in its

20    proprietary capacity.  And what we have seen with

21    Sequim is Sequim says when you act in that capacity,

22    regulating your own property, you have acted in a way

23    like any private property owner and you have the same

24    rights that that private property owner does.

25          So, what Sequim says in that same paragraph

1    is, "For the same reason that a municipal property

2    employer may enact policies regarding possession of

3    firearms in the workplace.  Because a private employer

4    may do so, a municipal property owner should be allowed

5    to impose conditions related to sales of firearms on

6    its property if a private property owner may impose

7    them."

8          Your Honor, I would submit that that is as

9    clear a holding of the Supreme Court as one could find,

10   and it applies here as clearly as one could apply it,

11   and there would be no question about that application.

12         I see my time is up.

13         THE COURT:  It is.  I am going to let you go

14   ahead and finish up.

15         MR. DUNNE:  One last thing I would say about

16   Attorney General McKenna's opinion.  I don't agree that

17   it's objective.  I think it's naive to suggest that it

18   is.  You know, there is partizan political office.

19   That's what the Attorney General Office is.  And that's

20   why Supreme Court decision after Supreme Court decision

21   has said that we give little deference to attorney

22   general opinions on matters of statutory construction.

23         I've provided this to counsel at noon today.

24   I'd like to hand up to Your Honor the four Washington

25   Supreme Court cases, which all hold that we should give

1    little deference to attorney general opinions among

2    statutory construction.

3         So with that, Your Honor, I guess I would

4    close by saying, unless the court has additional

5    questions, that this is not an ordinance but a rule.

6    It's not a criminal regulation but a property owner's

7    policy.  It doesn't have criminal consequences for

8    people who do not comply.  Those consequences come from

9    the act of not removing a person from the premises.

10        The City's properties get used by almost 2

11   million people a year.  There are 59,000 youth events a

12   year scheduled on the City properties, and those

13   involve people under the age of 21 who are not

14   permitted by law to carries guns.

15        Those children and youths deserve an

16   environment for recreation and education and that is

17   safe and secure, and, fortunately, when they go to

18   City-owned property for these sorts of functions, the

19   Supreme Court has said that, as the proprietor of these

20   properties, the City can enact sensible rules that

21   allow them to have a safe and secure environment.

22        I would ask that the court allow the City to

23   sustain its role, to find it lawful, and to enter

24   summary judgment on behalf of the City and the

25   defendants, because we have cross-moved for summary

30

1    judgment.

2              THE COURT:  Thank you, Mr. Dunne.

3              MR. DUNNE:  Thank you.

4              THE COURT:  Mr. Fogg, go right ahead.

5              MR. FOGG:  Thank you, Your Honor.

6              Your Honor, what you just heard and what I

7    would call the sort of closing paragraph of his remarks

8    are policy arguments.  Those are policy arguments that

9    should be brought to the Legislature, and it is

10   exactly, you know, that sort of frustration that's

11   driving what the City has done here.  The bottom line

12   here, the facts that I think are undeniable is that

13   this rule does impose a criminal penalty and that this

14   rule is applicable to the general public.

15             Those are the key points, and no matter how

16   they can sort of slice those up, those facts remain

17   incontestable.  The attorney general considered this

18   argument, and I think it's response is valid, which is

19   the argument that, well, you're not being prosecuted

20   for possessing the firearm, you're being prosecuted

21   because you wouldn't leave the park for possessing the

22   firearm, and what they said is it makes little

23   difference to a person who's being prosecuted whether

24   they're being prosecuted for criminal trespass or for

25   the possessing the firearm.  The fact is they're being

1   punished -- that there is a punishment, a criminal

2   punishment that's being imposed for violating the ban,

3   and that violates the preemption statute.

4           With respect to a law that applies to the

5   general public, whenever the City discusses Sequim,

6   they always skip the last two sentences in the holding

7   paragraph which says, "The critical point is that the

8   conditions the City imposed related to a permit for

9   private use of its property, they were not laws or

10  regulations of application to the general public."

11  What we have here, of course, is a regulation that is

12  applicable to every person in the City of Seattle.

13          And how I would urge you to make sense of

14  Cherry and Sequim is, those are cases in which you have

15  a subset of people to whom the regulation applies.  A

16  person can choose to be a city employee, and if you

17  make that choice, then you're susceptible to workplace

18  rules just as you would be in a private setting.  You

19  can choose to go to -- and in the Sequim's case, say, a

20  gun show on private property.  That is very different

21  from what we're talking about here, which is a rule

22  that is applied across the board to anybody who wants

23  to recreate in a city park.  So the key difference

24  there is the scope of the regulation.  It's not a

25  matter of what hat that the City is wearing.  I mean,

1   if you like at their -- they have get to address the

2   fact that their ban is a complete variance with the

3   scheme found in 300.

4           Of course, the City or the county owns the

5   courthouse, and, yet, the statute's not silent on that.

6   The state says here are the ways that you can.  They

7   don't say put on your property hat and you can regulate

8   to your hearts content.  They say, no, here are the

9   rules that are going to apply to that.  Because this is

10  a regulation that imposes a criminal penalty, because

11  it's applicable to the general public, it runs afoul of

12  the preemption statute, and you should find for us.

13          To just kind of mop up points counsel and

14  I -- I appreciate the courtesy, he let me know last

15  night that he was going to be referring to the RCW 35

16  and that there's the Housing Authority case, 120

17  Wn.App. 839, that makes the commonsense point, which

18  is, the City's power, notwithstanding RCW 35, a City's

19  power is still subject to the laws of the state and

20  they can't do anything that is -- to take any action

21  that would be prohibited by law, which is, of course,

22  our argument here.

23          With respect to, I guess, the final point,

24  they make much of, well, there are other statutes that

25  mention rules by name.  It hasn't happened here.

33

1  Shouldn't that be something that you should consider.

2  If you look at those statutes that they've cited,

3  they're all recent.  They're all in the last several

4  years.  And I think there's something to the language

5  kind of changes over time, the language that you find

6  in our statute is very much of the type of language you

7  would find in the '80s and '90s.  But perhaps more

8  importantly, none of those statutes have the incredibly

9  broad sort of sweeping statement that you have at the

10 front of our statute that says we fully occupy the

11 field of firearms regulation.  That's not there.  And

12 there's more of a gap-filling function that's performed

13 by the statutes that are relied upon by the City.

14        Also, I think the Legislature, frankly, would

15 not imagine that a rule could be used in this fashion.

16 I think they probably thought we covered the landscape

17 pretty well.  We've repeatedly said, you know, we

18 occupy the field, don't do it, the laws -- and I don't

19 think that they would have thought that, well, we can

20 dress up a rule to have a criminal affect and somehow

21 that will avoid the statute.

22        THE COURT:  One last question, Mr. Fogg.

23        MR. FOGG:  Sure.

24        THE COURT:  Do you want to comment on the

25 four cited Supreme Court cases saying we don't pay much

133

34

1  attention to the attorney general?

2          MR. FOGG:  Yes.  If I can get my notes.

3          The case that -- I mean, I don't want to make

4  too much of it because I think, you know, the court

5  understands, it's something you should pay attention

6  to, but it's not something that you absolutely have to

7  follow.  But I would direct you to Thurston County

8  versus City of Olympia, 151 Wn.2d 171.  I cite that to

9  the court because that was an attorney general opinion

10 about a matter of statutory interpretation.  And,

11 there, you have the Supreme Court saying we give that

12 great weight, so I think that you should do the same

13 here.

14         THE COURT:  Thank you.

15         MR. FOGG:  Thank you, Your Honor.

16         THE COURT:  All right.  Let me see if I can

17 back up with regard to the background of what's before

18 me factually and then talk about some of the general

19 legal principles that seem to be in play here, and then

20 I will close in on the arguments presented by the

21 parties here.

22         I do you want to say preliminarily that it

23 was a pleasure to read the briefing here and to hear

24 the argument today.  It is always a treat for the court

25 to get such well-argued briefs and such excellent oral

1    presentation, and I appreciate the ability of counsel

2    to turn on a dime and answer the court's unexpected

3    questions, too.

4         Let me turn to the background here.  I know

5    the City has argued to me, both at argument and in the

6    briefing, that the purpose of this rule is to protect

7    children and youth in the city parks, and the City has

8    argued to me that the rule is drafted so that it only

9    covers park department facilities where children and

10   youth are likely to be present, and the City has argued

11   to me that appropriate signage has to be up to

12   communicate that firearms aren't permitted at these

13   locations.

14        One thing I do not see in these materials is

15   any indication of the reason why the City felt prompted

16   to protect children and youth at these particular city

17   facilities.  If the court is always interested to see

18   that kind of factual showing when a policy argument is

19   being made to explain a rule to me, the only background

20   I am aware of for this particular rule is from my

21   general newspaper reading as a member of the informed

22   public.  And I think we all know that nothing that's

23   been reported in the papers preceding this rule has

24   much to do with protecting children or youth, and I

25   don't think there's in Mayor Nickels' communications

1    that have been given to me that cover this issue

2    either.  So I am not sure exactly why it is that this

3    rule is in place, although I see what the City is

4    telling me is the reason that it is in place.

5         The second thing I want to note here is that

6    the facts that are presented to me with regard to what

7    the plaintiffs are reporting, and none of their

8    accounts are rebutted here, is that this rule has not

9    been applied to them solely at areas where children and

10   youth are likely to be present.  It's been applied to

11   them at the city parks that they have gone to, nor has

12   the rule been limited to places where signage has been

13   put in place.

14        This policy or rule or whatever we may call

15   it has been applied to them whether or not signs were

16   up and whether or not they were in an area where

17   children or youth were likely to be present.

18        So I have an unusual situation where the rule

19   is challenged but the application seems to be broader

20   than the language of the rule and broader than the

21   policy that is advanced to me to protect the rule.

22        That is the factual background.

23        Each of the plaintiffs here, and I think it

24   is fair to say that they are very different human

25   beings, has reported that, generally with advanced

1    notice, they had gone with a lawfully-owned firearm to

2    a location that is a public park and that they have

3    been -- trust us at times by asking for written

4    evidence, and at times by people consulting with

5    superiors via phone, but one way or another, they have

6    been told that they may not be on the premises with

7    their lawfully-possessed firearms.

8         Let me back up to the legal background here.

9    I think we all know this is an interesting time for

10   this rule to be in place for a couple of reasons.  One

11   is because of the background with regard to application

12   of laws and regulations to firearms in Washington state

13   under the Washington state statute and Washington state

14   case law, and I will talk about that in more detail in

15   a bit, but, also, because I think we are all keenly

16   aware, for all that the plaintiffs is not advancing it

17   to me, but there is a recent decision out of the U.S.

18   Supreme Court which is very different from anything the

19   U.S. Supreme Court had said in the past and which, in

20   this court's view, throws into doubt a good deal of

21   prior federal case law, including some of the case law

22   cited to me on this motion.

23        The background here, and, again, it is not

24   the main focus of the court's ruling, but I also do not

25   feel comfortable dealing with this case and not

38

1    addressing it is that, unlike other kinds of

2    regulations, topics that the court deals with in this

3    case, there is no question at all that we are dealing

4    with constitutional rights.  There is the basic right

5    under the Washington State Constitution Article I,

6    Section 24 that "The right of the individual citizen to

7    bear arms in defense of himself or the state shall not

8    be impaired, but nothing in this section shall be

9    construed as authorizing individuals or corporations to

10   organize, maintain, or employ an armed body of men."

11        That is a clear statement of an individual

12   right under the Washington State Constitution.  The

13   scope of that right is not crystal clear at this point

14   nor was it briefed here, but certainly it is in play in

15   the background to this motion.

16        The other major constitutional provision that

17   I think we are all more alert to in the wake of the

18   recent U.S. Supreme Court case is the Second Amendment

19   of the U.S. Constitution which says that "A well-

20   regulated militia being necessary to the security of a

21   free state, the right of the people to keep and bear

22   arms shall not be infringed."

23        And the reason I raise that is background,

24   and I am going to move off this constitutional topic in

25   a moment, is because of the decision by the U.S.

1   Supreme Court in June of 2008 in District of Columbia
2   versus Heller, in which Justice Scalia for the majority
3   spent a great deal of time in his opinion examining the
4   meaning of this amendment and settled an argument
5   that's been ongoing for a long, long time about whether
6   or not the Second Amendment right is a right that
7   pertains to the ability to organize a militia, such as
8   the National Guard, or whether it is a right that
9   expresses an individual right of individual citizens of
10  these United States.
11          According to the Supreme Court, the right to
12  keep and bear arms is, in fact, an individual right.  I
13  agree with the City that this decision doesn't
14  expressly apply that right via the Fourteenth Amendment
15  to the state's, and I will point out that it is not an
16  unlimited right either, according to the express
17  language of the decision.
18          Justice Scalia says that, among other things,
19  that nothing in his decision casts doubt on long-
20  standing prohibitions of firearms by felons and the
21  mentally ill, laws forbidding the carrying firearms in
22  sensitive places such as schools and government
23  buildings, for laws imposing conditions and
24  qualifications on the commercial sales of arms.  And,
25  in addition, the court says that the Second Amendment

1    is limited to the ability to carry the sorts of weapons

2    in common use, and he seems to think that that is

3    handguns as opposed to "dangerous and unusual weapons."

4         So that decision is out there, too, and I am

5    throwing it out there because the court always has to

6    be respectful when I know that I am dealing with a

7    recognized constitutional right which exists both at

8    the state and the federal level.

9         Against that background, let me turn to

10   Washington state law and the critical provisions that

11   we are dealing with in this case.

12        The first provision I want to talk about is

13   the critical state preemption issue that is before us

14   today, and that is the Legislature's statement in RCW

15   9.41.290.  "The State of Washington hereby fully

16   occupies and preempts the entire field of firearms

17   regulation within the boundaries of the state,

18   including the registration, licensing, possession,

19   purchase, sale, acquisition, transfer, discharge, and

20   transportation of firearms or any other element

21   relating to firearms or parts thereof including

22   ammunition and reloader components.  Cities, towns, and

23   counties or other municipalities may enact only those

24   laws and ordinances relating to firearms that are

25   specifically authorized by state law as in RCW 9.41.300

1  and are consistent with this chapter."

2        That is a sweeping statement of preemption,

3  and, as the plaintiffs point out here, it is based on a

4  history of increasingly sweeping statements in the

5  statutes relating to firearms by our Legislature.

6        Each time our courts have found that there is

7  some ability for a local regulation, this statute has

8  gotten stronger, and this is the strongest statement

9  yet.  It is hard to think of a more expressed statement

10  of complete preemption.

11        The response that the City makes to this is,

12  well, we can still pass rules because those aren't the

13  same things as laws and ordinances relating to

14  firearms, and so we can escape the limitation on us

15  that is presented in 9.41.290 by doing something that

16  is not a law or an ordinance that relates to firearms.

17        The City relies primarily on three cases, and

18  I am going to deal with them briefly in turn and

19  hopefully in chronological order.

20        The oldest case that the City looks to is

21  State ex rel. Tubs versus City of Spokane at 53 Wn.2d

22  35, decided in 1958.  This was actually not anything to

23  do with firearms.  This case had to do with the City

24  council's ability to refuse to rent a coliseum for the

25  use of an amateur hockey team for a specified number of

1  days.  And what the court said was the not surprising

2  information that the City Council was vested with

3  discretion in the management of the city auditorium

4  when it acts in its proprietary capacity which is what

5  it is doing when it rents out an auditorium.  The court

6  quoted a treatise on municipal corporations that said

7  that "The power to lease or rent public halls and

8  auditoriums, even when it is not expressly conferred

9  can be implied," and that given the fact that the City

10  Council gave a full hearing and otherwise followed due

11  process that there was nothing unreasonable about the

12  City Council limiting the use of its auditorium, they

13  said, "A much more plausible case of abuse would appear

14  if the council were to allow hockey teams to monopolize

15  the use of the auditorium thereby depriving the public

16  of the privilege of viewing other sports and

17  entertainment which it justifiably anticipated in

18  joining in the bond issue for the construction of the

19  auditorium was approved."

20       Besides not dealing with firearms, that case

21  also deals with the ability to choose not to lease

22  exclusively to a particular sort of activity for a

23  particular city location, and I just do not see how

24  that case is in play here when we are dealing with the

25  right of citizens to go into parks carrying their

43

1  lawfully-owned weapons.

2      There is no issue here about leasing or use

3  of any leased facility.  For example, we do not have a

4  situation where people who own firearms are demanding

5  to go stand around at the community centers and use

6  them exclusively and the City is saying, no, we want to

7  share the community centers with other people, too,

8  which is what I think, really, that case goes to.

9      The second case presented to me is Cherry

10  versus Seattle, decided at 116 Wn.2d 794 and decided in

11  1991.  This is a case where the City of Seattle was

12  specifically regulating its employees from possessing

13  concealed weapons while on duty or on Metro property

14  and whether that limitation was in conflict with the

15  preemption language of 9.41.290.

16      What the court said there is that the

17  Legislature was not looking in its preemption language

18  to interfere with public employees in establishing

19  workplace rules, and that where there were simply

20  internal rules for employee conduct that there wasn't

21  any concern about preemption.  However, the court added

22  when it deals with 9.41.290 in its application,

23  9.41.090 refers to, and I am quoting here, "Laws of

24  application to the general public, not internal rules

25  for employee conduct."

143

1    There is an unpublished decision by a
2  colleague trial court with whom this court has always
3  had a warm relationship and for whom this court has
4  great respect, which has ruled on a similar case
5  involving the use of firearms at a fire district.  And
6  I think that, clearly, under Cherry, that kind of rule
7  for employees is lawful despite the preemption language
8  of 9.41.270 because rules apply to people who work for
9  a fire district or rules apply to people who work for
10  Metro are rules that are for employees, and the City is
11  applying them as an employer.  So they are not laws and
12  ordinances.  All the rest of us that do not work for
13  Metro or the district do not have to worry about these
14  rules.  They don't operate the way laws and ordinances
15  do.
16    I want to point that out because the court
17  wasn't relying on the way that Seattle had labeled its
18  regulations for Metro employees, and although I have
19  not read the briefing, my bet is that Seattle's
20  regulation, whether called a regulation or rule or
21  something else, with regard to fire direct, was not so
22  important.  What was important was that the court was
23  looking at the functionality of Seattle's rule.  And
24  saying in Cherry that the functionality of applying
25  only to employees is not the same thing as a rule that

1    applies to the general public, which is a law or an

2    ordinance.

3            Let me turn then to the last case that has

4    been at issue here, the Supreme Court's more recent

5    decision in 2006 in Pacific Northwest Shooting Park

6    Association versus City of Sequim.  In this case,

7    Sequim was dealing with the sweep of its own permit for

8    the operation of a gun show at its convention center.

9    There had been an application for a temporary use

10   permit to hold a gun show at the convention center, and

11   the Sequim Fire District and police deputy, among

12   other, indicated that they were going to impose some

13   conditions on the operation of the gun show under the

14   permit that the plaintiff was seeking in that case.

15           Again, we have a couple of things going on

16   that are of interest here.  The first is that, as the

17   Supreme Court said, it is certainly arguable that under

18   the statute itself that cities and towns and

19   municipalities do have authority to regulate and

20   restrict firearm possession in the stadiums and the

21   convention centers that they operate, and the court

22   looks specifically to the language of 9.41.300, which

23   we have talked about today in this ruling and,

24   specifically, I think looked to language of subsection

25   (3)(a) and (b) indicating that cities and towns and

1  counties have the authority to regulate businesses

2  selling firearms.

3          So the first ruling from the court was that

4  the statute itself provided authority to go ahead and

5  regulate possession of firearms and that what the

6  plaintiff was doing in terms of running his gun show

7  didn't qualify as an exception under any of the

8  language of the statute.

9          The court's alternate holding was that there

10  was not preemption under Cherry, and specifically what

11  the court said was, "Cherry supports the general

12  proposition that when a municipality acts in a capacity

13  that is comparable to that of a private party, the

14  preemption clause does not apply," and the court went

15  on to explain, "A municipality acts in a proprietary

16  capacity when it acts as the proprietor of a business

17  enterprise for the private advantage of the

18  municipality, and it may exercise its business powers

19  in much the same way as a business, individual, or

20  corporation."  And then the court explained, "By

21  issuing a temporary use permit, the City was leasing

22  its property to KNSPA," the plaintiff that was trying

23  to operate the gun show, "and acting in its private

24  capacity as a property owner."

25          Okay.  We are talking about the City issuing

47

 1   a permit for money to operate a gun show on its

 2   premises in a convention center.  No discussion is

 3   before me in this case about permitting anybody in a

 4   proprietary capacity to enter Seattle parks carrying a

 5   lawful weapon.  If I were to accept the City's argument

 6   that every time it deals with property which it manages

 7   and controls, that it is acting in a proprietary

 8   capacity, there would not be any place that the City

 9   didn't have that power over.  We would wash away the

10   preemption language entirely.  Nothing would prevent

11   the City from preventing people from being on the

12   street with their firearms, being on the waterway with

13   their firearms, being on any part of a park with their

14   firearms, or being in any other place that the City of

15   Seattle has control over.

16           So, I do not believe that anything about this

17   particular language sweeps as widely as the City has

18   argued, and I am drawing that conclusion because it

19   seems to me important to track what the court was

20   saying when it says that there is something special

21   about acting in a proprietary capacity.

22           To me, this is right in line with the court

23   saying you can decide not to make your auditorium

24   exclusively available to one kind of enterprise.  You

25   can decide that your employees have to follow your

1    rules.  You can decide that when you are issuing a

2    permit as a proprietor of a business, you can control

3    the conditions under which you issue the permit.  That

4    is all very much the City's operation as any employer

5    or any private proprietor.  But, what I am dealing with

6    here is something much broader.

7            This rule applies to every citizen that wants

8    to go onto a city park with a concealed weapon.  At

9    least that is the way the rule is being applied,

10   according to the plaintiffs and their experience in

11   this case.  And, even as worded, it is of general

12   application to anyplace where children and you are

13   likely to be present and signage has been posted.

14           What the court said, again, in Sequim is,

15   "Although a municipal property owner, like a private

16   property owner, can impose conditions related to

17   firearms for the use of its property to protect its

18   property interests," like its permitting interest, they

19   say, "The critical point is that the conditions the

20   City imposed related to a permit for private use of its

21   property.  They were not laws or regulations of

22   application to the general public."  That is a stark

23   difference.

24           Now, that is the legal background here.  I

25   have a unique situation where the City has reached out

1    to apply what it calls a rule to the general public in

2    a way that applies to all members of the general

3    public. And that is why this particular court found

4    the attorney general's opinion persuasive. Frankly,

5    the way the attorney general the statutes and the case

6    law here is very much the way this court reads the

7    statutes and the case law.

8            I know the attorney general is a republican,

9    I know that Mayor Nickels was a democrat, and I know

10   that Mayor McGinn is a democrat, I do not think it

11   matters. I think we are dealing with issues of how we

12   look at the law fairly, how we construe the language of

13   the statutes, and how we construe the language of the

14   cases, and I do not think there is a lot of

15   construction for this court to make here. This is a

16   sweeping preemption statement in the statute. There is

17   careful language in the Supreme Court cases that I've

18   talked about limiting the application of those cases to

19   situations where the City's acting as an employer or as

20   a private proprietor of its buildings. And, against

21   all of this, we have a background of what appears to be

22   both a federally- and a state-protected constitutional

23   right.

24           I must say that I think that it is clear that

25   this rule is preempted by the Washington state statute

1    and that only the Legislature has the power to pass the

2    kind of regulation that the City has attempted to

3    implement in this case.

4            I also think that the standards for an

5    injunction are met in this case.  And let me return

6    briefly to those standards if I could.

7            First, there has to be a clear, legal, or

8    equitable right.  I think I have said enough so far to

9    say that seems obvious to me that the plaintiffs have

10   clear legal rights under Washington state law and

11   under, in all likelihood, both state and federal

12   constitutional provisions.

13           Second, there is no question about a well-

14   ground fear of immediate invasion of that right.  Every

15   plaintiff here has lawfully attempted to bring their

16   firearm onto a city park premises and every one of them

17   has been warned off the premises, and they have

18   documented those fact.

19           I have to say that, in terms of the ability

20   to exercise the plaintiffs' lawful rights that the acts

21   complained of, i.e. the enforcement of this rule,

22   particularly the broad enforcement of this rule, even

23   beyond the express terms of the rule, are resulting and

24   have resulted in actual and substantial injury to the

25   plaintiffs in the exercise of their rights.

1        So I am granting the injunction as well.

2        I am granting summary judgment to the

3 plaintiffs.  I am granting injunction.

4        The one limitation here is that, to the

5 extent that the City has to the organizational

6 plaintiffs having standing where there are already

7 individual plaintiffs in this case, I sustain that

8 objection.  And so I am ruling in favor of the

9 individual plaintiffs here.  The organizational

10 plaintiffs only to the extent they have no individual

11 member who is already present in this litigation.

12        And that is the ruling of the court.  Give me

13 an order, if you would.  I know you all know you have a

14 very complete record from my court reporter.  Please go

15 ahead and order it from her, and she will produce it

16 for you as soon as she can.

17        Thanks, everybody.

18        (Whereupon proceedings concluded.)

19             --oOo--

20

21

22

23

24

25

52

REPORTER'S CERTIFICATE

STATE OF WASHINGTON)
                    )    SS:
COUNTY OF KING      )

I, CYNTHIA A. KENNEDY, an official reporter of the State of Washington, was appointed an official court reporter in the Superior Court of the State of Washington, County of King, on April 17, 2006, do hereby certify that the foregoing proceedings were reported by me in stenotype at the time and place herein set forth and were thereafter transcribed by computer-aided transcription under my supervision and that the same is a true and correct transcription of my stenotype notes so taken.

I further certify that I am not employed by, related to, nor of counsel for any of the parties named herein, nor otherwise interested in the outcome of this action.

Dated: _____

_____
OFFICIAL COURT REPORTER

152

# EXHIBIT F

THE HONORABLE CATHERINE SHAFFER

**COPY**

**FILED**
KING COUNTY WASHINGTON

FEB 1 2 2010

SUPERIOR COURT CLERK
EILEEN L. MCLEOD
DEPUTY

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

WINNIE CHAN, et al.,

                                        Plaintiffs,

        v.

CITY OF SEATTLE, et al.,

                                        Defendants.

No. 09-2-39574-8 SEA

**ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

[~~PROPOSED~~]

THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment.

The Court has reviewed:

        1.      Plaintiffs' Motion for Summary Judgment,

        2.      Declarations submitted in support of Plaintiffs' Motion for Summary

Judgment, with exhibits,

        3.      Defendants' Response to Plaintiffs' Motion for Summary Judgment,

        5.      Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment,

        6.      _____,

        7.      _____, and

        8.      the records and files herein,

[~~PROPOSED~~] ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1

**CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   and has considered the arguments of counsel.  The Court finds that there is no genuine issue

2   of material fact on which reasonable minds could differ.  Further, the Court concludes that,

3   pursuant to RCW 9.41.290, the City of Seattle's authority to regulate the possession of

4   firearms in City parks and recreation facilities during public use of those facilities is

5   preempted by state law, and therefore Seattle's Department of Parks and Recreation's

6   Rule/Policy Number P 060-8.14 ("Firearms Rule") violates Washington law and, on that

7   basis, is null and void.  Plaintiffs are entitled to judgment as a matter of law.

8       NOW, THEREFORE, IT IS HEREBY ORDERED that:

9       1.    Plaintiffs' Motion for Summary Judgment is GRANTED,

10      2.    The City of Seattle's Firearms Rule is declared null and void,

11

12      3.    The City of Seattle is permanently enjoined from enforcing the Firearms Rule
             in any way. [Rider A attached.]

13      4.    The City is further ordered to immediately remove all signage posted pursuant

14            to the Firearms Rule, within 30 days from the date of this Order.

15      Dated this 18 day of FEBRUARY, 2010.

16
        [Rider B Attached.]
17
                                                    THE HONORABLE CATHERINE SHAFFER
18

19   Presented by:

20   CORR CRONIN MICHELSON
     BAUMGARDNER & PREECE LLP

21

22   Steven W. Fogg, WSBA No. 23528

23   Molly A. Malouf, WSBA No. 31972

24   Approved as to form; notice of

25   presentation waived.
                                [Counsel for Plaintiffs]

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

155

DTD
SUF

RIDER A:

The Court finds that:

1. Plaintiffs have a clear legal or equitable right to carry firearms under federal and state constitutions.

2. Plaintiffs have established a well-grounded fear of invasion of that right.

3. Plaintiffs have established that they have suffered a substantial injury.

DTD
SUF

RIDER B:

5. The Court finds that the Organizational Plaintiffs lack standing to bring claims, and their claims are dismissed with prejudice

156