No. 82154-2

J.M. JOHNSON, J. (concurring and dissenting in part)—The majority correctly holds (i) that the due process clause of the Fourteenth Amendment to the United States Constitution incorporates the Second Amendment against the states and (ii) that article I, section 24 of our state constitution also protects an individual right to bear arms. However, the majority then applies too low a level of scrutiny to RCW 9.41.040(2)(a)(iii),[1] which dramatically restricts the exercise of the constitutionally protected right to bear arms. In declining to apply strict scrutiny and instead "look[ing] to the Second Amendment's original meaning, the traditional understanding of the right, and the burden imposed on children by upholding the statute," the majority disregards our long-standing national tradition allowing younger citizens to

---

[1] See majority at 1 note 1 for the full text of this convoluted statute.

bear arms and the level of protection that we customarily accord to fundamental rights. Majority at 22. I therefore write separately to emphasize that strict scrutiny is the appropriate standard of review for Second Amendment challenges to statutes restricting these important constitutional rights.

This conclusion is inescapable when one considers the fundamental nature of the right to keep and bear arms throughout our nation's history and our legacy of extending that right to young people. Youth have been permitted and even on occasion requested to bear arms since our country's nascent days and throughout the history of our state. The Journals of the Continental Congress, for example, identified "healthy, sound and able bodied men . . . not under *sixteen* years of age" as the preferred category of men from which the officers of the Continental army were to recruit their soldiers.[2] Even younger soldiers volunteered and managed to enlist. *See* Louis H. Cornish, A National Register of the Society: Sons of the American

---

[2] IV Journals of the Continental Congress, 1774-1789, at 63 (Worthington Chauncey Ford ed., 1906) (1776) (emphasis added). On the other side of hostilities, General Thomas Gage pressed twelve- and thirteen-year-old lads into service. David M. Rosen, Armies of the Young: Child Soldiers in War and Terrorism 4-5 (2005) (citing A. W. Cockerill, Sons of the Brave: Story of Boy Soldiers 60 (1984); The Revolution Remembered: Eyewitness Accounts of the War for Independence (John C. Dann ed., 1980)).

Revolution 722 (A. Howard Clark ed., 1902) ("John Green . . . became a Revolutionary soldier at the age of *fifteen* and was with Washington at Valley Forge . . . ." (emphasis added)).

What were these teenagers fighting for? I remind the court that, among other things, they fought for the right to bear arms, *see* U.S. Const. amend. II, a right that unquestionably extended in its fullest form to those adolescents who took up arms to defend it. As the majority points out, gun rights are "an inexorable birthright of American tradition . . . 'held . . . to be fundamental'" by those who participated in the Revolutionary War. Majority at 8 (quoting Stephen P. Halbrook, That Every Man Be Armed: The Evolution of a Constitutional Right 55 (1984)); *see also id.* at 8-12 (discussing the "fundamental" and "deeply rooted" national and individual state traditions of recognizing the right to bear arms); *District of Columbia v. Heller*, ___U.S.___, 128 S. Ct. 2783, 2798, 171 L. Ed. 2d 637 (2008) ("By the time of the founding, the right to have arms had become fundamental for English subjects.").

Young people continued to bear arms for this country through the Civil War, a conflict in which close to half a million boys aged 16 years old and

younger—many of whom lied about their age in order to enlist—served with distinction.[3] One boy soldier, Willie Johnston, earned the Congressional Medal of Honor for heroism demonstrated when he was only 11 years old.[4] Johnston was not alone in his precocious valor: roughly 65 other juvenile soldiers earned the Medal of Honor during the Civil War.[5] These and the other brave boys and young men who served in the Civil War, like their compatriots almost a century earlier, undeniably enjoyed full entitlement to all of the fundamental rights for which they fought and died, including the right to keep and bear arms. State laws that infringe or impair such a right thus merit strict scrutiny[6] or, at a minimum, intermediate scrutiny.

There is remarkable irony in concluding that gun rights were somehow *less* fundamental to the adolescent soldiers who fought to protect them or that we should scrutinize limitations of those rights less exactly on account of

---

[3] Jim Murphy, The Boys' War: Confederate and Union Soldiers Talk about the Civil War 2 (1990).

[4] Ron Owens, Medal of Honor: Historical Facts and Figures 32 (2004).

[5] *Id.* at 31-32. The ages of these soldiers were as follows: 32 awardees were 17 years old; 20 were 16 years old; 6 were 15 years old; 5 were 14 years old; and 2 were 13 years old. *Id.* at 32. Historical records such as these lend credence to the statement that the Civil War "could almost have been called the teenager's war." *Id.* at 31.

[6] The Second Amendment reads: "shall not be infringed." U.S. Const. amend. II. The Washington Constitution reads: "shall not be impaired." Wash. Const. art. I, § 24.


age. If age did not bar teenagers from serving in the Continental or Union armies, how could it bar them from receiving full judicial protection for the rights they championed? The simple answer is that it did not do so then, and it does not do so now. If a soldier is old enough to fight for the nation, he is old enough to enjoy the fundamental right to keep and bear arms. Accordingly, strict scrutiny must apply to statutes limiting this right.

The tradition of underage service in our military has moderated from the great wars of centuries past, but it nevertheless endures. As early as their 17th birthdays, American youths are allowed to take up arms and enlist in the army, navy, air force, Marine Corps, or Coast Guard with the permission of their parents. 10 U.S.C. § 505(a). Such 17-year-old volunteers do not yet enjoy the right to vote, U.S. Const. amend. XXVI; the right to possess, consume, or acquire alcohol, *see, e.g.*, RCW 66.44.270(2)(a); or the ability to serve as elected officials in any branch of the federal government, U.S. Const. art. I, § 2, cl. 2; art. I, § 3, cl. 3; art. II, § 1, cl. 5; but they unambiguously *do* have the right to bear arms. Indeed, state law protects this right, at least to the extent that it is exercised by youths on active military duty. RCW 9.41.042(9) (exempting from RCW 9.91.040(2)(iii) "any person under the

age of eighteen years who is . . . a member of the armed forces of the United States, national guard, or organized reserves, when on duty"). To pretend otherwise—or to conclude that the right to bear arms is somehow less fundamental to those men and women in uniform who have yet to see their 18th birthday—is to turn a blind eye to a centuries-old American military practice.

In each of these examples, both past and present, Americans under the age of 18 are not only allowed but encouraged to bear arms in defense of their country, like their older compatriots. Granted, it is constitutionally permissible with exceptional justification to limit the Second Amendment rights of adult civilians, *see, e.g.*, *Heller*, 128 S. Ct. at 2816-17 (acknowledging the validity of "longstanding prohibitions on the possession of firearms by felons and the mentally ill [and] in sensitive places such as schools and government buildings"), and thus it is certainly also constitutional to restrict the right of teenagers to bear arms in limited, prescribed circumstances outside of the military, *see, e.g.*, *United States v. Rene E.*, 583 F.3d 8, 13-15 (1st Cir. 2009) (citing cases evidencing "a view, from at least the Civil War period, that regulating juvenile access to handguns . . . did not

offend constitutional guarantees of the right to keep and bear arms.") *cert. denied*, 78 U.S.L.W. 3393 (U.S. Jan. 11, 2010) (No. 09-7852).

It is the analysis that courts apply to scrutinize legislative limitations of the rights of our young people relative to adults, however, that forms the crux of my disagreement with the majority. The majority declines to hold that strict scrutiny applies to broad statutory restrictions such as RCW 9.41.040(2)(a)(iii) (and even rejects the lesser intermediate scrutiny under which compelling interests such as school safety may be shown greater deference). Majority at 21-22. I am convinced that only applying strict scrutiny, or in some cases the latter, lesser standard, appropriately protects the fundamental constitutional right infringed or impaired by the state's regulation.

The majority correctly points out that the United States Supreme Court recently declined to identify the level of scrutiny generally applicable to infringements of rights under the Second Amendment. Majority at 21 (citing *Heller*, 128 S. Ct. at 2821). However, the indecision of the United States Supreme Court does not necessarily bind *this* supreme court to the unclear contextual standard of review that emerged from that Second Amendment

case. Although it is true that a number of the lower federal courts that have heard Second Amendment challenges since *Heller* have followed the United States Supreme Court and chosen not to apply one of the traditional levels of scrutiny to such infringements,[7] many courts have done the opposite, applying strict scrutiny or intermediate scrutiny depending on the importance of the Second Amendment interest involved.[8] These courts have never applied rational basis review. *See Heller*, 128 S. Ct. at 2817 n.27 (effectively foreclosing the application of rational basis review to Second Amendment challenges). It is incumbent on this court to select a clear standard for evaluating legislative limitations of the right to keep and bear arms, whether it is protected under the Second Amendment or article I, section 24 of the Washington Constitution.

The United States Supreme Court has observed that rational basis

---

[7] The "traditionally expressed levels" of scrutiny include "strict scrutiny, intermediate scrutiny, and rational basis." *Heller*, 128 S. Ct. at 2821; *see United States v. Marzzarella*, 595 F. Supp. 2d 596, 604-06 (W.D. Pa. 2009) (applying "the standard applicable to content-neutral time, place and manner restrictions [of speech]" to uphold 18 U.S.C. §922(k), which forbids the removal of a firearm's serial number); *United States v. Luedtke*, 589 F. Supp. 2d 1018, 1024 (E.D. Wis. 2009) (using *Heller*'s "historical analysis of the types of restrictions permitted by the Second Amendment" to sustain 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by persons subject to domestic violence protective orders); *United States v. Booker*, 570 F. Supp. 2d 161, 162-63 (D. Me. 2008) (using the same analysis to uphold 18 U.S.C. § 922(g)(9), which permanently disarms domestic violence misdemeanants).

review would render the Second Amendment "redundant with the separate constitutional prohibitions on irrational laws, and [without] effect." *Heller*, 128 S. Ct. at 2817 n.27. Under our jurisprudence, and to provide clear guidelines for our lower courts, this court thus must choose either the exacting strict scrutiny, under which a statute must be "'necessary to serve a compelling state interest'" and "'narrowly drawn to achieve that end,'" *Rickert v. Pub. Disclosure Comm'n*, 161 Wn.2d 843, 848, 168 P.3d 826 (2007) (internal quotation marks omitted) (quoting *Burson v. Freeman*, 504 U.S. 191, 198, 112 S. Ct. 1846, 119 L. Ed. 2d 5 (1992)), or the lesser intermediate scrutiny, under which a statute limiting the exercise of a right

---

[8] *See United States v. Skoien*, 587 F.3d 803, 805 (7th Cir. 2009) (applying intermediate scrutiny to 18 U.S.C. § 922(g)(9)); *United States v. Bay*, No. 2:09-CR-83 TS, 2009 WL 3818382, at *2, *4 (D. Utah Nov. 13, 2009) (mem.) (applying strict scrutiny and upholding 18 U.S.C. § 922(g)(1), which permanently disarms felons). As is obvious from these examples, *see also supra* note 7, the lower federal courts are by no means in agreement over which standards of scrutiny apply to various categories of Second Amendment claims. At times, they have directly contradicted each other not only in their choice of a standard but also in their reading of *Heller* itself. *Compare United States v. Engstrom*, 609 F. Supp. 2d 1227, 1231 (D. Utah 2009) (applying strict scrutiny to an 18 U.S.C. § 922(g)(9) challenge because "the *Heller* Court described the right to keep and bear arms as a fundamental right [and] categorized [it] with other fundamental rights which are analyzed under strict scrutiny") *with United States v. Miller*, 604 F. Supp. 2d 1162, 1170-71 (W.D. Tenn. 2009) (applying intermediate scrutiny to an 18 U.S.C. § 922(g) challenge because the *Heller* court "never explicitly embraced . . . the right to bear arms as 'fundamental' under the Constitution"), *and Marzzarella*, 595 F. Supp. 2d at 604-05 (arguing that *Heller* does not require strict scrutiny). To avoid similar confusion in our lower state courts, we should identify a single standard here.

must be "substantially related to an important government interest," *State v. Williams*, 144 Wn.2d 197, 211, 26 P.3d 890 (2001).

This court has applied the standard of strict scrutiny to statutes that impact rights deemed fundamental.[9] Here, we have such a right: the fundamental right to bear arms. We apply strict scrutiny in other cases even when the fundamental rights in question belong to minors. *See, e.g.*, *City of Sumner v. Walsh*, 148 Wn.2d 490, 505, 504, 61 P.3d 1111 (2003) (Chambers, J., concurring) ("The mere fact that only children are involved does not undermine th[e] threshold determination [that] [s]trict scrutiny applies.").[1]

---

[9] *See, e.g.*, *State v. Warren*, 165 Wn.2d 17, 34, 195 P.3d 940 (2008) (strict scrutiny applies to the rights to marry and parent); *First Methodist Church v. Hearing Exam'r*, 129 Wn.2d 238, 249, 916 P.2d 374 (1996) (same with respect to free exercise); *In re Juveniles A, B, C, D, E*, 121 Wn.2d 80, 97-98, 847 P.2d 455 (1993) (same with respect to the right to privacy); *cf. Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 220, 143 P.3d 571 (2006) (strict scrutiny of statute depriving taxi cab driver of his license for failure to pay child support *not* required because "neither this court nor the United States Supreme Court has characterized the right to pursue a particular profession as a fundamental right."). *But see In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980) (no application of strict scrutiny to statute limiting the "'sacred right'" to parent) (quoting *Moore v. Burdman*, 84 Wn.2d 408, 411, 526 P.2d 893 (1974)).

[1] In *Walsh*, the majority struck down as unconstitutionally vague a municipal curfew ordinance that made it unlawful for the parent of a juvenile to permit that juvenile to "*remain* in any public place" during certain hours. *Walsh*, 148 Wn.2d at 492-93, 502. Although it declined to evaluate the ordinance as an infringement of a fundamental right, the majority noted that "an ordinance might experience a more difficult time passing constitutional muster on the grounds Justice Chambers discusses in his concurring opinion, i.e., that [it] violates the constitutional right of a juvenile to move freely in public places,"

*State v. Sieyes*, No. 82154-2

There is good reason to apply strict scrutiny to the fundamental right at issue here, a right expressly protected in both the United States and Washington constitutions without suggestion of an age limitation. After all, as the United States Supreme Court observed in another, equally controversial juvenile rights context, "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976). Although the State may limit the constitutional rights of adolescents in circumstances different from those applied to adults in some contexts,[11] that does not mean that we scrutinize such limitations less rigorously. We merely

---

*id.* at 502 n.8, a comment that suggests support for Justice Chambers' application of strict scrutiny. *Accord In re Interest of M.G.*, 103 Wn. App. 111, 118, 11 P.3d 335 (2000). *Cf. State v. Schaaf*, 109 Wn.2d 1, 21, 743 P.2d 240 (1987) (strict scrutiny did *not* apply to the juvenile jury trial right because a jury trial "is not constitutionally guaranteed [in juvenile court], and thus is *not* a fundamental right, from a juvenile's standpoint" (emphasis added)).

[11] *See In re M.G.*, 103 Wn. App. at 118-19 (separate analysis of juvenile constitutional rights justified by (1) the particular vulnerability of children; (2) their inability to make decisions in an informed, mature manner; and (3) the importance of the parental role in child rearing) (citing *Bellotti v. Baird*, 443 U.S. 622, 634, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979)).

*State v. Sieyes*, No. 82154-2

attach more weight to the State's compelling interests in limiting the right in question where youths are involved. That is, "[t]he *Bellotti* test does not establish a lower level of scrutiny for the constitutional rights of minors," but rather "enables courts to determine whether the state has a compelling interest justifying greater restrictions on minors than on adults." *Nunez v. City of San Diego*, 114 F.3d 935, 945 (9th Cir. 1997) (citing *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979)). Thus, a petitioner's status as a juvenile affects the "compelling interest" prong of our strict scrutiny analysis, not the relevance of strict scrutiny itself to his or her claim.

We have recognized that juvenile constitutional rights are as deserving of heightened scrutiny as adult rights in other contexts. *See, e.g.*, *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 303, 178 P.3d 995 (2008) ( "Students 'do not shed their constitutional rights at the schoolhouse door.'" (internal quotation marks omitted) (quoting *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975))). In *Wahkiakum*, we held that the fundamental privacy rights of underage student athletes, as secured by article I, section 7 of our state constitution, were violated by random, suspicionless drug testing. *See* 163 Wn.2d at 316. Although *Wahkiakum* did

not apply strict scrutiny per se because it evaluated the testing program as a privacy violation not justified by "authority of law" as required by article I, section 7, *id.* at 306-07, it *did* hold the program to a very high standard of scrutiny, *id.* at 306 (requiring the drug testing program to satisfy one of the "jealously guarded exceptions" to the warrant requirement). The drug testing program failed to meet this standard, even considering the students' diminished expectation of privacy as interscholastic athletes competing on school grounds. *Id.* at 307-10.

Guns may be dangerous in the hands of minors, but so were the drugs that the testing program in *Wahkiakum* sought to discover. We should not examine with any less intensity impairment of infringement of the gun rights of youth under the Second Amendment than we do limitations of their right to be free from unwarranted searches under the Fourth Amendment or our more demanding state iteration, article I, section 7. Thus, we should subject RCW 9.41.040(2)(a)(iii) to strict scrutiny.

That we fail to do so here is an illustration of the diluted standard sometimes applied to the constitutional right to keep and bear arms protected by the Second Amendment to the United States Constitution and article I,

section 24 of our state constitution. This right has seldom been viewed as deserving the same protection as other fundamental rights found in either the Bill of Rights or our state constitution. No good reason exists to continue this legacy of disregard and disproportionate review. In fact, doing so furthers the risk that courts—or the legislature—will do injustice to other fundamental constitutional rights of our young people by failing to adequately scrutinize laws that limit those rights. Because I believe such an outcome to be contrary to our national and state constitutional heritage of respecting gun rights and applying strict scrutiny to restrictions imposed on the fundamental rights of even our younger citizens, I cannot join the majority. The fundamental constitutional right to bear arms deserves the highest level of scrutiny—strict scrutiny—a standard of review that this statute cannot survive. I therefore dissent.

AUTHOR:

    Justice James M. Johnson

WE CONCUR: